PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON #76342
CLIFFORD C. HYATT #196458
DAVID L. STANTON #208079
JACOB R. SORENSEN #209134
KRISTIN M. LEFEVRE #221541
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200
bruce.ericson@pillsburylaw.com

Attorneys for All Defendants

THOMAS O. JACOB #125665
VANESSA M. HOFFMANN #206086
OFFICE OF GENERAL COUNSEL
WELLS FARGO & CO.
633 Folsom Street, 7th Floor
San Francisco, California 94107
Telephone: (415) 396-4425
Facsimile: (415) 975-7867
tojacob@wellsfargo.com

Attorneys for Defendants
WELLS FARGO & CO. and affiliates

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

THE McDANIEL FAMILY TRUST, Individually And On Behalf Of ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

vs.

WELLS FARGO & COMPANY, et al.,

Defendants.

No. C-05-04518-WHA

**CLASS ACTION (PSLRA)**

**MOTION OF DEFENDANT WELLS FARGO & CO. TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Date: June 22, 2006
Time: 8:00 a.m.
Ctrm: 9, 19th Floor
Honorable William H. Alsup
Filed concurrently:
1. Request for judicial notice
2. Proposed order

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION TO DISMISS......1
ISSUES TO BE DECIDED......1
MEMORANDUM OF POINTS AND AUTHORITIES......2
I. INTRODUCTION......2
II. STATEMENT OF THE CASE......2
III. STANDARDS FOR MOTION TO DISMISS......3
IV. ARGUMENT......3
A. Because the CAC Sounds in Fraud, Rule 9(b) Applies to Plaintiff's Allegations of Control Person Liability......3
B. Count III Should be Dismissed Because Plaintiff has Failed to State a Claim for Control Person Liability Under Section 15 of the '33 Act......5
C. Count V Should be Dismissed Because Plaintiff has Failed to State a Claim for Control Person Liability Under Section 20(a) of the '34 Act......6
D. Count VII Should be Dismissed Because Plaintiff has Failed to State a Claim for Control Person Liability Under Section 48(a) of the '40 Act......7
1. There is No Private Right of Action under Section 48(a) for a Claim under Section 36(b)......8
2. Plaintiff has Failed to State a Claim for a Violation of Section 48(a)......8
E. The Statute of Limitations Bars All Counts Under the '33 Act and '34 Act......9
V. CONCLUSION......12

## TABLE OF AUTHORITIES

Page

### Cases

Bacon v. Am. Int'l. Group, 415 F. Supp. 2d 1027 (N.D. Cal. 2006) .................................... 4

Balistreri v. Pacifica Police Dep't, 901 F.2d 696 (9th Cir. 1988) .................................... 3

Bloom v. Martin, 865 F. Supp. 1377 (N.D. Cal. 1994) .................................... 3

Brody v. Homestore, Inc., No. CV 02-08068FMCJWJX, 2003 WL 22127108 (C.D. Cal. Aug. 8, 2003) .................................... 4

Cohen v. Citibank, N.A., 954 F. Supp. 621 (S.D.N.Y. 1996) .................................... 9

Durham v. Kelly, 810 F.2d 1500 (9th Cir. 1987) .................................... 5

Federal Sav. and Loan Ins. Corp. v. Musacchio, 695 F. Supp. 1053 (N.D. Cal. 1988) .................................... 4

Howard v. Everex Sys., Inc., 228 F.3d 1057 (9th Cir. 2000) .................................... 6

Howard v. Hui, No. C 92-3742-CRB, 2001 WL 1159780 (N.D. Cal. Sept. 24, 2001) .................................... 4

In re Anchor Gaming Sec. Litig., 33 F. Supp. 2d 889 (D. Nev. 1999) .................................... 4

In re Calpine Corp. Sec. Litig., 288 F. Supp. 2d 1054 (N.D. Cal. 2003) .................................... 5

In re Computervision Corp. Sec. Litig., 869 F. Supp. 56 (D. Mass. 1994) .................................... 4

In re Davis Selected Mut. Fund Litig., No. 04 CIV 4186 (MGC), 2005 WL 2509732 (S.D.N.Y. Oct. 11, 2005) .................................... 8

In re Eaton Vance Mut. Funds Fee Litig., 380 F. Supp. 2d 222 (S.D.N.Y. 2005) .................................... 8

