1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    BRUCE A. ERICSON  #76342
2   CLIFFORD C. HYATT  #196458
    DAVID L. STANTON  #208079
3   JACOB R. SORENSEN #209134
    KRISTIN M. LEFEVRE #221541
4   50 Fremont Street
    Post Office Box 7880
5   San Francisco, CA  94120-7880
    Telephone: (415) 983-1000
6   Facsimile: (415) 983-1200
    bruce.ericson@pillsburylaw.com
7
    Attorneys for All Defendants
8
    THOMAS O. JACOB  #125665
9   VANESSA M. HOFFMANN  #206086
    OFFICE OF GENERAL COUNSEL
10  WELLS FARGO & CO.
    633 Folsom Street, 7th Floor
11  San Francisco, California  94107
    Telephone: (415) 396-4425
12  Facsimile: (415) 975-7867
    tojacob@wellsfargo.com
13
    Attorneys for Defendants
14  WELLS FARGO & CO. and affiliates

15                  UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17                  SAN FRANCISCO DIVISION

18                                          No. C-05-04518-WHA
    THE McDANIEL FAMILY TRUST,
19  Individually And On Behalf Of ALL OTHERS    CLASS ACTION (PSLRA)
    SIMILARLY SITUATED,
20                                          MOTION OF DEFENDANTS WELLS
                         Plaintiff,         FARGO FUNDS MANAGEMENT,
21                                          LLC, WELLS CAPITAL
         vs.                                MANAGEMENT, INC., WELLS
22                                          FARGO FUNDS DISTRIBUTOR,
    WELLS FARGO & COMPANY, et al.,          LLC AND STEPHENS INC. TO
23                                          DISMISS PLAINTIFF'S
                         Defendants.        CONSOLIDATED AMENDED
24                                          CLASS ACTION COMPLAINT

25                                          Date:  June 22, 2006
                                            Time: 8:00 a.m.
26                                          Ctrm: 9, 19th Floor
                                            Honorable William H. Alsup
27

28

1

# TABLE OF CONTENTS

2

**Page**

3   NOTICE OF MOTION AND MOTION TO DISMISS........................................................1

4   ISSUES TO BE DECIDED ................................................................................................1

5   MEMORANDUM OF POINTS AND AUTHORITIES ......................................................2

6   I.      INTRODUCTION. ..................................................................................................2

7   II.     STATEMENT OF THE CASE. ..............................................................................2

8   III.    ARGUMENT. ..........................................................................................................3

9      A.    Plaintiff Does Not Have Standing to Pursue Count VI. ..................................3

10        1.    Plaintiff lacks standing because he does not allege that he currently holds shares in the funds at issue. ..............................................4

11

12        2.    Plaintiff lacks standing under the Trust Agreement and Delaware law because he does not allege that he holds one-third of the shares of the funds at issue. ..................................................5

13

14      B.    The Complaint Fails to State a Section 36(b) Claim For Revenue Sharing................................................................................................6

15      C.    The Complaint Fails to State a Section 36(b) Claim For Excessive Fees. ...........9

16        1.    The first *Gartenberg* factor:  the nature and quality of services. .................12

17        2.    The second and third *Gartenberg* factors:  the profitability of the mutual funds to the Investment Adviser and any "fall-out" benefits that the Investment Adviser received. ........................................13

18

19        3.    The fourth *Gartenberg* factor:  whether economies of scale were passed on to investors. ..................................................................13

20        4.    The fifth *Gartenberg* factor:  comparative fee structures. ...........................15

21

22        5.    The sixth *Gartenberg* factor:  the independence of the funds' outside trustees. ..................................................................16

23      D.    The Section 36(b) Claim is Largely Barred by the Statute of Limitations..........18

24   IV.    CONCLUSION. ...................................................................................................19

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4    Benzon v. Morgan Stanley Distrib., Inc.,
      2004 WL 62747 (M.D. Tenn. Jan. 8, 2004) ........................................................... 8

5

6    Burks v. Lasker,
      441 U.S. 471 (1979) ............................................................................................ 6

7    Castillo v. Dean Witter Reynolds, Inc.,
      1998 WL 342050 (S.D.N.Y. June 25, 1998) ...................................................... 8

8

9    Daily Income Fund, Inc. v. Fox,
      464 U.S. 523 (1984) ......................................................................................... 5, 6

10    Dumond v. Massachusetts Financial Services Company,
      2006 WL 149038 (D. Mass. Jan. 19, 2006) ....................................................... 8

11

12    Forsythe v. Sun Life Financial,
      417 F. Supp. 2d 100 (D. Mass. 2006) ...................................................... 3, 4, 6, 8

13    Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,
      694 F.2d 923 (2d Cir. 1982) ......................................................................... passim

14

15    In re AllianceBernstein Mut. Fund Excessive Fee Litig.,
      2005 WL 2677753 (S.D.N.Y Oct. 19, 2005) ................................................. 7, 14

16    In re Davis Selected Mut. Funds Litig.,
      2005 WL 2509732 (S.D.N.Y. Oct. 11, 2005) .................................................... 7

17

18    In re Dreyfus Mut. Funds Fee Litig.,
      2006 WL 909434 (W.D. Pa. April 10, 2006) ..................................................... 7

19    In re Dreyfus Mut. Funds Fee Litig.,
      2005 WL 3970836 (W.D. Pa. Sept. 30, 2005) ................................................... 7

20

21    In re Eaton Vance Mut. Funds Fee Litig.,
      380 F. Supp. 2d 222 (S.D.N.Y. 2005) ......................................................... passim

22    In re Evergreen Mut. Funds Fee Litig.,
      2006 WL 753000 (S.D.N.Y. Mar. 24, 2006) ................................................. 7, 9

23

24    In re Franklin Mutual Funds Fee Litig.,
      388 F. Supp. 2d 451 (D.N.J. 2005) ................................................................. 3, 7

25    In re Goldman Sachs Mut. Funds Fee Litig.,
      2006 WL 126722 (S.D.N.Y. Jan 17, 2006) .................................................. passim

26

27    In re Lord Abbett Mutual Funds Fee Litig.,
      385 F. Supp. 2d 471 (D.N.J. 2005) ................................................................. 3, 7

28

In re Morgan Stanley and Van Kampen Mut. Fund Securities Litig,
    2006 WL 1008138, (S.D.N.Y. Apr 18, 2006) ................................................ 7, 9, 10

In re Mut. Funds Investment Litig.,
    2006 WL 827339 (D. Md. Mar. 6, 2006) ................................................ 8

In re Oppenheimer Funds Fees Litig.,
    2006 WL 592881 (S.D.N.Y. Mar. 10, 2006) ................................................ 8, 9, 11

In the Matter of Morgan Stanley DW, Inc.,
    No. E-2003-31, No. E-2003-53, at 1 (Sec'y Mass. Comm. Sec. Div.
    May 24, 2004) ................................................ 8

Jablon v. Dean Witter & Co.,
    614 F.2d 677 (9th Cir. 1980) ................................................ 18

Kalish v. Franklin Advisers, Inc.,
    742 F. Supp. 1222 (S.D.N.Y. 1990) ................................................ 14

