1

**MILBERG WEISS BERSHAD**
  **& SCHULMAN LLP**

2  Jerome M. Congress (admitted *pro hac vice*)
Janine L. Pollack (admitted *pro hac vice*)

3  Kim E. Miller (State Bar No. 178370)
Michael R. Reese (State Bar No. 206773)

4  One Pennsylvania Plaza
New York, New York  10119-0165

5  Telephone:     (212) 594-5300
Facsimile:      (212) 868-1229

6  email: mreese@milbergweiss.com
***Court Appointed Lead Counsel***

7

8                    UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  RONALD SIEMERS, Individually And On Behalf   )   Case No. 05-04518 WHA
Of All Others Similarly Situated,                          )

13                                                                         )
                                                                           )

14                                       Plaintiff,          )   **OPPOSITION TO MOTION OF**
                                                                           )   **DEFENDANTS WELLS FARGO**

15              vs.                                              )   **FUNDS MANAGEMENT, LLC;**
                                                                           )   **WELLS CAPITAL MANAGEMENT,**

15  WELLS FARGO & COMPANY, H.D. VEST    )   **INC.; WELLS FARGO FUNDS**

16  INVESTMENT SERVICES, LLC, WELLS         )   **DISTRIBUTOR, LLC AND**
FARGO INVESTMENTS, LLC, WELLS FARGO   )   **STEPHENS INC. TO DISMISS**

17  FUNDS MANAGEMENT, LLC, WELLS          )   **PLAINTIFF'S CONSOLIDATED**
CAPITAL MANAGEMENT INC., STEPHENS    )   **AMENDED CLASS ACTION**

18  INC., WELLS FARGO FUNDS DISTRIBUTOR,  )   **COMPLAINT**
LLC, and WELLS FARGO FUNDS TRUST,        )

19                                                                         )
                                      Defendants.        )   Date:  June 21, 2006

20                                                                         )   Time: 8:00 a.m.
                                                                           )   Ctrm:  9, 19th Floor

21                                                                         )   Honorable William H. Alsup

22

23

24

25

26

27  OPPOSITION TO MOTION OF DEFENDANTS WELLS FARGO FUNDS MANAGEMENT, LLC; WELLS CAPITAL
MANAGEMENT, INC.; WELLS FARGO FUNDS DISTRIBUTOR, LLC AND STEPHENS INC. TO DISMISS PLAINTIFF'S

28  CONSOLIDATED AMENDED CLASS ACTION COMPLAINT   — Case No.:  05-cv-4518 (WHA)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

ISSUES TO BE DECIDED ........................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES  INTRODUCTION .................................1

STATEMENT OF FACTS ..........................................................................................................3

ARGUMENT ..............................................................................................................................4

    I.      RULE 8 NOTICE PLEADING GOVERNS SECTION 36(b) CLAIMS ...............4

    II.     PLAINTIFF HAS PROPERLY ALLEGED A VIOLATION OF
             SECTION 36(b) ................................................................................................6

          1.     Plaintiff Pleads Sufficient Facts Demonstrating that Defendants Failed
                to Share Economies of Scale ...............................................................6

          2.     Plaintiff Adequately Pleads How The Nature and Quality of
                Defendants' Services Did Not Justify their Excessive Fees .....................10

          3.     Comparing Defendants' Fee Structures to Their Peers Indicates that
                Defendants Charged Excessive Fees .........................................................12

          4.     The Trustees' Failure to Conscientiously Perform Their Duties
                Supports Plaintiff's Section 36(b) Claim ...................................................14

    III.    RECENT DECISIONS OVERWHELMINGLY DEMONSTRATE THAT
             PLAINTIFF HAS PLED A VALID SECTION 36(b) CLAIM ..........................16

    IV.    PLAINTIFF HAS STANDING TO BRING HIS SECTION 36(b) CLAIM ........20

CONCLUSION...........................................................................................................................22

DECLARATION OF SERVICE ................................................................................................1

Wells Fargo & Co.  Service List..................................................................................................1

OPPOSITION TO MOTION OF DEFENDANTS WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS CAPITAL
MANAGEMENT, INC., WELLS FARGO FUNDS DISTRIBUTOR, LLC AND STEPHENS INC. TO DISMISS PLAINTIFF'S
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT   — Case No.:  05-cv-4518 (WHA)

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*In re AllianceBernstein Mutual Funds Excessive Fee Litigation*,
No. 04-4885, 2006 U.S. Dist. LEXIS 939 (S.D.N.Y. Jan. 11, 2006) ......................................8

*Benzon v. Morgan Stanley Distributing, Inc.*,
No. 03-0159, 2004 U.S. Dist. LEXIS 2669 (M.D. Tenn. Jan. 8, 2004) ...............................13

*Cahill v. Liberty Mutual Insurance Co.*,
80 F.3d 336 (9th Cir. 1996) .............................................................................................5, 7

*Castillo v. Dean Witter Discover & Co.*,
No. 97-1272, 1998 U.S. Dist. LEXIS 9489 (S.D.N.Y. June 25, 1998) ...............................13

*In re Columbia Entities Litigation*,
No. 04-11704, 2005 U.S. Dist. LEXIS 33439 (D. Mass. Nov. 30, 2005) ............................20

*Conley v. Gibson*,
355 U.S. 41 (1957)..............................................................................................................4

*County of Santa Clara v. Astra United States, Inc.*,
No. 05-3740, 2006 U.S. Dist. LEXIS 15279 (N.D. Cal. Feb. 14, 2006) ...............................4

*Daily Income Fund, Inc. v. Fox*,
464 U.S. 523 (1984)......................................................................................................19, 20

*Dumond v. Mass. Finance Services Co.*,
No. 04-11458, 2006 U.S. Dist. LEXIS 1933 (D. Mass. Jan. 19, 2006)................................19

*In re Eaton Vance Mutual Funds Fee Litigation*,
403 F. Supp. 2d 310 (S.D.N.Y. 2005) .............................................................................5, 13

*In re Eaton Vance Mutual Funds Fee Litigation*,
380 F. Supp. 2d 222 (S.D.N.Y. 2005), *aff'd on reconsideration by* 403 F. Supp. 2d 310
(S.D.N.Y. 2005)..................................................................................................................13

*Forsythe v. Sun Life Financial, Inc.*
417 F. Supp. 2d 100 (D. Mass. 2006) .......................................................................... *passim*

*Gartenberg v. Merrill Lynch Asset Management, Inc.*,
694 F.2d 923 (2d Cir. 1982) .......................................................................................4, 5, 6, 18

*Grid System Corp. v. Texas Instruments, Inc.*,
771 F. Supp. 1033 (N.D. Cal. 1991) ....................................................................................4

*Jones v. Harris Associates, L.P.*,
No. 04-8305, 2005 U.S. Dist. LEXIS 39560 (N.D. Ill. Apr. 7, 2005)...............1, 2, 16, 17, 19

*Kalish v. Franklin Advisers, Inc.*,
742 F. Supp. 1222 (S.D.N.Y. 1990) ...............................................................................7, 11

OPPOSITION TO MOTION OF DEFENDANTS WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS CAPITAL
MANAGEMENT, INC., WELLS FARGO FUNDS DISTRIBUTOR, LLC AND STEPHENS INC. TO DISMISS PLAINTIFF'S
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT   — Case No.:  05-cv-4518 (WHA)

ii

*Kamen v. Kemper Finance Services, Inc.*,
   500 U.S. 90 (1991)................................................................................................20

*Krantz v. Fidelity Management & Research Co.*,
   98 F. Supp. 2d 150 (D. Mass. 2000)...............................................................9, 15, 16

*Krantz v. Prudential Investment Fund Management*,
   305 F.3d 140 (3d Cir. 2002) ...................................................................................5

*Krinsk v. Fund Asset Management, Inc.*,
   875 F.2d 404 (2d Cir. 1989) ............................................................................5, 1, 14

*Krinsk v. Fund Asset Management, Inc.*,
   715 F. Supp. 472 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 404, 412 (2d Cir. 1989) ..................11, 12

*Migdal v. Rowe Price-Fleming International, Inc.*,
   248 F.3d 321 (4th Cir. 2001) ...............................................................................5, 11

