**MILBERG WEISS BERSHAD**
   **& SCHULMAN LLP**
Jerome M. Congress (admitted *pro hac vice*)
Janine L. Pollack (admitted *pro hac vice*)
Kim E. Miller (State Bar No. 178370)
Michael R. Reese (State Bar No. 206773)
One Pennsylvania Plaza
New York, New York  10119-0165
Telephone:     (212) 594-5300
Facsimile:      (212) 868-1229
email: mreese@milbergweiss.com
***Court Appointed Lead Counsel***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| RONALD SIEMERS, Individually And On Behalf Of All Others Similarly Situated, | Case No. 05-04518 WHA |
| Plaintiff, | **OPPOSITION TO MOTION OF DEFENDANT WELLS FARGO & CO. TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| vs. | |
| WELLS FARGO & COMPANY, H.D. VEST INVESTMENT SERVICES, LLC, WELLS FARGO INVESTMENTS, LLC, WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS CAPITAL MANAGEMENT INC., STEPHENS INC., WELLS FARGO FUNDS DISTRIBUTOR, LLC, and WELLS FARGO FUNDS TRUST, | Date:  June 21, 2006<br>Time: 8:00 a.m.<br>Ctrm:  9, 19th Floor<br>Honorable William H. Alsup<br>Filed concurrently: Request for Judicial Notice |
| Defendants. | |

OPPOSITION TO MOTION OF DEFENDANT WELLS FARGO & CO. TO DISMISS PLAINTIFF'S CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT   — Case No.:  05-cv-4518 (WHA)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

ISSUES TO BE DECIDED ......................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

I.     INTRODUCTION ...........................................................................................................1

II.    STATEMENT OF THE CASE ......................................................................................2

III.   STANDARDS FOR MOTION TO DISMISS ...............................................................4

IV.   ARGUMENT ..................................................................................................................5

     A.    Plaintiff's Complaint Adequately States Control Person Liability.......................5

           1.    Because The Complaint Does Not Allege A 'Unified Course' of Fraudulent Conduct - Rule 9(b) Does Not Apply ........................................5

           2.    Rule 9(b) Does Not Apply To Plaintiff's Non-Fraud Claims.....................6

           3.    Allegations of Control Do Not Import Fraud .............................................8

           4.    Rule 9(b)'s Purpose Would Not be Served by Applying it To Corporate Control Person Claims ..................................................................9

           5.    Standards Governing Control Person Liability...........................................9

     B.    Plaintiff's Claims Are Timely............................................................................14

           1.    General Regulatory Discussions Cannot Provide Adequate Inquiry Notice ........................................................................................................15

           2.    The Shelf-Space Funds' Prospectuses Cannot Constitute Inquiry Notice ........................................................................................................17

           3.    A Determination Of Inquiry Notice Is Inappropriate At This Stage .........18

     C.    Plaintiff has Adequately Pleaded a Violation of 48(a) of the '40 Act .................19

V.    CONCLUSION.............................................................................................................20

OPPOSITION TO MOTION OF DEFENDANT WELLS FARGO & CO. TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT — Case No.: 05-cv-4518 (WHA)

i

# TABLE OF AUTHORITIES

## CASES

Page

*Amy Liu v. Credit Suisse First Boston Corp. (In re Initial Public Offering Sec. Litig.)*,
341 F. Supp. 2d 328 (S.D.N.Y. 2004) ................................................................16

*In re Anchor Gaming Sec. Litigation*,
33 F. Supp. 2d 889 (D. Nev. 1998) ......................................................................6

*Anspach v. Bestline Products, Inc.*,
382, F. Supp. 1083 (N.D. Cal 1974) ..................................................................11

*In re BankAmerica Corp. Sec. Litigation*,
78 F. Supp. 2d 976 (E.D. Mo. 1999) ...................................................................9

*Berry v. Valence Tech., Inc.*,
175 F.3d 699 (9th Cir. 1999) ..............................................................................14

*In re Blue Rhino Corp. Securities Litigation*,
2004  U.S. Dist. LEXIS 27942 (C.D. Cal. Oct. 7, 2004) ....................................13

*Briskin v. Ernst & Ernst*,
589 F.2d 1363 (9th Cir. 1978) ............................................................................19

*Brody v. Homestore, Inc.*,
2003 U.S. Dist. LEXIS 17267 (D. Cal. Aug. 8, 2003) .........................................6

*In re CBT Group PLC Sec. Litigation*,
2000 U.S. Dist. LEXIS 19214 (N.D. Cal. Dec. 29, 2000) ...................................10

*In re Calpine Corp. Sec. Litigation*,
288 F. Supp. 2d 1054 (D. Cal. 2003) ...................................................................8

*Capital Ventures International v. Network Commerce, Inc.*,
2006 U.S. Dist. LEXIS 14657 (D. Wash. Mar. 16, 2006) ..................................14

*In re Cendant Corp. Litigation*,
60 F. Supp. 2d 354 (D.N.J. 1999) ........................................................................8

*In re Computervision Corp. Sec. Litigation*,
869 F. Supp. 56 (D. Mass. 1994) .........................................................................6

*Degulis v. LXR Biotechnology, Inc.*,
928 F. Supp. 1301 (S.D.N.Y. 1996) .....................................................................6

*Derensis v. Coopers & Lybrand Chtd. Accountants*,
930 F. Supp. 1003 (D.N.J. 1996) .........................................................................8

*Draney v. Wilson, Morton, Assaf & McElligott*,
1980 U.S. Dist. LEXIS 11220 (D. Ariz. Apr. 15, 1980) ......................................8

OPPOSITION TO MOTION OF DEFENDANT WELLS FARGO & CO. TO DISMISS PLAINTIFF'S CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT  — Case No.:  05-cv-4518 (WHA)

ii

*In re Dreyfus Mutual Funds Fee Litigation*,
  2005 U.S. Dist. LEXIS 29152 (D. Pa. Sept. 30, 2005), *judgment on the pleadings
  in defendants' favor on other grounds*, 2006 U.S. Dist. LEXIS 29554 (D. Pa. Apr. 7,
  2006) ..........................................................................................................................19

*Durham v. Kelly*,
  810 F.2d 1500 (N.D. Cal. 2003) .............................................................................11

*In re Exodus Communs., Inc. Sec. Litigation*,
  2005 U.S. Dist. LEXIS 20222 (N.D. Cal. Aug. 5, 2005) ............................................7, 8, 18

*In re Exodus Communs., Inc. Sec. Litigation*,
  2005 U.S. Dist. LEXIS 34449 (N.D. Cal. Sept. 12, 2005) ..............................................7

*Forsythe v. Sun Life Finance, Inc.*,
  417 F. Supp. 2d 100 (D. Mass. 2006) ......................................................................9

*Gray v. First Winthrop Corp.*,
  82 F.3d 877 (9th Cir. 1996) .............................................................................15, 18

*Hollinger v. Titan Capital Corp.*,
  914 F.2d 1564 (9th Cir. 1990) .........................................................................9, 10, 11

*Howard v. Everex Sys. Inc.*,
  228 F.3d 1057 (9th Cir. 2000) .......................................................................10, 11, 12

*In re Immune Response Sec. Litigation*,
  375 F. Supp. 2d 983 (S.D. Cal. 2005)......................................................................10

*In re JDS Uniphase Corp. Sec. Litigation*,
  2005 U.S. Dist. LEXIS 20831 (N.D. Cal. Jan. 6, 2005).................................................7, 8

*Kensington Capital Management v. Oakley, Inc.*,
  1999 U.S. Dist. LEXIS 385 (C.D. Cal. Jan. 14, 1999) .......................................................7

*Kersh v. General Council*,
  804 F.2d 546 (9th Cir. 1986) ................................................................................11

*Keys v. Wolf*,
  540 F. Supp. 1054 (N.D. Tex. 1982), *rev'd on other grounds*, 709 F.2d 413 (6th Cir.
  1983) ........................................................................................................................8

*La Grasta v. First Union Securities Inc.*,
  358 F.3d 840 (11th Cir. 2004) ...............................................................................16

