PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON  #76342
CLIFFORD C. HYATT  #196458
DAVID L. STANTON  #208079
JACOB R. SORENSEN  #209134
KRISTIN M. LEFEVRE  #221541
50 Fremont Street
Post Office Box 7880
San Francisco, CA  94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200
bruce.ericson@pillsburylaw.com

Attorneys for All Defendants

THOMAS O. JACOB  #125665
VANESSA M. HOFFMANN  #206086
OFFICE OF GENERAL COUNSEL
WELLS FARGO & CO.
633 Folsom Street, 7th Floor
San Francisco, California  94107
Telephone: (415) 396-4425
Facsimile: (415) 975-7867
tojacob@wellsfargo.com

Attorneys for Defendants
WELLS FARGO & CO. and affiliates

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE McDANIEL FAMILY TRUST, Individually And On Behalf Of ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & COMPANY, et al.,<br><br>Defendants. | No. C-05-04518-WHA<br><br>**CLASS ACTION (PSLRA)**<br><br>**REPLY IN SUPPORT OF MOTION BY DEFENDANTS WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS CAPITAL MANAGEMENT, INC., WELLS FARGO FUNDS DISTRIBUTOR, LLC AND STEPHENS INC. TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT [DKT. 65]**<br><br>Date:  June 21, 2006<br>Time:  8:00 a.m.<br>Ctrm:  9, 19th Floor<br>Honorable William H. Alsup |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION. ........................................................................................................... 1

II. ARGUMENT. .................................................................................................................. 1

    A. Nine federal district courts have dismissed § 36(b) claims in similar cases. ..................................................................................................................... 1

    B. Plaintiff does not distinguish the recent revenue sharing cases. ......................... 5

    C. Plaintiff's authorities do not support a § 36(b) claim here. ................................. 7

    D. The CAC does not state a § 36(b) claim under either Rule 8 or Rule 9(b). ......... 9

        1. The allegations about economies of scale do not support a § 36(b) claim. ........................................................................................................ 10

        2. The allegations about the quality of services do not state a § 36(b) claim. ........................................................................................................ 11

        3. The allegations about comparative fee structures do not state a § 36(b) claim. ................................................................................................ 12

        4. The allegations about trustees do not state a § 36(b) claim. ......................... 13

    E. Plaintiff lacks standing because § 36(b) claims are derivative. ........................... 13

III. CONCLUSION. ............................................................................................................. 15

# TABLE OF AUTHORITIES

Page

**Cases**

Central Laborers Pension Fund v. Merix Corp.,
　　2005 WL 2244072 (D. Or. Sept. 15, 2005) ............................................................... 9

Daily Income Fund, Inc. v. Fox,
　　464 U.S. 523 (1984) ................................................................................................ 14

Dumond v. Massachusetts Fin. Services Co.,
　　2006 U.S. Dist. LEXIS 1933 (D. Mass. Jan. 19, 2006) ............................................. 8

Forsythe v. Sun Life Financial Inc.,
　　417 F. Supp. 2d 100 (D. Mass. 2006) ................................................................. 7, 14

Hogan v. Baker,
　　2005 WL 1949476 (N.D. Tex. Aug. 12, 2005) ........................................................ 14

In re AllianceBernstein Mut. Fund Excessive Fee Litig.,
　　2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005), reconsideration
　　granted, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) .............................................. 4, 5

In re American Mut. Funds Fee Litig.,
　　2005 WL 3989803 (C.D. Cal. Dec. 16, 2005) ..................................................... 5, 14

In re Daou Sys., Inc.,
　　411 F.3d 1006 (9th Cir. 2005), cert. denied, 126 S. Ct. 1335 (2006) ................... 9, 10

In re Davis Selected Mutual Funds Litig.,
　　2005 WL 2509732 (S.D.N.Y. Oct. 11, 2005) ............................................................ 3

In re Dreyfus Mut. Funds Fee Litig.,
　　2006 WL 909434 (W.D. Pa. Apr. 10, 2006) ........................................................ 5, 14

In re Eaton Vance Mut. Funds Fee Litig.,
　　380 F. Supp. 2d 222 (S.D.N.Y. 2005), aff'd on reconsideration,
　　403 F. Supp. 2d 310 (S.D.N.Y. 2005) ................................................................. 2, 7

In re Evergreen Mut. Funds Fee Litig.,
　　2006 WL 753000 (S.D.N.Y. Mar. 24, 2006) ............................................................. 2

In re Franklin Mut. Funds Fee Litig.,
　　388 F. Supp. 2d 451 (D.N.J. 2005) ..................................................................... 4, 14

In re Goldman Sachs Mut. Funds Fee Litig.,
　　2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) ............................................... 3, 5, 11, 14

In re Lord Abbett Mut. Funds Fee Litig.,
　　407 F. Supp. 2d 616 (D.N.J. 2005) ..................................................................... 4, 14

In re Metricom Securities Litigation,
　　2004 WL 966291 (N.D. Cal. Apr. 29, 2004) ............................................................. 9

In re Morgan Stanley and Van Kampen Mut. Fund Sec. Litig.,
    2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006) ........................................................ 2, 5

In re Oppenheimer Funds Fee Litig.,
    2006 WL 592881 (S.D.N.Y. Mar. 10, 2006), reconsideration granted,
    2006 WL 864574 (S.D.N.Y. Apr. 5, 2006) ............................................................ 3, 5

