1 PILLSBURY WINTHROP SHAW PITTMAN LLP
   BRUCE A. ERICSON  #76342
2 CLIFFORD C. HYATT  #196458
   DAVID L. STANTON  #208079
3 JACOB R. SORENSEN  #209134
   KRISTIN M. LEFEVRE #221541
4 50 Fremont Street
   Post Office Box 7880
5 San Francisco, CA  94120-7880
   Telephone: (415) 983-1000
6 Facsimile: (415) 983-1200
   bruce.ericson@pillsburylaw.com
7
   Attorneys for All Defendants
8
   THOMAS O. JACOB  #125665
9 VANESSA M. HOFFMANN  #206086
   OFFICE OF GENERAL COUNSEL
10 WELLS FARGO & CO.
   633 Folsom Street, 7th Floor
11 San Francisco, California  94107
   Telephone: (415) 396-4425
12 Facsimile: (415) 975-7867
   tojacob@wellsfargo.com
13
   Attorneys for Defendants
14 WELLS FARGO & CO. and affiliates

15                 UNITED STATES DISTRICT COURT

16                NORTHERN DISTRICT OF CALIFORNIA

17                   SAN FRANCISCO DIVISION

18

19 THE McDANIEL FAMILY TRUST,          No. C-05-04518-WHA
   Individually And On Behalf Of ALL OTHERS
20 SIMILARLY SITUATED,                 CLASS ACTION (PSLRA)

21              Plaintiff,             REPLY IN SUPPORT OF MOTION
                                       OF DEFENDANT WELLS FARGO &
22       vs.                           CO. TO DISMISS PLAINTIFF'S
                                       CONSOLIDATED AMENDED
23 WELLS FARGO & COMPANY, et al.,      CLASS ACTION COMPLAINT
                                       [DKT. 62]
24              Defendants.
                                       Date:  June 21, 2006
25                                     Time: 8:00 a.m.
                                       Ctrm:  9, 19th Floor
26                                     Honorable William H. Alsup

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3   I.      INTRODUCTION. ..............................................................................................1

4   II.     ARGUMENT. ....................................................................................................1

5           A.      Rule 9(b) applies to the entire complaint because it alleges a unified
                    course of fraudulent conduct. ..........................................................1

6

                    1.   The '33 and '34 Act claims are based on identical allegations. ...............2

7

                    2.   The '40 Act claims are based on the same conduct as the '33 and

8                        '34 Act claims...........................................................................3

9                   3.   The control person claims are also subject to Rule 9(b). .........................4

10          B.      Plaintiff must plead with specificity that Wells Fargo & Co. exerted
                    actual power over the controlled persons. .......................................5

11

12          C.      Plaintiff must plead "culpable participation" to state a claim under
                    section 15 of the '33 Act. ................................................................6

13          D.      There is no private right of action under section 48(a) of the '40 Act. ..........7

14          E.      Even if there were a private right of action, plaintiff has not alleged
                    sufficient facts to state a claim under section 48(a) of the '40 Act. ..............7

15

16          F.      Plaintiff's '33 and '34 Act claims are barred by the statute of
                    limitations. ....................................................................................8

17  III.    CONCLUSION. ..............................................................................................11

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

Buhler v. Audio Leasing Corp.,
   807 F.2d 833 (9th Cir. 1987) ................................................................... 6

5

Christoffel v. E.F. Hutton & Co.,

6

   588 F.2d 665 (9th Cir. 1978) ................................................................... 6

7

Draney v. Wilson, Morton, Assaf & McElligot,
   No. Civ. 79-1029, 1980 U.S. Dist. LEXIS 11220

8

   (D. Ariz. Apr. 15, 1980). ........................................................................ 5

9

Durham v. Kelly,
   810 F.2d 1500 (9th Cir. 1987) ............................................................. 5, 7

10

Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding

11

   Corp.,
   320 F.3d 920 (9th Cir. 2003) ................................................................... 5

12

Hollinger v. Titan Capital Corp.,

13

   914 F.2d 1564 (9th Cir. 1990) ................................................................. 6

14

Howard v. Hui,
   No. C 92-3742-CRB, 2001 WL 1159780

15

   (N.D. Cal. Sept. 24, 2001) .................................................................. 4, 5