In re Leadis Tech., Inc. Sec. Litig., No. C-05-882-CRB, 2006 WL 496039 (N.D. Cal. Mar. 1, 2006) .................................... 3

In re Netflix, Inc. Sec. Litig., No. C 04 2978 WHA, 2005 WL 3096209 (N.D. Cal. Nov. 18, 2005) .................................... 5

In re Sagent Tech. Inc. Derivative Litig.,
278 F. Supp. 2d 1079 (N.D. Cal. 2003) ..... 3

In re Splash Tech. Holdings, Inc. Sec. Litig.
No. C 99-00109 SBA, 2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ..... 4

In re Stac Electronics Sec. Litig.,
89 F.3d 1399 (9th Cir. 1996) ..... 4

In re Surebeam Corp. Sec. Litig.
No. 03 CV 1721 JM (FOR), 2004 U.S. Dist. LEXIS 26951 (S.D. Cal. Dec. 30, 2004) ..... 4

In re VeriFone Sec. Litig.,
11 F.3d 865 (9th Cir. 1993) ..... 3

Johnson v. NYFIX, Inc.
399 F. Supp. 2d 105 (D. Conn. 2005) ..... 4

Kaplan v. Kahn,
1995 WL 20571 (N.D. Cal. 1995) ..... 10

Morton v. Mancari, 417 U.S. 535, 550-51 (1974) ..... 8

Moss v. Morgan Stanley, Inc.,
553 F. Supp. 1347 (S.D.N.Y. 1983) ..... 9

No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp., 320 F.3d 920 (9th Cir. 2003) ..... 6

Nursing Home Pension Fund, Local 144 v. Oracle Corp.,
380 F.3d 1226 (9th Cir. 2004) ..... 4

Press v. Quick & Reilly,
218 F.3d 121 (2d Cir. 2000) ..... 10

Rhodes v. Omega Research, Inc.,
38 F. Supp. 2d 1353 (S.D. Fla. 1999) ..... 4

Rombach v. Chang
355 F.3d 164 (2d Cir. 2004) ..... 4

SEC v. Coffey,
493 F.2d 1304 (6th Cir. 1974) ..... 9

Security Pacific National Bank v. RTC,
63 F. 3d 900 (9th Cir. 1995) ..... 8

Shapiro v. UJB Financial Corp.,
964 F.2d 272 (3d Cir. 1992) ..... 4

Shaw v. Digital Equip. Corp.,
82 F.3d 1194 (1st Cir. 1996) ..... 4

Tregenza v. Great Am. Communications Co., 12 F.3d 717 (7th Cir.1993) .......... 10

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097 (9th Cir. 2003) .......... 4

Waldock v. M.J. Select Global, Ltd., No. 03 C 5293, 2005 WL 3542527 (N.D. Ill. Dec. 27, 2005) .......... 8

**Statutes and Codes**

Investment Company Act of 1940
15 U.S.C. § 80a-35(b) .......... 1, 2, 8
15 U.S.C. § 80a-47(a) .......... passim

Securities Act of 1933
15 U.S.C. § 77l(a)(2) .......... 1, 2, 5, 6
15 U.S.C. § 77m .......... 9
15 U.S.C. § 77o .......... 1, 4, 5

Securities Exchange Act of 1934
15 U.S.C. § 78j(b) .......... 1, 2, 7
15 U.S.C. § 78t(a) .......... passim
15 U.S.C. § 78t(b) .......... 9

United States Code
28 U.S.C. § 1658(b)(1) .......... 9

**Other Authorities**

Brief of the Securities and Exchange Commission, Amicus Curiae, filed in Press v. Quick & Reilly, 2000 WL 34447852 (Feb. 14, 2000) .......... 10

H.R. 2420, Mutual Funds Integrity and Fee Transparency Act of 2003 (June 2003) .......... 10, 11

NASD Notice to Members 03-54, Compensation for the Sale of Investment Company Securities (Sept. 2003) .......... 11

NASD Notice to Members 96-68, NASD Solicits Member Comment On Proposed Rules Relating To Prospectus Disclosure Of Cash And Non-Cash Compensation For The Sale Of Investment Company Securities (1996) .......... 11