Kamen v. Kemper Financial Services, Inc.,
    500 U.S. 90 (1991) ................................................ 4, 5

Krantz v. Prudential Investments Fund Management LLC,
    305 F.3d 140 (3d Cir. 2002) ................................................ 10, 11, 17

Meyer v. Oppenheimer Management Corp.,
    895 F.2d 861 (2d Cir. 1990) ................................................ 12, 15

Migdal v. Rowe Price-Fleming Int'l Inc.,
    248 F.3d 321 (4th Cir. 2001) ................................................ 10, 11, 13, 17

Mutchka v. Harris,
    373 F. Supp. 2d 1021 (C.D. Cal. 2005) ................................................ 3

Press v. Quick & Reilly, Inc.,
    218 F.3d 121 (2d Cir. 2000) ................................................ 8

Ritchie v. United States,
    210 F. Supp. 2d 1120 (N.D. Cal. 2002) ................................................ 18

Strigliabotti v. Franklin Resources,
    No. C. 04-00883 SI, 2005 WL 645529 (N.D. Cal. March 7, 2005) ................................................ 10

Tooley v. Donaldson, Lufkin, & Jenrette, Inc.,
    845 A.2d 1031 (Del. 2004) ................................................ 3

U.S. v. Alvarado,
    2001 WL 1631396 (S.D.N.Y. Dec. 19, 2001) ................................................ 8

Verkouteren v. Blackrock Financial Management,
    37 F. Supp. 2d 256 (S.D.N.Y. 1999) ................................................ 10, 18

Yampolsky v. Morgan Stanley Investment Advisers, Inc.,
    2004 WL 1065533 (S.D.N.Y. May 12, 2004) ................................................ 10

1

**Statutes And Codes**

2   Delaware Code
            Title 12, Section 3816................................................................................. 5
3           Title 12, Section 3816(e) .......................................................................... 6

4   Investment Act of 1940
            Section 36(b) ................................................................................... passim
5           Section 48(a) .............................................................................................. 7

6   United States Code
            Title 15, Section 80-2(a)(3) .................................................................... 16
7           Title 15, Section 80a-2(a)(9) ............................................................ 11, 16
            Title 15, Section 80a-2(a)(19) ................................................................. 16
8           Title 15, Section 80a-10(a) ...................................................................... 16
            Title 15, Section 80a-15(c) ...................................................................... 16
9           Title 15, Section 80a-35(b)................................................... 3, 4, 18, 19
            Title 15, Section 80a-35(b)(2) ................................................................. 11
10          Title 15, Section 80a-35(b)(3) ................................................................. 19

11

**Rules and Regulations**

12   Federal Rules of Civil Procedure
            Rule 12(b)(6) ....................................................................................... 1, 18
13           Rule 23.1.................................................................................................... 5

14   Security and Exchange Commission Rules
            Rule 12b-1 ............................................................................................. 7, 9

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- iv -              Motion to Dismiss Count VI of Complaint
                                                                    No. C-05-04518-WHA

1    **NOTICE OF MOTION AND MOTION TO DISMISS**

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3    PLEASE TAKE NOTICE that on Thursday, June 22, 2006, at 8 a.m., before the

4    Honorable William H. Alsup, United States District Judge, in Courtroom 9, 19th Floor,

5    450 Golden Gate Avenue, San Francisco, California, defendants **WELLS FARGO**

6    **FUNDS MANAGEMENT LLC** ("WF Funds Management"), **WELLS CAPITAL**

7    **MANAGEMENT, INC.** ("WF Capital Management"), **WELLS FARGO FUNDS**

8    **DISTRIBUTOR, LLC** ("WF Funds Distributor") and **STEPHENS INC.** ("Stephens")

9    (collectively, the "Movants") will move and hereby do move, pursuant to Rule 12(b)(6) of

10   the Federal Rules of Civil Procedure, to dismiss plaintiff's Consolidated Amended Class

11   Action Complaint (Dkt. 58) ("CAC" or "Complaint") as to them.

12   This motion is made on the grounds that the CAC's Count VI fails to plead facts

13   sufficient to state a claim.  (The other counts are addressed by the other motions.)

14   This motion is based on this notice of motion and motion, the memorandum that

15   follows, the request for judicial notice filed herewith, the motions to dismiss filed

16   concurrently by the other defendants (which motions the Movants hereby join in and

17   incorporate by reference), all pleadings and records on file in this action, and any other

18   arguments and evidence presented to this Court at or before the hearing on this motion.

19   **ISSUES TO BE DECIDED**

20   1.    Does plaintiff have standing to pursue a claim under the Investment

21   Company Act of 1940 ("'40 Act") despite failing to allege that he currently owns most of

22   the funds at issue or has ever owned one-third of the interest in any of the fund?

23   2.    Are plaintiff's allegations about revenue sharing actionable under

24   section 36(b) of the '40 Act?

25   3.    Are plaintiff's allegations about excessive fees actionable under

26   section 36(b) of the '40 Act?

27   4.    Is plaintiff's claim under section 36(b) of the '40 Act limited by the

28   applicable statute of limitations?

1                         **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.**      **INTRODUCTION.**

3        The CAC is simply the latest mutation of a complaint brought by a class action law

4 firm in a national litigation campaign against various mutual fund companies.  Eight federal

5 district judges have ruled on motions to dismiss in similar cases and dismissed the

6 complaints in their entirety.  The CAC should meet the same fate.

7        Count VI alleges that Wells Fargo mutual funds paid excessive fees to their advisers

8 and distributors, in violation of section 36(b) of the '40 Act ("section 36(b)").  Plaintiff

9 apparently wishes to allege that each of the over 90 Wells Fargo mutual funds for which the

10 Movants acted as advisers or distributors charged excessive fees, although plaintiff himself

11 invested in only three of the funds.  Count VI should be dismissed for several reasons:

12        First, plaintiff has not alleged facts sufficient to give him standing to bring a section

13 36(b) claim.

14        Second, the theory that participation in a revenue-sharing program violates

15 section 36(b) is one that courts have consistently rejected.

16        Third, the facts—as opposed to conclusions and theories—alleged in the CAC do

17 not establish that the fees at issue are so disproportionately large that they bear no

18 reasonable relationship to the services rendered and could not have been the product of

19 arm's length bargaining, as is required to state a claim under section 36(b).  These fees were

20 fully disclosed to plaintiff before he invested.  All that his number-crunching establishes is

21 that funds differ both in their performance and their fees—hardly a revelation.

22        The Court should be reluctant to accept plaintiff's invitation to establish price

23 controls for the mutual fund industry.  That should be addressed by regulatory bodies after

24 proper notice and comment, not through litigation.  This case should be dismissed.

25  **II.**      **STATEMENT OF THE CASE.**

26          This case is described in more detail in the motion to dismiss filed by the

27 broker-dealer and distributor defendants, in which motion Movants join.  Here Movants

28 address only Count VI, for violation of section 36(b) of the '40 Act.