*In re Morgan Stanley and Van Kampen Mutual Fund Sec. Litigation*,
   No. 03-8208, 2006 U.S. Dist. LEXIS 20758 (S.D.N.Y. Apr. 18, 2006) .................................5

*In re Oppenheimer Funds Fees Litigation*,
   No. 04-7022, 2006 U.S. Dist. LEXIS 16296 (S.D.N.Y. April 5, 2006)................................14

*Pareto v. F.D.I.C.*,
   139 F.3d 696 (9th Cir. 1998) ..................................................................................5

*Press v. Quick & Reilly, Inc.*,
   218 F.3d 121 (2d. Cir. 2000) ................................................................................13

*Strigliabotti v. Franklin  Resources, Inc.*,
   No. 04-0883, 2005 U.S. Dist. LEXIS 9625 (N.D. Cal. Mar. 7, 2005) ......................... *passim*

*United States v. Alvarado*,
   No. 01-0156, 2001 U.S. Dist. LEXIS 21100 (S.D.N.Y. Dec. 19, 2001) ..............................13

*Wicks v. Putnam Investment Management, LLC*,
   No. 04-10988, 2005 U.S. Dist. LEXIS 4892 (D. Mass. Mar. 28, 2005) ...............2, 16, 17, 18

**FEDERAL STATUTES**

Fed. R. Civ. P. 8 ("Rule 8") ..........................................................................1, 4

**MISCELLANEOUS**

SEC, Division of Investment Management,
   *Report on Mutual Fund Fees and Expenses* B1 (2000)...........................................6

1    Plaintiff submits this memorandum of law in opposition to the Motion to Dismiss Plaintiff's

2  Consolidated Amended Class Action Complaint ("the Complaint" or "¶__") of Defendants Wells

3  Fargo Funds Management, LLC, Wells Capital Management, LLC (the "Investment Adviser

4  Defendants"), Wells Fargo Funds Distributor, LLC, and Stephens, Inc. (the "Distributor

5  Defendants")(collectively "Defendants").  This memorandum of law is based on the other

6  oppositions to the motions to dismiss and the Declarations of Ronald Siemers and Michael R. Reese

7  and their accompanying exhibits filed by Plaintiff concurrently herewith, all pleadings and records

8  on file in this action, and any other arguments and evidence presented to the Court at or before the

9  hearing on this motion.

10                              **ISSUES TO BE DECIDED**

11    1.    Has Plaintiff properly pled his claim under Section 36(b) ("Section 36(b)") of the

12  Investment Company Act (the "Investment Company Act" or "ICA") by satisfying the notice

13  pleading standards of Fed. R. Civ. P. 8 ("Rule 8")?

14    2.    Does Plaintiff have standing to bring his Section 36(b) claim?

15                    **MEMORANDUM OF POINTS AND AUTHORITIES**

16                              **INTRODUCTION**

17    As part of his Section 36(b) claim, Plaintiff alleges that the compensation and fees paid to

18  the Investment Adviser and Distributor Defendants were excessive because they rose dramatically

19  even though the services provided by these Defendants remained the same, and no additional

20  benefits were provided to the Wells Fargo Funds (the "Funds") or their investors in return for the

21  additional fees. *See, e.g.*, ¶96.  The Complaint sets forth the factual basis for that conclusion with

22  great particularity -- indeed, it provides much more than is even required under applicable pleading

23  standards.  Notably, Defendants do not even attempt to dispute -- nor could they -- that Rule 8

24  notice pleading applies to a Section 36(b) claim.  Rule 8 has been satisfied here.

25    In fact, numerous courts, including courts in this District, have applied Rule 8 in sustaining

26  Section 36(b) claims which included allegations of excessive fees markedly similar to those in this

27  case.  *See, e.g., Strigliabotti v. Franklin Res., Inc.*, No. 04-0883, 2005 U.S. Dist. LEXIS 9625, at

28  *11-13 (N.D. Cal. Mar. 7, 2005) (Illston, J.); *see also Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp.

2d 100, 116 (D. Mass. 2006); *Jones v. Harris Assocs., L.P.*, No. 04-8305, 2005 U.S. Dist. LEXIS 39560, at *6-7 (N.D. Ill. Apr. 7, 2005); *Wicks v. Putnam Investment Management, LLC*, No. 04-10988, 2005 U.S. Dist. LEXIS 4892 (D. Mass. Mar. 28, 2005).  Indeed, Plaintiffs' Complaint demonstrates how Defendants received "something for nothing" because they received increased fees which were not the result of any increase or improvement in services being provided to the Funds.  *See*, *e.g.*, *Jones*, 2005 U.S. Dist. LEXIS 39560, at *6-7.

In the face of Plaintiff's well-pled Complaint, Defendants have moved to dismiss on wholly unavailing grounds.  Defendants argue that Plaintiff has not made sufficient allegations to support his Section 36(b) claim by citing cases involving complaints with far fewer factual allegations and attempting to ignore that Plaintiff has more than satisfied the Rule 8 notice pleading standard that applies on a motion to dismiss.  Defendants' Brief ("D. Br.") at 6-19.  Defendants' repeated attempts to argue the merits of Plaintiffs' Section 36(b) claim should also be rejected.  Defendants further argue that Plaintiff lacks standing because he does not allege that he currently holds shares of the Funds.  D. Br. at 4.  But Plaintiff still holds Fund shares, as indicated in his Declaration submitted with this motion, and this Court specifically allowed Plaintiff to proceed as the sole Lead Plaintiff in this action after being informed of potential standing issues.  *See* Declaration of Court Appointed Lead Plaintiff Ronald Siemers in Opposition to Defendants' Motion to Dismiss filed concurrently with this motion ("Siemers Decl.") at ¶3; Declaration of Michael R. Reese ("Reese Decl."), Ex. V (Transcript of February 9, 2006 Proceedings in this Action) at 4-6.  Defendants also argue that Plaintiff lacks standing based on a provision of a Trust Agreement that not only does not apply to Plaintiff's Section 36(b) claim, but also conflicts directly with the text of Section 36(b).  D. Br. at 5-6.

Moreover, throughout their motion, Defendants make arguments which demonstrate that they misunderstand both the scope and pleading requirements of Section 36(b).  Defendants argue that their fees were "fully disclosed" to Plaintiff before he invested (D. Br. at 2), yet failure to disclose fees is not part of a Section 36(b) claim, nor does Plaintiff allege that it is.  Defendants further attempt to confuse the issue of whether Plaintiff's Complaint as a whole pleads a Section 36(b) claim by arguing that Plaintiff's allegations only demonstrate that Defendants' "funds differ

OPPOSITION TO MOTION OF DEFENDANTS WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS CAPITAL MANAGEMENT, INC., WELLS FARGO FUNDS DISTRIBUTOR, LLC AND STEPHENS INC. TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT   — Case No.:  05-cv-4518 (WHA)

2

both in their performance and fees" (D. Br. at 2), and such allegations alone should not survive a motion to dismiss.  D. Br. at 11.  As described below, however, Plaintiff's allegations of the Funds' poor performance and higher fees are but a few of Plaintiff's numerous allegations which demonstrate how Defendants violated Section 36(b) by charging and receiving excessive fees.

Finally, Defendants suggest that the purpose of Plaintiff's Section 36(b) claim is to attempt to "establish price controls for the mutual fund industry" (D. Br. at 2) or to have courts "setting professional fees."  D. Br. at 11.  The purpose of a Section 36(b) claim, however, is not to "establish price controls" or "set professional fees" but to provide fund investors with a mechanism to challenge fees -- such as those here -- that are a breach of the advisers' and/or their affiliates' fiduciary duty.  Courts have held that such a breach of fiduciary duty may be established by pleading that the fees were excessive because they were disproportionate to the value of services provided and not within the bounds of what would have been negotiated at arm's-length.  *See, e.g.*, *Strigliabotti*, 2005 U.S. Dist. LEXIS 9625, at *11-13.  Since Plaintiff has included detailed allegations in his Complaint which demonstrate Defendants have breached their fiduciary duties by charging and receiving such excessive fees, this Court should sustain his Section 36(b) claim.