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005), *writ of certiorari denied*, 126 S. Ct. 421 (2005)...............16, 17

*In re ML-Lee Acquisition Fund II*,
  848 F. Supp., 527 (D. Del. 1994).............................................................................19

*In re National Student Marketing Litigation*,
  413 F. Supp. 1156 (D.D.C. 1976).............................................................................8

OPPOSITION TO MOTION OF DEFENDANT WELLS FARGO & CO. TO DISMISS PLAINTIFF'S CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT  — Case No.:  05-cv-4518 (WHA)

iii

*NationsMart Corp. Sec. Litigation*,
   130 F.3d 309 (8th Cir. 1997) .................................................................................7

*Newman v. Warnaco Group, Inc.*,
   335 F.3d 187 (2d Cir. 2003) ..................................................................................14

*Paracor Finance, Inc. v. G.E. Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) .................................................................................10

*Phavo v. Smith*,
   621 F.2d 656 (5th Cir. 1980) ...................................................................................9

*Press v. Quick & Reilly*,
   218 F.3d 121 (2d Cir. 2000) ..................................................................................17

*In re Proxima Corp. Sec. Litig.*,
   1994 US Dist. LEXIS 21443 (D. Cal. May 3, 1994) ...............................................9

*Rhodes v. Omega Research, Inc.*,
   38 F. Supp. 2d 1353 (D. Fla. 1999) .........................................................................6

*Rochelle v. Marine Midland Grace Trust Co.*,
   535 F.2d 523 (9th Cir. 1976) .................................................................................19

*SEC v American Board of Trade, Inc.*,
   593 F. Supp. 335 (S.D.N.Y. 1984) *rev'd. on other grounds*, 751 F.2d 529 (2d Cir.
   1984) .....................................................................................................................20

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) ...................................................................................9

*Shaw v. Digital Equip. Corp.*,
   82 F.3d 1194 (1st Cir. 1996)....................................................................................9

*Strougo v. Bassini*,
   282 F.3d 162 (2d Cir. 2002) ..................................................................................19

*In re Telegraph-Save Sec. Litigation*,
   No. 98-3145, 1999 U.S. Dist. LEXIS 16800 (E.D. Pa. Oct. 19, 1999) ...................8

*In re Thortec Sec. Litig.*,
   1989 U.S. Dist. LEXIS 6003 (N.D. Cal. Jan. 25, 1989).........................................10

*United States v. Wood*,
   925 F.2d 1580 (7th Cir. 1991) ...............................................................................13

*Vess v. Ciba-Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................................5, 6, 9

*In re Washington Public Power Supply System Sec. Litigation*,
   623 F. Supp. 1466 (W.D. Wash. 1985), *decision aff'd on the other grounds,* 823 F.2d
   1349 (9th Cir. 1987)..................................................................................................8

*In re WorldCom, Inc. Sec. Litigation*,
   294 F. Supp. 2d 431 (S.D.N.Y. 2003) ...................................................................15

OPPOSITION TO MOTION OF DEFENDANT WELLS FARGO & CO. TO DISMISS PLAINTIFF'S CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT  — Case No.:  05-cv-4518 (WHA)

iv

**STATUTES AND RULES**

17 C.F.R. §210.1-02 ................................................................................................12

17 C.F.R. §229.601 ..................................................................................................12

17 C.F.R. §230.405 ..................................................................................................10

17 C.F.R. §249.310 ..................................................................................................12

17 C.F.R. §275.203-1(a) ..........................................................................................13

17 C.F.R. §275.204-1(a) ..........................................................................................13

17 C.F.R. §279.1 ......................................................................................................13

Fed. R. Civ. P. 8(e)(2) ..............................................................................................8

Fed. R. Civ. P. 9(b) ........................................................................................... *passim*

Fed. R. Evid. 201(b) ...........................................................................................13, 14

15 U.S.C. §77m .......................................................................................................15

15 U.S.C. §77o ..........................................................................................................5

15 U.S.C. §78a(d) ....................................................................................................12

15 U.S.C. §78o(d) ....................................................................................................12

15 U.S.C. §78m ........................................................................................................12

15 U.S.C. §78t(a) .......................................................................................................5

15 U.S.C. §80a-35(b) ...........................................................................................5, 19

15 U.S.C. §80a-47(a) ...........................................................................................5, 19

28 U.S.C. §1658(b) ..................................................................................................15

NASD Rule 2830(k) .................................................................................................18

Securities Confirmations, Exchange Act Release No. 13508 (May 5, 19977)..............17

**MISCELLANEOUS**

Brief of the Securities and Exchange Commission,
    Amicus Curie, filed in *Press v. Quick & Reilly,*
    *available at* 2000 WL 34447852 (Feb. 14, 2000) ................................................17

1    Plaintiff submits this memorandum of law in opposition to the Motion of Defendants Wells

2    Fargo & Co. ("Wells Fargo") to Dismiss Plaintiff's Consolidated Amended Class Action

3    Complaint.  This memorandum of law is based on the request for judicial notice filed herewith,

4    Plaintiff's other Oppositions to the Motions to Dismiss and the Declaration of Michael R. Reese

5    filed concurrently, all pleadings and records on file in this action, and any other arguments and

6    evidence presented to the Court at or before the hearing on this motion.

7                                    **ISSUES TO BE DECIDED**

8        1.    Does Plaintiff allege sufficient facts to state 'control person' claims against Wells

9    Fargo under §15 of the Securities Act of 1933 (the "'33 Act") (Count III, relating to violations of

10   §12(a)(2) of the '33 Act), §20(a) of the Securities Exchange Act of 1934 (the "'34 Act") (Count V,

11   relating to violations of §10(b) and Rule 10b-5 thereunder), and §48(a) of the Investment Company

12   Act of 1940 (the "'40 Act") (Count VII, relating to violations of §36(b) of the '40 Act)?

13       2.    Was Plaintiff put on inquiry notice of his claims against Wells Fargo through mutual

14   fund prospectuses that the SEC has deemed violate the federal securities laws for failure to disclose

15   *quid pro quo* payments made by the mutual funds to Wells Fargo?  If not, was Plaintiff put on

16   notice of his claims against Wells Fargo through general regulatory discussions of such payments

17   that nowhere mention Wells Fargo?

18       3.    Does a private right of action exist for §48(a) of the '40 Act when the Complaint

19   states a primary violation of §36(b) of the '40 Act?

20

21                          **MEMORANDUM OF POINTS AND AUTHORITIES**

22   **I.    INTRODUCTION**

23       Defendant Wells Fargo, facing liability for being the corporate parent of the various

24   Defendants (defined below) charged in Plaintiff's complaint for violations of Federal Securities and

25   Investment Company laws, moves to dismiss Plaintiff's well-pled claims against it on unsupported

26   grounds.

27       First, Plaintiff's 'control person' claims are not subject to the heightened pleading

28   requirements of Rule 9(b), as argued by Wells Fargo, as the Complaint does not allege a 'unified

course' of fraudulent conduct.  Plaintiff alleges different conduct underpinning each claim and only one of the seven claims avers fraud.  Further, Plaintiff's non-'34 Act claims expressly disclaim fraud and/or provide an separate theory of liability.  Wells Fargo's arguments that Rule 9(b) applies to Plaintiff's 'control person' claims are also fruitless because Plaintiff's 'control person' claims easily meet the higher pleading standard and adequately allege Wells Fargo's control of the other Defendants under the applicable test in this Circuit.  Furthermore, Wells Fargo's and the other Defendants' public filings also prove that Defendants are controlled by Wells Fargo.

Second, Plaintiff's claims are timely because Defendants' revenue sharing practices only became public within the relevant limitations period as the result of a regulatory investigation that implicated Defendants.  None of the voluminous materials cited by Defendants even name any of the Defendants.  Disregarding logic, Defendants also suppose that the defective prospectuses at issue in this case could serve to put Plaintiff on notice of his claim that such prospectuses were defective.  This argument is also unavailing.  Finally, Plaintiff demonstrates that Wells Fargo's argument that Plaintiff has failed to plead a violation of §48(a) of the '40 Act ignores existing precedent considering that very provision.