In re Portal Software, Inc. Sec. Litig.,
    2005 WL 1910923 (N.D. Cal. Aug. 10, 2005) ............................................................ 9

In re Stac Electronics Sec. Litig.,
    89 F.3d 1399 (9th Cir. 1996) ....................................................................................... 9

Jones v. Harris Assoc., L.P.,
    2005 U.S. Dist. LEXIS 39560 (N.D. Ill. Apr. 7, 2005) ........................................... 7, 8

Kalish v. Franklin Advisers, Inc.,
    742 F. Supp. 1222 (S.D.N.Y. 1990), aff'd, 928 F.2d 590 (2d Cir.
    1991), ......................................................................................................................... 12

Kamen v. Kemper Financial Services, Inc.,
    500 U.S. 90 (1991) ..................................................................................................... 13

Krantz v. Prudential Inv. Fund Mgmt. LLC,
    305 F.3d 140 (3d Cir. 2002), cert. denied, 537 U.S. 1113 (2003) ..................... 10, 13

Migdal v. Rowe Price-Fleming Int'l, Inc.,
    248 F.3d 321 (4th Cir. 2001) ........................................................................ 10, 12, 13

Scalisi v. Fund Asset Mgmt. L.P.,
    380 F.3d 133 (2d Cir. 2004) ..................................................................................... 13

Strigliabotti v. Franklin Res., Inc.,
    2005 WL 645529 (N.D. Cal. Mar. 7, 2005) ............................................. 7, 8, 10, 14

Tooley v. Donaldson, Lufkin, & Jenrette, Inc.,
    845 A.2d 1031 (Del. 2004) ........................................................................................ 14

Verkouteren v. Blackrock Fin. Mgmt., Inc.,
    1999 WL 511411 (S.D.N.Y. July 20, 1999), aff'd, 208 F.3d 204
    (2d Cir. 2000) ............................................................................................................ 13

Vess v. Ciba-Geigy Corp. USA,
    317 F.3d 1097 (9th Cir. 2003) ..................................................................................... 9

Wicks v. Putnam Inv. Mgmt. LLC.,
    2005 U.S. Dist. LEXIS 4892 (D. Mass. Mar. 28, 2005) ........................................ 7, 8

Yampolsky v. Morgan Stanley Inv. Advisers Inc.,
    2004 WL 1065533 (S.D.N.Y. May 12, 2004) ......................................................... 10

**Statutes and Codes**

Delaware Code
    Title 12, section 3816(a) ........................................................................................... 15

United States Code
    Title 15, section 80a-35(b) .................................................................................. passim

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 8........................................................................................................... 1, 9, 10
    Rule 9(b)............................................................................................................ 1, 9
    Rule 52(a) ............................................................................................................ 12

Rules of the Securities and Exchange Commission
    Rule 12b-1 ..................................................................................................... 2, 3, 4

**Other Authorities**

Robert A. Robertson, Fund Governance: Legal Duties of Investment
    Company Directors................................................................................................... 2

**I.   INTRODUCTION.**

Plaintiff's opposition, Dkt. 85 ("Opposition" or "Opp."), to defendants' motion to dismiss Count VI, under section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35(b) ("§ 36(b)"), Dkt. 65 ("Motion" or "Mot."), suffers from four fatal flaws.

First, the Opposition misses the elephant in the room: nine federal district courts have already dismissed § 36(b) claims in similar revenue-sharing cases brought by plaintiff's law firm. Plaintiff's efforts to distinguish these cases – by claiming that they were wrongly decided, by making unsubstantiated assertions that those cases have less detailed complaints than this case does, or by ignoring them – are unavailing.

Second, the Opposition's reliance on a handful of § 36(b) cases where courts denied motions to dismiss is unwarranted. Those cases are not like this case.

Third, the Opposition's argument that Rule 8 governs the § 36(b) claim ignores the fact that, in this case, the § 36(b) allegations are inextricably intertwined with the fraud allegations, so Rule 9(b) applies. Even if Rule 8 does apply, plaintiff overlooks the fact that to survive a motion to dismiss under Rule 12(b)(6) a complaint must include well-pled allegations that prove that the relationship between fees and services is so disproportionate that it could not have been negotiated at arm's length. The Consolidated Amended Complaint ("CAC") does not meet this standard.

Fourth, the Opposition's argument that the Trust Agreement does not apply because § 36(b) claims are not derivative misconstrues Supreme Court precedent and other case law.

**II.   ARGUMENT.**

**A.   Nine federal district courts have dismissed § 36(b) claims in similar cases.**

The Opposition does not squarely address the fact that nine federal district courts have already examined and dismissed § 36(b) cases based on revenue sharing. While all of these cases involved complaints written by plaintiff's law firm, all involve allegations similar to those here, and all were cited in defendants' brief, plaintiff does not even cite many of them. The nine cases are:

*In re Morgan Stanley and Van Kampen Mut. Fund Sec. Litig.,* 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006). The complaint alleges, among other things, that defendants participated in an unlawful revenue sharing program; defendants financed the revenue sharing program through directed brokerage and soft dollar arrangements; the average expense ratio of Morgan Stanley funds was almost 50% higher than the average expense ratio of non-Morgan Stanley Funds; economies of scale were not passed on to proprietary investors; and the funds' directors were controlled by the defendants. The court held that these allegations "taken together … simply do not indicate any 'fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining,'" and dismissed the case. *Id.* at *2 -*5, *13. Plaintiff cites, but does not distinguish, this case.