16

In re Calpine Corp. Sec. Litig.,
   288 F. Supp. 2d 1054 (N.D. Cal. 2003) ................................................... 5

17

In re CBT Group PLC Securities Litigation,

18

   No. C-98-21014-RMW, 2000 U.S. Dist. LEXIS 19214
   (N.D. Cal. Dec. 29, 2000) ....................................................................... 7

19

In re Davis Selected Mut. Fund Litig.,

20

   No. 04 CIV 4186 (MGC), 2005 WL 2509732
   (S.D.N.Y. Oct. 11, 2005) ........................................................................ 7

21

In re Dreyfus Mut. Funds Fee Litig.,

22

   No. Master File 04-0128, 2005 WL 3970836
   (W.D. Pa. Sept. 30, 2005) ....................................................................... 7

23

In re Eaton Vance Mut. Funds Fee Litig.,

24

   380 F. Supp. 2d 222 (S.D.N.Y. 2005) ...................................................... 7

25

In re Exodus Communications, Inc. Securities Litigation,
   No. C 01-2661 MMC, 2005 U.S. Dist. LEXIS 20222

26

   (N.D. Cal. Aug. 5, 2005) ......................................................................... 3

27

28

-ii-

In re JDS Uniphase Corporation Securities Litigation,
 No. C 02-1486 CW, 2005 U.S. Dist. LEXIS 20831
 (N.D. Cal. Jan. 6, 2005) ................................................................... 3

In re Leadis Technology, Inc. Sec. Litig.,
 No. C-05-00882 CRB, 2006 WL 496039
 (N.D. Cal. Mar. 1, 2006) ............................................................ 3, 4, 5

In re ML-Lee Acquisition Fund II,
 848 F. Supp. 527 (D. Del. 1994) ...................................................... 7

In re Splash Tech. Holdings, Inc. Sec. Litig.,
 No. C 99-00109 SBA, 2000 WL 1727405
 (N.D. Cal. Sept. 29, 2000) ................................................................ 5

In re Stac Electronics Sec. Litig.,
 89 F.3d 1399 (9th Cir. 1996) ....................................................... 2, 4

In re Washington Public Power Supply System Securities Litigation,
 623 F. Supp. 1466 (W.D. Wash. 1985). .......................................... 5

Kersh v. General Council of Assemblies of God,
 804 F.2d 546 (9th Cir. 1986) ........................................................... 6

Lentell v. Merrill Lynch & Co.,
 396 F.3d 161 (2d Cir. 2005) ......................................................... 10

Robinson v. Shell Oil Co.,
 519 U.S. 337 (1997) ......................................................................... 7

SEC v. American Board of Trade, Inc.,
 593 F. Supp. 335 (S.D.N.Y. 1984),
 rev'd on other grounds, 751 F.2d 529 (2d Cir. 1984)...................... 8

Strougo v. Bassini,
 282 F.3d 162 (2d Cir. 2002) ............................................................ 7

Waldock v. M.J. Select Global, Ltd.,
 No. 03 C 5293, 2005 WL 3542527
 (N.D. Ill. Dec. 27, 2005) .................................................................. 7

**Statutes and Codes**

Investment Company Act of 1940
 Section 48(a), 15 U.S.C. § 80a-47(a) ...................................... passim

Securities and Exchange Act of 1933
 Section 15, 15 U.S.C. § 77o ................................................... passim

Securities and Exchange Act of 1934
 Section 10(b), 15 U.S.C. § 78j(b).................................................... 1
 Section 20(b), 15 U.S.C. § 78t(b) ................................................... 7
 Section 20(a), 15 U.S.C. § 78t(a) .......................................... passim

1

**Rules and Regulations**

2  Federal Rules of Civil Procedure
      Rule 9(b)

      Rule 9(b) ............................................................................................ passim

Federal Rules of Evidence
      Rule 201(b) ............................................................................................ 10

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.      INTRODUCTION.**

2          Plaintiff's opposition (Dkt. 86) to the motion to dismissed filed by Wells Fargo &

3    Co. (Dkt. 62) cannot point to anything in the complaint which alleges, with the particularity

4    required by Rule 9(b), that Wells Fargo & Co. is liable as a control person under section 15

5    of the Securities Act of 1933 ('33 Act), section 20(a) of the Securities Exchange Act of

6    1934 ('34 Act) or section 48(a) of the Investment Company Act of 1940 ('40 Act).  Instead,

7    Plaintiff offers a series of excuses for not pleading any facts:

8          •    Plaintiff argues that Rule 9(b) does not apply to anything except his claim under

9               section 10(b) of the '34 Act, even though the complaint plainly sets forth a

10              "unified course of fraudulent conduct."