NASD Notice to Members 97-50, Self-Regulatory Organizations; Notice of Filing of Proposed Rule Change by the National Association of Securities Dealers, Inc. Relating to the Regulation of Non-Cash Compensation in Connection With the Sale of Investment Company Securities and Variable Contracts, 62 Fed. Reg. 47080-01, 1997 WL 540521 (September 5, 1997) .......... 10, 11

Securities Confirmations, Rel. No. 34-13508 (May 5, 1977) .......... 10

Self-Regulatory Organizations; Notice of Filing of Proposed Rule Change by National Association of Securities Dealers, Inc. Relating to the Regulation of Cash and Non-Cash Compensation in Connection With the Sale of Investment Company Securities and Variable Contracts, 61 Fed. Reg. 35822-01, 1996 WL 375223 (July 8, 1996) ........ 10

Testimony Concerning the Mutual Funds Integrity and Fee Transparency Act of 2003, H.R. 2420 (June 18, 2003) ........ 10, 11

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, June 22, 2006, at 8 a.m., before the Honorable William H. Alsup, United States District Judge, in Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, defendant **WELLS FARGO & CO.** ("Wells Fargo") will move and hereby does move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss plaintiff's Consolidated Amended Class Action Complaint (Dkt. 58) ("CAC") as to Wells Fargo.

This motion is made on the grounds that the CAC's Counts III, V and VII—the only claims asserted against Wells Fargo—fail to plead facts sufficient to state "control person" claims against Wells Fargo.

This motion is based on this notice of motion and motion, the memorandum that follows, the request for judicial notice filed herewith, the motions to dismiss filed concurrently by the other defendants (which motions Wells Fargo hereby joins in and incorporates by reference), all pleadings and records on file in this action, and any other arguments and evidence presented to this Court at or before the hearing on this motion.

## ISSUES TO BE DECIDED

1. Can plaintiff state "control person" claims against Wells Fargo under section 15 of the Securities Act of 1933 ('33 Act) (Count III, relating to alleged violations of section 12(a)(2) of the '33 Act), section 20(a) of the Securities Exchange Act of 1934 ('34 Act) (Count V, relating to alleged violations of section 10(b) of the '34 Act), and section 48(a) of the Investment Company Act of 1940 ('40 Act) (Count VII, relating to alleged violations of section 36(b) of the '40 Act) simply by alleging that Wells Fargo is the ultimate parent of the defendants actually accused of the primary violations?

2. Is there a private right of action under section 48(a) of the '40 Act?

//

//

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION.

The only claims against Wells Fargo—control person claims—fail for three reasons:

First, plaintiff has not stated claims for primary violations against Wells Fargo's subsidiaries. *See* the motions to dismiss of the subsidiaries, filed concurrently. Without a well-pleaded claim for a primary violation, there can be no control-person liability.

Second, all the CAC alleges against Wells Fargo is that it is the ultimate parent of its subsidiaries. But the mere existence of a parent-subsidiary relationship is not enough to establish control person liability.

Third, there is no private right of action under section 48(a) of the '40 Act. Therefore, plaintiff's section 48(a) claim must fail as a matter of law.

### II. STATEMENT OF THE CASE.

The CAC is summarized in the motions to dismiss filed by the other defendants. We shall note here only the allegations pertinent to this motion.

There are eight defendants. Seven are Wells Fargo entities. The eighth is Stephens Inc., a financial institution headquartered in Arkansas that is not affiliated with Wells Fargo. Wells Fargo is a diversified financial holding company and the ultimate parent of the other defendants except Stephens. CAC ¶ 16. It has no alleged role except as the ultimate parent company of other defendants and as the "ultimate beneficiary" of the actions of the other defendants. *Id.*

Plaintiff has asserted claims for primary violations of section 12(a)(2) of the '33 Act, section 10(b) of the '34 Act and section 36(b) of the '40 Act. CAC Counts I, II, IV and VI. Plaintiff seeks to hold Wells Fargo liable as a control person for each of these alleged violations. CAC Counts III, V and VII.

The control person allegations (CAC ¶¶ 180-85 (Count III), 198-202 (Count V) and 208-13 (Count VII) are conclusory. They merely assert—without any facts—that Wells Fargo had "operational control and/or authority" over the other defendants and "caused [them] to engage in the wrongful conduct complained of herein." CAC ¶¶ 183, 211.