1    III.    **ARGUMENT.**

2    **A.    Plaintiff Does Not Have Standing to Pursue Count VI.**

3        Section 36(b) of the '40 Act creates a claim for breach of fiduciary duties by an

4    investment adviser or "any affiliated person of such investment adviser" relating to

5    "compensation or payments paid by such registered investment company or by the security

6    holders thereof to such investment adviser or person."[1]  Section 36(b) places a fiduciary

7    duty on investment advisers to refrain from charging or accepting excessive fees for

8    services provided to funds and paid for by fund assets.[2]  A section 36(b) claim may only be

9    brought against "the recipient of such compensation or payments, and no damages or other

10    relief shall be granted against any person other than the recipient of such compensation or

11    payments."[3]  A section 36(b) claim may only be asserted by the SEC or by "a security

12    holder of such registered investment company on behalf of such company . . . ."[4]

13        Section 36(b) creates a derivative action, not a direct action.[5]  Plaintiff here lacks

14    ───────────────────

15    [1]  15 U.S.C. § 80a-35(b).

16    [2]  *Id.*

17    [3]  *Id.* § 80a-35(b)(3); *In re Eaton Vance Mut. Funds Fee Litig.,* 380 F. Supp. 2d 222, 238
      (S.D.N.Y. 2005) (holding that section 36(b)(3) claim could not be brought against
18    investment adviser defendants and trustee defendants who were not recipients of
      allegedly excessive fees).

19    [4]  15 U.S.C. § 80a-35(b)

20    [5]  Some courts have held that a claim under section 36(b) is derivative based on the plain
      language the statute, which provides that a claim may be brought by a security holder "on
      behalf of such company."  *See, e.g., Forsythe v. Sun Life Financial,* 417 F. Supp. 2d 100,
21    117-18 (D. Mass. 2006); *In re Lord Abbett Mutual Funds Fee Litig.*, 385 F. Supp. 2d 471,
      488-89 (D.N.J. 2005); *In re Franklin Mutual Funds Fee Litig.*, 388 F. Supp. 2d 451, 468
22    (D.N.J. 2005); *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1025 (C.D. Cal. 2005).  Other
      courts have looked to the law of the state in which the investment company is
23    incorporated to answer the question.  *See, e.g., In re Eaton Vance Mut. Funds Fee Litig.*,
      380 F. Supp. 2d at 234 n.4 (applying Massachusetts law and concluding that the claims
24    were derivative).  Applying Delaware law, one would agree a claim under section 36(b) is
      derivative.  Delaware law provides that whether a claim is direct or derivative turns on
25    two questions: (1) who suffered the alleged harm; and (2) who would receive the benefit
      of any recovery.  *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1032,
26    1035 (Del. 2004).  An alleged "direct" injury "must be independent of any alleged injury
      to the corporation.  The stockholder must demonstrate that . . . he or she can prevail
27    without showing an injury to the corporation."  *Id.* at 1039.  In this case, there is no
      "direct" injury suffered by shareholders independent of the alleged injury to the
28                                                                                      (continued…)

1   standing to assert a section 36(b) claim for two reasons: (1) he has not alleged that he holds

2   shares in the funds at issue, which is a prerequisite to bringing a derivative claim under both

3   federal law and Delaware law; and (2) he does not allege that he holds (or ever held) at least

4   one-third of the shares of any of the funds at issue, which is a prerequisite to asserting a

5   derivative claim under Delaware law and the relevant Trust Agreement.

6   **1.      Plaintiff lacks standing because he does not allege that he currently holds**

7   **shares in the funds at issue.**

8          Section 36(b) requires a plaintiff to be a "holder" of the mutual fund at issue at the

9   time that the action is brought.[6]  This means that a plaintiff must have bought an interest in

10  a fund and continue to hold that interest when he sues.[7]  "Former security holders may not

11  bring a claim on behalf of an investment company that they formerly held shares in, but no

12  longer do."[8]  Plaintiff alleges that he held shares in three of roughly 90 Wells Fargo Funds

13  during the alleged Class Period,[9] but he fails to allege that he holds those shares today.  He

14  therefore has not established his standing to bring a claim under section 36(b).

15         Section 36(b)'s standing requirement is clear on its face.  But if the Court were to

16  perceive an ambiguity, it would look to Delaware law to fill any gaps.  Gaps in the '40 Act

17  bearing on the allocation of governing power within an investment company are filled by

18  state law unless state law permits actions prohibited by the '40 Act or would undercut the

19  federal policy underlying the claim.[10]  Indeed, "the presumption that state law should be

20  incorporated into federal common law is particularly strong in areas in which private parties

21  _____

22  (…continued)
    investment company (that of paying allegedly excessive fees to its investment advisor and

23  distributor).  Section 36(b) explicitly provides that any recovery will flow to the
    investment company.  Consequently, under Delaware law, a claim under section 36(b) is

24  derivative in nature.

    [6] 15 U.S.C. § 80a-35(b).
25
    [7] *Forsythe*, 417 F. Supp. 2d at 117-18.
26
    [8] *Id.*
27
    [9] CAC ¶ 15 & Ex. B.

28  [10] *Kamen v. Kemper Fin. Serv., Inc.*, 500 U.S. 90, 98 (1991).

Motion to Dismiss Count VI of Complaint
No. C-05-04518-WHA

1   have entered legal relationships with the expectation that their rights and obligations would

2   be governed by state-law standards. . . .  Corporation law is one such area."[11]

3          In this case, the registered investment company is defendant Wells Fargo Funds

4   Trust, a business trust organized under the laws of Delaware.[12]  Thus, if the Court finds a

5   gap in section 36(b), the Court should apply Delaware's business trust law to fill that gap in

6   determining whether plaintiff in this case has standing.

7          Delaware law governing derivative actions by beneficial owners of business trusts

8   provides that (1) "the plaintiff must be a beneficial owner *at the time of bringing the*

9   *action*"; and (2) the plaintiff must be a beneficial owner at the time of the transaction of

10  which plaintiff complains (or that plaintiff's status as beneficial owner must have devolved

11  upon plaintiff by operation of law).[13]  Thus, under either federal case law or Delaware law,

12  plaintiff lacks standing because the CAC does not allege that he continues to hold the funds

13  at issue.[14]

14  **2.      Plaintiff lacks standing under the Trust Agreement and Delaware law because**

15  **he does not allege that he holds one-third of the shares of the funds at issue.**

16         Plaintiff also has not met the requirements under the Trust Agreement governing the

17  Wells Fargo Funds Trust to bring an action under section 36(b).  The Trust Agreement

18  provides that to bring a derivative action, "Shareholders owning not less than one third of

19  the Outstanding Shares of all Series of the Trust, or of the affected Series or Classes of the

20  Trust, as the case may be, [must] join in the bringing of the derivative action."[15]  Such a

21  _____

22  [11] *Id.* (citations omitted).

23  [12] CAC ¶ 28; RFJN Ex. 1 at RFJN 10; Ex. 2 at RFJN 35; Ex. 3 at RFJN 65 (Trust Agreement).

24  [13] 12 Del. C. § 3816 (emphasis added).

25  [14] Though the Supreme Court has held that there is no demand requirement for causes of action under section 36(b), it did not hold that other requirements for derivative actions

26  need not be met.  *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 535 n.11 (1984) (holding that Federal Rule of Civil Procedure 23.1 (relating to pleading in derivative actions) does

27  not apply to claims under section 36(b)).  This issue does not affect the analysis here.