### STATEMENT OF FACTS

This Statement of Facts and Opposition Brief concern only Plaintiff's Section 36(b) claim. In support of his Section 36(b) claims, Plaintiff makes numerous allegations which address the factors courts might consider when evaluating whether the Defendants' fees were excessive under Section 36(b), including: (1) Defendants failed to share with the Funds and their investors the economies of scale that were created by the increase in the Funds' assets (*e.g.* ¶¶98, 112-129, 206); (2) the nature and quality of Defendants' services did not justify the excessive fees they received (*e.g.* ¶¶130-134); (3) the Funds have high expense ratios and fees relative to their peers (*e.g.* ¶¶117, 135-142); (4) Defendants inflated their fees to reimburse themselves for revenue sharing and directed brokerage payments to brokers, but provided no additional services in exchange for these increased fees (*e.g.* ¶¶97, 100, 143-153, 206); and (5) the Trustees failed to fulfill their duties to independently and conscientiously evaluate Defendants' fees before approving them.  *E.g.*, ¶¶101,

OPPOSITION TO MOTION OF DEFENDANTS WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS CAPITAL MANAGEMENT, INC., WELLS FARGO FUNDS DISTRIBUTOR, LLC AND STEPHENS INC. TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT   — Case No.:  05-cv-4518 (WHA)

3

103, 161-168.  These allegations more than satisfy the Rule 8 pleading standard for a motion to dismiss and, thus, Plaintiff's Section 36(b) claim should be sustained.

## ARGUMENT

### I.     RULE 8 NOTICE PLEADING GOVERNS SECTION 36(b) CLAIMS

The pleading standard for a Section 36(b) claim is set forth in Rule 8 of the Federal Rules of Civil Procedure.  As the Supreme Court has stated:

> [T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a "short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

*Conley v. Gibson*, 355 U.S. 41, 47 (1957) (*quoting* Fed. R. Civ. P. 8(a)); *accord Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *County of Santa Clara v. Astra United States, Inc.*, No. 05-3740, 2006 U.S. Dist. LEXIS 15279, at *8 (N.D. Cal. Feb. 14, 2006) (Alsup, J.); *see also Grid Sys. Corp. v. Texas Instruments, Inc.*, 771 F. Supp. 1033, 1037 (N.D. Cal. 1991) (plaintiff not required to plead evidence in complaint when allegations meet Rule 8 notice pleading requirements).

Despite the fact that every case to which Defendants cite holds that Rule 8 notice pleading applies to a Section 36(b) claim, Defendants repeatedly state that Plaintiff must instead plead with "particularity" and satisfy "stringent" pleading standards, including the test laid out in *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923 (2d Cir. 1982), in pleading his Section 36(b) claim.  D. Br. at 10, 13.  Defendants are wrong.  Particularity is not required nor is the standard "stringent" under Rule 8.  Moreover, the Ninth Circuit has not adopted the *Gartenberg* standard and *Gartenberg* simply lays out factors to consider and does not require any higher pleading burden beyond Rule 8, as Defendants wrongly state.

In *Gartenberg*, which involved a bench trial of the plaintiffs' Section 36(b) claim, the Second Circuit set forth a standard for determining whether fees were excessive which included examining whether a fee is "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining."  694 F.2d at 928.  The *Gartenberg* standard is not part of the language of Section 36(b), but is simply a standard which some courts consider in evaluating whether a plaintiff has adequately pled a Section 36(b)

claim.  *See, e.g.*, *Strigliabotti*, 2005 U.S. Dist. LEXIS 9625, at \*9-10.  In applying this standard, courts sometimes, but not always, consider the following relevant factors: "(a) the nature and quality of the services provided to fund shareholders; (b) the profitability of the fund to the adviser-manager; (c) fall-out benefits; (d) economies of scale; (e) comparative fee structures; (f) the independence and conscientiousness of the trustees."  *Id.* (quoting *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d Cir. 1989)); *but compare Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327 (4th Cir. 2001) (applying *Gartenberg* standard but not addressing specific factors); *Krantz v. Prudential Inv. Fund Mgmt.*, 305 F.3d 140, 143-44 (3d Cir. 2002) (adopting approach in *Migdal*).

Even when courts, including courts cited by Defendants throughout their brief, have considered the *Gartenberg* standard and/or the factors in evaluating Section 36(b) claims, they have nonetheless applied the Rule 8 pleading standard.  *See, e.g.*, *Strigliabotti*, 2005 U.S. Dist. LEXIS 9625, at \*9-12; *see also Migdal*, 248 F.3d at 325-26; *In re Morgan Stanley and Van Kampen Mut. Fund Sec. Litig.*, No. 03-8208, 2006 U.S. Dist. LEXIS 20758, at \*46 (S.D.N.Y. Apr. 18, 2006); *Krantz*, 305 F.3d at 142-43.  Thus, in cases where courts have considered *Gartenberg*, courts have evaluated whether the plaintiffs have provided notice under Rule 8 of the basis for their claim that the defendants' fees were "disproportionate to the services rendered."  For example, in *Strigliabotti*, while Judge Illston of this District considered the *Gartenberg* standard and its factors in evaluating the plaintiffs' Section 36(b) claim, she nevertheless upheld that claim under "Rule 8's liberal pleading standard."  *Strigliabotti,* 2005 U.S. Dist. LEXIS 9625, at \*11-13.  In addition, plaintiffs "need not necessarily allege any specific factor identified in *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923, 930 (2d Cir. 1982) [*i.e.*, the so-called "*Gartenberg* factors"], to meet the notice pleading standard for an excessive fee claim."  *In re Eaton Vance Mut. Funds Fee Litig.*, 403 F. Supp. 2d 310, 314 (S.D.N.Y. 2005).  Thus, under the foregoing standards, even if this Court considers *Gartenberg* in evaluating Plaintiff's Section 36(b) claim, Plaintiff has provided Defendants with ample notice of how their fees were disproportionate to the services rendered.

Moreover, the Court must construe the complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true when considering a Rule 12(b)(6) motion.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  The Court must also

OPPOSITION TO MOTION OF DEFENDANTS WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS CAPITAL MANAGEMENT, INC., WELLS FARGO FUNDS DISTRIBUTOR, LLC AND STEPHENS INC. TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT   — Case No.:  05-cv-4518 (WHA)

5

accept as true all reasonable inferences to be drawn from the material allegations in the complaint. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  Under all of these standards, Plaintiff's Complaint should be sustained.

## II.   PLAINTIFF HAS PROPERLY ALLEGED A VIOLATION OF SECTION 36(b)

Plaintiff's Section 36(b) allegations more than satisfy Rule 8 by alleging a disproportionate relationship between fees and the value of services in great factual detail--much more than is even required.  Moreover, Plaintiff has provided ample facts regarding the *Gartenberg* factors courts sometimes consider in determining whether the fees at issue were excessive under Section 36(b). *See Gartenberg,* 694 F.2d 923.

### 1.   Plaintiff Pleads Sufficient Facts Demonstrating that Defendants Failed to Share Economies of Scale

One of the *Gartenberg* factors is whether Defendants usurped for themselves economies of scale resulting from significant increases in Fund assets.  It is widely accepted that as assets of a mutual fund grow, economies of scale should allow the expense ratio to decrease, and the adviser (who is supposed to be watched over in this regard by the Directors) is supposed to pass on those economies to the Fund and its investors.  *See* SEC, Division of Investment Management, *Report on Mutual Fund Fees and Expenses* B1 (2000), *available at* http://www.sec.gov/news/ studies/feestudy.htm.  Courts, including ones in this District, have found that such allegations of failure to pass economies of scale to the Funds and their investors -- like those asserted here -- state a claim under Section 36(b).  *See, e.g., Strigliabotti,* 2005 U.S. Dist. LEXIS 9625; *see also Forsythe*, 417 F. Supp. 2d at 116.