## II.   STATEMENT OF THE CASE

This is a class action brought by Plaintiff Ronald Siemers on behalf of a Class consisting of all persons or entities who purchased one or more of the Wells Fargo Funds (the "Funds") and/or one or more non-Wells Fargo funds participating in Wells Fargo revenue sharing and directed brokerage arrangements (collectively, the "Shelf Space Funds")[1] through Wells Fargo, from June 30, 2000 through June 8, 2005, inclusive, for violations of §§12(a)(2) and 15 of the '33 Act; §10(b), Rule 10b-5 promulgated thereunder and §20(a) of the '34 Act and §§36(b) and 48(a) of the '40 Act.

The Complaint is more fully summarized in Plaintiff's other oppositions to Defendants' Motions to Dismiss filed concurrently herewith and these summaries are incorporated herein by reference.  The allegations set forth below are limited to those included in the Complaint that are relevant to this Memorandum.

---

[1] For a list of the Shelf Space Funds, see Exhibit A to the Complaint.

OPPOSITION TO MOTION OF DEFENDANT WELLS FARGO & CO. TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT  — Case No.:  05-cv-4518 (WHA)

2

Plaintiff's Complaint brought claims against eight defendants ("Defendants"). Wells Fargo Investments, LLC and H.D. Vest Investment Services, LLC (collectively, the "Broker-Dealer Defendants") are broker-dealers that entered into revenue sharing agreements with the Shelf Space Funds. ¶¶17-19.[2]   Wells Fargo Funds Management, LLC and Wells Capital Management Inc. (collectively, the "Investment Adviser Defendants") were investment advisers to the proprietary Wells Fargo Funds (as defined in the Complaint). ¶¶20, 22. Wells Fargo Funds Distributor, LLC and Stephens Inc. (collectively, the "Distributor Defendants") are the distributors of the Wells Fargo Funds. ¶¶25-6. Wells Fargo Funds Trust (the "Registrant Defendant") is the registrant of all of the Wells Fargo Funds. ¶28. Defendant Wells Fargo is the ultimate parent of each of the other Defendants with the exception of Stephens Inc.  ¶16.

The Complaint alleges three separate actions by Defendants. First, the Broker-Dealer Defendants received undisclosed kickbacks from the Shelf Space Funds in exchange for steering investors into the Shelf Space Funds. *E.g.,* ¶33. The kickback activities engaged in by Defendants created conflicts of interest with respect to the financial consultants' investment advice given to their clients and the management of their client accounts, and these conflicts were not disclosed to Plaintiff and class members. *E.g.,* ¶80. Second, the Complaint also alleges that Defendants, by virtue of their knowledge of the true facts regarding the kickback scheme and improper influence exerted to push the Shelf Space Funds on Wells Fargo clients, and their control over and associations with Wells Fargo which made them privy to confidential information concerning the Wells Fargo incentive scheme, culpably participated in the fraudulent scheme alleged herein. *E.g.,* ¶92. Third, the Distributor Defendants and the Investment Adviser Defendants had a fiduciary duty to the Funds and their shareholders with respect to the receipt of fees from the Funds, and those Defendants breached this duty by charging excessive Rule 12b-1 marketing fees and advisory fees. *E.g.,* ¶¶205-206.

Accordingly, the Complaint sets forth three types of primary violations of securities laws: Counts I and II are claims pursuant to §12(a)(2) of the '33 Act against (i) the Broker-Dealer

---

[2] All citations to "¶___" are to Plaintiff's Complaint.

OPPOSITION TO MOTION OF DEFENDANT WELLS FARGO & CO. TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT  — Case No.:  05-cv-4518 (WHA)

3

Defendants and the (ii) Registrant and Distributor Defendants, respectively, for failing to disclose the conflicts of interest arising from the Broker-Dealer Defendant's receipt of revenue sharing payments from all of the Shelf Space Funds, and from the Wells Fargo proprietary funds, respectively.  ¶¶174-179, 143-150.  Count IV is a claim pursuant to §10(b) and Rule 10b-5 thereunder against all Defendants for knowing or recklessly materially misrepresenting and/or omitting to disclose details of the kickback arrangements with the Shelf Space Funds.  ¶¶186-197.  Count VI is a claim pursuant to §36(b) of the '40 Act against the Investment Advisor Defendants and Distributor Defendants for charging excessive fees.  ¶¶203-207.  Counts III, V and VII are claims pursuant to §15 of the '33 Act, §20(a) of the '34 Act and §48(a) of the '40 Act, accordingly, against Wells Fargo in connection with its role as the control person of the other Defendants (collectively, the "Control Person Claims").  ¶¶180-185, 198-202, 208-213.

In support of his Control Person Claims, Plaintiff alleges the nature of Wells Fargo's control in great detail.   The Complaint explains that Wells Fargo is the ultimate parent of the Defendants (¶16) and that Wells Fargo has operational control over the Defendants and thus had the power and authority to control them (¶¶183-211).   Further, the Complaint alleges that Wells Fargo had direct and supervisory involvement in the operations of the Broker-Dealer Defendants.  ¶200.  Finally, the Complaint explains the stock control relationship of several Defendants in even greater detail. ¶¶17-25.

The facts underlying Defendants' actions described in the Complaint only became public very recently.  The details regarding the Defendants' kickback arrangement started to be revealed on June 8, 2005 when the NASD press released its censure and fine of the Broker/Dealer Defendants. ¶¶63-64.  In December 2005, greater disclosure of the extent of Defendants' conflicts of interest were revealed when Wells Fargo publicly circulated a document discussing its "Platform Participant" Program with the Shelf Space Funds. ¶65.

## III.    STANDARDS FOR MOTION TO DISMISS

The legal standards applicable to a motion to dismiss are as set forth in the Plaintiff's Opposition to the Motion of Defendants Wells Fargo Funds Management, LLC, Wells Capital Management, Inc., Wells Fargo Funds Distributor, LLC and Stephens Inc. To Dismiss Plaintiff's

Consolidated Amended Class Action Complaint ("Plaintiff's Opposition to Defendants' Motion to Dismiss the §36(b) Claims"), and are incorporated herein by reference.

## IV.   ARGUMENT

### A.   Plaintiff's Complaint Adequately States Control Person Liability

The Complaint alleges that Defendant Wells Fargo violated §15 of the '33 Act, 15 U.S.C. §77o ("§15"), §20(a) of the '34 Act, 15 U.S.C. §78t(a) ("§20(a)"), and §48(a) of '40 Act, 15 U.S.C. §80a-47(a) ("§48(a)") as the controlling party liable for the controlled entities' primary violations of the securities laws.  Wells Fargo has challenged its liability as a control person on three grounds. First, it erroneously contends that all of Plaintiff's claims are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b) ("Rule 9(b)").  Second, Wells Fargo mistakenly argues that Plaintiff has not met the Ninth Circuit's test for control person liability under §15 and §20(a). Third, Wells Fargo wrongly argues that there is no private right of action under §48(a) for a claim under §36(b) of the '40 Act, 15 U.S.C. §80a-35(b) ("§36(b)") and spuriously suggests that the test for a violation of §48(a) should be imported from §20(b) of the '34 Act.