*In re Eaton Vance Mut. Funds Fee Litig.,* 380 F. Supp. 2d 222 (S.D.N.Y. 2005), *aff'd on reconsideration*, 403 F. Supp. 2d 310 (S.D.N.Y. 2005). The court dismissed a § 36(b) claim involving revenue sharing, holding "the allegations that the defendants authorized improper 12b-1 fees,[1] soft dollar payments, and commissions to brokers are insufficient to allege a claim under § 36(b), because § 36(b) addresses only the negotiation and enforcement of payment arrangements between investment advisers and funds, not whether the investment advisers acted improperly in the use of the funds." 380 F. Supp. 2d at 237. Plaintiff contends that this opinion "erroneously found that no such allegations [regarding economies of scale] were made when, in fact, they clearly were."[2] In fact, the opinion noted the allegations but held that they did not suffice to state a claim that the fees charged were disproportionate to the services rendered. 403 F. Supp. 2d at 315.

*In re Evergreen Mut. Funds Fee Litig.,* 2006 WL 753000 (S.D.N.Y. Mar. 24, 2006). The complaint alleged that defendants violated § 36(b) by improperly charging investors

---

[1] 12b-1 fees are distribution fees paid by an open-end investment company to a third party in order to cause the third party to market the Fund's shares, thereby increasing or at least maintaining, the size of the Fund. *See*, *e.g.*, Robert A. Robertson, *Fund Governance: Legal Duties of Investment Company Directors*, § 7.01.

[2] Opp. at 14. n.11.

1  12b-1 fees, soft dollar payments and directed brokerage commissions to finance
2  participation in a revenue sharing program, by failing to reduce the management fees to
3  reflect benefits obtained by defendants and by wrongfully inflating management fees to
4  cover the payments. *Id*. at *6. The court dismissed the § 36(b) claim, holding that the
5  complaint only alleged that "fees were used improperly and not that the fees were
6  excessive." *Id*. at *7. Plaintiff does not cite this case.
7      *In re Goldman Sachs Mut. Funds Fee Litig*., 2006 WL 126772 (S.D.N.Y. Jan. 17,
8  2006). The court dismissed a § 36(b) complaint alleging that the defendants' revenue-
9  sharing program "enriched defendants by bringing in more shareholders (and consequently,
10 more assets under management), [but] it provided no benefit to the Funds' existing
11 shareholders, who were charged excessive fees but received no benefits from the economies
12 of scale that theoretically should have resulted from increasing assets." *Id*. at *2. The
13 complaint also alleged that the funds' expense ratio rose as the funds' assets rose. *Id*. at *3.
14 Plaintiff does not cite this case.
15     *In re Davis Selected Mut. Funds Litig*., 2005 WL 2509732 (S.D.N.Y. Oct. 11,
16 2005). The court dismissed a complaint alleging that defendants participated in revenue
17 sharing, that the named funds' expense ratios increased and that the directors were not
18 independent because they approved the wrongdoing and served on multiple boards. The
19 court held that the complaint "contains no allegations from which it can be inferred that the
20 investment advisory fees paid to defendants were 'so disproportionately large' that they
21 bore 'no reasonable relationship to the services rendered and could not have been the
22 product of arm's-length bargaining.'" *Id.* at *3 -*4. Plaintiff does not cite this case.
23     *In re Oppenheimer Funds Fee Litig*., 2006 WL 592881 (S.D.N.Y. Mar. 10, 2006),
24 *reconsideration granted*, 2006 WL 864574 (S.D.N.Y. Apr. 5, 2006). The complaint alleged
25 that defendants participated in a revenue sharing program, inflated their fees to finance this
26 program and failed to share economies of scale with fund shareholders. 2006 WL 592881,
27 at *1. On reconsideration, the court held that the complaint did not state a claim because it
28 did not include "specific factual allegations" as to why the additional costs rendered

1  "advisory fees disproportionate to the services rendered."[3]

2  *In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d 616 (D.N.J. 2005). The
3  court dismissed a § 36(b) claim in a revenue sharing case because plaintiff failed to plead it
4  as a derivative action. *See id.* at 633. Plaintiff does not cite this case.

5  **In re AllianceBernstein Mut. Fund Excessive Fee Litig., 2005 WL 2677753**
6  **(S.D.N.Y. Oct. 19, 2005),** *reconsideration granted***, 2006 WL 74439 (S.D.N.Y. Jan. 11,**
7  **2006)**. The complaint alleged that defendants wrongfully participated in a revenue sharing
8  program intended to direct shareholders to defendants' funds, that this practice inflated
9  defendants' management fees, that defendant financed its participation in the program
10 through directed brokerage fees, soft dollars and payments that violated Rule 12b-1, that
11 economies of scale were not shared with shareholders, and that the trustees were beholden
12 to defendants. 2005 WL 2677753, at *1, *2, *5. On reconsideration, the court dismissed
13 the § 36(b) claim because the complaint failed to plead facts showing that the fees were
14 disproportionately large to the services rendered.[4]

15 *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451 (D.N.J. 2005). The court
16 dismissed a § 36(b) claim involving revenue sharing because plaintiffs brought the § 36(b)
17 claim as a direct claim rather than a derivative claim. 388 F. Supp. 2d at 468. Plaintiff
18 does not cite this case.

19 In addition to these nine dismissals, a federal district court granted judgment on the

---

[3] *Id.* at *1. Plaintiff's attempt to distinguish this case is discussed at pp. 6-7 below.