11         •    Plaintiff argues that Rule 9(b) does not apply to control person claims, ignoring

12              cases from the Northern District to the contrary.

13         •    Plaintiff ignores controlling Ninth Circuit authority stating that he must plead

14              "culpable participation" to state a claim under section 15.

15         •    Plaintiff argues that section 48(a) does create a private right of action, though he

16              can cite no cases that support his position.

17         Plaintiff cannot avoid reality: he has failed to plead control person claims under

18   sections 15 and 20(a) with the specificity required by Rule 9(b), and there is no private right

19   of action under section 48(a).  These claims must be dismissed.

20   **II.     ARGUMENT.**

21   **A.      Rule 9(b) applies to the entire complaint because it alleges a unified course of**

22   **         fraudulent conduct.**

23         Plaintiff contends that only his claims under section 10(b) of the '34 Act are subject

24   to the heightened pleading standards of Rule 9(b) because (1) the charging allegations for

25   his claims under the '33 Act disclaim "any allegation that could be construed as alleging

26

27

28

600156548v1                                          Wells Fargo & Co.'s Reply in Support of Motion to
                                                     Dismiss Complaint
                                                     No. C-05-04518-WHA

1   fraud or intentional or reckless misconduct;"[1] (2) plaintiff's claims under the Investment

2   Company Act of 1940 ('40 Act) are based on "an entirely separate course of conduct

3   regarding the charging of excessive fees;"[2] and (3) control person claims are not subject to

4   Rule 9(b), even when the conduct underlying the control person claim is.  None of these

5   arguments holds water.

6   **1.      The '33 and '34 Act claims are based on identical allegations.**

7           Plaintiff does not dispute that if he has alleged a unified course of fraudulent

8   conduct, then the stringent pleading standards of Rule 9(b) apply to the CAC.  Plaintiff

9   contends that somehow, his '33 and '34 Act claims are distinguishable from each other

10   because he "disclaim[s] fraud."[3]  But such "nominal efforts are unconvincing where the

11   gravamen of the complaint is plainly fraud and no effort is made to show any other basis for

12   the claims . . . ."[4]  Plaintiff does not contend that he has separately laid out the facts

13   underlying the alleged violations of the '33 and '34 Acts, as he does with regard to his '40

14   Act claims.  And those paragraphs of the CAC plainly allege a "unified course of fraudulent

15   conduct," bringing those claims within the purview of Rule 9(b).

16           In paragraphs 30 through 95 of the CAC (which appear under the heading "the

17   Wells Fargo Broker/Dealers Engaged in Improper Conduct"), plaintiff describes a scheme

18   whereby defendants "failed to disclose that they had been coercing their sales personnel to

19   sell the Shelf Space Funds which provided them with financial incentives."[5]  Indeed,

20   plaintiff alleges that these alleged conflicts of interest "were actively concealed from

21   clients."[6]  He alleges that defendants "misrepresent[ed] the value and performance of the

22   Shelf Space Funds . . . [and] misled investors into believing that the Shelf Space Funds

23   _____

24   [1]  CAC ¶¶ 174, 143 (page 61 of the CAC), and 180; Opp. at 6:4-5.

     [2]  Opp. at 6:3-4.

25   [3]  Opp. at 6:4-5 (citing CAC ¶¶ 174, 143 (page 61 of the CAC), and 180).

26   [4]  *In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996).

27   [5]  CAC ¶ 29.

     [6]  CAC ¶ 80.