## III. STANDARDS FOR MOTION TO DISMISS.

A motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint. A motion to dismiss should be granted when "it is clear from the face of the complaint and judicially-noticed documents that [plaintiffs] cannot prevail as a matter of law."[1] Dismissal is warranted if the complaint fails to assert a cognizable legal theory, or if it fails to allege sufficient facts under a cognizable legal theory.[2] For purposes of the motion, the Court is obligated to accept only well-pled facts as true: "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss . . . ."[3]

## IV. ARGUMENT.

### A. Because the CAC Sounds in Fraud, Rule 9(b) Applies to Plaintiff's Allegations of Control Person Liability.

The CAC alleges a fraudulent scheme. The allegations of collusion, violations of law, and knowingly false and misleading statements are pervasive. *E.g.*, CAC ¶¶ 1 ("unlawful and deceitful course of conduct), 2 ("insidious kickback scheme"), 3 ("abusive and unlawful sales practices"), 4 ("Clandestine, incentive-driven culture . . . regardless of their clients' bests interests . . . created an insurmountable conflict of interest"), 4 ("made it standard business practice to give their customers self-serving and biased investment guidance . . . as part of their secret scheme to enjoy the profits improperly generated by the collection of kickbacks"), 10 ("Defendants' undisclosed incentive arrangements operated as a fraudulent scheme to exploited the misplaced trust of Wells Fargo clients"). This is the stuff of a "quintessential fraud claim."[4] These are "wording and imputations . . . classically

---

[1] *Bloom v. Martin*, 865 F. Supp. 1377 (N.D. Cal. 1994), *aff'd*, 77 F.3d 318 (9th Cir. 1996).

[2] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988).

[3] *In re VeriFone Sec. Litig.*, 11 F.3d 865 (9th Cir. 1993); *In re Sagent Tech. Inc. Derivative Litig.*, 278 F. Supp. 2d 1079 (N.D. Cal. 2003).

[4] *In re Leadis Tech., Inc. Sec. Litig.*, No. C-05-882-CRB, 2006 WL 496039, *3-*4 (N.D. Cal. Mar. 1, 2006) (Breyer, J.).

associated with fraud."[5] Thus, Rule 9(b) of the Federal Rules of Civil Procedure applies whether or not the particular claim requires proof of fraud to establish liability.[6] And this is true even if the complaint disclaims fraud with respect to particular claims. "Plaintiffs cannot avoid the more stringent requirements of Rule 9(b) by merely inserting boilerplate language into their Complaint stating that claims are based in negligence, not fraud."[7]

"Rule 9(b) imposes a particularized pleading requirement on a plaintiff alleging fraud or any claim premised on fraud."[8] Thus, Rule 9(b) applies to plaintiff's '33 Act claims[9] as well as his '40 Act claims.[10] (Obviously, Rule 9(b) also applies to his '34 Act claims, as to which scienter is an essential element.) Because all the underlying claims are subject to Rule 9(b), so too are the control person allegations under section 15 of the '33 Act, section 20(a) of '34 Act and section 48(a) of the '40 Act.[11]

---

5 *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004); *see Johnson v. NYFIX, Inc.*, 399 F. Supp. 2d 105, 122 (D. Conn. 2005).

6 *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-1104 (9th Cir. 2003); *Brody v. Homestore, Inc.*, No. CV 02-08068FMCJWJX, 2003 WL 22127108, at *4 (C.D. Cal. Aug. 8, 2003); *In re Anchor Gaming Sec. Litig.*, 33 F. Supp. 2d 889, 893 (D. Nev. 1999); *Rhodes v. Omega Research, Inc.*, 38 F. Supp. 2d 1353, 1360-62 (S.D. Fla. 1999); *In re Computervision Corp. Sec. Litig.*, 869 F. Supp. 56, 63 (D. Mass. 1994) (applying Rule 9(b) because "[e]ven though no fraud claim has been made, the [c]omplaint 'sounds in fraud'").

7 *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM (FOR), 2004 U.S. Dist. LEXIS 26951, at *23 (S.D. Cal. Dec. 30, 2004); *accord Homestore, Inc.*, 2003 WL 22127108 at *4 (*citing In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1404-05, & n.2 (9th Cir. 1996)).