    [15] RFJN Ex. 1 at RFJN 29; Ex. 2 at RFJN 58-59; Ex. 3 at RFJN 90 (Trust Agreement).

28

1   limitation is expressly permitted by Delaware law:

2       A beneficial owner's right to bring a derivative action may be subject to
        such additional standards and restrictions, if any, as are set forth in the
3       governing instrument of the statutory trust, including, without limitation, the
        requirement that beneficial owners owning a specified beneficial interest in
4       the statutory trust join in the bringing of the derivative action.[16]

5       In this case, plaintiff seeks to recover under section 36(b) on behalf of all beneficial

6   owners of all of the Wells Fargo Funds.  As a result, he must be "joined" in this action by

7   shareholders "owning not less than one third of the Outstanding Shares of all Series of the

8   Trust."  The fact that plaintiff purports to represent a class does not change the analysis.[17]

9       This requirement does not impede or frustrate the purpose of the '40 Act or

10  section 36(b).  As noted by the Supreme Court, Congress adopted the '40 Act because of

11  concern for "'the potential for abuse inherent in the structure of investment companies.'"[18]

12  Section 36(b) was intended to prevent the payment of excessive fees to investment

13  advisors.[19]  The requirement imposed by the Wells Fargo Funds Trust agreement does not

14  frustrate this purpose.  Shareholders may still challenge the fees charged by investment

15  advisers without being required to make demand on the board of directors (or trustees) to

16  do so.  The requirement simply provides some assurance that the suit is not frivolous by

17  requiring that at least one-third of the affected shareholders agree that the suit is worth

18  bringing.  Because the CAC does not allege that plaintiff owns at least one-third of the

19  affected shares in any fund, plaintiff lacks standing as to all funds.

20  **B.      The Complaint Fails to State a Section 36(b) Claim For Revenue Sharing.**

21      The Complaint alleges that defendants paid or received revenue sharing monies.

22  Count VI of the Complaint alleges that the Movants caused the Wells Fargo Funds and their

23  investors to "pay inflated commissions" that they recouped through adviser fees and that

24  _____

25  [16] 12 Del. C. § 3816(e).

26  [17] *Forsythe*, 417 F. Supp. 2d at 119 ("A plaintiff may not avoid the standing inquiry merely
        by styling his suit as a class action.").

27  [18] *Daily Income Fund*, 464 U.S. at 536 (quoting *Burks v. Lasker*, 441 U.S. 471, 480 (1979)).

    [19] *Id.* at 540-41.

28

1   the fees charged by the funds were excessive under section 36(b) because they "improperly

2   inflated management fees and shifted expenses from the Investment Advisers to the Funds

3   and their investors without a corresponding reduction in their management fees to reflect

4   that shift in expense."[20]  Plaintiff seems to allege that some of the fund's 12b-1 fees,[21] soft

5   dollar payments, advisory fees and commissions to brokers violated section 36(b) because

6   they were used to finance the revenue-sharing program.[22]

7          This is not by any means a case of first impression.  Courts have repeatedly looked

8   at this issue and held that revenue-sharing is not actionable under section 36(b).  Numerous

9   courts have dismissed complaints based on revenue-sharing claims in their entirety.[23]  As

10  _____

11  [20] *See* CAC ¶ 206.

12  [21] SEC Rule 12b-1 permits funds to establish distribution plans whereby up to 0.75 percent
    of fund assets can be used for marketing and selling the fund's shares.  These fees are
    paid to the distributor out of fund assets, and the cost is therefore borne directly by
13  investors.

14  [22] *See* CAC ¶ 97.

    [23] *See In re Morgan Stanley and Van Kampen Mut. Fund Securities Litig*, 2006 WL
15  1008138 (S.D.N.Y. Apr 18, 2006) (dismissing nondisclosure and excessive fee claims
    against registered broker-dealer, fund distributors, investment adviser and sub-advisers,
16  and fund company board of trustees); *In re Evergreen Mut. Funds Fee Litig.*, 2006 WL
    753000 (S.D.N.Y. Mar. 24, 2006) (dismissing excessive fee claims against funds advisers
17  and distributors); *In re Goldman Sachs Mut. Funds Fee Litig.*, 2006 WL 126722
    (S.D.N.Y. Jan 17, 2006) (dismissing claims excessive fee claims against fund complex,
18  but not a broker dealer case); *In re Lord Abbett Mut. Funds Fee Litig.*, 407 F.Supp.2d 616
    (D.N.J. Dec. 28, 2005) (dismissing excessive fee claims against advisers and officers); *In*
19  *re Eaton Vance Mut. Funds Fee Litig.,* 403 F. Supp. 2d 310, Fed. Sec. L. Rep. P 93,620
    (S.D.N.Y. Dec. 6, 2005) (affirming dismissal of excessive fee claims against trustees and
20  investment advisers, and denying leave to file third amended complaint); *In re*
    *AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2005 WL 2677753 (S.D.N.Y Oct. 19,
21  2005) (dismissing nine excessive fee claims, but sustaining section 36(b) claim against
    investment adviser defendants), *vacated in part, aff'd in part, In re AllianceBernstein*
22  *Mut. Fund Excessive Fee Litig.*, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) (vacating
    Court's previous ruling upholding section 36(b) claim and dismissing claims against
23  mutual fund advisers); *In re Davis Selected Mut. Funds Litig.*, 2005 WL 2509732
    (S.D.N.Y. Oct. 11, 2005) (dismissing excessive fee claims against investment adviser,
24  sub-adviser and distributor); *In re Dreyfus Mut. Funds Fee Litig.,* 2005 WL 3970836
    (W.D. Pa. Sept. 30, 2005) (denying motion to dismiss section 36(b) and 48(a) excessive
25  fee claims) *but see In re Dreyfus Mut. Funds Fee Litig.,* 2006 WL 909434 (W.D. Pa.
    April 10, 2006) (granting motion for judgment on the pleadings as to section 36(b) and
26  48(a) claims); *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451 (D.N.J. Sept. 9,
    2005) (dismissing excessive fee claims against advisers, distributors and directors).  *See*
27  *also In re Oppenheimer Funds Fee Litig.*, 2006 WL 864574 (S.D.N.Y. 2006) (dismissing
    section 36(b) claim); *Benzon v. Morgan Stanley Distrib., Inc.*, 2004 WL 62747 (M.D.
28                                                                          (continued…)

Motion to Dismiss Count VI of Complaint
No. C-05-04518-WHA

1    one well-reasoned opinion rendered in a revenue sharing case noted, allegations that the

2    defendant authorized improper 12b-1 fees, soft dollar payments and commissions to brokers

3    are insufficient to allege a claim under section 36(b), which address only the negotiations

4    and enforcement of payment arrangements between investment advisors and funds, not

5    whether investment advisers spent their fees improperly or unwisely.[24]

6            *In re Oppenheimer Funds Fee Litigation* is instructive.  In that case, plaintiffs

7    alleged that defendants had caused "improper secret payments to be made from the Funds'

8    assets to various brokerage firms in order to induce those firms to market the Funds more

9    aggressively in a manner benefiting the parent and its affiliates at the expense of the