In his complaint, Plaintiff alleges that Defendants retained economies of scale by charging increased expenses without providing additional services.  *See, e.g.*, ¶¶112-113.  To this end, Plaintiff makes numerous allegations demonstrating that economies of scale were not passed to the Funds or their investors, including facts demonstrating how: (1) the expense ratios of the Funds either increased or stayed the same as the Funds' assets grew, instead of decreasing to pass

OPPOSITION TO MOTION OF DEFENDANTS WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS CAPITAL MANAGEMENT, INC., WELLS FARGO FUNDS DISTRIBUTOR, LLC AND STEPHENS INC. TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT   — Case No.:  05-cv-4518 (WHA)

6

economies of scale to investors (*e.g.*, ¶¶114-118);[1] (2) Defendants failed to implement meaningful

breakpoints on their advisory fees (*e.g.*,¶¶119-124);[2] (3) the Investment Adviser Defendants' fees

were excessive because they continued to charge their full management fee even though they had

negotiated breakpoint deals with the sub-advisers which allowed the advisers to receive an

additional 5-45 basis points worth of fees without performing any additional services (*e.g.*, ¶¶125-

129);[3] and (4) although Defendants charged 12b-1 fees which were higher than those charged to

comparable Funds, the 12b-1 fees provided no benefit to the Funds or their investors. *See, e.g.*,

¶¶152-153.  These allegations state a claim under Section 36(b) and notice pleading requirements.

      With respect to Plaintiff's economies of scale allegations, Defendants first argue that "a

plaintiff must ***prove*** that the fund actually realized such economies of scale" for purposes of a

Section 36(b) claim. D. Br. at 13-14 (emphasis added).  In so arguing, Defendants rely exclusively

on *Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222 (S.D.N.Y. 1990), a case which set forth

"findings of fact and conclusions of law" after considering the evidence presented by the parties at

***trial***.  *Kalish*, 742 F. Supp. at 1224.  At the pleading stage, however, a plaintiff is not required to

prove that his allegations are true but is simply required to provide Defendants with notice of the

claims under Rule 8 and is entitled to have the court accept all of the well-pleaded factual

allegations as true.  *See, e.g.*, *Cahill*, 80 F.3d at 337-38.  Defendants' reliance on *Kalish* is therefore

---

[1] For example, the Wells Fargo Montgomery Emerging Markets Focus Funds grew between 2002 and 2005 from $23,020,221 to $237,387,000 and its Class B expense ratio increased from 2.31% to 2.65%.  ¶116.  This is a classic example of a Section 36(b) violation.

[2] For example, Funds such as the Wells Fargo Advantage Diversified Equity Fund have no advisory fee breakpoints and therefore fail to pass any economies of scale to the investors.  ¶122.  Another example is the Wells Fargo Advantage Asset Allocation Fund which lacked breakpoints until August 1, 2004.  The breakpoints that were later adopted were illusory because after the Fund grew to $1 billion in assets, its structure required the Fund to swell to $3 billion in assets before any economies of scale would be passed to the investor.  As of September 30, 2004, the Fund had $1.1 billion in assets under management, but it would need to grow by another $2 billion before any more breakpoints would impact the Fund and pass any economies of scale to the investors.  ¶121.

[3] For example, since the sub-adviser's fee breakpoints only apply to the Wells Fargo Advantage Outlook 20/20 Fund when its assets are under $200 million, the adviser is able to couch its savings inside its own breakpoints, which do not kick in until the Fund's assets reach $500 million.  Therefore, when the Fund's assets grew between $0 and $500 million, the sub-advisers' breakpoint structure resulted in the Investment Adviser Defendants receiving an additional 10 basis points without performing any additional work.  ¶126.

1   misplaced and they (not surprisingly) have no relevant authority for their erroneous misstatement of

2   the applicable pleading standards.  Moreover, courts have routinely held that for purposes of Rule 8

3   notice pleading in the Section 36(b) context, a plaintiff need only allege facts indicating ways in

4   which the defendant did not share economies of scale and have upheld the similar, yet even less

5   detailed, allegations as those pled in this case.  *See, e.g., Forsythe*, 417 F. Supp. 2d at 115-16

6   (upholding allegations that no economies of scale were shared because fees increased as assets

7   increased).  As explained above, Plaintiff includes several examples of Defendants' failure to pass

8   on economies of scale in his Complaint.  No more is required at the pleading stage.

9         Defendants further argue that Plaintiff may not properly include in his Section 36(b)

10   allegations any conduct prior to November 4, 2004, which is one year before the original complaint

11   was filed.  Def. Br. at 14.[4]  While under the language of Section 36(b), Plaintiff cannot recover

12   damages going back more than one year before the action was instituted, Plaintiff is not limited to

13   that one year time frame with respect to facts relevant to demonstrating that fees were excessive

14   during the 2004-2005 period and thereafter.  The professional, scientific and academic communities

15   have uniformly recognized that in order to determine whether the benefits of the economies of scale

16   have been passed to the Funds, one must examine the growth in the funds' assets, the change in the

17   Funds' expense ratio, and any change in services provided over a period of years.  John P. Freeman

18   & Stewart L. Brown, *Mutual Fund Advisory Fees: The Cost of Conflicts of Interest*, 26 Iowa J.

19   Corp. L. 609, 620 n.59 (2001).  For example, in analyzing economies of scale, one academic journal

20   article examined a fund's expense ratio which had more than doubled since 1950.  *Id.* at 619.  This

21   article cited additional reports to demonstrate the importance of examining whether economies of

22   scale existed over a period of years, including: (1) a study published by the Investment Company

23   Institute ("ICI") found that the operating expense ratio for all equity funds, using a sales-weighted

24
---
[4] *In re AllianceBernstein Mut. Funds Excessive Fee Litig.*, No. 04-4885, 2006 U.S. Dist. LEXIS 939
25   (S.D.N.Y. Jan. 11, 2006), which Defendants cite in support of their argument, is distinguishable
     from the present case.  In *Alliance*, the plaintiffs' Section 36(b) damages period began in June 2003
26   but they had limited their economies of scale allegations to their "class period," which ended in
     November 2003.  Here, by contrast, Plaintiffs did not limit their economies of scale allegations to
27   their class period, but instead included allegations comparing the Funds' expense ratios and asset
     growth between 2002 and 2005, which more than encompasses Plaintiff's §36(b) damages period.
28   *See, e.g.*, ¶¶114, 116.

1   average, rose 15% from 1980 to 1997, which was a time of tremendous growth for the industry; and

2   (2) an SEC staff study showed that funds' weighted average expense ratios rose nearly 30%

3   between 1970 and 1999.  *Id.* at 620.

4         The Complaint follows this approach and includes allegations which examine the growth of

5   the Funds over a period of years (including the one-year period prior to the institution of the action)

6   to show that economies of scale that had previously developed were not passed on to the Funds and

7   their investors, and that fees were therefore excessive during the one year period before the action

8   was instituted and thereafter.  *See, e.g.*, ¶¶114-124.

9         Moreover, recent decisions have accepted this pleading approach and have upheld Section

10  36(b) allegations which examine the defendants' failure to pass on economies of scale over a period

11  of years.  *See Forsythe*, 417 F. Supp. 2d at 115-16 (upholding complaint which included economies

12  of scale allegations spanning from 1999 to 2003); *Strigliabotti*, 2005 U.S. Dist. LEXIS 9625, at

13  *11-12 (upholding economies of scale allegations spanning from 1983 to 2003); *Krantz v. Fidelity*

14  *Mgmt. & Research Co.*, 98 F. Supp. 2d 150, 153, 159 (D. Mass. 2000) (upholding economies of

15  scale allegations spanning from 1985 to 1995).  By including these allegations, Plaintiff do not seek

16  to recover damages from before November 2004 but instead simply use them to demonstrate that

17  economies of scale had occurred and were not being shared by Defendants.  For this reason,

18  Defendants' argument that the statute of limitations bars a portion of Plaintiff's §36(b) claim simply

19  misses the point and misstates the law.  *See* D. Br. at 18-19.