### 1.   Because The Complaint Does Not Allege A 'Unified Course' of Fraudulent Conduct - Rule 9(b) Does Not Apply

In an effort to have the heightened pleading requirements of Rule 9(b) apply to each of Plaintiff's claims, Defendants incorrectly assert that the Complaint alleges fraud throughout and therefore 'sounds in fraud.' [3]  As set forth by the Ninth Circuit in *Vess,* a case relied upon by Wells Fargo, "[i]n other cases, however, a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct.  In such cases, ***only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements***." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1104 (9th Cir. 2003) (emphasis added).  In the instant case, even with respect to the claims underlying the Control Person Claims against the various Defendants, only ***one*** of the ***seven*** claims avers fraud: the §10(b) '34 Act claim. Indeed, the few sections of the Complaint cited by Wells Fargo in its brief as evidence that

---

[3] Motion of Defendant Wells Fargo & Co. To Dismiss Plaintiffs' Consolidated Amended Class Action Complaint (Dkt. 62) ("Def. Br.") at 3-4.

imputations of fraud are throughout the Complaint only implicate Defendants' **broker-dealer activities** which are the subject of Plaintiff's '33 Act and '34 Act claims and **not** Plaintiff's '40 Act allegations, which allege an entirely separate course of conduct regarding the charging of excessive fees. Def. Br. at 3. Further, Plaintiffs '33 Act claims allege those claims on a non-fraudulent basis and further **specifically disclaim fraud**.[4] Finally, Plaintiff's '40 Act allegations are only against the Investment Adviser and Distributor Defendants (and Wells Fargo as a control person), and are limited to breaches of fiduciary duty for charging excessive fees.[5] Indeed, the '40 Act factual allegations are set forth under a separate title, "The Wells Fargo Funds' Investment Advisers and Distributors Engaged in Improper Conduct," are clearly segregated from the '33 Act and '34 Act claims, and **contain no averments of fraud**.[6] As such Plaintiff has **not** "allege[d] a unified course of fraudulent conduct and rel[ied] entirely on that course of conduct as the basis of a claim." *Vess,* 317 F.3d at 1103.[7]

## 2. Rule 9(b) Does Not Apply To Plaintiff's Non-Fraud Claims

Even assuming, arguendo, that Rule 9(b) could govern the Control Person Claims where the underlying claims are "grounded in fraud," the §12(a)(2) claims alleged by Plaintiff against certain

---

[4] *See* ¶¶174, 143, 180.

[5] *See Degulis v. LXR Biotechnology, Inc.*, 928 F. Supp. 1301, 1310 (S.D.N.Y. 1996) ("The fact that subsequent counts in the Complaint allege fraud and that certain acts underlie both the Section 11 and 12(2) claims and the claims that directly allege fraud does not necessarily mean that the former are based in fraud."). With respect to the '40 Act claims, the instant situation is further distinguishable because the '40 Act claims rely on an entirely separate course of conduct - the charging of excessive fees.

[6] The '40 Act factual allegations are set forth in a separate section (¶¶96-168), which appears in the Complaint after the '33 Act and '34 Act claims and scienter allegations.

[7] The cases cited by Wells Fargo in which courts found '33 Act claims were "grounded in fraud" or "sounded in fraud" all involved situations where either allegations of fraud underlying other claims were incorporated into the claim at issue or where fraudulent acts were alleged in the claims. *See e.g. Vess,* 317 F.3d 1097 at 1106-1108 (complaints against the APA and CHADD allege fraudulent activity and are therefore subject to Rule 9(b)); *In re Anchor Gaming Sec. Litig.*, 33 F. Supp. 2d 889, 893 (D. Nev. 1998) (non-fraud counts "include[ed] allegations of fraudulent misconduct"); *Rhodes v. Omega Research, Inc.,* 38 F. Supp. 2d 1353 at 1361 (D. Fla. 1999) ('33 Act claims averred that Defendants "intentionally mislead investors"); *In re Computervision Corp. Sec. Litig.*, 869 F. Supp. 56, 63 (D. Mass. 1994) (complaint "sounds in fraud" where all counts incorporated allegations of fraud perpetrated on the investing public). *Brody v. Homestore, Inc.,* 2003 U.S. Dist. LEXIS 17267, at 12-14 (D. Cal. Aug. 8, 2003) is of no precedential value on this issue because the court held that the '33 Act claims sounded in fraud without *any analysis.*

---

Defendants are clearly not grounded in fraud.  Complaints that are grounded in fraud need not use the specific word, but they must allege that the misstatements were made with "an intent to deceive." *Kensington Capital Management v. Oakley*, Inc., 1999 U.S. Dist. LEXIS 385, at *6 (C.D. Cal. Jan. 14, 1999).  This court has recently held that where a plaintiff's '33 Act claim is based on a non-fraud theory of liability and the claim expressly disclaims fraud, Rule 9(b) will not apply.  *See In re Exodus Communs., Inc. Sec. Litig.,* 2005 U.S. Dist. LEXIS 20222, at *32-43 (N.D. Cal. Aug. 5, 2005) (Chesney, J.).  On reconsideration, the Court held that a plaintiff need not expressly allege negligence where there is a non-fraud basis for liability.  *In re Exodus Communs., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 34449, *4-5 (N.D. Cal. Sept. 12, 2005).  *See also In re NationsMart Corp. Sec. Litig.,* 130 F.3d 309, 315 (8th Cir. 1997) (complaint expressly disavows any claim of fraud in connection with Securities Act claims); *In re JDS Uniphase Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 20831, at *34 (N.D. Cal. Jan. 6, 2005) (holding that Rule 9(b) did not apply to the plaintiffs '33 Act claims because fraud had been disclaimed despite many of the claims in the complaint sounding in fraud).

Here, Plaintiff's '33 Act claims do not make a 'wholesale' adoption of the securities fraud allegations -- indeed they expressly disclaim fraud: "Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except that, for purposes of this claim, Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct."  ¶174; *see also* ¶¶180 and 188.  In addition, Plaintiff alleges a non-fraud basis for the underlying '33 Act claims: that the relevant Defendants were sellers of Shelf Space Funds (¶¶176, 145), that they failed to disclose a conflict of interest (¶¶175, 146), that they caused the deficient prospectuses to be issued (¶¶177, 147) and the prospectuses were misleading (¶¶178, 148).  *See In re Exodus Communs. Inc.* 2005 U.S. Dist. LEXIS 20222, at *42.

Moreover, Rule 9(b) also does not apply to Plaintiff's Control Person Claims, or indeed any of his '33 Act or '40 Act claims, because the "statement of those claims in the complaint was separate and distinct from the statement of the plaintiff's Exchange Act claims and because there were no averments of fraud underlying [the non-Exchange Act] claims … [even] though some allegations underlying the [non-Exchange Act] claims reference allegations underlying the

Exchange Act claims." *In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1077-1078 (D. Cal. 2003). *See also In re Cendant Corp. Litig.*, 60 F. Supp. 2d 354, 363-364 (D.N.J. 1999); *In re Exodus Communs. Inc.*, 2005 U.S. Dist. LEXIS 20222, at *38. Indeed, it should be also noted that not only do Plaintiffs '33 Act claims expressly disclaim fraud, but Plaintiffs' '34 Act Claims expressly disclaim allegations relating to the '33 Act Claims. ¶¶188, 198.

Finally, given that Plaintiff has not yet had the benefit of discovery to determine the extent of the various Defendants' scienter, Plaintiff should be able to plead its disclosure claims in the alternative in this manner pursuant to Rule 8(e)(2). Fed. R. Civ. P. 8(e)(2). *See In re Exodus Communs. Inc.*, 2005 U.S. Dist. LEXIS 20222, at *35-40; *JDS Uniphase*, 2005 U.S. Dist. LEXIS 20831, at *34.

### 3.     Allegations of Control Do Not Import Fraud

Even if the underlying '33 Act, '34 Act and/or '40 Act claims are held to require Rule 9(b) pleading, Rule 9(b) does not apply to the Control Person Claims. The circumstances of control by the Control Person Defendant are ***not*** among the "circumstances constituting fraud or mistake" that Rule 9(b) requires to be pled with particularity.[8] "Confusion has arisen about this issue because courts tend to discuss the pleading requirements for securities claims together. Technically, the strict pleading requirements of Rule 9(b) are probably properly applied to the §10(b) and Rule 10b-5 claims, but not to the §20 claim."[9]

---

[8] *See, e.g., Draney v. Wilson, Morton, Assaf & McElligott,* 1980 U.S. Dist. LEXIS 11220, at *2 (D. Ariz. Apr. 15, 1980) ("[I]t is sufficient for Plaintiff's Complaint to allege the specific conduct, and to further allege that all Defendants engaged therein without making individual allegations as to each Defendant"); *In re Tel-Save Sec. Litig.*, No. 98-3145, 1999 U.S. Dist. LEXIS 16800, at *18 (E.D. Pa. Oct. 19, 1999); *Derensis v. Coopers & Lybrand Chtd. Accountants,* 930 F. Supp. 1003, 1013 (D.N.J. 1996); *Keys v. Wolf,* 540 F. Supp. 1054, 1066 (N.D. Tex. 1982), *rev'd on other grounds*, 709 F.2d 413 (6th Cir. 1983) ("Though plaintiffs' complaint explains each misrepresentation and its falsity without explaining each individual defendant's fraudulent acts, the latter requirement does not apply when the alleged liability is as a control person of an entity that violated the securities laws"); *In re Nat'l Student Mktg. Litig.,* 413 F. Supp. 1156, 1158 (D.D.C. 1976) (allegations relating to control group liability are not covered by Rule 9(b)'s particularity requirement because they concern only vicarious liability for fraudulent activity and are not themselves "averments of fraud").