[4] Plaintiff attempts to distinguish *AllianceBernstein* by saying that the allegations only relate to the class period – which included only the first five months of the actionable period for § 36(b) – but here the allegations "more than encompass plaintiff's § 36(b) damages period." *See* Opp. at 8 n.4. This misses the point. As plaintiff concedes, in a § 36(b) action, damages are restricted to the one-year period preceding the filing of the complaint. *See* Opp. at 8. In *AllianceBernstein*, the court's concern with defendant's motion is that the complaint relies on facts outside of the actionable time period. As noted, Mot. at 14, plaintiff here also is relying on statistics from outside the actionable period. The *AllianceBernstein* court explicitly rejected this approach, and said that plaintiff's argument that it should use statistics that lie outside the relevant time period to "demonstrate the existence of excessive advisory fees within the relevant time period . . . would require the Court to make a dramatic extrapolation by inferring the existence of excessive fees without adequate supporting evidence in the Complaint." 2006 WL 74439, at *2.

1  pleadings on a § 36(b) claim involving allegations of another revenue sharing case.  *In re*
2  *Dreyfus Mut. Funds Fee Litig.*, 2006 WL 909434 (W.D. Pa. Apr. 10, 2006).  While this
3  case was cited in defendants' brief, plaintiff does not reference it in the Opposition.
4       In addition, defendants have just identified an eleventh case, *In re American Mut.*
5  *Funds Fee Litig.*, 2005 WL 3989803 (C.D. Cal. Dec. 16, 2005), in which the court
6  dismissed a § 36(b) claim (there with leave to replead).  The court dismissed because the
7  § 36(b) claim was not brought as a derivative claim.  *Id*. at *3-*4.  While plaintiff's counsel
8  are counsel in that litigation, plaintiff does not cite this adverse authority from this circuit.
9       These recent cases – all of which involve allegations of revenue sharing, and many
10  of which mention allegations regarding fund expense ratios, and failure to share economies
11  of scale – are virtually identical to this case.

12  **B.     Plaintiff does not distinguish the recent revenue sharing cases.**

13       Plaintiff cursorily attempts to distinguish these cases *en masse*.  First, plaintiff
14  argues that, while defendants are trying to portray the § 36(b) claim as a revenue sharing
15  complaint with additional allegations as an afterthought, "nothing could be further from the
16  truth" because the CAC states that revenue sharing is only one way the fees were excessive,
17  such as their failure to share economies of scale.[5]  Fairly read, however, the CAC is about
18  revenue sharing; the first half of the CAC is dedicated to revenue sharing.  Like this case,
19  the other cases are not exclusively about revenue sharing; the complaints in many of the
20  other revenue sharing cases also alleged (albeit unsuccessfully) that fees were excessive
21  because economies of scale were not shared.[6]
22       Second, plaintiff argues that attempting to "wedge Plaintiff's complaint into a mold
23  of prior case law that addressed complaints which did not plead their § 36(b) claims with
24
25  _____
26  [5]  Opp. at 2, 13.
27  [6]  *See, e.g. Morgan Stanley*, 2006 WL 1008138, at *12-*13; *Goldman Sachs*, 2006 WL 126772, at *2; *AllianceBernstein*, 2005 WL 267753, at *5; *Oppenheimer Funds*, 2006 WL 592881, at *1.
28

1 the same level of detail as the complaint in this case."[7] But the decisions in the other cases
2 do address detailed complaints which include the primary allegations (revenue sharing,
3 failure to share economies of scale) that plaintiff makes here.[8] Moreover, plaintiff gives no
4 support for the convenient claim that the CAC is more detailed than the other complaints.
5 The complaints in the other revenue sharing cases are not before this Court. Because this
6 Court has no basis on which it can assess plaintiff's assertion that the other complaints are
7 less detailed, this Court should reject this argument.

8 Third, plaintiff tries to rebut the cases that say revenue sharing allegations do not
9 show that the total fees were excessive by asserting that the revenue sharing permitted the
10 defendants to gain "something for nothing."[9] This theory wilts under scrutiny. Plaintiff
11 argues that because the revenue sharing programs led to increased assets and therefore
12 increased revenue, all of that revenue was unearned and "the increase in their compensation
13 was not justified by any increase in the quality or nature of the services which are provided
14 to the Wells Fargo Funds or their investors."[10]

15 The "something for nothing argument" suffers from at least two flaws. First, it is
16 simply a glib recharacterization of the argument that defendants failed to share economies
17 of scale, as both theories are based on the premise that the funds in question grew but
18 defendants did not decrease fees. Second, plaintiff's argument that an investment advisor is
19 receiving "something for nothing" because it is receiving more money for managing more
20 assets ignores the fact that mutual funds do charge asset-based fees, with fees increasing as
21 assets grow, to approximate the increased costs the advisor incurs in managing a larger
22 fund. Plaintiff's allegation that defendants were paid more for managing more assets is
23 actually a "something for something" exchange.

---

[7] Opp. at 13.
[8] Mot. at 13.
[9] Opp. at 14.
[10] *See* Opp. at 14, CAC ¶ 97. *See also* CAC ¶ 150.

1  **C.  Plaintiff's authorities do not support a § 36(b) claim here.**

2   Plaintiff claims that "Recent Decisions Overwhelmingly Demonstrate That Plaintiff
3  Has Pled a Valid Section 36(b) Claim." Plaintiff cites four cases that he says have
4  "allegations similar to those herein," but in fact only one of those cases, *Forsythe v. Sun*
5  *Life Financial, Inc.*,[11] involves revenue sharing.