28

1   were given priority over other mutual funds due to their performance and the consultants'

2   objective analyses of different mutual funds."[7]  "If plaintiff's theory of liability is taken as

3   true . . . it is implausible that the defendants would not have known about the falsity of the

4   representations or omissions.  In fact, the alleged material misrepresentations were not –

5   and could not have been – a result of a failure to exercise due care."[8]

6        Plaintiff's authorities compel no other result.  For example, in *In re Exodus*

7   *Communications, Inc. Securities Litigation*,[9] the court noted that the plaintiffs expressly

8   disclaimed allegations of fraud in their cause of action for violation of section 11 of the '33

9   Act, set forth in that count all conduct alleged to violate section 11, and did not incorporate

10  any of the other factual allegations set forth in the complaint.[10]  That is not the case here

11  where plaintiff incorporates by reference all prior factual allegations (notwithstanding the

12  nominal disclaimer).  Similarly, in *In re JDS Uniphase Corporation Securities Litigation*,[11]

13  the claims under sections 11 and 12(a)(2) relied on allegations that the defendants "failed to

14  conduct 'reasonable investigation,' to 'reasonably assure that [the relevant] statements were

15  true,' and 'failed to possess reasonable grounds for the believe that the [relevant]

16  statements' were true."[12]  Plaintiff makes no such allegations here.

17  **2.    The '40 Act claims are based on the same conduct as the '33 and '34 Act**

18        **claims.**

19        Plaintiff argues that the allegations relating to his '40 Act claims are segregated

20  from the '33 and '34 Act claims, and alleges "an entirely separate course of conduct

21

22

23  [7] CAC ¶ 89.

24  [8] *In re Leadis Technology, Inc. Sec. Litig.*, No. C-05-00882 CRB, 2006 WL 496039, at *4 (N.D. Cal. Mar. 1, 2006).

25  [9] No. C 01-2661 MMC, 2005 U.S. Dist. LEXIS 20222 (N.D. Cal. Aug. 5, 2005).

26  [10] *Id.* at *36-37.

27  [11] No. C 02-1486 CW, 2005 U.S. Dist. LEXIS 20831 (N.D. Cal. Jan. 6, 2005).

28  [12] *Id.* at *33-34.

1    regarding the charging of excessive fees."[13]  This simply is not true.  The CAC describes

2    the conduct at issue as "interrelated activities of two groups of Wells Fargo Defendants."[14]

3    In alleging that the Investment Adviser and Distributor defendants received excessive fees,

4    plaintiff alleges that "[a] major reason for the dramatic increase in compensation to [those

5    defendants] was the growth in the size of the Wells Fargo Funds, resulting from

6    Defendants' use of Wells Fargo Fund assets to promote the sale of Wells Fargo Fund shares

7    through participation in revenue sharing or 'Shelf Space' programs."[15]  Indeed, the charging

8    allegations of plaintiff's '40 Act claims incorporate by reference all prior allegations of the

9    CAC, including those relating to the '33 and '34 Act claims.[16]  This incorporation is

10    entirely inconsistent with the notion that the conduct underlying plaintiff's '40 Act claims is

11    somehow distinguishable from the conduct underlying his '33 and '34 Act claims.

12    "Where . . . allegations of negligent conduct are grounded in a fraud-based theory of

13    liability, a plaintiff shall not be permitted to circumvent the requirements of Rule 9(b)

14    merely by avoiding express mention in the Complaint of the unavoidable reality of the

15    fraudulent nature of the claims."[17]  Rule 9(b), like the PSLRA, "'deter[s] the filing of

16    complaints "as a pretext for the discovery of unknown wrongs."'"[18]

17    **3.**       **The control person claims are also subject to Rule 9(b).**

18        Because all the underlying claims are subject to Rule 9(b), so too are the control

19    person allegations under section 15 of the '33 Act, section 20(a) of '34 Act and section

20    48(a) of the '40 Act.[19]  Plaintiff makes no mention of the authorities from this district cited

21

---

22    [13] Opp. at 6:3-4.

23    [14] CAC ¶ 29.

24    [15] CAC ¶ 97; *see also, e.g.,* CAC ¶¶ 143-151 (allegations regarding revenue sharing as the basis for excessive fees claim).

25    [16] CAC ¶¶ 203, 208.

26    [17] *In re Leadis Technology, Inc. Sec. Litig.*, 2006 WL 496039, at *5.

   [18] *Id.* (quoting *In re Stac Electronics Sec. Litig.*, 89 F.3d at 1405).