8 *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004).

9 *Vess*, 317 F.3d at 1103-1104; *see also In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1404-05 (9th Cir. 1996) (section 11 of the Securities Act); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1223 (1st Cir. 1996) (sections 11 and 12 of the Securities Act); *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 288 (3d Cir. 1992) (sections 11 and 12 of the Securities Act).

10 *See Bacon v. Am. Int'l. Group*, 415 F. Supp. 2d 1027, 1033-34 (N.D. Cal. 2006) (applying rule 9(b) to breach of fiduciary duty claim); *Federal Sav. and Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1058 (N.D. Cal. 1988) (same).

11 *Howard v. Hui*, No. C 92-3742-CRB, 2001 WL 1159780, at *4 (N.D. Cal. Sept. 24, 2001) (rule 9(b) applies to section 20(a) claim); *In re Splash Tech. Holdings, Inc. Sec. Litig.*; No. C 99-00109 SBA, 2000 WL 1727405, at *15 (N.D. Cal. Sept. 29, 2000) ("In

(continued…)

Therefore, plaintiff's control-person claims must be stated with particularity. This the CAC does not do. Instead, its allegations of control are wholly conclusory.

**B. Count III Should be Dismissed Because Plaintiff has Failed to State a Claim for Control Person Liability Under Section 15 of the '33 Act.**

To plead secondary liability under section 15 of the '33 Act,[12] a plaintiff must allege that there was a relationship between the control person and the controlled person, that actual power was exerted over the controlled person, and that the alleged control person was a "culpable participant" in the alleged violation of the Securities Act.[13] While plaintiff seeks to assert a control-person claim against Wells Fargo under section 15—blaming Wells Fargo for the allege misdeeds of the broker/dealer defendants, the distributor defendants and the registrant defendant—plaintiff does not allege the facts needed to state a claim under section 15.

First, for the reasons set forth in the motion to dismiss of the broker dealer and registrant defendants, plaintiff has failed to state a claim for a primary violation of section 12(a)(2) of the '33 Act.

Second, plaintiff has failed to allege with particularity that Wells Fargo actually exerted control over the alleged controlled persons, and that Wells Fargo was a "culpable participant" in the alleged violations. All plaintiff alleges is that Wells Fargo "is the ultimate parent of all Defendants named in this Complaint . . . [and] was the ultimate

(…continued)
order to adequately plead the second element of a control person liability claim, the complaint must plead the circumstances of the control relationship with particularity.").

[12] Section 15 of the '33 Act provides: "Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist." 15 U.S.C. § 77o.

[13] *Durham v. Kelly*, 810 F.2d 1500, 1503-04 (9th Cir. 1987); *In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1081 (N.D. Cal. 2003); *see also In re Netflix, Inc. Sec. Litig.*, No. C-04-2978 WHA, 2005 WL 3096209 (N.D. Cal. Nov. 18, 2005) (Alsup, J.) (citing *Durham v. Kelly* with regard to a claim under section 20(a)).

beneficiary of the secret plan and scheme to endorse the Shelf Space Funds to the detriment of the Funds and their investors . . . ." CAC ¶ 16. There are no allegations of fact suggesting any actual acts or involvement by Wells Fargo. In the charging allegations, plaintiff charges only that:

> The Control Person Defendant was a 'control person' of the Broker/Dealer defendants and the Distributor and Registrant Defendants within the meaning of Section 15 of the Securities Act, by virtue of its position of operational control and/or ownership. At the time that members of the Purchasers Subclass purchased shares of one or more of the Shelf Space Funds . . . .[,] the Control Person Defendant directly and indirectly, had the power an authority, and exercised the same, to cause the Distributor and Registrant Defendants to engage in the wrongful conduct complaint of herein.

CAC ¶ 183. Plaintiff alleges no facts at all—let alone alleges any facts with particularity—suggesting that Wells Fargo had anything to do with the alleged violations of section 12(a)(2) or that Wells Fargo exercised actual control over the broker-dealer, distributor or registrant defendants. (Indeed, Wells Fargo is neither the parent nor an affiliate of defendant Stephens Inc.) Because the CAC alleges no facts demonstrating actual control or culpable participation, Count III should be dismissed.