10   Funds."[25]  In a motion for reconsideration, the court held that the plaintiffs' "failure to

11   make any specific factual allegations as to why the added amounts renders the advisory

12   fees, as an economic matter, disproportionate to the services rendered is fatal to the claim"

13

14   _____

15   (…continued)
     Tenn. Jan. 8, 2004) (dismissing claims regarding differential compensation paid to
     registered representatives), *aff'd.*, 420 F.3d 598 (6th Cir. Mar. 18, 2005) (affirming
16   dismissal of claims regarding differential compensation paid to registered
     representatives); *Castillo v. Dean Witter Reynolds, Inc.*, 1998 WL 342050 (S.D.N.Y. June
17   25, 1998) (dismissing non-disclosure claims based on alleged failure to disclose
     differential compensation); *Press v. Quick & Reilly, Inc.*, 218 F.3d 121 (2d Cir. 2000)
18   (dismissing non-disclosure claims against broker-dealer alleging failure to disclose
     revenue-sharing program); *U.S. v. Alvarado*, 2001 WL 1631396 (S.D.N.Y. Dec. 19,
19   2001) (limiting use of evidence regarding excessive compensation received by registered
     representatives under indictment); *In the Matter of Morgan Stanley DW, Inc.*, No. E-
20   2003-31, No. E-2003-53, at 1 (Sec'y Mass. Comm. Sec. Div. May 24, 2004)), *aff'd, In
     the Matter of Morgan Stanley DW, Inc.*, No. E-2003-31, No. E-2003-53, at 2 (Sec'y
21   Mass. Comm. Sec. Div. June 22, 2004) (excluding non-disclosure claims from action
     brought by state securities regulators, and holding that broker-dealer had no duty to
22   disclose compensation incentives and conflicts of interest).  *But see In re Mut. Funds
     Investment Litig.*, 2006 WL 827339 (D. Md. Mar. 6, 2006) (motions to dismiss granted in
23   part and denied in part; nondisclosure and excessive fee claims permitted to proceed
     against advisers and distributors); *Dumond v. Massachusetts Financial Services
24   Company*, 2006 WL 149038 (D. Mass. Jan. 19, 2006) (granting in part and denying in
     part motion to dismiss in revenue sharing case; excessive fee claims permitted to proceed
25   against advisers); *Forsythe v. Sun Life Financial, Inc.*, 417 F. Supp. 2d 100 (D. Mass.
     Jan. 16, 2006) (same).

26   [24] *See Eaton Vance*, 380 F. Supp. 2d at 268-38 (dismissing section 36(b) claims relating to
     advisory fees, 12b-1 fees, soft dollar payments and commissions paid to brokers).
27
     [25] *In re Oppenheimer Funds Fee Litig.*, 2006 WL 592881, at *1 (S.D.N.Y. Mar. 10, 2006).
28

Motion to Dismiss Count VI of Complaint
No. C-05-04518-WHA

1    and dismissed the section 36(b) claim.[26]

2         Plaintiff here states that the Movants used investment advisory fees to circumvent

3    Rule 12b-1[27] and that the advisory fees were therefore excessive.  Like the plaintiffs in the

4    other revenue sharing cases already dismissed, plaintiff does not allege any specific facts as

5    to why an added amount of fees derived from revenue sharing would make the aggregate

6    fees so disproportionately large that they could not have resulted from arms' length

7    bargaining.  Accordingly, plaintiff does not state a section 36(b) claim with respect to

8    revenue sharing.

9    **C.      The Complaint Fails to State a Section 36(b) Claim For Excessive Fees.**

10        Plaintiff attempts to avoid the extensive case law dismissing revenue-sharing claims

11   under section 36(b) by adding allegations that the fees were excessive, never mind revenue

12   sharing.  Using statistics involving expenses incurred for select share classes of only a

13   handful of the Wells Fargo funds (most of which plaintiff never owned), plaintiff alleges

14   that **all** of the Wells Fargo Funds charged excessive fees—and, in particular, 12b-1 fees that

15   bear no reasonable relationship to the services rendered.  Plaintiff makes only one factual

16   allegation with respect to the 12b-1 fees:  they were "higher than those charged to

17   comparable funds."[28]  Plaintiff makes no reference to the services performed by the

18   distributors who received them or the relationship of the services to the fees charged.

19   Plaintiff therefore fails to state a claim under section 36(b) relating to the 12b-1 fees.[29]

20

21   [26] *In re Oppenheimer Funds Fee Litig.*, 2006 WL 864574, at *1 (S.D.N.Y. Apr. 5, 2006).
22   *See also In re Evergreen Mutual Funds Fee Litig.*, 2006 WL 753000, at *7 (S.D.N.Y.
     Mar. 24, 2006) (dismissing section 36(b) claim in a revenue sharing cases where plaintiffs
23   "alleged that the fees at issue were used improperly, and not that the fees themselves were
     excessive."); *Goldman Sachs,* 2006 WL 126772, at *10 ("In sum, plaintiffs here at most
24   have alleged that the advisory fees and Rule 12b-1 fees were used for improper purposes.
     We agree with Judge Koetl and Judge Cedarbaum that such allegations do not suffice to
25   state a claim under section 36(b).").

     [27] CAC ¶ 151.
26   [28] CAC ¶ 153.

27   [29] *See In re Morgan Stanley*, 2006 WL 1008138, at *12-13; *Eaton Vance*, 380 F. Supp. 2d
     at 237; *In re Goldman Sachs*, 2006 WL 12677, at *8-*11.
28

1     To state a section 36(b) claim for excessive fees, a plaintiff must satisfy the

2  stringent standard enunciated by the Second Circuit in *Gartenberg*, that "the advisor

3  manager must charge a fee that "is so disproportionately large that it bears *no reasonable*

4  *relationship* to the services rendered and could not have been the product of arm's length

5  bargaining."[30]  "To survive a motion to dismiss [a claim under section 36(b)], a complaint

6  may not simply allege in a conclusory manner that advisory fees are 'excessive.'   Instead, a

7  plaintiff must allege facts that, if true, would support a claim that the fees at issue are

8  excessive."[31]  Many courts have dismissed section 36(b) claims on motions to dismiss.[32]

9     Adhering to the stringent standards enunciated in *Gartenberg* makes good sense.

10

[30] *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir. 1982) (emphasis added).  *See also Strigliabotti v. Franklin Resources, Inc.*, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) (applying the same standard in denying motion to dismiss section 36(b)).  The *Strigliabotti* court held that allegations that (1) the investment managers charged plaintiffs much higher fees than they charged another client (New York State) for identical services and that the services rendered and fees charged had apparently not changed despite the fact that the size of the funds exploded from $2 billion to $300 billion were sufficient to survive a motion to dismiss.  *Id* at *3-*4.  *Strigliabotti* is distinguishable from this case; the CAC does not allege that defendants provided identical services at lower costs to other individuals or that the funds had not lowered their fees during periods of dramatic growth.

[31] *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 327 (4th Cir. 2001); *see also Yampolsky v. Morgan Stanley Investment Advisers, Inc.*, 2004 WL 1065533, at *2 (S.D.N.Y. May 12, 2004).