20        While Defendants do not deny the well-pled allegations regarding the breakpoints, they

21  suggest that the fact that some of their Funds had breakpoints means that these Funds must have

22  passed on economies of scale.  D. Br. at 14.  Defendants are wrong.  As Plaintiff alleges in his

23  Complaint, these breakpoints are not meaningful because they are set so unreasonably high that it is

24  unclear if the Funds would ever even achieve the level of assets necessary for the breakpoints to

25  take effect.  *See* ¶¶120-121, 123-124.  Moreover, at least one fund (the Advantage Diversified

26  Equity Fund) has yet to implement any breakpoints.  ¶122.  In addition, the fact that many of the

27  Funds did not have breakpoints prior to August 1, 2004 is relevant to demonstrating their failure to

28

1   pass economies of scale over a period of years, as explained above.  In any event, this is a factual

2   argument and Defendants' attempt to argue merits is impermissible on a motion to dismiss.

3        Defendants further argue that the breakpoint structures in the sub-adviser fees are not

4   relevant because they are paid by the investment adviser and do not increase the total fees paid by

5   the Fund.  D. Br. at 15.  Defendants miss the point of the sub-advisory fee allegations, which is to

6   demonstrate how the Investment Adviser Defendants' arrangement with the sub-advisers allowed

7   the Investment Adviser Defendants to collect an additional 5-45 basis points worth of fees without

8   performing any additional services, *i.e.* receiving "something for nothing."  *See* ¶¶125-129.

9   Plaintiff alleges that the Investment Adviser Defendants were able to negotiate breakpoints to the

10  sub-advisory fees which were lower than the breakpoints to the advisers' fees.  This had the effect

11  of allowing the advisers to pay less of their fees to the sub-advisers which, in turn, resulted in a

12  greater profit for the Investment Adviser Defendants.  Yet instead of reducing their advisory fees to

13  reflect the savings they received from their negotiation of lower subadvisory fee breakpoints, the

14  Investment Adviser Defendants continued to charge their full fee for "management services" and

15  pocketed the difference.  By pocketing the difference, the Investment Adviser Defendants received

16  additional fees without performing any additional work, demonstrating that their fees were

17  disproportionate to the services rendered and a violation of Section 36(b).

18      **2.    Plaintiff Adequately Pleads How The Nature and Quality of Defendants'
               Services Did Not Justify their Excessive Fees**

19

20       Another factor courts sometimes consider is whether the nature and quality of the services

21  provided to the Funds and their investors justifies the advisers' fees.  Plaintiff has provided detailed

22  allegations demonstrating that the nature and quality of the services provided did not justify the

23  excessive expense ratios carried by the Funds because such services resulted in sub-par performance

24  by the Funds.  *See, e.g.*, ¶¶130-133.[5]  In addition, Plaintiff alleges that most of the Funds' returns

25  were highly correlated with the S&P Index, demonstrating that the Funds' level of performance was

26  one that was consistent with the passive fund management that accompanies index funds, as

27  _____

28  [5] For example, the Wells Fargo Advantage Small Cap Growth Fund significantly underperformed
     benchmark funds with the same S&P objective by 13.55%.  ¶133.

1    opposed to the active fund management for which Defendants charge the Funds.  *See, e.g.*, ¶¶134,

2    206. [6]

3           Defendants argue that Plaintiff's allegations regarding the Funds' poor performance relative

4    to their peers cannot support Plaintiff's allegation that the nature and quality of Defendants'

5    services did not justify Defendants' excessive fees.  Defendants are wrong, as courts have found

6    that in the Section 36(b) context, "the most significant indication of the quality of an investment

7    adviser's services is the fund's performance relative to other funds of the same kind."  *Kalish*, 742

8    F. Supp. at 1229 (citing *Krinsk*, 875 F. 2d at 409).  Defendants attempt to confuse the issue by citing

9    to *Migdal* in which the court held that "allegations of underperformance ***alone*** are insufficient to

10   prove that an investment adviser's fees are excessive." 248 F. 3d at 327 (emphasis added).  In

11   *Migdal*, unlike here, almost all of the plaintiffs' allegations concerned the funds' performance,

12   which is why the court ruled that such allegations ***alone*** were insufficient.  More importantly, the

13   court in *Midgal* specifically recognized that allegations regarding the failure to pass along

14   economies of scale would demonstrate a relationship between fees and services and suggested that

15   the plaintiffs might have had a viable case had they made allegations concerning economies of

16   scale:

17              Section 36(b) was enacted in large part because Congress recognized
                that ***as mutual funds grew larger, it became less expensive for***
18              ***investment advisers to provide the additional services.***  Congress
                wanted to ensure that investment advisers passed on to fund investors
19              the savings that they realized from these economies of scale.
                Plaintiffs, however, do not make any allegations about excess profits
20              from economies of scale here.

21   *Migdal,* 248 F. 3d at 326-27 (citation omitted) (emphasis added).  Here, unlike in *Midgal*, Plaintiff

22   has made numerous such economies of scale allegations in support of his Section 36(b) claim, as

23   described above.  *See, e.g.,* ¶¶98, 112-129, 206.  Thus, even under Defendants' own authorities,

24   Plaintiff has stated a claim under Section 36(b).

25

26

27   ---
     [6] Defendants argue that even if the Funds' performance did match the S&P 500's performance, that
     would not mean that the Funds were not actively managed.  Once again, this is a factual issue to be
28   decided at a later stage in these proceedings.

### 3. Comparing Defendants' Fee Structures to Their Peers Indicates that Defendants Charged Excessive Fees

Another factor courts sometimes consider is the extent to which the funds have high expense ratios relative to their peers. *See, e.g., Krinsk v. Fund Asset Mgmt., Inc.*, 715 F. Supp. 472, 497 (S.D.N.Y. 1988) (considering the fund's expense ratio relative to its peers as part of Section 36(b) analysis), *aff'd*, 875 F.2d 404, 412 (2d Cir. 1989). Plaintiff alleges in the Complaint numerous such examples to demonstrate that fees for essentially the same services that were paid by similar Funds not affiliated with Defendants were substantially less. *See, e.g.*, ¶¶99, 117, 135-142.[7]

Defendants make two meritless arguments concerning Plaintiff's allegations of comparative fee structures. First, Defendants argue that Plaintiff cannot make comparisons of fee structures for purposes of Section 36(b) by using expense ratios. D. Br. at 15-16. To the contrary, one of the factors courts have considered in determining whether fees are excessive is the extent to which the Funds have high *expense ratios* relative to their peers. *See, e.g., Krinsk*, 715 F. Supp. at 496-97. Second, Defendants argue that the chart in which Plaintiff sets forth in detail how much higher the Funds' expense ratios are than the industry average (¶117), is "manufactured statistics" which rely on comparisons to a "hypothetical benchmark fund." D. Br. at 16. However, Defendants ignore the fact that the "hypothetical benchmark fund[s]" are the value weighted average of all funds in the same size quartile which have the same investment objective from the University of Chicago Center for Research in Securities Prices (a well-known source for such information). *See* ¶117 n.10, 11. As such, the benchmark represents the funds which are the peers of the Wells Fargo Funds listed in the chart, and as such is an appropriate basis for Plaintiff's comparison.[8]

---

[7] For example, Wells Fargo Advantage Diversified Equity Fund Class B charges a significantly higher expense ratio (2%) than the category average (1.21%). ¶136.

[8] Defendants also argue that the averages for two charts comparing the expense ratios of the Funds to the benchmarks are different. D. Br. at 16. As a preliminary matter, the averages are different because there is a different number of funds in each table. In addition, each chart is illustrating a different kind of comparison. In the chart in ¶117 (which Defendants erroneously refer to as being in ¶121), Plaintiff has examined the expense ratios of the Funds as compared to funds of a similar investment objective *and* size, since funds of a similar size may be more likely to experience the same types of economies of scale. By contrast, the chart in ¶141 simply compares the funds' expense ratios to funds with expense ratios containing a similar investment objective.