[9] *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 623 F. Supp. 1466, Fed. Sec. L. Rep. (CCH) P 92465 (W.D. Wash. 1985), *decision aff'd on other grounds*, 823 F.2d 1349, Fed. Sec. L. Rep. (CCH) P 93330 (9th Cir. 1987). Indeed, even with respect to the underlying claims, the Rule 8 standard for pleadings ordinarily applies to claims brought pursuant to §12(a)(2) of the '33 Act and

OPPOSITION TO MOTION OF DEFENDANT WELLS FARGO & CO. TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT  — Case No.: 05-4518 (WHA)

8

4.      **Rule 9(b)'s Purpose Would Not be Served by Applying it To Corporate Control Person Claims**

Rule 9(b) should also not be applied to the Control Person Claims in this case because it would not further any of the purposes of Rule 9(b).  Rule 9(b) imposes a higher pleading standard "[to ensure] that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge … [and] also prevents the filing of a complaint as a pretext for the discovery of unknown wrongs and protects potential defendants -- especially professionals whose reputations in their fields of expertise are most sensitive to slander -- from the harm that comes from being charged with the commission of fraudulent acts…" *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  "To require that non-fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments, however, serves no similar reputation-preserving function, and would impose a burden on plaintiffs not contemplated by the notice pleading requirements of [Rule 8(a)]." *Vess,* 317 F.3d at 1104.  Here, further detail regarding Wells Fargo's control of the other Defendants would neither enhance its notice of the claims against it nor serve to protect its reputation given that its wholly-owned subsidiaries are directly involved.

5.      **Standards Governing Control Person Liability**

Even if this Court holds that all of Plaintiffs' Control Person Claims against Wells Fargo are subject to a heightened standard requiring particularity, Plaintiff easily meets this burden.   Sections 15 and 20(a) impose "joint and several liability on any person who controls a person or entity liable under any provision of the primary Act." *In re BankAmerica Corp. Sec. Litig.,* 78 F. Supp. 2d 976, 992 (E.D. Mo. 1999).  "Although §15 [of the '33 Act] is not identical to §20(a) [of the '34 Act], *the controlling person analysis is the same*." *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1578 (9th Cir. 1990) at *47 (emphasis added); *In re Proxima Corp. Sec. Litig.*, 1994 U.S. Dist. LEXIS 21443, at *27-28 (D. Cal. May 3, 1994); *Pharo v. Smith*, 621 F.2d 656, 672-73 (5th Cir. 1980).  "In order to prove a prima facie case [of control person liability], plaintiff must prove: (1) a primary

----

§36(b) of the '40 act.  *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1223 (1st Cir. 1996); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100 (D. Mass. 2006).

violation of federal securities laws …; and (2) that the defendant exercised actual power or control over the primary violator." *Howard v. Everex Sys. Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (citing *Hollinger*, 914 F.2d at 1575, n 9).  Allegations of control person liability must be construed "liberally and flexibly." *In re Thortec Sec. Litig.*, 1989 U.S. Dist. LEXIS 6003, Fed. Sec. L. Rep. (CCH) P 94,330 at 92,159 (N.D. Cal. Jan. 25, 1989).  "Thus, in order to make out a prima facie case, it is not necessary to show actual participation or the exercise of actual power; however, a defendant is entitled to a good faith defense if he can show no scienter and an effective lack of participation." *Howard*, 228 F.3d at 1065.

The SEC has defined "control" to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether ***through the ownership of voting securities,*** by contract, or otherwise." 17 C.F.R. §230.405.  *Id* (emphasis added).  "Control" must be determined by evaluating the day-to-day affairs of the corporation as a whole, not the particular transaction at issue in the litigation.  *Paracor Fin., Inc. v. G.E. Capital Corp.*, 96 F.3d 1151, 1162 (9th Cir. 1996).  At this stage of the litigation, Plaintiff ***need only plead facts showing a reasonable inference*** that Defendants had the power to influence and direct the activities of the primary violators.  *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1032 (S.D. Cal. 2005).

Defendants mistakenly insist that Plaintiff must plead that "the alleged control person was a 'culpable participant' in the alleged violation." Def. Br. at 5.  This assertion badly misstates the law. The Ninth Circuit has repeatedly held that the plaintiffs are not required to allege either scienter or culpable participation in order to plead control person liability.  *Hollinger*, 914 F.2d at 1575-1576 (stating that a "plaintiff is *not* required to show "culpable participation" to establish that a broker-dealer was a controlling person under §20(a)" ***and*** holding that the test for 'control person' liability is the same under both the '33 Act and the '34 Act); *In re CBT Group PLC Sec. Litig.*, 2000 U.S. Dist. LEXIS 19214, at *14 (N.D. Cal. Dec. 29, 2000) ("To establish controlling person liability, a plaintiff need not show defendant's scienter or that it "culpably participated" in the alleged

wrongdoing.").[10]  Thus, in order to make out a prima facie case, *it is not necessary to show actual participation or the exercise of actual power*, however, a defendant is entitled to a good faith defense if he can show no scienter and an effective lack of participation.  *Howard*, 228 F.3d at 1065 (9th Cir. 2000).

Here, the Complaint clearly alleges that Wells Fargo is the ***ultimate parent*** of Wells Fargo Investments, LLC ("WF Investments"), H.D. Vest Investment Services, LLC ("H.D."), Wells Fargo Funds Management, LLC ("Fund Management"), Wells Capital Management Inc. ("Wells Capital"), and Wells Fargo Funds Distributor, LLC ("Wells Distributor") (¶16).  Additionally, the Complaint alleges that (1) H.D. is an affiliated subsidiary of Wells Fargo (¶18); (2) Fund Management is an indirect, wholly-owned subsidiary of Wells Fargo (¶20); (3) Wells Capital is an affiliate of Funds Management (¶22); and (4) Wells Distributor is an affiliate of Fund Management (¶25).  Further, in Counts III, V and VII,  the Complaint alleges that Wells Fargo, by virtue of its positions of operational control and/or authority over Fund Management and Wells Capital Management (¶¶200, 211), Wells Distributor (¶¶183, 200, 211), WF Investments and H.D. Vest (¶¶183, 200), Wells Fargo, directly and indirectly, had the power and authority, and exercised the same, to cause them to engage in the wrongful conduct.  Thus, Plaintiff alleges more than adequately that Wells Fargo had actual power and control over the Defendants with respect to the revenue sharing and directed brokerage agreements alleged in the Complaint.[11]  Indeed, even "Rule 9(b) does "not require nor make legitimate the pleading of detailed evidentiary matter.  Rather, it only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Anspach v. Bestline Products, Inc.*, 382 F. Supp. 1083, 1090-1091 (N.D. Cal. 1974).

---

[10] Plaintiffs respectfully submit that cases cited by the Defendants to support their "culpable participant" argument are unavailing as they universally rely, via *Durham v. Kelly,* 810 F.2d 1500 (N.D. Cal. 2003), on the underlying decision by the Ninth Circuit in *Kersh v. General Council,* 804 F.2d 546 (9th Cir. 1986).  However, the more recent Ninth Circuit decision of *Hollinger*, 914 F.2d at 1575 n.23 expressly rejected the reasoning of the *Kersh* decision.