6   The *Forsythe* court came to a different conclusion than every other court that has
7  examined § 36(b) in the revenue sharing context because, unlike the other courts, it found
8  that an allegation that *some* fees charged to a fund complex were inappropriate is enough
9  for a complaint to survive a motion to dismiss regardless of whether the complaint alleges
10 that the relationship between fees and services *taken as a whole* was disproportionately
11 large.[12]  This analysis has been rejected by the other federal courts.  As one court noted,
12 "this interpretation stretches the reach of § 36(b) too far, because any allegation of improper
13 use of fees that does not benefit the plaintiffs would be impermissibly swept into the
14 purview of § 36(b)."[13]  Taken to its logical extreme, plaintiff's argument would permit a
15 § 36(b) claim to stand whenever any particular service for any mutual fund was either
16 inappropriate or excessive, even if the fund's fees as a whole were very favorable.
17 Accordingly, *Forsythe* is wrongly decided, and this Court should follow the decisions
18 reached by other federal district courts.[14]

19   Plaintiff's other authorities – *Strigliabotti v. Franklin Res., Inc.*, 2005 WL 645529
20 (N.D. Cal. Mar. 7, 2005), *Jones v. Harris Assocs., L.P.,* 2005 U.S. Dist. LEXIS 39560
21 (N.D. Ill. Apr. 7, 2005), and *Wicks v. Putnam Inv. Mgmt. LLC.,* 2005 U.S. Dist. LEXIS
22 4892 (D. Mass. Mar. 28, 2005) – are inapposite.  These cases are not revenue sharing cases.
23 They therefore have less relevance than the revenue sharing § 36(b) cases.  The fact that

---

[11] 417 F. Supp. 2d 100 (D. Mass. 2006).

[12] *See* 417 F. Supp. 2d at 116.

[13] *Eaton Vance*, 403 F. Supp. 2d at 315.  *See also* Mot. at 6-9.

[14] Plaintiff's claim that the allegations made in *Forsythe* are "far less detailed" (Opp. 18) than the allegations here is not substantiated and should not be credited.

1  some plaintiffs alleging other facts have stated § 36(b) claims against other mutual funds is
2  not relevant to whether the CAC states a claim.

3  Significantly, these cases allege a relationship between fees and services not made
4  here – the allegation that the defendants charged some customers lower fees than they
5  charged other customers.  The *Strigliabotti* complaint alleged that defendants charged other
6  individuals lower fees for providing the same services; it included a fee schedule from a
7  specific contract.  2005 WL 645529, at *3.  Similarly, the *Wicks* complaint alleged that
8  (i) "[a]lthough assets held by the Funds have increased significantly over time, the nature
9  and quality of the services rendered by the defendants to the Funds has not substantially
10  changed;" and (ii) defendants "provide the same advisory services to their institutional
11  clients for substantially lower fees than they charge the Funds."  The *Jones* complaint also
12  alleged that other clients received identical services at "significantly lower rates."  *Jones*,
13  2005 U.S. Dist. LEXIS 39560 at *7; *Wicks*, 2005 U.S. Dist. LEXIS 4892, at *3.  If true, the
14  fact that a defendant had provided the same services to someone else at a significantly
15  lower price is strong evidence that the higher fee was excessive.  Plaintiff makes no such
16  allegation about the relationship between advisory fees and advisory services.[15]

17  These cases make other allegations not repeated here.  For example, *Strigliabotti*
18  alleges that a fund complex grew by $298 billion (15,000%) without changing the fees it
19  charged; there is no similar allegation of explosive growth there.[16]  The *Jones* decision
20  states that the fund complex in question paid 43 times as much for "identical services" as it
21  did 10 years earlier.  2005 U.S. Dist. LEXIS 39560, at *2-*3.  Here plaintiff has not alleged

---

[15]  *Dumond v. Massachusetts Fin. Services Co.*, 2006 U.S. Dist. LEXIS 1933 (D. Mass. Jan. 19, 2006) does not help Plaintiff.  That complaint made numerous allegations not made here, including allegations that defendants charged third party clients less for identical investment advisory services than they charged the MFS funds.  The court said this allegation "may be taken as an assertion, among other things, that the defendants have charged an above-market fee to the funds, where the market-fee is defined as that established by true arm's length bargaining." *Id.* at *9.  The complaint also alleged that defendants received compensation for "securities lending arrangements" and were able to "resell investment advisory services paid for by the MFS Funds at virtually no additional cost." *Id*. at *10.  Plaintiff makes no such allegations here.

[16]  Mot. at 17.

1    that the services provided by Wells Fargo have been constant over time.