27    [19] *Howard v. Hui*, No. C 92-3742-CRB, 2001 WL 1159780, at *4 (N.D. Cal. Sept. 24, 2001) (Rule 9(b) applies to section 20(a) claim); *In re Splash Tech. Holdings, Inc. Sec.*

28                                                      (continued…)

1    by defendants.  Instead, plaintiff cites cases from 1976 to 1999, only two of which (a 1980

2    case from the District of Arizona and a 1985 case from the Western District of Washington)

3    are from the Ninth Circuit.[20]  Indeed, in *Draney v. Wilson, Morton, Assaf & McElligot*,[21] it

4    is not clear that the case even involves control person claims under section 15 of the '33

5    Act, section 20(a) of the '34 Act or section 48(a) of the '40 Act as the court does not refer

6    to any statute or even mention the word "control."  And the court's language in *In re*

7    *Washington Public Power Supply System Securities Litigation*,[22] is mere dicta since the

8    court concluded that "the § 20 claim would survive even the Rule 9(b) standard."[23]

9           Because Rule 9(b) applies to each of plaintiff's claims, it applies to each of

10   plaintiff's parallel control person claims.  Each of those claims must be stated with

11   particularity and the CAC does not do so.

12   **B.      Plaintiff must plead with specificity that Wells Fargo & Co. exerted actual**

13           **power over the controlled persons.**

14          Plaintiff does not deny that to plead secondary liability under section 15 of the '33

15   Act or section 20(a) of the '34 Act, plaintiff must allege both "(1) 'a primary violation of

16   federal securities law' and (2) 'that the defendant exercised actual power or control over the

17   primary violator.'"[24]  As set forth in defendants' moving and reply papers, plaintiff has

18   failed to plead a primary violation of the securities laws.  Plaintiff also has failed to plead

19

────────────────────

20   (…continued)
     *Litig.*, No. C 99-00109 SBA, 2000 WL 1727405, at *15 (N.D. Cal. Sept. 29, 2000) ("In
21   order to adequately plead the second element of a control person liability claim, the
     complaint must plead the circumstances of the control relationship with particularity.");
22   *see also*, *In re Leadis Technology, Inc. Sec. Litig.*, 2006 WL 496039, at *5 n.3.

     [20] Opp. at 8 nn.8 & 9.
23
     [21] No. Civ. 79-1029, 1980 U.S. Dist. LEXIS 11220 (D. Ariz. Apr. 15, 1980).
24   [22]  623 F. Supp. 1466 (W.D. Wash. 1985).

25   [23] *Id.* at 1471.

26   [24] *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding*
     *Corp.*, 320 F.3d 920, 945 (9th Cir. 2003) (quoting *Howard v. Everex Sys., Inc.*, 228 F.3d
     1057, 1065 (9th Cir. 2000)) (section 20(a) of '34 Act); *see also Durham v. Kelly*, 810
27   F.2d 1500, 1503-04 (9th Cir. 1987) (section 15 of '33 Act); *In re Calpine Corp. Sec.*
     *Litig.*, 288 F. Supp. 2d 1054, 1081 (N.D. Cal. 2003) (same); Opp. at 9:25-10:3.
28

1    that Wells Fargo & Co. exercised actual power or control over the defendants with the

2    specificity required by Rule 9(b).  Plaintiff makes only conclusory allegations with regard

3    to the exercise of control.[25]  The sole basis of these allegations is Wells Fargo & Co.'s

4    status as the "ultimate" parent of most of the other defendants.  These allegations are

5    insufficient to state a control person claim.[26]

6    **C.      Plaintiff must plead "culpable participation" to state a claim under section 15**

7    **of the '33 Act.**

8            Plaintiff contends that he need not plead that Wells Fargo & Co. was a culpable

9    participant in the violation to state a claim, citing *Hollinger v. Titan Capital Corp.*[27]  The

10   *Hollinger* court held that a broker-dealer controls a registered representative as a matter of

11   law – whether or not the registered representative is an "independent contractor,"[28] and

12   whether or not there is culpable participation in the particular violations[29] – and limited its

13   decision to that context.[30]  The court made its decision in light of a broker-dealer's statutory

14   obligations to supervise its registered representatives and its control over their access to the

15

16

---

17   [25] CAC ¶¶ 183, 200-201, 211.

18   [26] Plaintiff's discussion of Wells Fargo & Co.'s securities filings (Opp. at 12:1-14:5) is
       irrelevant in light of the requirement that plaintiff plead that the defendant exercised
19     actual power or control over the primary violator, not merely that the defendant may have
       had theoretical power through stock ownership.