**C. Count V Should be Dismissed Because Plaintiff has Failed to State a Claim for Control Person Liability Under Section 20(a) of the '34 Act.**

Similarly, to plead secondary liability under section 20(a) of the '34 Act,[14] plaintiff must allege both that "(1) 'a primary violation of federal securities law' and (2) 'that the defendant exercised actual power or control over the primary violator.'"[15]

The CAC fails to plead either of the requirements for section 20(a) liability:

First, as set forth in detail in the motion of the broker-dealer and registrant

---

[14] Section 20(a) provides: "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a).

[15] *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003) (quoting *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000)).

defendants to dismiss the claims against them under section 10(b) and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5) (Count IV, the "'34 Act claim"), the CAC fails to allege the requisite primary violation of the'34 Act claims.

Second, the CAC does not allege with particularity how Wells Fargo controlled the issuance of the allegedly misleading statements (none of which are directly attributed to it). Again, all the CAC alleges is that Wells Fargo "is the ultimate parent of all Defendants named in this Complaint . . . [and] was the ultimate beneficiary of the secret plan and scheme to endorse the Shelf Space Funds to the detriment of the Funds and their investors . . . ." CAC ¶ 16. The CAC does not even allege that Wells Fargo is the direct parent of each of the Defendants. There are no other factual allegations relating to any actions or involvement by Wells Fargo. Instead, in the charging allegations, the CAC alleges that:

> 200. . . . By virtue of their operational and management control of the Broker/Dealer Defendants, the Investment Adviser Defendants, Distributor Defendants and the Registrant Defendant's respective businesses and systematic involvement in the fraudulent scheme alleged herein, the Control Person Defendant had the power to influence and control and did influence and control, directly or indirectly, the decision-making and actions of the Broker/Dealer Defendants, the Investment Adviser Defendants, Distributor Defendants and the Registrant Defendant, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Control Person Defendant had the ability to prevent the issuance of the statements alleged to be false and misleading or could have caused such statements to be corrected.
>
> 201. In particular, the Control Person Defendant had direct and supervisory involvement in the operations of the Broker/Dealer Defendants, the Investment Adviser Defendants, Distributor Defendants and the Registrant Defendant and, therefore, is presumed to have had the power to control or influence the particular transaction giving rise to the securities violations as alleged herein, and to have exercised same.

CAC ¶¶ 200-201. These allegations do not allege the kind of day to day involvement necessary to state a claim under section 20(a).

**D. Count VII Should be Dismissed Because Plaintiff has Failed to State a Claim for Control Person Liability Under Section 48(a) of the '40 Act.**

Section 48(a) of the Investment Company Act of 1940 provides: "It shall be unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the

provisions of this subchapter or any rule, regulation, or order thereunder." 15 U.S.C. § 80a-47(a). This statute does *not* mirror section 15 of the '33 Act or section 20(a) of the '34 Act.

**1. There is No Private Right of Action under Section 48(a) for a Claim under Section 36(b).**

There is no private right of action under section 48(a), pure and simple.[16]

Even if there were a private right of action under section 48(a) as a general proposition, there still would be no such right of action for an alleged violation of section 36(b). Section 36(b) only permits a current security holder to bring suit against an investment adviser or affiliated person for repayment of allegedly excessive fees. It specifically provides that "[n]o such action shall be brought or maintained against any person other than the recipient of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments."[17] To permit a private right of action under section 48(a) against a "control person" for recovery of alleged excessive fees would expand the reach of section 36(b) (in some undefined way) and violate the settled rule that "a specific statute will not be controlled or nullified by a general one."[18] For both of these reasons, the section 48(a) claim fails as a matter of law.

**2. Plaintiff has Failed to State a Claim for a Violation of Section 48(a).**

Even if there were a private right of action under section 48(a) which extended to a violation of section 36(b), which there is not, the CAC still would fail to state a claim under section 48(a).

First, as set forth in the motion to dismiss of the investment advisor and distributor

---

[16] *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 231-33 (S.D.N.Y. 2005); *In re Davis Selected Mut. Fund Litig.*, No. 04 CIV 4186 (MGC), 2005 WL 2509732, at *2 (S.D.N.Y. Oct. 11, 2005); *Waldock v. M.J. Select Global, Ltd.*, No. 03 C 5293, 2005 WL 3542527, at *8-*9 (N.D. Ill. Dec. 27, 2005).