[32] *See, e.g.*, *Krantz v. Prudential Investments Fund Management LLC*, 305 F.3d 140, 143-44 (3d Cir. 2002) (dismissing section 36(b) claim for failure to "allege any facts indicating that the fees received were disproportionate to services rendered" or facts that "would support a claim that the 'independent' directors of the Fund were actually 'interested.'); *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 327 (4th Cir. 2001) (upholding dismissal pursuant to Rule 12(b)(6)); *In re Morgan Stanley and Van Kampen Mutual Fund Securities Litig.*, 2006 WL 1008138, at *12-*13 (S.D.N.Y. April 18, 2006) (dismissing section 36(b) claims where, in addition to revenue sharing, plaintiff had alleged that (1) the fund's directors were controlled by the defendants, (2) the fund used soft dollars to purchase computer hardware and software, (3) the fund did not share economies of scale with shareholders and (4) the average expense ratio of defendant's funds was 50% higher than the average expense ratio of non-Morgan Stanley funds); *Yampolsky v. Morgan Stanley Inv. Advisers, Inc.*, 2004 WL 1065533, at *2 (S.D.N.Y. May 12, 2004) (dismissing complaint where "conspicuously absent [were] any factual allegations as to the actual fee negotiations or management and distribution services rendered by these defendants. Instead, the complaints rely on speculation, inference and generalized observations about the securities industry from public figures such as Warren Buffett."); *Verkouteren v. Blackrock Fin. Mgmt.*, 37 F. Supp. 2d 256, 259 (S.D.N.Y. 1999) (dismissing section 36(b) claim for failure to make "allegations . . . that the directors are in fact controlled by defendant.").

Motion to Dismiss Count VI of Complaint
No. C-05-04518-WHA

1   Courts are understandably reluctant to get into the business of setting professional fees.

2   That is particularly true of setting fees for a business as complex and volatile as the

3   investment business.  All investment has risks, the performance of all funds varies, and

4   sometimes a good fund will underperform its peers.[33]  If all a plaintiff had to do to survive a

5   motion to dismiss was to allege that a fund's fees were higher than some benchmark, or its

6   performance for some period was below some average, mutual funds and their affiliates

7   could be dragged into court and through the discovery process without having done

8   anything other than make investment decisions that, in hindsight, did not work out well.[34]

9        The structure of the '40 Act requires a stringent analysis of the *Gartenberg* factors.[35]

10  For example, a court must give due consideration to approval of allegedly excessive fees by

11  a board of directors,[36] bearing in mind the presumption that those directors are not

12  interested or controlled.[37]  In these ways, "[t]he Investment Company Act balances the

13  tension between protecting mutual fund investors from overly generous charges by

14  investment advisers, and shielding fund management from an outbreak of harassing

15  lawsuits."[38]

16       "The test is basically an economic one, *i.e.*, that the fees charged must be materially

17  disproportionate to the services rendered."[39]  The factors that the *Gartenberg* court and

18  other courts have considered in analyzing whether the fees were within the range of

19  reasonableness are (1) the nature and quality of the service provided by the advisers to the

20  shareholders, (2) the profitability of the mutual fund to the adviser, (3) the "fall-out"

21  ────────────

22  [33] *Migdal*, 248 F.3d at 327.

    [34] *Id.* at 327-28.

23  [35] *See, e.g.*, *Krantz,* 305 F.3d at 144.

24  [36] 15 U.S.C. § 80a-35(b)(2).

    [37] 15 U.S.C. § 80a-2(a)(9).

25  [38] *Migdal*, 248 F.3d at 331.

26  [39] *In re Oppenheimer Funds Fee Litig.,* 2006 WL 864574, at *1 (S.D.N.Y. April 5, 2006)
        (granting, on motion for reconsideration, motion dismissing section 36(b) claim in a
27      revenue sharing case where plaintiff had alleged that defendants had used advisory fees to
        "create a slush fund to bribe brokers for the benefit of the Adviser Defendants").

28

1   benefits, (4) the economies of scale achieved by the mutual fund and whether such savings

2   were passed on to the shareholders, (5) comparative fee structures with other similar funds,

3   and (6) the independence and conscientiousness of the mutual fund's outside trustees.[40]

4   Where a plaintiff challenges both advisory fees and section 12b-1 fees, each fee must be

5   separately considered under section 36(b).[41]  This is appropriate because each covers a

6   separate service.[42]

7   **1.       The first *Gartenberg* factor:  the nature and quality of services.**

8          Plaintiff makes only one specific allegation about the nature and quality of services

9   provided by the Wells Fargo.  Plaintiff makes a conclusory allegation that the services

10  provided by Wells Fargo were not valuable because they were similar to managing an index

11  fund.[43]  Plaintiff's purported support is an assertion that "most of the Wells Fargo Funds'

12  returns were highly correlated with the S&P 500 index, indicating a level of performance

13  that is consistent with the management characteristics of an index fund."[44]  But even if it is

14  true that certain funds' performance matched the S&P 500's performance, that would not

15  mean that the funds were not actively managed (as most of the Wells Fargo Funds are),

16  much less support a claim that excessive fees were charged.

17         The net of plaintiff's allegations—that some of the approximately 90 Funds in the

18  Wells Fargo complex had below average returns in discrete time periods—does not support

19  an allegation that the services provided by the Movants to the Funds were of such a nature

20  as to render the fees charged for them excessive.  As the Fourth Circuit explained in

21  affirming the dismissal of a 36(b) suit:

22

23  _____

24  [40] *In re Goldman Sachs Mut. Funds Fee Litig.*, 2006 WL 126772, at * 9 (S.D.N.Y. Jan. 17, 2006); *Eaton Vance*, 380 F. Supp. 2d at 237.

25  [41] *Meyer v. Oppenheimer Management Corp.*, 895 F.2d 861, 866 (2d Cir. 1990); *Goldman Sachs*, 2006 WL 126772, at * 9.

26  [42] *Id.*

27  [43] *See* CAC ¶¶ 134, 206.

    [44] CAC ¶ 134.

28

1   While performance may be marginally helpful in evaluating the services
    which a fund offers, allegations of underperformance alone are insufficient
2   to prove that an investment adviser's fees are excessive.  Investing is not a
    risk-free endeavor.  Even the most knowledgeable advisers do not always
3   perform up to expectations, and investments themselves involve quite
    different magnitudes of risk.  Furthermore, investment results are themselves
4   cyclical.  An under-achieving fund one year may be an overachieving fund
    the next.  Accepting plaintiffs' invitation to permit discovery here because
5   the funds underperformed would make it possible for other plaintiffs to state
    a claim in limitless actions filed under Section 36(b).  The district court
6   provided plaintiffs with three opportunities to allege something about the
    particular services offered by the funds' investment advisers.  Plaintiffs
7   failed to do so, and thus failed to state a claim that the fees charged by
    defendants were excessive.[45]

8

9   Plaintiff's alleged statistics about a few funds do not support an allegation that the fees

10  charged were excessive.