1    Defendants attempt to portray Plaintiff's Section 36(b) claim as one that is focused on

2    revenue sharing with additional allegations of excessive fees included as an afterthought.  D. Br. at

3    7-9.  Nothing could be further from the truth.  The revenue sharing allegations in Plaintiff's Section

4    36(b) claim simply represent one of several ways, including Defendants' failure to pass on

5    economies of scale, in which Defendants violated Section 36(b) by charging excessive fees.  For

6    example, Defendants' revenue sharing payments were one of the reasons why Defendants were

7    receiving increased fees, and which ultimately resulted in Defendants charging fees which were

8    higher than comparable funds.  *See, e.g.*, ¶¶97, 100, 146, 206.  By arguing that courts have

9    dismissed claims "based on revenue-sharing claims in their entirety," Defendants attempt to wedge

10   Plaintiff's complaint into a mold of prior caselaw that addressed complaints which did not plead

11   their Section 36(b) claims with the same level of detail as the Complaint in this case.  D. Br. at 7 n.

12   23.  Defendants cannot simply ignore the Complaint's well-pled allegations by proclaiming that all

13   so-called "revenue sharing" cases fail to state a claim under Section 36(b).  Indeed, Defendants cite

14   inapposite cases that did not address revenue sharing allegations to support a Section 36(b)

15   claim.[9]  In any event, contrary to Defendants' claims, the crux of Plaintiff's Section 36(b) claim in

16   this case is that Defendants violated Section 36(b) by retaining excessive fees, not that Defendants

17   participated in revenue sharing programs.

18    Defendants' focus on *In re Eaton Vance Mutual Funds Fee Litig.*, 380 F. Supp. 2d 222

19   (S.D.N.Y 2005) is misplaced.  *Eaton Vance* held that the plaintiffs had not properly pled a Section

20   36(b) claim because the court believed the plaintiffs had only alleged that the payments were

21   improper and not excessive, which is not actionable under Section 36(b).[10]  Plaintiff in this case,

22   however, has not alleged that Defendants' fees violated Section 36(b) because they were improper,

23   but instead because the fees were disproportionate to the services rendered.  In fact, in its opinion on

24

---

25   [9] D. Br. at 7 n. 23 citing *Press v. Quick & Reilly, Inc.*, 218 F.3d 121 (2d. Cir. 2000); *Benzon v. Morgan Stanley Distrib., Inc.*, No. 03-0159, 2004 U.S. Dist. LEXIS 2669 (M.D. Tenn. Jan. 8, 2004); *United States v. Alvarado*, No. 01-0156, 2001 U.S. Dist. LEXIS 21100 (S.D.N.Y. Dec. 19, 2001); *Castillo v. Dean Witter Discover & Co.*, No. 97-1272, 1998 U.S. Dist. LEXIS 9489 (S.D.N.Y. June 25, 1998).

26

27

28   [10] The *Eaton Vance* case is currently on appeal.

reconsideration, the *Eaton Vance* court suggested that, had allegations regarding economies of scale (such as those asserted here) been made, the plaintiffs' Section 36(b) claim would have been upheld.[11]  *Eaton Vance*, 403 F. Supp. 2d at 315.  Since Plaintiff in this case has clearly made such economies of scale allegations in his Complaint as described above, his Section 36(b) claim should be upheld.

Defendants also rely on *In re Oppenheimer Funds Fees Litigation,* No. 04-7022, 2006 U.S. Dist. LEXIS 16296 (S.D.N.Y. April 5, 2006), which held that the plaintiffs in that case did not make any specific allegations as to why "the added amounts" (*i.e.* the inflated advisory fees) rendered the advisory fees disproportionate to the services rendered.  In this case, however, Plaintiff includes allegations regarding why "the added amounts" render the fees disproportionate to the services rendered.  Plaintiff alleges that Defendants inflated their advisory fees so that they could still recover a full profit while using the advisory fees to make revenue sharing payments which should have been an out-of-pocket expense.  *See, e.g.*, ¶¶145, 146-149.  Since these revenue sharing programs allowed the Funds' assets, and consequently Defendants' advisory fees, to increase, Defendants received "something for nothing" because the increase in fees (which are supposed to be reduced as assets increase to pass on economies of scale) was not the result of any increase or improvement in services being provided and did not reflect any legitimate increase in the cost of the services being provided to the advisers and their affiliates.  *See, e.g.*, ¶¶97, 150.  Thus, Plaintiff's revenue sharing allegations demonstrate how the Defendants' revenue sharing program contributed to Defendants charging excessive fees under Section 36(b).

### 4.    The Trustees' Failure to Conscientiously Perform Their Duties Supports Plaintiff's Section 36(b) Claim

Plaintiff further alleges facts which demonstrate that the Trustees of all of the Funds failed to act independently and conscientiously in approving Defendants' fees (¶¶101, 154-163), a factor further supporting a Section 36(b) violation.  *See, e.g.*, *Krinsk*, 875 F.2d at 412.  Plaintiff alleges that each Trustee is on the board of each of the over 90 Funds in the Wells Fargo Fund Complex -- a

---

[11] The plaintiffs in *Eaton Vance* contended that the court erroneously found that no such allegations were made when, in fact, they clearly were.

structure which resulted in the Trustees allowing the Fund Complex as a whole to enter into fee agreements thereby failing to assess whether the fees were appropriate for the individual Funds. *See, e.g.*, ¶¶161, 163.  Plaintiff further alleges that the Trustees failed to reduce Defendants' fees despite knowing that: (1) Defendants should have borne their revenue sharing payments as their own out-of-pocket expenses (*see, e.g.*, ¶¶162,164); and (2) Defendants' fees were more expensive than comparable funds (*see, e.g.*, ¶¶162, 165, 168).  The Trustees also failed to ensure that any economies of scale realized from the increase in the Funds' assets were shared with the Funds and their investors, which included the Trustees' failure to implement meaningful breakpoints that effectively shared such economies of scale.  *See, e.g.*, ¶¶162, 166-168.  All of these facts support a finding of a lack of independence and conscientiousness of the Board, which further demonstrates excessive fees.

In the face of these strong allegations, Defendants argue that Plaintiff has failed to rebut the statutory presumption of Trustee independence. D. Br. at 16-18.  They argue that there is nothing wrong with the Trustees being on the Boards of every single Fund in the Wells Fargo complex of over 90 funds and Plaintiff does not allege facts demonstrating the advisers' control over the Trustees.  *Id.* at 17-18.  First, the allegations that the Trustees ignored red flags indicating excessive fees and simply rubber-stamped them, does indicate a lack of independence.  Second, this factor is not limited to whether or not the Trustees were "independent," but, as Defendants themselves acknowledge, also focuses on "whether [the Trustees are] fully informed . . . and the extent of care and conscientiousness with which they performed their duties." D. Br. at 18.[12]  As Plaintiff alleges in his Complaint, "even if the Directors were considered 'independent,' they failed to fulfill their duties with the care and conscientiousness necessary to ensure that the fees paid to Defendants…were reasonable and not excessive."  ¶162.  Plaintiff supports this allegation with facts

---

[12] Defendants argue that Plaintiff does not allege that the "[T]rustees were not competent professionals, qualified to hold their positions." D. Br. at 18.  However, as described above, the Trustees' expertise is only part of the overall §36(b) inquiry, which includes the level of care and conscientiousness.  Plaintiff's allegations relate principally to these aspects of the Trustees' performance.

1  demonstrating the various ways in which the Trustees failed to fulfill their duties by approving

2  Defendants' excessive fees.  *See, e.g.*, ¶¶101, 161-168.[13]

3         The court in *Krantz,* 98 F. Supp. 2d 150, followed this approach with respect to pleading the

4  trustees' failure to fulfill their duties for purposes of Section 36(b).  Although the *Krantz* court held

5  that the plaintiff's allegation that the trustees had served on multiple fund boards in the fund

6  complex did not alone establish that the trustees were not "independent," the court held that "it may

7  support an inference of a lack of conscientiousness (Gartenberg factor 6) by the directors in

8  reviewing the fees paid by each of the funds." *Krantz*, 98 F. Supp. 2d at 158.  In this case, Plaintiff

9  alleges that the Trustees serve on multiple fund boards as well as numerous other allegations

10 indicating the Trustees' failure to perform their duties with the requisite care and conscientiousness.

11 *See, e.g.*, ¶¶101, 161-168.

12        Given the allegations described above which demonstrate the myriad ways Defendants

13 charged fees which were disproportionate to the services provided, Plaintiff has given Defendants

14 more than adequate notice under Rule 8 of the basis for his Section 36(b) claim.