[11] It should be noted that, although not necessary, the Complaint further alleges that Wells Fargo had direct and supervisory involvement in the operations of the Defendants and, therefore, is presumed to have had the power to control or influence the particular transaction giving rise to the securities violations alleged therein.  ¶201.

Second, in addition to the detailed allegations of Wells Fargo's control over the other Defendants contained in the Complaint, Wells Fargo's public filings explicitly state that Wells Fargo controlled the Defendants during the Class Period.  As a public company, Wells Fargo is required to file annually with the Securities Exchange Commission (the "SEC") a Form 10-K (17 C.F.R. §249.310).  Section 13 or 15(d) of the '34 Act (15 U.S.C. §§78m and 78o(d), respectively).  Form 10-K Item 15 requires that issuers file the exhibits required by Item 601 of Regulation S-K (17 C.F.R. §229.601) as attachments to the Form 10-K.  Item 601(b)(21)(i) of Regulation S-K, requires that a registrant "list all subsidiaries of the registrant…"[12]  The term "subsidiaries" is defined in the applicable definitions for Regulation S-X as "an affiliate controlled by such person, directly, or indirectly through one or more intermediaries," and "control," in connection with Form 10-K is defined **identically** to the definition used by courts to determine control for the purposes of §15 of the '33 Act and §20(a) of the '34 Act:[13] "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through *the ownership of voting shares*, by contract, or otherwise." 17 C.F.R. §210.1-02 (x) and (g), respectively.  (emphasis added.)

On Wells Fargo's Form 10-K for the period ending December 31, 2004, the attached Exhibit 21 identifies Funds Management, Wells Capital, and WF Investments as being "controlled" (the "2004 Exhibit 21").  *See* Declaration of Michael R. Reese ("Reese Decl."), Ex. P.  In addition, the 2004 Exhibit 21 also identifies as "controlled" H.D. Vest Investment Securities, Inc., which is a former name of Defendant H.D. according to its registration with the NASD.[14]  Reese Decl. Ex. Q. Further, the Exhibit 21 filed in connection with Wells Fargo's Form 10-K for the period ending December 31, 2005, additionally identifies Wells Distributor as being "controlled."  Reese Decl.

---

[12] Exempted from disclosure in the exhibits to Form 10-K are subsidiaries who, if considered in the aggregate as a single subsidiary, would not constitute a significant subsidiary (a subsidiary in which the registrant has (i) advanced greater than 10% of its assets to the subsidiary, (ii) has greater than a 10% share of the assets of the subsidiary or (iii) the registrants share of the income of the subsidiary exceeds 10% of the registrant (17 C.F.R. §210.1-02 (w)).  17 C.F.R. §229.601(b)(21)(ii).

[13] *See Howard*, 228 F.3d 1057 at n.9.

[14] Available through the NASD's 'BrokerCheck' service at http://pdpi.nasdr.com/PDPI/

OPPOSITION TO MOTION OF DEFENDANT WELLS FARGO & CO. TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT  — Case No.:  05-cv-4518 (WHA)

12

1    Ex. R.  As such, Wells Fargo's own public filings demonstrate that it controlled each of the

2    Defendants except Stephens Inc. and Trust as **a *matter of law***.

3          Further, several of Wells Fargo's subsidiaries have also registered as investment advisers

4    with the SEC.  To register as an investment adviser, applicants must complete and file with the SEC

5    Form ADV (17 C.F.R. §279.1).  17 C.F.R. §275.203-1(a).  Once registered as an investment

6    adviser, advisers must amend their Form ADV "at least annually" and "[m]ore frequently, if

7    required by the instructions to Form ADV."  17 C.F.R. §275.204-1(a).

8          Form ADV, Schedules A and B, Part 7(a) require that, for each direct owner, indirect owner

9    and executive officer of a registered investment adviser, the adviser must identify whether that

10   person exercises "control" over the adviser.  The Glossary of Terms to Form ADV ***also*** defines

11   "control" as "the power, directly or indirectly, to direct the management or policies of a person,

12   whether through ownership of securities, by contract, or otherwise."

13         Fund Management's Form ADV filed during the Class Period identifies Wells Fargo as a

14   "control" person.  Reese Decl. Ex. S.  WF Investment's Form ADV filed during the Class Period

15   identifies Wells Fargo as a "control" person.  Reese Decl. Ex. T.  Wells Capital's Form ADV filed

16   during the Class Period identifies Wells Fargo as a "control" person.  Reese Decl. Ex. U.

17         The Court may properly take judicial notice of these admissions by Defendant Wells Fargo

18   in publicly-available information filed with the SEC that it has the power "directly or indirectly, to

19   direct the management or policies of [the other Defendants]" and is therefore the control person of

20   the other Defendants under §15 and §20(a).  *See United States v. Wood*, 925 F.2d 1580, 1581-82

21   (7th Cir. 1991) (stating that, in considering Rule 12(b)(6) motions to dismiss, "[t]he district court

22   may . . . take judicial notice of matters of public record.");  *In re Blue Rhino Corp. Secs. Litig.*, 2004

23   U.S. Dist. LEXIS 27942, at *12-13 (C.D. Cal. Oct. 7, 2004) ("[J]udicial notice is allowed for facts

24   'not subject to reasonable dispute in that [they are] either (1) generally known within the territorial

25   jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources

26   whose accuracy cannot reasonably be questioned'.").  See also Fed. R. Evid. 201(b).

27         Given the liberal pleading standards under §15 and §20(a), Plaintiff has clearly raised facts

28   sufficient to support a "reasonable inference of control" against Defendant Wells Fargo.  *Capital*

*Ventures Int'l v. Network Commerce, Inc.*, 2006 U.S. Dist. LEXIS 14657, at *6-7 (D. Wash. Mar. 16, 2006). Further, based on the common definition of "control" used in connection with the Control Person Claims, Form 10-K and Form ADV, this Court could hold that certain Defendants are controlled by Wells Fargo as **a matter of law**. Defendant Wells Fargo's motion to dismiss the Control Person Claims should therefore be denied.

### B. Plaintiff's Claims Are Timely

Defendant Wells Fargo's assertion that Plaintiff's claims should be dismissed because they are barred by the statute of limitations,[15] is wrong **both** because (1) none of the materials cited by Wells Fargo were sufficient to put Plaintiff on notice of his claims; *and* because (2) in light of the volume of materials submitted by Defendants, such a determination has become a highly factual inquiry inappropriate on a motion to dismiss.

Although the Ninth Circuit has declined to decide whether the statute of limitations is triggered by actual discovery or "inquiry notice," Plaintiff's claims are not time barred under either standard. *Berry v. Valence Tech., Inc.*, 175 F.3d 699, 704 (9th Cir. 1999). In *Berry*, the Ninth Circuit stated that if it adopted the 'inquiry notice' standard, it would apply the Tenth Circuit's two-part application of the test:

> Inquiry notice triggers an investor's duty to exercise reasonable diligence and the statute of limitations period begins to run once the investor, in the exercise of reasonable diligence, should have discovered the facts underlying the alleged fraud.

*Id.* (internal citations omitted).

In other words, under an inquiry notice standard, an event must occur which would prompt a reasonable investor to investigate further and the investor then is allowed a reasonable amount of time to discover the falsity. The statute of limitations only begins to run after a reasonable time for investigation and discovery of the falsity. Further, "[t]he existence of fraud must be a probability, not a possibility." *Newman v. Warnaco Group, Inc.*, 335 F.3d 187, 194 (2d Cir. 2003). As such,

---

[15] Def. Br. at 9.

Defendants are required to show that Plaintiff were both put on notice of their claims, and could have objectively completed a sufficient investigation prior to November 4, 2004.[16]

### 1. General Regulatory Discussions Cannot Provide Adequate Inquiry Notice

First, Defendants make the completely absurd and unsupported argument that SEC and NASD discussions regarding revenue-sharing dating back as far as 1977 that ***do not mention any of the Defendants***, should have been Plaintiff on inquiry notice his claims. It is telling that Defendants fail to cite ***a single case*** to support their proposition that general regulatory agency discussion of the issue of revenue sharing would be sufficient to put Plaintiff on constructive notice of his specific claims against these Defendants as a matter of law, or otherwise -- because aside from its facial improbability, no support for this assertion exists.