2    **D.     The CAC does not state a § 36(b) claim under either Rule 8 or Rule 9(b).**

3            Plaintiff tries to avoid Rule 9(b) of the Federal Rules of Civil Procedure by claiming

4    that its '40 Act allegations are separate from its '34 Act allegations.[17]  But the effort fails

5    because the CAC alleges a "unified course of fraudulent conduct" that "sounds in fraud."[18]

6            The § 36(b) claims are based on the same alleged frauds – misleading sales

7    practices, concealed conflicts of interests and an "insidious kickback scheme" – as alleged

8    in the '34 Act claims.[19]  The '40 Act allegations repeatedly accuse defendants of fraud and

9    never suggest anything like negligence.  *See, e.g.,* CAC ¶ 97 ("The aforesaid Defendants

10   engaged in these programs in an effort to gain increased compensation even though many

11   of those programs were in violation of SEC and NASD rules and regulations.").  Thus, the

12   '40 Act claims sound in fraud:

> Plaintiffs cannot avoid the theory they posit throughout the complaint: that defendants fraudulently schemed to inflate revenues.  Accordingly, the court finds that the claims under the '33 Act sound in fraud, and therefore fail with the '34 Act claims to meet the heightened pleading requirements of the PSLRA and Rule 9(b).

17   *In re Portal,* 2005 WL 1910923, at *16.  Those words apply equally here.[20]  "[T]o survive

18   dismissal" the CAC must plead with particularity that defendants violated § 36(b).[21]

---

[17] Opp. at 4-6.

[18] *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1335 (2006); *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103-04 (9th Cir. 2003); *In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1404-05 (9th Cir. 1996)); *In re Portal Software, Inc. Sec. Litig.,* 2005 WL 1910923, at *16 (N.D. Cal. Aug. 10, 2005); *Central Laborers Pension Fund v. Merix Corp.*, 2005 WL 2244072, at *5-*6 n.13 (D. Or. Sept. 15, 2005).

[19] *See* e.g. CAC ¶¶ 2-11, 33-34, 39, 53, 59, 96, 101, 143-45.

[20] "Plaintiffs cannot allege fraud based on a series of events occurring before the offering and on essentially identical events continuing after the offering, and then scissor out a non-fraud claim from the center of that unified course of conduct in order to evade the Rule 9(b) requirement."  *In re Metricom Sec. Litig.*, 2004 WL 966291, at *24 (N.D. Cal. Apr. 29, 2004).  The Court is not required to "'sift through allegations of fraud in search of some "lesser included" claim of strict liability . . . .'"  *In re Daou*, 411 F.3d at 1028.  Nor could it, because the claims here all sound in fraud, not negligence.

1   Even if Rule 8 applies, the CAC cannot survive Rule 12(b)(6) because the facts

2   alleged would not satisfy a claim even if they are true. The applicable standard for a

3   12(b)(6) motion in a § 36(b) case is not, as plaintiff seem to articulate, whether defendants

4   have received notice of how their fees were disproportionate to the services rendered, but

5   rather whether plaintiff has pled facts that, ***if true***, would satisfy the *Gartenberg* standard

6   that the fees are so disproportionately large that they bear no reasonable relationship to the

7   services rendered.[22] Plaintiff has not met that standard.

8   **1.    The allegations about economies of scale do not support a § 36(b) claim.**

9   Plaintiff's arguments[23] cannot conceal the fact that the CAC's allegations do not

10  indicate a disproportionate relationship between fees and services.

11  The CAC alleges, based on general industry statistics and reports, that economies of

12  scale are present in the industry and that defendants received such economies of scale.[24]

13  Plaintiff's blanket assertion that, as a fund complex, defendants enjoyed economies of scale

14  that they did not share is so generic that it could be used against any mutual fund complex.

15  The CAC does not make a single factual assertion specific to Wells Fargo showing that

16  defendants enjoyed economies of scale.[25] If plaintiff's argument shows anything, it shows

17  that rising expense ratios are the norm, not the exception, in this industry.[26]

---

(…continued)

[21] *In re Daou,* 411 F.3d at 1028.

[22] *See, e.g., Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 143 (3d Cir. 2002), *cert. denied*, 537 U.S. 1113 (2003); *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327 (4th Cir. 2001); *Yampolsky v. Morgan Stanley Inv. Advisers Inc.*, 2004 WL 1065533, at *2 (S.D.N.Y. May 12, 2004). While plaintiff claims *Gartenberg* is not applicable at the pleading stage and has not been adopted "in the Ninth Circuit" (Opp. at 4), plaintiff relies heavily on a decision from this district, *Strigliabotti*, that applies *Gartenberg* in analyzing a motion to dismiss (2005 WL 645529, at *3).

[23] *See* Opp. at 6-9.

[24] *See* CAC ¶¶ 111-13.

[25] *Cf. Strigliabotti,* 2005 WL 645529, at *3 (permitting § 36(b) claim against a fund complex to survive because the complaint alleged failure to share economies of scale by alleging complex had grown from $2 billion to $300 billion and that defendants offered identical services to other clients at lower rates).

[26] Opp. at 8:9-9:3.

1       The CAC's allegations about economies of scale are limited to allegations that six
2  of the ninety Wells Fargo Funds grew, respectively, 3%, 43%, 58%, 18%, 87% and (in the
3  case of one small fund) 1034% and that those six funds had fees that either stayed constant
4  or increased by a few basis points.[27]  But "[m]ere assertions that fees increased with the size
5  of the Funds are not enough to establish that the benefits from economies of scale were not
6  passed on to investors."  *In re Goldman Sachs,* 2006 WL 126772, at *9.  While plaintiff
7  alleges that some funds grew and their fees did not decrease, plaintiff has not alleged any
8  facts suggesting that economies of scale were achieved and not shared.  Plaintiff also does
9  not explain why the fact that some funds had constant or moderately increasing fees
10  supports a claim that the fees of the *entire* fund complex were so disproportionately large
11  that they could not have been negotiated at arm's length.  Permitting a claim on these
12  threadbare allegations would impose a standard that every mutual fund must decrease fees
13  whenever its assets grow, or it will face litigation.[28]

14  **2.    The allegations about the quality of services do not state a § 36(b) claim.**

15       Plaintiff's allegations regarding the quality of the services provided by defendants
16  are that five funds underperformed their peer groups over certain time periods[29] and that
17  "most" of the Wells Fargo Funds' returns were "highly correlated with the S&P Index,"
18  supposedly indicating performance consistent with passively managed funds.  As noted in

---

[27]  *See* CAC ¶¶ 114-16.