20   [27] 914 F.2d 1564, 1575-76 (9th Cir. 1990).

21   [28] "To summarize, we hold that a broker-dealer is a controlling person under § 20(a) with
       respect to its registered representatives . . . .  Thus, for appellants to establish that Titan
22     was a controlling person, they need only show that Wilkowski was not himself a
       registered broker-dealer but was a representative employed by or associated with a
23     registered broker-dealer." *Id.* at 1574.

24   [29] "Today, however, we hold that a plaintiff is not required to show 'culpable participation'
       to establish that a broker-dealer was a controlling person under § 20(a)." *Id.* at 1575.

25   [30] *Id.* at 1575 n.24 ("Today's holding, however, is reached in the context of the broker-
       dealer/registered representative relationship exclusively.").  Indeed, each of the cases
26     whose reasoning *Hollinger* expressly rejected arose in the broker-dealer context.  *Id.* at
       1574 n.23 (identifying *Buhler v. Audio Leasing Corp.*, 807 F.2d 833 (9th Cir. 1987);
27     *Christoffel v. E.F. Hutton & Co.*, 588 F.2d 665 (9th Cir. 1978); and *Kersh v. General
       Council of Assemblies of God*, 804 F.2d 546 (9th Cir. 1986)).

28

1    securities markets.[31]  The other case cited by plaintiff – *In re CBT Group PLC Securities*

2    *Litigation*[32] – makes no mention of *Durham v. Kelly*.[33]  No court has ever overruled

3    *Durham*, and plaintiff's failure and inability to plead culpable participation is no basis for

4    ignoring controlling Ninth Circuit authority.

5    **D.    There is no private right of action under section 48(a) of the '40 Act.**

6           In Wells Fargo & Co.'s opening brief, it cited three recent cases which have

7    analyzed section 48(a) of the '40 Act and concluded that there is no private right of action

8    under that statute.[34]  In his opposition, plaintiff makes no mention of Wells Fargo's

9    authorities, and instead cites three other cases.[35]  None of the cases cited by plaintiff[36]

10   considered whether a private right of action exists under section 48(a).  Cases do not stand

11   for propositions that they do not consider.  There is no private right of action under section

12   48(a).  This claim should be dismissed with prejudice.

13   **E.    Even if there were a private right of action, plaintiff has not alleged sufficient**

14         **facts to state a claim under section 48(a) of the '40 Act.**

15          As set forth in Wells Fargo & Co.'s moving papers, the plain language of section

16   48(a) of the '40 Act more closely resembles that of section 20(b) of the '34 Act than that of

17   either section 15 of the '33 Act or section 20(a) of the '34 Act.[37]  Indeed, it differs from

18   those sections in two key respects:  (1) section 48(a) does not use the word "control"; and

19   _____

20   [31] *Id.* at 1573-74.

21   [32] No. C-98-21014-RMW, 2000 U.S. Dist. LEXIS 19214 (N.D. Cal. Dec. 29, 2000).

     [33] 810 F. 2d 1500 (9th Cir. 1987).

22   [34] *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 231-33 (S.D.N.Y. 2005);
23   *In re Davis Selected Mut. Fund Litig.*, No. 04 CIV 4186 (MGC), 2005 WL 2509732, at *2
     (S.D.N.Y. Oct. 11, 2005); *Waldock v. M.J. Select Global, Ltd.*, No. 03 C 5293, 2005 WL
24   3542527, at *8-*9 (N.D. Ill. Dec. 27, 2005).

     [35] Opp. at 19:4-19.
25
     [36] *In re Dreyfus Mut. Funds Fee Litig.*, No. Master File 04-0128, 2005 WL 3970836 (W.D.
26   Pa. Sept. 30, 2005); *In re ML-Lee Acquisition Fund II*, 848 F. Supp. 527 (D. Del. 1994);
     *Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002).

27   [37] The starting point in the interpretation of a statute is the analysis of the plain language of
     the statute.  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).
28

1   (2) it does not provide a "good faith" affirmative defense.[38]  Thus, even if there is a private

2   right of action under section 48(a) (which there is not), unlike section 15 and section 20(a),

3   section 48(a) requires that a plaintiff make a far greater showing than that necessary under

4   sections 15 and 20(a).