[17] Section 36 of the '40 Act, 15 U.S.C. § 80a-35(b)(3).

[18] *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974); *Security Pacific National Bank v. RTC*, 63 F. 3d 900, 904 (9th Cir. 1995) (general provision of statute may not make "specific words" in it "superfluous").

defendants, the CAC fails to state a claim for a primary violation of section 36(b).

Second, while section 48(a) is loosely referred to as giving rise to "control person" liability, the language of the statute does not use the word "control person" or "control." It is therefore distinguishable from section 20(a) of the Securities Exchange Act of 1934 and the definition of control set forth in Rule 12b-2 (17 C.F.R. § 240.12b-2). Indeed, its language most closely resembles the rarely-cited section 20(b) of the '34 Act, which provides: "It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person." Courts have concluded that under section 20(b) "there must be shown to have been knowing use of a controlled person by a controlling person . . . ."[19] More must be alleged than is necessary to satisfy section 20(a), which imposes a sort of strict liability on control persons, subject to a good faith affirmative defense.

In this case, the CAC alleges only that Wells Fargo "directly and indirectly had the power and authority, and exercised the same, to cause the [other defendants] to engage in the wrongful conduct complained of herein." CAC ¶ 211. As set forth above, these allegations are insufficient to satisfy section 20(a). They are therefore even farther from sufficient to state a claim under section 48(a).

**E. The Statute of Limitations Bars All Counts Under the '33 Act and '34 Act.**

Plaintiff s claims under the '33 Act and '34 Act are barred by the statute of limitations because he was on inquiry notice about revenue-sharing practices more than two years before this case was filed (*i.e.*, before November 4, 2003).[20] This Court has expressly recognized that "the statute of limitations is triggered under the inquiry notice

[19] *SEC v. Coffey*, 493 F.2d 1304, 1318 (6th Cir. 1974); *Cohen v. Citibank*, N.A., 954 F. Supp. 621, 630 (S.D.N.Y. 1996) (citing *Coffey*); *Moss v. Morgan Stanley, Inc.*, 553 F. Supp. 1347, 1362 (S.D.N.Y. 1983) (citing *Coffey*).

[20] *See* 28 U.S.C. § 1658(b)(1) (barring '34 Act claims brought more than two years after the discovery of the facts constituting the violation); 15 U.S.C. § 77m (barring section 12(a)(2) claims unless brought within *one* year after discovery or after discovery should have been made by the exercise of reasonable diligence).

standard in cases of securities fraud."[21] In this case, the question is not even close—the public has had notice about revenue-sharing practices in the mutual fund industry for *decades*. It has never been hidden; it has been conducted openly and has been expressly authorized by the SEC and NASD.[22]

As set forth in the broker-dealers and distributors defendants' motion to dismiss, filed herewith, Plaintiff learned about revenue-sharing practices in the prospectuses he received from Wells Fargo Funds and the so-called "Shelf-Space Funds." As far back as *1977*, the SEC told investors that they should look to their prospectuses for information about payments that fund companies may make to their broker-dealers.[23] In 2000, the Second Circuit announced that investors should look to fund prospectuses and Statements of Additional Information ("SAI") to find such information,[24] and the SEC's *amicus* brief in *Press* announced to the world that broker-dealers "could rely on the disclosures in the fund prospectuses and SAIs."[25]

Before the limitations period, revenue-sharing arrangements were the subject of a great deal of regulatory and legislative activity and debate that was conducted openly and publicly.[26] The SEC's Director of the Division of Investment Management even testified

---

[21] *Kaplan v. Kahn*, 1995 WL 20571, at *4 (N.D. Cal. 1995) (*quoting Tregenza v. Great Am. Communications Co.*, 12 F.3d 717, 718 (7th Cir.1993)) (dismissing securities fraud claim on statute of limitations grounds).

[22] *See e.g,* Paul Roye, Director, SEC Division of Investment Management, *Testimony Concerning the Mutual Funds Integrity and Fee Transparency Act of 2003, H.R. 2420* (June 18, 2003) (available at www.sec.gov /news/testimony/061803tspfr.htm.) (hereinafter "Roye Testimony"); NASD Notice to Members 97-50, *NASD Regulation Requests Comment On Regulation Of Payment And Receipt Of Cash Compensation Incentives* (Aug. 1997).