11  **2.      The second and third *Gartenberg* factors:  the profitability of the mutual funds**

12  **         to the Investment Adviser and any "fall-out" benefits that the Investment**

13  **         Adviser received.**

14           Courts sometimes look at the profitability of the mutual funds to the

15  investment adviser and the existence and extent of any "fall-out" benefits to the investment

16  adviser.[46]  The Complaint mentions "fall-out" benefits in passing,[47] but does not allege any

17  facts about fall-out benefits or the profitability of the funds to the investment adviser.

18  **3.      The fourth *Gartenberg* factor:  whether economies of scale were passed on to**

19  **         investors.**

20           Plaintiff contends that economies of scale were not passed on to investors in the

21  Wells Fargo Funds.[48]  But he fails to plead with any particularity that economies of scale

22  were realized at all.  Courts reject this kind of speculation.  "Plaintiffs in prior cases have

23  argued in substance that since a fund increased dramatically in size, economies of scale

24  _____

25  [45] *Migdal v. Rowe-Price Fleming Int'l, Inc.* 248 F.3d 321, 327-28 (4th Cir. 2001).

    [46] *In re Goldman Sachs*, 2006 WL 126772, at *8.

26  [47] CAC ¶ 109 (defining fall-out benefits as benefits other than advisory fees that flow to the
        adviser and its affiliates as a result of the adviser's relationship with the fund).

27  [48] CAC ¶¶ 111-29.

28

1   must have been realized.  The courts reject that argument."[49]   "The concept is meaningful

2   only if increased size of a fund (more shareholders, more assets under management)

3   directly reduces the manager's costs of processing each transaction and servicing each

4   shareholder.  A plaintiff must prove that the fund actually realized such economies of

5   scale."[50]  Plaintiff alleges generally that economies of scale occur in mutual funds,[51] but

6   fails to allege what economies of scale occurred here.  Plaintiff alleges nothing about the

7   transaction and servicing costs incurred by the investment adviser, only that "substantial

8   economies of scale" existed which were not passed on to shareholders.[52]  Indeed, plaintiff

9   admits that, during the relevant time period (after November 4, 2004), advisory fee

10  breakpoints existed in many of the Wells Fargo Funds' fee structures.[53]

11       Instead of alleging facts relating to economies of scale, plaintiff cites statistics

12  relating to expense ratios generally, and references "statistics" in support of his claim that

13  alleged economies of scale were not passed on to investors in Wells Fargo Funds.  But most

14  of these "statistics" are irrelevant.  As discussed below, the statute of limitations for a cause

15  of action under section 36(b) is one year, and claims from before November 4, 2004 are

16  time-barred.  Consequently, allegations of excessive fees charged before November 4, 2004

17  are irrelevant.[54]  In particular, this renders the allegations of paragraphs 114 and 116 (both

18  relating to alleged increases in the particular funds' expense ratios between 2002 and 2005),

19  119, 120-121 and 123-124 (all relating to alleged lack of breakpoint fee structures prior to

20  August 1, 2004) irrelevant.  In addition, plaintiff makes numerous comparisons of fund

21

22  _____

    [49] *Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222, 1238 (S.D.N.Y. 1990).

23  [50] *Id.* at 1239.

24  [51] CAC ¶¶ 98, 111-112.

    [52] CAC ¶ 113.

25
    [53] *See generally* CAC ¶¶ 119-29.  The Complaint defines a fee breakpoint as a declining
26  rate structure in which the fee as a percentage of total assets decreases in steps or at
    designated points ("breakpoints") as total assets increase.  CAC ¶ 119.

27  [54] *In re AllianceBernstein Mutual Fund Excessive Fee Litigation*, 2006 WL 74439 at *2
    (S.D.N.Y. Jan. 11, 2006).

28

1   "expense ratios,"[55] which include things other than the advisory fees at issue.[56]

2          Plaintiff devotes the bulk of his remaining allegations regarding economies of scale

3   to comparisons between the breakpoint fee structures of the advisory agreement and the

4   breakpoint fees structures in the sub-advisory agreement.[57]  Plaintiff appears to take the

5   position that the advisory fees are excessive because investment advisory fee breakpoints

6   do not coincide with sub-advisory fee breakpoints.  But there is no reason to believe they

7   would.  Advisers and sub-advisers do not perform identical services (and plaintiff does not

8   allege they do).  It proves nothing to say that their breakpoints differ.  Besides, sub-

9   advisers' fees are irrelevant because they are paid by the investment adviser, and do not

10  increase the total fees paid by the fund.[58]

11  **4.      The fifth *Gartenberg* factor:  comparative fee structures.**

12         The Complaint states in conclusory terms that the Wells Fargo Funds' fees are

13  "higher [than those of] other investment advisers who manage the same type of portfolio."[59]

14  But plaintiff does not actually allege any facts to support this comparison.  As set forth

15  above, investment advisory fees must be evaluated separately from 12b-1 fees (or any other

16  challenged fees).[60]  Here, plaintiff makes comparisons using fund expense ratios, which

17  plaintiff alleges contain investment advisory fees, 12b-1 fees, service and administrative

18

19

---

20  [55] CAC ¶¶ 108, 114, 116, 117.  Not only is the chart in paragraph 117 irrelevant, it is
21  incomprehensible.  It is unclear how plaintiff arrived at this "arithmetic average" or to
     what funds it purportedly relates.  Moreover, as with the rest of plaintiff's statistics, this
22  comparison to some hypothetical "benchmark" fund which does not exist is evidence of
     nothing.  The nature of an average is just that—some funds are more expensive, some are
23  less.

     [56] *Meyer v. Oppenheimer Management Corp.*, 895 F.2d 861, 866 (2d Cir. 1990) (each type
24  of fees must be separately assessed); *Goldman Sachs*, 2006 WL 126772, at * 9 (same).

25  [57] CAC ¶¶ 125-129.

     [58] RFJN Ex. 5 at 115 (Sub-advisory agreement).
26
     [59] CAC ¶ 135.

27  [60] *Meyer v. Oppenheimer Management Corp.*, 895 F.2d 861, 866 (2d Cir. 1990); *Goldman
     Sachs*, 2006 WL 126772, at * 9.

28

1    fees and transfer agency fees, all sloshed together.[61]

2        Plaintiff's comparisons are nothing more than manufactured statistics designed to

3    create an apparent inequity.  Plaintiff uses comparisons not to any actual competing funds

4    offered to investors, but to a hypothetical benchmark fund that does not exist.[62]  Indeed,

5    plaintiff's manipulation of the numbers is apparent from the face of the Complaint.  In the

6    chart in paragraph 121, for example, plaintiff compares expense ratios (not advisory fees) to

7    the "value-weighted benchmark," and concludes the expense ratios are, on average, 55

8    basis points higher (comparing retail share classes only).  Or, to pick another example, the

9    chart in paragraph 141 (comparing the same fees of the same funds, plus one more)

10   compares expense ratios (still not advisory fees) to an "equally-weighted" benchmark and

11   concludes the fees are, on average 64 basis points higher (comparing all share classes).

12   These charts do not allege facts showing that Wells Fargo Funds investment advisory fees

13   are higher than those charged to comparable funds.