15     **III.    RECENT DECISIONS OVERWHELMINGLY DEMONSTRATE THAT**
            **PLAINTIFF HAS PLED A VALID SECTION 36(b) CLAIM**
16

17        Numerous courts, including ones in this district, have sustained Section 36(b) complaints

18 with allegations similar to those herein.  *See, e.g.*, *Strigliabotti*, 2005 U.S. Dist. LEXIS 9625, at

19 *25; *see also Forsythe*, 417 F. Supp. 2d 100; *Jones*, 2005 U.S. Dist. LEXIS 39560, at *6-7; *Wicks*,

20 2005 U.S. Dist. LEXIS 4892.  In *Strigliabotti*, 2005 U.S. Dist. LEXIS 9625, the plaintiffs alleged

21 that: (1) the defendants charged much higher fees to plaintiffs than to other clients for equivalent

22 advisory services, (2) although the funds' assets grew significantly over a ten-year period, the

23

24 [13] Defendants also argue that since Distributor Stephens, Inc. is not an affiliate of Wells Fargo, there
   is no "reason why the fund's dealings with Stephens would be anything other than completely arms'
25 length."  D. Br. at 18.  Defendants argument is misplaced because the issue of whether *Stephens* is a
   Wells Fargo affiliate is irrelevant to the allegations Plaintiff has made in his Complaint regarding
26 the ***Trustees*** failing to perform their duties with care and conscientiousness, such as their failure to
   ensure that economies of scale wer passed to the Funds and their investors.  *See, e.g.*, ¶¶162, 166-
27 168.

28

nature of the services rendered had not changed, making the defendants' increased fees

disproportionately large, (3) defendants retained excess profits resulting from economies of scale.

Judge Illston of this District concluded that these facts were sufficient to allege a disproportionate

relationship between fees and services and therefore satisfied Rule 8's "liberal pleading standard."

*Id.* at *12. Similar allegations here should be upheld. For example, in this case, as in *Strigliabotti*,

Plaintiff alleges that although the Funds' assets grew and Defendants received additional fees, these

fees were disproportionate given that the nature, quality and level of the services Defendants

provided remained the same. *See, e.g.*, ¶112. Plaintiff further alleges that as the Funds' assets

grew, so did Defendants' fees because Defendants retained the economies of scale for their own

benefit and continued charging greatly increased expenses without providing additional,

commensurate services. *See, e.g.*, ¶¶113-116.[14]

In *Jones*, the court also upheld Section 36(b) allegations similar to, yet less detailed than,

those in this case, stating:

> [While §36(b)] does not explicitly refer to excess profits, the scenario
> described in the complaint could indicate a setting in which [the
> defendant] is retaining unearned fees. In other words, if the money
> [the defendant] is receiving can be fairly characterized as a fee and ***it
> is in essence something for nothing***, clearly that would represent an
> actionably disproportional relationship between the fees paid and the
> services rendered … Thus, we cannot say that this claim is so devoid
> of potential merit as to warrant dismissal …

2005 U.S. Dist. LEXIS 39560, at *8 (citation omitted) (emphasis added). In denying the

defendants' motion to dismiss the plaintiffs' Section 36(b) claim, the *Jones* court noted that it is "in

no position based on the allegations of the complaint to determine what services Plaintiffs received

from [the defendant] or how much they can fairly be worth. It is not inconceivable that the fees

charged … were so disproportionate to the value of the services rendered that a violation of §36(b)

would lie." *Id.* at *7. As in *Jones*, Plaintiff here has adequately alleged how the fees charged

"would represent an actionably disproportional relationship between the fees paid and the services

---

[14] Given these allegations, Defendants' contention that Plaintiff did not allege "that the funds had
not lowered their fees during periods of dramatic growth" (D. Br. at 10 n.30) is patently absurd and
their attempt to distinguish *Strigliabotti* on such grounds is unavailing.

OPPOSITION TO MOTION OF DEFENDANTS WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS CAPITAL
MANAGEMENT, INC., WELLS FARGO FUNDS DISTRIBUTOR, LLC AND STEPHENS INC. TO DISMISS PLAINTIFF'S
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT   — Case No.: 05-cv-4518 (WHA)

17

rendered," (*i.e.*, "something for nothing"), thereby stating a claim for excessive fees under Section 36(b).

In *Wicks*, 2005 U.S. Dist. LEXIS 4892, the plaintiff sued the investment manager for certain Putnam Funds based upon the allegation that "[t]he defendants . . . direct the payment of excessive commissions to securities broker-dealers to execute trades for the Funds in exchange for 'soft dollars' (said to be a form of kickback) that benefit the defendants and not the Funds." 2005 U.S. Dist. LEXIS 4892, at *3. The *Wicks* defendants (and not the investors) benefited because, as the plaintiffs alleged, "[a]lthough assets held by the Funds . . . increased significantly over time, the nature and quality of the services rendered by the defendants to the Funds has not substantially changed[, creating] benefits from economies of scale which the defendants . . . failed to share with the Funds." *Id.* As the plaintiffs alleged, the "defendants continue[d] to receive larger fees from the Funds, capturing all benefits from the economies of scale for themselves." *Id.* In denying the defendants' motion to dismiss, the court held that such allegations are sufficient under Section 36(b) to survive a motion to dismiss. *Id.* at *13. Plaintiff here has alleged that Defendants violated the Section 36(b) proscription against payment of excessive fees to the Investment Adviser Defendants and their affiliates because Plaintiffs and the Funds did not receive the benefits of increased Fund assets, including economies of scale. As in *Wicks*, this states a Section 36(b) claim. *See, e.g.*, ¶¶98, 112-129, 206 (economies of scale); ¶¶97, 100, 143-153, 206 (revenue sharing, directed brokerage and soft dollar arrangements).

In *Forsythe*, the court sustained the plaintiffs' Section 36(b) claim based on allegations similar to, yet far less detailed than, Plaintiff's allegations in this case:

> I conclude that [the plaintiffs' Section 36(b) claim] sufficiently comports with Rule 8's pleading standard. It alleges wrongful conduct specific to the defendants in some factual detail. In addition, it alleges that the defendants have caused the MFS funds to pay improper "kickbacks" to brokers in exchange for steering clients into MFS Funds via "shelf-space arrangements," to pay excessive commissions under the guise of "soft dollars," to engage in improper "directed brokerage" arrangements; and to make improper "hard dollar" revenue sharing payments that were then reimbursed out of MFS Fund assets. There are also illustrating allegations regarding these types of arrangements with one particular broker-dealer, as well as allegations that a large number of other broker-dealers were similarly involved. The plaintiffs also give adequate notice of how

OPPOSITION TO MOTION OF DEFENDANTS WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS CAPITAL MANAGEMENT, INC., WELLS FARGO FUNDS DISTRIBUTOR, LLC AND STEPHENS INC. TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT   — Case No.: 05-cv-4518 (WHA)

18

these arrangements . . . ***benefited*** the defendants while at the same time ***harming*** the MFS Funds and their investors.  The plaintiffs allege that as the MFS Funds grew the defendants failed to pass on economies of scale from that growth by failing to reduce fees accordingly.  Finally, the plaintiffs allege that the advisory fees MFS Company received were wrongfully inflated by shifting to the MFS Funds and their investors costs which should have rightfully have been borne by the MFS Company.

*Forsythe*, 417 F. Supp. 2d at 115-16.  (emphasis added).

In so ruling, the *Forsythe* court rejected the defendants' argument that the plaintiffs' complaint failed to allege facts demonstrating the services the defendants rendered were disproportionate to the fees charged, explaining that the plaintiffs' complaint was ***not*** like one where "the plaintiffs only alleged the fees were high but made no allegations regarding services rendered and the relationship between the two."  *Id.* at 116.  Although, according to the court, the plaintiffs may not have made specific allegations "regarding the quality of the services rendered, that factor may be irrelevant to their theory of excessiveness" because:

> [t]he plaintiffs' contention is that the fees were excessive because they were unauthorized and taken from fund assets to the benefit of the defendants only, not the funds. The plaintiffs' theory is that fees that amount to "something for nothing" are inherently excessive.  At least one court concluded. . . [that fees] . . . that were in essence "***something for nothing***" could represent a disproportional relationship between fees and services.  *See Jones v. Harris* Assocs., L.P. Civ. 2005 U.S. Dist. LEXIS 39560, Civ. No. 04C8305, 2005 WL 831301, at *3 (N.D. Ill. Apr. 7, 2005).  For present purposes, the plaintiffs' pleading of this claim is sufficient to survive a motion to dismiss.