Courts require that for plaintiffs to be on inquiry notice, "[t]he triggering . . . data must be such that it *relates directly* to the misrepresentations and omissions the Plaintiffs later allege in their action against the defendants." *Newman*, 335 F.3d at 193 (emphasis added) (citation and quotation marks omitted). Other courts have also held that, to be put on inquiry notice, public information must be specific to the plaintiffs' claims. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 431, 447 (S.D.N.Y. 2003) (in which the court held that none of the press reports identify particular statements by WorldCom itself that would sufficiently alert an investor to her potential claims and even concluded that the service of a sweeping SEC subpoena was also an insufficient trigger as it did not reveal any particular accounting irregularity.). The Ninth Circuit has also held specificity is required of public information to find that a reasonable investor should begin to investigate the possibility of fraud in an investment. *Gray v. First Winthrop Corp.*, 82 F.3d 877, 882 (9th Cir. 1996) as amended on denial of rehearing and rehearing *en banc* (Jun. 21, 1996) (not

---

[16] Plaintiffs filed their original complaint in this case on November 4, 2005. The statute of limitations requires that claims pursuant to §10(b) '34 Act and Rule 10b-5 thereunder must be brought no later than "2 years after the discovery of the facts constituting the violation" 28 U.S.C. § 1658(b), and claims brought pursuant to §12(a)(2) "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence[.]." 15 U.S.C. § 77m. As such, Plaintiffs' claims will only be untimely if this court holds, as a matter of law, that the statute of limitations began to run before ***November 4, 2004,*** with respect to the '33 Act claims, or ***November 4, 2003***, with respect to the '34 Act claims.

finding inquiry notice as a matter of law where defendant company disclosed generally that company performance was below projections, but did not disclose that investment was likely to fail).

The materials cited by Wells Fargo only deal with the issue of regulating revenue-sharing practices *generally*.  None of the materials cited by Wells Fargo detail the specific shelf space programs of Defendants at issue in the Complaint.  ***Moreover, not one*** of the many documents submitted by the Defendants to this Court ***name the Defendants.***

Speaking directly to this issue, Courts have specifically held that a reasonable investor is not put on inquiry notice of their claims until information becomes public that ***implicates the company in which they hold securities*** in the wrongdoing that is the basis for their claims.  For example, the Second Circuit in *Lentell v. Merrill Lynch & Co.*, held that numerous articles on the subject of structural conflicts in the analyst industry were "insufficient as a matter of law to put plaintiffs on inquiry notice of the frauds alleged with respect to the Internet Group's coverage [of the specific companies in which plaintiffs held shares]." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 170 (2d Cir. 2005), *writ of certiorari denied, Lentell v. Merrill Lynch & Co.*, 126 S. Ct. 421 (U.S. 2005). The court held in *Lentell* that even articles appearing after the initial public offerings of companies in question, detailing the breakdown in the "Chinese wall" between firms' analysts and investment bankers, and naming the defendant firm, were insufficiently particular to trigger a duty to investigate since they did not specifically relate to companies in question. *Id.  See, e.g., La Grasta v. First Union Secs. Inc.*, 358 F.3d 840, 846 (11th Cir. 2004) (finding earliest inquiry notice of stock analyst's conflict of interest to be a published interview in which she referenced the conflict with respect to the specific security); *Amy Liu v. Credit Suisse First Boston Corp. (In re Initial Pub. Offering Sec. Litig.)*, 341 F. Supp. 2d 328, 349 (S.D.N.Y. 2004) (where the Court held that even articles that specifically referred to high-technology "bubble" stocks could not constitute 'inquiry notice' because they "ma[de] no mention of any of the Issuers by name, and [did] not suggest that CSFBC or any of the other Defendants were engaging in the practice of deliberately underestimating a company's expected earnings.").

Further, even if Plaintiff *was* on inquiry notice of his claims by any of the general regulatory debates cited by Defendants, which they clearly could not have been, courts have held that, as part of the 'reasonable diligence' arm of the inquiry notice test, a plaintiff may await the outcome of a government-initiated investigation before bringing their claims because it would be unjust to "punish [a] pleader for waiting until the appropriate factual information [has been] gathered by dismissing the complaint as time-barred." *Lentell* 396 F.3d at 171.  As stated in the Complaint, the details of Wells Fargo's kickback arrangement began to emerge *at the earliest* on June 8, 2005, when the NASD publicly announced its censure and fine of the Broker/Dealer Defendants.  ¶63. Clearly then, Plaintiff's claims are clearly timely as they were brought on November 4, 2005 -- easily within a year of this announcement.

### 2.      The Shelf-Space Funds' Prospectuses Cannot Constitute Inquiry Notice

Wells Fargo also makes the convoluted argument that Plaintiff can also be adjudged to be on inquiry notice of his claims from the general revenue-sharing disclosure in the various funds' prospectuses because Wells Fargo states that the Broker-Dealer Defendants were entitled to rely on prospectuses to satisfy their disclosure requirements.[17]  First, *none* of the materials cited by Defendants in connection with this argument stand for Defendant's absurd proposition that broker-dealers may rely on prospectuses to satisfy their obligation to disclose their participation in revenue-sharing practices *if such practices are inadequately disclosed in the prospectus.*[18]  Second,

---

[17] Def. Br. at 10.

[18] Securities Confirmations, Exchange Act Release No. 13508 at n.41 (May 5, 1977) (The supplemental information for Rule 10b-10 cited by Defendants allows a broker to rely on the disclosure in a prospectus regarding her remuneration *only if* the "final [sic] prospectus delivered to the customer … set[s] forth the information required by the proviso with respect to source and amount of remuneration") (emphasis added); *Press v. Quick & Reilly*, 218 F.3d 121, 127 (2d Cir. 2000) (agreeing with the SEC's interpretation of Rule 10b-10 that: "…*[I]f information required by Rule 10b-10 is contained in a prospectus* for the fund in which the customer's money is invested, a broker-dealer *is not required to repeat* such information in the periodic confirmation statements it sends to the customer," and concluding that only compliance with Rule 10b-10 will allow broker-dealers to rely on prospectus disclosure) (emphasis added); Brief of the Securities and Exchange Commission, *Amicus Curiae*, filed in *Press v. Quick & Reilly*, available at 2000 WL 34447852, at 7, 13 (Feb. 14, 2000) ("as a general principle delivery of a prospectus *containing sufficient disclosure* can satisfy a broker-dealer's obligation under Rule 10b-10" but, "[t]he requirement under [Rule 10b-10] that particular information be disclosed is not determinative of a broker-dealer's obligation under the general antifraud provisions of the federal securities laws to disclose additional information to a customer at the time of the customer's investment decision.") (emphasis added).