[28]  Plaintiff's allegations about sub-advisory agreements do not support a § 36(b) claim. Plaintiff says that defendants had contracts with subadvisors which paid subadvisors decreasing fees as assets increased but the savings were not shared dollar-for-dollar; plaintiff argues this proves that defendants did not share economies of scale with shareholders.  *See* Opp. at 10.  Plaintiff only makes this allegation about three funds, and for them only at discrete asset levels.  Plaintiff does not even allege the sub-advisory contracts – which were with third parties – were commercially unreasonable. While plaintiff asserts that the fee schedules permitted defendants to "pocket" the difference, plaintiff does not allege that defendants did, in fact, receive profits on those contracts.  Nor does plaintiff allege, as he must, that total advisory fees – including sub-advisory fees – charged to shareholders were unreasonable at the asset levels in question.  *See* p. 7 above.  An allegations that three funds charged fees that could have been a few basis points lower does not state a claim that the fees charged were to disproportionately large to have been achieved by arm's length negotiations.

[29]  CAC ¶¶ 131, 133.

1  defendant's opening brief, these allegations do not support a § 36(b) claim.[30]

2  To justify that scattered allegations of underperformance support a § 36(b) claim, plaintiff cites two cases in which § 36(b) claims were **rejected**. The first, *Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 590 (2d Cir. 1991), is a decision under Rule 52(a) of the Federal Rules of Civil Procedure in which the judge denied plaintiff's claim under § 36(b). The second, *Migdal v. Rose Price-Fleming Int'l, Inc.*, 248 F.3d 321 (4th Cir. 2001) is a Fourth Circuit decision affirming dismissal of a § 36(b) claim for failing to plead a disproportionate relationship between fees and services; the opinion holds that allegations of underperformance do not state a § 36(b) claim.[31]

**3. The allegations about comparative fee structures do not state a § 36(b) claim.**

Apparently dissatisfied with the flurry of statistics in the CAC about expense ratios, plaintiff offers new factual allegations outside the CAC. These do not help either.

Plaintiff argues the comparative fees are from "a well-known source for such information" and that their various charts actually illustrate different comparisons.[32] But these allegations are not in the CAC. Comparing the funds' expenses to an industry average does not support a claim that the fees are out of the market because, by definition, an average includes both funds with higher and lower expense ratios. Plaintiff tellingly does not describe the highest expense ratios. The CAC does not allege that the Funds' fees were the highest or were out of the reasonable range of fees charged by its peers.[33]

---

[30] Mot. at 12-13.

[31] 248 F.3d at 327-28. The Opposition is incorrect in its assertion that *Migdal* supports a claim here. Plaintiff assets that the sole deficiency in *Migdal* was that the *Migdal* complaint failed to allege anything about economies of scale, a deficiency they claim they have remedied here. Opp. at 17. In fact, *Migdal* found that "Plaintiffs have failed to allege any facts pertinent to this relationship between fees and services. . . . [s]pecifically, while plaintiffs have challenged the fees that defendants charged, they have failed to allege sufficient facts about the services that defendants offered in return for those fees." *Id*. at 327. So too here; while the CAC includes some allegations of poor performance of some funds and also includes allegations of higher than average fees, it does not describe the relationship between the two.

[32] Opp. p. 12 n.8.

[33] Our moving papers noted that the CAC does not include allegations about profitability
(continued…)

1 **4.  The allegations about trustees do not state a § 36(b) claim.**

2   Plaintiff persists in making a classic circular argument.  He argues that the trustees'

3 alleged rubber stamping of the "excessive" fees demonstrates that the fees were excessive.[34]

4 This provides no additional support for a claim of fee excessiveness.

5   Plaintiff's other argument – that the trustees served on too many fund boards – has

6 been repeatedly rejected.[35]

7 **E.  Plaintiff lacks standing because § 36(b) claims are derivative.**

8   Plaintiff argues that he does not need to fulfill the requirement to have standing set

9 forth in the trust agreements because § 36(b) claims are not derivative or, alternatively, are

10 not derivative under Delaware law.  Both arguments are incorrect.

11   Section 36(b) claims are derivative.  Section 36(b) says that an action may be

12 brought "by the commission or by a security holder of such registered investment company

13 ***on behalf of such company***."  15 U.S.C. § 80a-35(b) (emphasis added).

14   Despite some semantic confusion in the leading case, most cases agree that § 36(b)

15 claims are derivative.  *Kamen* v. *Kemper Fin. Services, Inc.,* 500 U.S. 90 (1991) does say

16 that "a shareholder action 'on behalf of' the company under § 36(b) is direct rather than

17 derivative…" but in the ***very next sentence***, which plaintiff does not quote, the Court added

18 that "it can hardly be maintained that a shareholder's exercise of his state-created

19 prerogative to initiate a ***derivative suit*** without the consent of the directors frustrates the

20 broader policy objectives of the ICA."  *Id*. at 108 (emphasis added).  As one court noted

21 when interpreting these two sentences, "the statement appears to state no more than the

---

22 (…continued)
or fall out benefits.  The Opposition does not rebut this point.