5       In contending that section 48(a) is identical to section 20(a), plaintiff ignores the

6   text of the statute and relies on *SEC v. American Board of Trade, Inc.*[39]  But the court in

7   that case states that section 48(a) is analogous to claims under section 15 and section 20(a)

8   without any analysis, including a mention of the standard applicable to claims brought

9   under those sections.  Even if a private right of action exists under section 48(a), plaintiff

10  cannot plead facts sufficient to state a claim under that section and the claim should be

11  dismissed.

12  **F.      Plaintiff's '33 and '34 Act claims are barred by the statute of limitations.**

13      Plaintiff's claims under the '33 and '34 Acts are barred by the one and two-year

14  inquiry notice statutes of limitations.[40]  Plaintiff does not dispute that his claims are time-

15  barred if the statute of limitations began to run before November 4, 2004 ('33 Act) or

16  November 4, 2003 ('34 Act).  Opp. at 15 n.16.  Plaintiff contends instead that the

17  disclosures made before these dates – including, but not limited to, news articles, proposed

18  legislation, and existing disclosures in prospectuses and SAIs – did not create inquiry notice

19  because they did not name the defendants.  But that is not necessary.

20

21

22

23  _____

24  [38] Section 48(a) of the Investment Company Act of 1940 provides: "It shall be unlawful for
    any person, directly or indirectly, to cause to be done any act or thing through or by
    means of any other person which it would be unlawful for such person to do under the

25  provisions of this subchapter or any rule, regulation, or order thereunder."  15 U.S.C.
    § 80a-47(a).

26  [39] 593 F. Supp. 335 (S.D.N.Y. 1984), *rev'd on other grounds*, 751 F.2d 529 (2d Cir. 1984).

27  [40] 15 U.S.C. § 77m ('33 Act); 28 U.S.C. § 1658(b)(1) ('34 Act).  Plaintiff's '33 Act claims
    are barred in any event by the three-year outside statute of limitations.  15 U.S.C. § 77m.

28

1     As discussed in the motion, widespread regulatory action and articles in the media

2 drew attention to revenue sharing for many years before plaintiff filed his complaint.[41]

3 There was broad public discussion of revenue sharing, both at the agency level and in

4 Congress.  The practice is widespread in the industry.  If such broad discussion and

5 common knowledge cannot support inquiry notice, what can?

6     Plaintiff also ignores the specific facts relating to him of which he was on inquiry

7 notice.  For example, the CAC itself relies on an SEC consent decree entered into by one of

8 the so-called "Shelf-Space" funds on March 31, 2004.[42]  This decree describes in detail the

9 revenue sharing arrangements that Massachusetts Financial Services ("MFS") had with

10 approximately 100 broker-dealers.[43]  MFS is one of the so-called "Shelf Space" funds

11 alleged by the CAC.  A reasonable investor would certainly be on inquiry notice of

12 potential claims at that point.  The "investigation" required to determine if defendants were

13 among the broker-dealers that had such arrangements with MFS would be as simple as

14 making a phone call either to the funds or to the broker.  This action, and the widespread

15 report of it in the mass media, belie the notion that plaintiff could not have discovered his

16 claims within the limitations period.  Indeed, plaintiff's lawyers here (among others) filed

17 many cases against the "Shelf Space" funds[44] before the limitations period, including:

18     • *In re Morgan Stanley and Van Kampen Mut. Funds Fee Litig.*, Case No. 03

19        CIV 8208 (S.D.N.Y.) (initial complaint filed 10/16/2003);

20     • *In re Eaton Vance Mut. Funds Fee Litig.*, Case No. 04 CIV 1144 (S.D.N.Y.)

21        (initial complaint filed 02/11/2004);

22

23 ───────────────

[41] As set forth in Defendants' Request for Judicial Notice (Dkt. 69), these materials may be
24    judicially noticed in ruling on a motion to dismiss.

[42] CAC ¶ 86 (referring to MFS consent decree (RFJN Ex. 13)).  At a bare minimum, this
25    consent decree gave rise to a duty of inquiry for each and every purchaser of an MFS
      fund to ask their broker-dealer whether it had received such compensation and whether it
26    had affected their recommendation.

27 [43] Ex. 13 ¶¶ 2-6 (RFJN 319-320).