[23] *Securities Confirmations*, Rel. No. 34-13508 (May 5, 1977) at n.41.

[24] *Press v. Quick & Reilly*, 218 F.3d 121, 123 (2d Cir. 2000).

[25] RFJN Ex. 8 (Brief of the Securities and Exchange Commission, *Amicus Curiae*, filed in *Press v. Quick & Reilly*, available at 2000 WL 34447852 (Feb. 14, 2000) (hereinafter the "SEC *Amicus* Brief")).

[26] *See, e.g., Self-Regulatory Organizations; Notice of Filing of Proposed Rule Change by National Association of Securities Dealers, Inc. Relating to the Regulation of Cash and Non-Cash Compensation in Connection With the Sale of Investment Company Securities and Variable Contracts,* 61 Fed. Reg. 35822-01, 1996 WL 375223 (July 8, 1996)

(continued…)

before Congress about the practice in June 2003.[27] The popular press also picked up the story, and articles about revenue sharing were carried by Reuters, and appeared in the *Wall Street Journal* and *The New York Times*.[28]

Plaintiff seeks to base his '33 Act and '34 Act claims on a widespread, lawful practice that was fully disclosed and openly discussed long before the two-year statutory period. Therefore, the statute of limitations should bar those claims, and the CAC should be dismissed.

//

//

//

(…continued)
(discussing proposal to enhance revenue-sharing disclosure requirements); NASD Notice to Members 96-68, *NASD Solicits Member Comment On Proposed Rules Relating To Prospectus Disclosure Of Cash And Non-Cash Compensation For The Sale Of Investment Company Securities* (1996) (discussing proposal to enhance revenue-sharing disclosure requirements); NASD Notice to Members 97-50 (Aug. 1997) (identifying "interpretative ambiguity and requesting comments regarding revenue-sharing disclosure); *Self-Regulatory Organizations; Notice of Filing of Proposed Rule Change by the National Association of Securities Dealers, Inc. Relating to the Regulation of Non-Cash Compensation in Connection With the Sale of Investment Company Securities and Variable Contracts*, 62 Fed. Reg. 47080-01, 1997 WL 540521 (September 5, 1997) (noting that the "NASD has determined to solicit comment pertaining to these issues before proposing any new rules to require either disclosure or substantive regulation of cash compensation for the sale of investment company … securities."); H.R. 2420, *Mutual Funds Integrity and Fee Transparency Act of 2003* (June 2003) (proposal to require further "revenue sharing" disclosure); NASD Notice to Members 03-54, *Compensation for the Sale of Investment Company Securities* (Sept. 2003) (discussing revenue sharing practices generally).

[27] Paul Roye, Director, SEC Division of Investment Management, *Testimony Concerning the Mutual Funds Integrity and Fee Transparency Act of 2003, H.R. 2420* (June 18, 2003) (available at www.sec.gov/news/testimony/061803tspfr.htm.)

[28] *See e.g.* RFJN Ex. 26 (Judith Burns, *Should Brokers Disclose Incentives? – SEC's Roye Sees Grounds For Firms to Tell Investors Of Revenue-Sharing Pacts*, Wall St. Jour. (May 27, 2003)); RFJN Ex. 27 (Reuters, *Lawmaker Submits Fund Disclosure Bill*, N.Y. Times (June 12, 2003)).

**V. CONCLUSION.**

For the foregoing reasons, the Complaint should be dismissed as to Wells Fargo & Company.

Dated: May 2, 2006.

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON
CLIFFORD C. HYATT
DAVID L. STANTON
JACOB R. SORENSEN
KRISTIN M. LEFEVRE
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880

Attorneys for All Defendants

THOMAS O. JACOB #125665
VANESSA M. HOFFMANN #206086
OFFICE OF GENERAL COUNSEL
WELLS FARGO & CO.
633 Folsom Street, 7th Floor
San Francisco, California 94107
Telephone: (415) 396-4425
Facsimile: (415) 975-7867
tojacob@wellsfargo.com

Attorneys for Defendants
WELLS FARGO & CO. and affiliates

By /s/ Bruce A. Ericson
Bruce A. Ericson