14   **5.    The sixth *Gartenberg* factor:  the independence of the funds' outside trustees.**

15       The '40 Act requires that at least 40 percent of an investment company's directors

16   be "disinterested"[63] and that every agreement with an investment adviser be approved by a

17   majority of the disinterested directors.[64]  "Disinterested" directors are those directors who

18   are not "affiliated" with the fund's investment adviser, or "controlled," by the investment

19   adviser.[65]  "Control" is "the power to exercise a controlling influence over the management

20   or policies of a [fund], unless such power is solely the result of an official position with

21   such [fund]."[66]  The '40 Act, however, expressly creates a presumption against control,

22   stating that a "natural person shall be presumed not to be a controlled person within the

23   _____

24   [61] CAC ¶ 108.

     [62] CAC at 41 n.10.

25   [63] 15 U.S.C. § 80a-10(a).

26   [64] *See* 15 U.S.C. § 80a-15(c).

27   [65] *See* 15 U.S.C. §§ 80a-2(a)(19) & 80-2(a)(3).

     [66] 15 U.S.C. § 80a-2(a)(9).

28

1   meaning of this subchapter."[67]  This presumption, however, may be rebutted by

2   "evidence."[68]  Plaintiff devotes substantial energy to attempting to allege that the directors

3   of the Wells Fargo Funds failed to act independently and fulfill their duties under the '40

4   Act, thereby confirming that the fees could not have been the result of arms' length

5   negotiation.  But plaintiff's allegations amount to circular reasoning: fees were excessive

6   because the directors were not independent; and we know the directors were not

7   independent because they approved excessive fees.[69]  This is not sufficient to allege a lack

8   of director (or, in this case, Trustee) independence.

9        One of plaintiff's primary contentions appears to be that there is something wrong

10  with the fact that the Trustees of the Wells Fargo Funds Trust are the trustees for each of

11  the various funds.[70]  But neither the '40 Act nor the SEC proscribes the use of multi-board

12  membership within mutual fund complexes.[71]  Indeed, it is the prevailing practice in the

13  industry.[72]  "The fact that directors of the funds might be busy does not suggest that they

14  were in any way 'interested' as defined by the ICA."[73]

15       Plaintiff does not identify any facts relating to control of the independent trustees

16  that are relevant to the inquiry: (1) selection or nomination of the director by the alleged

17  controlling party; (2) existence of family ties; (3) social relations; (4) former business

18  _____

19  [67] *Id.*

20  [68] *Id.*

21  [69] *See, e.g.*, CAC ¶ 162 ("Directors" failed to consider "that no economies of scale were passed to investors as the Wells Fargo Funds grew; that the fees were significantly more expensive than comparable funds; and that the advisory fees should be reduced to reflect the fall out benefits received by Defendants."); CAC ¶ 168 ("Additionally, the Directors failed to ensure that the economies of scale were passed to the Wells Fargo Funds and their investors and that the Funds' expense ratios are reasonable in relation to comparable funds.").

24  [70] CAC ¶¶ 161, 163.

25  [71] *Migdal v. Rowe Price-Fleming International Inc.*, 248 F.3d 321, 330 (4th Cir. 2001); *Krantz v. Prudential Investments Fund Management LLC*, 305 F.3d 140, 143-44 (3d Cir. 2002).

27  [72] *Migdal*, 248 F.3d at 330; *Krantz*, 305 F.3d at 143-44.

    [73] *Migdal*, 248 F.3d at 331.

28

1  associations between the director and the controlling person; (5) the amount of time spent

2  by directors at meetings; (6) respective ages; (7) participation in recommending, evaluating,

3  and terminating policies; (8) independent knowledge of corporate affairs; (9) interlocking

4  directors and officers, together with share ownership; and (10) actual dominion and

5  control.[74]  In fact, the *Gartenberg* court considered not only whether trustees were fully

6  informed about all facts bearing on the adviser-manager's service and fee, and the extent of

7  care and conscientiousness with which they performed their duties, but the expertise of the

8  independent trustees of a fund.[75]  Plaintiff does not allege that the trustees were not

9  competent professionals, qualified to hold their positions.

10       In considering a claim under section 36(b), a court must "give[] such consideration .

11  . . as is deemed appropriate under all the circumstances" to approval of investment advisory

12  fee contracts by the board of directors.[76]  Plaintiff has failed to allege any facts to call into

13  question the validity or appropriateness of the approval of the relevant contracts by the

14  board of trustees of the Wells Fargo Funds Trust.

15       Plaintiff's allegations about independence are particularly misplaced as applied to

16  Stephens, which is not an affiliate of any Wells Fargo entity but an independent broker-

17  dealer.  Nothing alleged in the Complaint suggests any reason why the funds' dealings with

18  Stephens would be anything other than completely arms' length.

19  **D.      The Section 36(b) Claim is Largely Barred by the Statute of Limitations.**

20       Where the facts and dates alleged in a complaint demonstrate that the complaint is

21  barred by the statute of limitations, a motion to dismiss pursuant to Federal Rule of Civil

22  Procedure 12(b)(6) should be granted.[77]  No damages are recoverable in an action under

23

24  [74] *Verkouteren v. Blackrock Financial Management, Inc.*, 37 F. Supp. 2d 256, 261
25       (S.D.N.Y. 1999).

     [75] *Gartenberg*, 694 F.2d at 930.
26
     [76] Section 36(b)(2), 15 U.S.C. § 80a-35(b).
27
     [77] *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *Ritchie v. United States*,
28       210 F. Supp. 2d 1120, 1123 (N.D. Cal. 2002) (citing same).

1  section 36(b) for any period prior to one year before the complaint was filed.[78]  In this case,

2  the complaint was filed November 4, 2005.  As a result, no damages are recoverable for the

3  time before November 4, 2004.[79]  The alleged Class Period begins on June 30, 2000.  But

4  claims relating to the period from June 2000 to November 3, 2004 are barred by the

5  applicable statute of limitations.  The Court should therefore, at a minimum, dismiss

6  Count VI with prejudice to the extent it asserts claims relating to the period before

7  November 4, 2004.

8  **IV.     CONCLUSION.**

9          For the foregoing reasons, the Complaint should be dismissed as to the Movants.

10              Dated: May 2, 2006.

11                              PILLSBURY WINTHROP SHAW PITTMAN LLP
                               BRUCE A. ERICSON
12                              CLIFFORD C. HYATT
                               DAVID L. STANTON
13                              JACOB R. SORENSEN
                               KRISTIN M. LEFEVRE
14                              50 Fremont Street
                               Post Office Box 7880
15                              San Francisco, CA  94120-7880

16                              Attorneys for All Defendants

17                              THOMAS O. JACOB  #125665
18                              VANESSA M. HOFFMANN  #206086
                               OFFICE OF GENERAL COUNSEL
19                              WELLS FARGO & CO.
                               633 Folsom Street, 7th Floor
20                              San Francisco, California  94107
                               Telephone: (415) 396-4425
21                              Facsimile: (415) 975-7867
                               tojacob@wellsfargo.com
22
                               Attorneys for Defendants
23                              WELLS FARGO & CO. and affiliates

24
                               By     /s/ Bruce A. Ericson
25                                        Bruce A. Ericson

26  _____

27  [78] 15 U.S.C. § 80a-35(b).

   [79] 15 U.S.C. § 80a-35(b)(3).
28