*Id.* (emphasis added).  Plaintiff's Section 36(b) claim should similarly be sustained.[15]

---

[15] In *Dumond v. Mass. Fin. Servs. Co.*, No. 04-11458, 2006 U.S. Dist. LEXIS 1933 (D. Mass. Jan. 19, 2006), the same court as in *Forsythe* held that the plaintiffs' §36(b) claim satisfied Rule 8 based on the plaintiffs' allegations that the defendants' fees were excessive because, *inter alia*, they did not reduce their fees to reflect benefits received from arrangements such as: (1) soft dollars and kickbacks from brokers and (2) securities lending arrangements.  2006 U.S. Dist. LEXIS 1933, at *9-10.  The court also sustained §36(b) allegations that while the funds grew in size, services had changed little resulting in the defendants receiving disproportionately large fees, and allegations that the funds charged higher management fees to retail investors than institutional investors.  Similar allegations should be sustained here.

## IV.   PLAINTIFF HAS STANDING TO BRING HIS SECTION 36(b) CLAIM

Defendants argue that Plaintiff lacks standing to bring his Section 36(b) claim because he has not alleged that he currently holds the Funds at issue and he does not hold one-third of the shares of any of the Funds at issue, which is a prerequisite to asserting a derivative claim such as Section 36(b) under Delaware Law and the Wells Fargo Trust Agreement.  D. Br. at 3-6.  Neither of Defendants' arguments has merit.  First, Plaintiff currently holds shares of a Wells Fargo Fund, giving him standing to bring a Section 36(b) claim.  *See* Siemers Decl. at ¶3.  Second, this Court specifically appointed Plaintiff as the sole Lead Plaintiff in this action after being informed of potential standing issues.  *See* Reese Decl., Exh. V at 4-6.  Third, Supreme Court rulings and legislative history confirm that Section 36(b) claims are direct rather than derivative, so the prerequisite of owning one-third of the fund's shares does not apply here.  The Supreme Court held in *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984) that, "Congress intended the unique right created by Section 36(b) to be enforced solely by the SEC and security holders of the investment company."  *Id*. at 536.  Therefore, the primary or direct right to bring such a claim is held by the security holder, not the mutual fund.  This conclusion was subsequently confirmed by the Supreme Court in *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 108 (1991), in which the Supreme Court stated that "a shareholder action 'on behalf of' the company under Section 36(b) is direct rather than derivative."  *Id*. at 108; *see also In re Columbia Entities Litig.*, No. 04-11704, 2005 U.S. Dist. LEXIS 33439, at *18 (D. Mass. Nov. 30, 2005) (holding that a Section 36(b) claim is direct, not derivative, but dismissing on other grounds).

Finally, even if a Section 36(b) claim were considered to be a derivative claim, the restriction of the Wells Fargo Trust Agreement would not apply.  The Trust Agreement provides that "[a]s expressly provided in the Delaware Act, Shareholders have the right to bring a derivative action if they meet the express requirements of Delaware law."  *See, e.g.*, Defendants' Request for Judicial Notice ("RFJN") Ex. 3 at RFJN 90.  Derivative actions under the Delaware Act [defined in the Trust Agreement as "Chapter 38 of Title  12 of the Delaware Code entitled '*Treatment of Delaware Statutory Trusts*'" (RFJN Ex. 3 at RFJN 65)]  can be brought by a beneficial owner to recover a judgment in the trust's favor "if trustees with authority to do so have refused to bring the

action or if an effort to cause those trustees to bring the action is not likely to succeed." *See* 12 Del. C. §3816(a).  Thus, the derivative actions to which the Trust Agreement refers are the classic shareholder derivative actions which require demand on the trustees unless such demand would be futile.  A Section 36(b) action, however, does not fit within the Delaware Act definition of a "derivative action" because, as Defendants admit (D. Br. at 6), it does not require any demand on the trustees prior to bringing suit.  *See, e.g., Daily Income,* 464 U.S. at 535.  Thus, the Trust Agreement requirements for derivative actions do not apply to Plaintiff's Section 36(b) claim.  In fact, such a requirement conflicts with Section 36(b), which only requires a Section 36(b) plaintiff to be "a security holder."  If Congress had wanted to impose the one-third requirement Defendants now seek, it would have written such a requirement into the statute.  Defendants' attempt to unilaterally change a federal statute should be rejected.

OPPOSITION TO MOTION OF DEFENDANTS WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS CAPITAL MANAGEMENT, INC., WELLS FARGO FUNDS DISTRIBUTOR, LLC AND STEPHENS INC. TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT   — Case No.:  05-cv-4518 (WHA)

21

1

2                                    **CONCLUSION**

3          For the foregoing reasons, this Court should deny Defendants' motion to dismiss Plaintiff's

4    Complaint in its entirety.

5    DATED:   May 25, 2006                      **MILBERG WEISS BERSHAD &**
                                                **SCHULMAN LLP**
6

7                                               By:_____/s/ Michael R. Reese_____
                                                Jerome M. Congress (*admitted pro hac*)
8                                               Janine L. Pollack (*admitted pro hac*)
                                                Kim E. Miller (178370)
9                                               Michael R. Reese (206773)
                                                One Pennsylvania Plaza
10                                              New York, New York  10119-0165
                                                Telephone:    (212) 594-5300
11                                              Facsimile:    (212) 868-1229

12                                              ***Court Appointed Lead Counsel***

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF SERVICE**

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of New York, New York, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is One Pennsylvania Plaza, New York, New York 10119.

2.      That on May 25, 2006, declarant served the Opposition to Motion of Defendants Wells Fargo Funds Management, LLC; Wells Capital Management, Inc.; Wells Fargo Funds Distributor, LLC and Stephens Inc. to Dismiss Plaintiff's Consolidated Amended Class Action Complaint by electronic notice to the parties listed on the attached Service List.

3.      That there is a regular communication by mail between the place of mailing and the places so addressed.

4.      That on May 25, 2006, declarant served via email to: scac@law.stanford.edu.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 25th day of May 2006, at New York, New York.

/s/ Michael R. Reese
MICHAEL R. REESE

# WELLS FARGO & CO.

### Service List

| | |
|---|---|
| Bruce A. Ericson<br>Jacob R. Sorensen<br>Kristin M. Lefevre<br>**PILLSBURY WINTHROP SHAW PITTMAN LLP**<br>50 Freemont Street<br>P.O. Box 7880<br>San Francisco, CA 94105-7880<br>Tel.: (415) 983-1000<br>Fax: (415) 983-1200<br><br>-and-<br><br>Clifford C. Hyatt<br>David L. Stanton<br>**PILLSBURY WINTHROP SHAW PITTMAN LLP**<br>725 South Figueroa Street, Suite 2800<br>Los Angeles, CA 90017-5406<br>Tel.: (213) 488-7100<br>Fax: (213) 629-1033<br><br>*Counsel for Defendants Wells Fargo & Co., Wells Fargo Funds Management, LLC, Wells Capital Management, Inc., H.D. Vest Investment Services, Wells Fargo Funds Distributor, LLC, Wells Fargo Funds Trust, and Stephens Inc.* | Thomas O. Jacob<br>Vanessa M. Hoffmann<br>**OFFICE OF GENERAL COUNSEL, WELLS FARGO & CO.**<br>633 Folsom Street, 7th Floor<br>San Francisco, CA 94107<br>Tel.: (415) 622-6656<br>Fax: (415) 975-7864<br><br>*Counsel for Defendants Wells Fargo & Co., Wells Fargo Funds Management, LLC, Wells Capital Management, Inc., Wells Fargo Funds Trust, and Wells Fargo Investments, LLC* |