Defendants are inappropriately attempting to confuse the issue of when broker-dealers can rely on disclosure of revenue-sharing practices in public documents with the issue of **when Plaintiff was on notice of his claim** that such disclosure was inadequate -- but the two ideas do not relate.  It is circular and misleading for Defendants to suggest that the **non-disclosure** of revenue-sharing deals about which Plaintiff complains gave Plaintiff notice of his claims for non-disclosure.  Further, Defendant's claim that undisclosed revenue sharing is a lawful practice (Def. Br. at 11), although irrelevant for the purposes of a statute of limitations inquiry, is belied by the various regulatory actions that have been taken to curb such activity.[19]

### 3.    A Determination Of Inquiry Notice Is Inappropriate At This Stage

The statute of limitations is an affirmative defense for which Defendant Wells Fargo faces a high burden to dismiss Plaintiff's claims at the motion to dismiss stage.  "Summary judgment is appropriate only when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct…[and] [the moving party has an] extremely difficult burden to show that there exists no issue of material fact regarding notice."  *Gray*, 82 F.3d at 881 (internal citations and quotations omitted).  *See In re Exodus Communs. Inc.*, 2005 U.S. Dist. LEXIS 20222, at *22 ("[T]he question of when a reasonably diligent investor did discover or should have discovered the alleged wrongdoing is a question of fact, rarely to be decided as a matter of law").  Wells Fargo clearly has not met this burden.  However, even if Wells Fargo had, in light of the voluminous materials submitted by Wells Fargo to support its arguments, Defendant Wells

---

[19] As set forth in the Complaint, the NASD has sanctioned and fined the Broker/Dealer Defendants for a violation of NASD Rule 2830(k) -- "[b]y arranging for and accepting brokerage commissions to pay for the fund families' participation in the programs [described above], Respondents [Wells Fargo Investments] violated NASD Conduct Rule 2930(k) and 2110…[for] accepting more than $21 million dollars of directed brokerage during the Class Period." ¶¶34-35.  Defendants' claim that their undisclosed revenue-sharing practices are lawful is further belied by regulatory determinations in two other nearly-identical cases which also involved the receipt by broker-dealers of revenue sharing payments: American Express and Edward Jones. *See also* Reese Decl. Ex. A (Nov. 17, 2003 SEC Order Instituting Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions in the Matter of Morgan Stanley DW), Reese Decl. Ex. B (Dec. 22, 2004 SEC Order Instituting Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions in the Matter of Edward D. Jones & Co., L.P.); Reese Decl. Ex. C (Dec. 1, 2005 SEC Order Instituting Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions in the Matter of American Express Financial Advisors).

OPPOSITION TO MOTION OF DEFENDANT WELLS FARGO & CO. TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT  — Case No.:  05-cv-4518 (WHA)

18

1  Fargo's statute of limitations defense would raise significant factual issues that could not be

2  resolved in its favor on a motion to dismiss.[20]

3      **C.    Plaintiff has Adequately Pleaded a Violation of 48(a) of the '40 Act**

4          Wells Fargo wrongly argues that there is no private right of action under §48(a) for a claim

5  under §36(b) of the '40 Act, 15 U.S.C. §80a-35(b) ("§36(b)") and spuriously suggests that the test

6  for a violation of §48(a) is actually similar to §20(b) of the '40 Act.

7          Defendants are wrong.  §48(a) of the '40 Act makes it unlawful for "any person, directly or

8  indirectly, to cause to be done ***any act or thing*** through or by means of any other person ***which it***

9  ***would be unlawful for such person to do under the provisions of [the ICA]*.**"  15 U.S.C. §80a-

10  47(a) (emphasis added).  A private right of action therefore exists under §48(a) to the same extent it

11  exists under other sections of the '40 Act, including §36(b), which have an express private right of

12  action.  *See, e.g., In re Dreyfus Mut. Funds Fee Litig.*, 2005 U.S. Dist. LEXIS 29152, at *47 (D. Pa.

13  Sept. 30, 2005) (upholding plaintiffs' §36(b) claim and therefore, plaintiffs' §48(a) claim as well)

14  *judgment on the pleadings in defendants' favor on other grounds*, 2006 U.S. Dist. LEXIS 29554

15  (Apr. 7, 2006);  *In re ML-Lee Acquisition Fund II*, 848 F. Supp., 527, 545-46 (D. Del. 1994)

16  (upholding §48(a) claim).  Courts have thus permitted plaintiffs to proceed with discovery under

17  §48(a) where the plaintiffs have based their §48(a) claim on an underlying violation of the ICA,

18  such as §36(b).  *See Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002) (upholding an implied right of

19  action under ICA §§36(a) and 48(a)).

20          Plaintiff has adequately stated a claim under §48(a) of the '40 Act.  First, as set forth in

21  Plaintiff's Opposition to Defendants' Motion to Dismiss the §36(b) Claims, filed concurrently

22  herewith, Plaintiff has adequately alleged a violation of §36(b).  Second, as set forth above, Plaintiff

23  has adequately pled Wells Fargo's involvement in the underlying violations of the other Defendants

24  as a "control person".  Defendant's transparent attempt to import jurisprudence from §20*(b)* of the

25  '34 Act and distinguish §48(a) from the liberal pleading required by §15 and §20(a) ignores ***existing***

26  ────────────────

27  [20] As the Ninth Circuit has held, it is generally improper to charge investors with knowledge as a matter of law even as to SEC filings or press releases.  *See Briskin v. Ernst & Ernst,* 589 F.2d 1363, 1368 (9th Cir. 1978) (SEC filings); *Rochelle v. Marine Midland Grace Trust Co.* 535 F.2d 523, 532 (9th Cir. 1976) (press releases).

28

jurisprudence holding that §48(a) involves the same "control person" test: "Section 48(a) of the ICA

[is] analogous to the "controlling person" provisions of the Securities Act and the Exchange Act."

*SEC v. American Bd. of Trade, Inc.,* 593 F Supp 335, 341 (S.D.N.Y. 1984) *rev'd. on other grounds*,

751 F.2d 529 (2d Cir. N.Y. 1984).

## V.    CONCLUSION

For the forgoing reasons, Wells Fargo's motion to dismiss should be denied in its entirety.

DATED:   May 25, 2006                      **MILBERG WEISS BERSHAD &**
                                           **SCHULMAN LLP**


                                           By:_____/s/ Michael R. Reese_____
                                           Jerome M. Congress (*admitted pro hac*)
                                           Janine L. Pollack (*admitted pro hac*)
                                           Kim E. Miller (178370)
                                           Michael R. Reese (206773)
                                           One Pennsylvania Plaza
                                           New York, New York  10119-0165
                                           Telephone:    (212) 594-5300
                                           Facsimile:    (212) 868-1229

                                           ***Court Appointed Lead Counsel***

**DECLARATION OF SERVICE**

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of New York, New York, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is One Pennsylvania Plaza, New York, New York 10119.

2.      That on May 25, 2006, declarant served the Opposition to Motion of Defendants Wells Fargo & Co. to Dismiss Plaintiff's Consolidated Amended Class Action Complaint by electronic notice to the parties listed on the attached Service List.

3.      That there is a regular communication by mail between the place of mailing and the places so addressed.

4.      That on May 25, 2006, declarant served via email to:  scac@law.stanford.edu.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 25th day of May 2006, at New York, New York.

                                                            /s/ Michael R. Reese
                                          _____
                                                            MICHAEL R. REESE

**WELLS FARGO & CO.**

**Service List**

| | |
|---|---|
| Bruce A. Ericson<br>Jacob R. Sorensen<br>Kristin M. Lefevre<br>**PILLSBURY WINTHROP SHAW PITTMAN LLP**<br>50 Freemont Street<br>P.O. Box 7880<br>San Francisco, CA 94105-7880<br>Tel.: (415) 983-1000<br>Fax: (415) 983-1200<br><br>-and-<br><br>Clifford C. Hyatt<br>David L. Stanton<br>**PILLSBURY WINTHROP SHAW PITTMAN LLP**<br>725 South Figueroa Street, Suite 2800<br>Los Angeles, CA 90017-5406<br>Tel.: (213) 488-7100<br>Fax: (213) 629-1033<br><br>*Counsel for Defendants Wells Fargo & Co.,*<br>*Wells Fargo Funds Management, LLC, Wells*<br>*Capital Management, Inc., H.D. Vest*<br>*Investment Services, Wells Fargo Funds Trust,*<br>*and Stephens Inc.* | Thomas O. Jacob<br>Vanessa M. Hoffmann<br>**OFFICE OF GENERAL COUNSEL, WELLS FARGO & CO.**<br>633 Folsom Street, 7th Floor<br>San Francisco, CA 94107<br>Tel.: (415) 622-6656<br>Fax: (415) 975-7864<br><br>*Counsel for Defendants Wells Fargo & Co.,*<br>*Wells Fargo Funds Management, LLC, Wells*<br>*Capital Management, Inc., Wells Fargo Funds*<br>*Trust, and Wells Fargo Investments, LLC* |