23 [34] Mot. 15.

24 [35] *See*, *e.g. Verkouteren v. Blackrock Fin. Mgmt., Inc.*, 1999 WL 511411, at *4 (S.D.N.Y. July 20, 1999), *aff'd,* 208 F.3d 204 (2d Cir. 2000) (claims that funds where direction
25 served on 21 fund boards does not support a § 36(b) claim); *Krantz*, 305 F.3d at 144 (allegations that directors served on between 23 and 39 fund boards does not support a
26 § 36(b) claim); *Migdal*, 248 F.3d at 330 (service on boards of 39 funds does not support a § 36(b) claim); *cf. Scalisi v. Fund Asset Mgmt. L.P.*, 380 F.3d 133, 136 (2d Cir. 2004)
27 (allegation that fund directors served on the boards of 49 funds did not satisfy Maryland's demand futility requirement for a derivative action).

28

1   incontestable proposition that a shareholder may bring a derivative claim under § 36(b)

2   directly, meaning without making a precomplaint demand pursuant to Rule 23.1."[36]

3          Consistent with this interpretation, courts have dismissed or granted judgment on

4   the pleadings in four recent cases where plaintiffs failed to bring § 36(b) claims

5   derivatively.[37]  Indeed, plaintiff repeatedly cites a recent case, *Forsythe*, in which the court

6   found that the § 36(b) cause of action is "in the broadest sense" derivative "because it is

7   brought on 'behalf of' an investment company and any recovery flows to the investment

8   company, not the shareholder plaintiff."[38]

9          Plaintiff also ignores relevant Delaware law in analyzing whether § 36(b) is

10  derivative.  As noted in defendants' motion,[39] Delaware law provides that whether a claim

11  is direct or derivative turns on two questions: (1) who suffered the alleged harm; and

12  (2) who would receive the benefit of any recovery.  *Tooley v. Donaldson, Lufkin, &*

13  *Jenrette, Inc.*, 845 A.2d 1031, 1032, 1035 (Del. Sup. Ct. 2004).  In this case, there is no

14  "direct" injury suffered by shareholders independent of the alleged injury to the

15  corporation.  Section 36(b) explicitly provides that any recovery will flow to the

16  corporation.  Consequently, under Delaware law, a cause of action under § 36(b) is

---

[36] *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 468 n.12.

[37] *See In re American Mut. Funds Fee Litig.*, 2005 WL 3989803, at *3-4; *In re Franklin Mut. Funds Fee Litig.,* 388 F. Supp. 2d at 468; *In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d at 633; *In re Dreyfus Mutual Funds Fee Litig.*, 2006 WL 909434, at *2-*3. *But see Strigliabotti,* 2005 WL 645529, at *7-*8 (applying California law, not Delaware law), *rejected by In re Goldman Sachs,* 2006 WL 126772, at *6 (applying Delaware law).  *See also Hogan v. Baker*, 2005 WL 1949476, at *4 (N.D. Tex. Aug. 12, 2005) (rejecting *Strigliobotti*, and holding claim was derivative under Delaware law where plaintiffs were injured "indirectly as a result of their investments in the Funds"); *Forsythe*, 417 F. Supp. 2d at 112 (rejecting *Strigliabotti* under Mass. law.)

[38] *Forsythe*, 417 F. Supp. 2d at 117-18.  Plaintiff's belief that § 36(b) claims are not derivative may stem from the fact that Rule 23.1's demand requirement does not apply to § 36(b) claims.  In *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984) the Supreme Court held that under the '40 Act, shareholders did not need to follow Rule 23.1 before bringing a § 36(b) claim because the trustees were potentially beholden to the investment adviser.  *See* 464 U.S. at 541-42.  Here the question is not about whether shareholders have to seek trustee approvals, rather, the question is whether restrictions on collective action by shareholders imposed by operation of state law are valid.

[39] Mot. at 3 n.5

1  derivative in nature.  While plaintiff cites 12 Del. Code § 3816(a) (2006) to explain which

2  derivative actions are encompassed by the act, that section is not relevant; it is not a

3  definition section and it does not purport to define what derivative actions are covered.

4       Finally, while plaintiff now declares that it currently holds shares of a Wells Fargo

5  Fund and therefore has standing to bring a § 36(b) claim on behalf of that particular fund,

6  this allegation is not in the CAC.[40]

## III. CONCLUSION.

For the foregoing reasons, the Complaint should be dismissed as to the Movants.

Dated: June 7, 2006.

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON
CLIFFORD C. HYATT
DAVID L. STANTON
JACOB R. SORENSEN
KRISTIN M. LEFEVRE
50 Fremont Street
Post Office Box 7880
San Francisco, CA  94120-7880

Attorneys for All Defendants

THOMAS O. JACOB  #125665
VANESSA M. HOFFMANN  #206086
OFFICE OF GENERAL COUNSEL
WELLS FARGO & CO.
633 Folsom Street, 7th Floor
San Francisco, California  94107
Telephone: (415) 396-4425
Facsimile: (415) 975-7867
tojacob@wellsfargo.com

Attorneys for Defendants
WELLS FARGO & CO. and affiliates

By   /s/ Bruce A. Ericson
               Bruce A. Ericson

---

[40] Opp. at 20.