[44] *See* CAC Ex. A (identifying alleged "Shelf Space" funds).
28

1       • *In re Franklin Mut. Funds Fee Litig.*, Case No. MASTER FILE 04-CV-982

2          (D.N.J.) (initial complaint filed 03/02/2004);

3       • *In re Goldman Sachs Mut. Funds Fee Litig.*, Case No. 04 CIV 2567

4          (S.D.N.Y.) (initial complaint filed 04/02/2004);

5       • *In re Evergreen Mut. Funds Fee Litig.*, Case No. 04 CIV 4453 (S.D.N.Y.)

6          (initial complaint filed 06/14/2004);

7       • *In re AllianceBernstein Mut. Funds Excessive Fee Litig.*, Case No. 04 CIV

8          4885 (S.D.N.Y.) (initial complaint filed 06/22/2004).[45]

9    If revenue sharing was a secret, it was the worst-kept secret in the industry. Plaintiff seems

10   to argue that he had no basis for inquiring into the existence of his claims even though the

11   plaintiffs in each of these cases, involving the very same mutual fund families, were able to

12   identify their claims and bring suit within the limitations period. There is no excuse for

13   plaintiff's failure to investigate and bring his claims in a timely manner.

14       *Lentell v. Merrill Lynch & Co.*,[46] on which plaintiff relies heavily, is

15   distinguishable. *Lentell* alleged fraud by securities analysts who allegedly skewed their

16   advice to help their firms' investment banking groups. The court found that the general

17   discussions of the existence of conflicts of interest in the industry (which did not mention

18   the stocks purchased by plaintiffs) were not sufficient to trigger a duty of inquiry notice.[47]

19   But the court in *Lentell* expressly left open the possibility that general disclosures could

20   suffice to give rise to inquiry notice.[48] In any event, defendants have identified more than

21   general disclosures. Not only were there general discussions of revenue sharing and related

22   disclosure requirements well before November 4, 2004, each alleged "Shelf Space" Fund

23   ───────────────
     [45] As these filing dates, as reflected in court dockets and records, are "not subject to
24   dispute," and "capable of accurate and ready determination by resort to sources whose
     accuracy cannot reasonably be questioned," the Court may also take judicial notice of
25   them. Fed. R. Evid. 201(b).

26   [46] 396 F.3d 161, 164 (2d Cir. 2005).

     [47] *Id.* at 170-72.

27   [48] *Id.* at 171 ("We do not mean to suggest that inquiry notice could never be established on
     the basis of non-specific public-pronouncements . . . .").

28

1   issued prospectuses and SAIs disclosing that the funds paid compensation to broker-

2   dealers.[49]  Plaintiff was therefore on notice of the existence of conflicts of interest in the

3   industry relating to broker-dealer compensation and revenue sharing, and specifically on

4   notice that each affected fund had certain compensation arrangements with broker-dealers.

5          The extensive public debate about revenue sharing – including the actions against

6   many of the very same mutual fund companies involved in this suit – demonstrates that

7   plaintiff had inquiry notice of his claims years before he filed suit.  The statute of

8   limitations therefore bars all his '33 Act and '34 Act claims.

9   **III.      CONCLUSION.**

10         For the foregoing reasons, the Complaint should be dismissed as to Wells Fargo &

11   Company.

12         Dated: June 7, 2006.

13                                     PILLSBURY WINTHROP SHAW PITTMAN LLP
                                       BRUCE A. ERICSON
14                                     CLIFFORD C. HYATT
                                       DAVID L. STANTON
15                                     JACOB R. SORENSEN
                                       KRISTIN M. LEFEVRE
16                                     50 Fremont Street
                                       Post Office Box 7880
17                                     San Francisco, CA  94120-7880

18                                     Attorneys for All Defendants

19
                                       THOMAS O. JACOB  #125665
20                                     VANESSA M. HOFFMANN  #206086
                                       OFFICE OF GENERAL COUNSEL
21                                     WELLS FARGO & CO.
                                       633 Folsom Street, 7th Floor
22                                     San Francisco, California  94107

23                                     Attorneys for Defendants
                                       WELLS FARGO & CO. and affiliates
24

25                                     By _____/s/ Bruce A. Ericson_____
                                                   Bruce A. Ericson
26

27   _____
     [49]      CAC ¶ 84.
28