1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    BRUCE A. ERICSON  #76342
2   CLIFFORD C. HYATT  #196458
    DAVID L. STANTON  #208079
3   JACOB R. SORENSEN  #209134
    KRISTIN M. LEFEVRE  #221541
4   50 Fremont Street
    Post Office Box 7880
5   San Francisco, CA  94120-7880
    Telephone: (415) 983-1000
6   Facsimile: (415) 983-1200
    bruce.ericson@pillsburylaw.com
7
    Attorneys for All Defendants
8
    THOMAS O. JACOB  #125665
9   VANESSA M. HOFFMANN  #206086
    OFFICE OF GENERAL COUNSEL
10  WELLS FARGO & CO.
    633 Folsom Street, 7th Floor
11  San Francisco, California  94107
    Telephone: (415) 396-4425
12  Facsimile: (415) 975-7867
    tojacob@wellsfargo.com
13
    Attorneys for Defendants
14  WELLS FARGO & CO. and affiliates

15              UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17               SAN FRANCISCO DIVISION

18

19  THE McDANIEL FAMILY TRUST,                    No. C-05-04518-WHA
    Individually And On Behalf Of ALL OTHERS
20  SIMILARLY SITUATED,                           CLASS ACTION (PSLRA)

21                      Plaintiff,                REPLY IN SUPPORT OF MOTION
                                                  BY THE BROKER-DEALER AND
22          vs.                                   REGISTRANT DEFENDANTS TO
                                                  DISMISS COUNTS I, II AND IV OF
23  WELLS FARGO & COMPANY, et al.,                PLAINTIFF'S CONSOLIDATED
                                                  AMENDED CLASS ACTION
24                      Defendants.               COMPLAINT [DKT. 66]

25                                                Date:  June 21, 2006
                                                  Time: 8:00 a.m.
26                                                Ctrm:  9, 19th Floor
                                                  Honorable William H. Alsup

27

28

1

**TABLE OF CONTENTS**

2

Page

3    I.    INTRODUCTION. ..................................................................1

4    II.   ARGUMENT. .......................................................................1

5          A.   The CAC does not satisfy Rule 9(b)—and the Opposition does not
                argue otherwise..............................................................1
6
           B.   The CAC's reliance upon settlements is improper. ........................................2
7
           C.   The Opposition mischaracterizes Defendants' disclosure duties. .................4
8
                1.   Defendants properly disclosed total customer fees and
9                    expenses.........................................................................4

10               2.   Defendants properly disclosed third-party remuneration and
                      directed brokerage. .......................................................5
11
                 3.   Defendants were not required to disclose differential
12                    compensation.................................................................5

13               4.   The Opposition's attempt to create new disclosure obligations
                      is wrong. ......................................................................6
14
           D.   The Opposition ignores the authority showing that revenue sharing is
15              lawful.........................................................................8

16         E.   The CAC does not allege Defendants misled Plaintiff about anything
                material. .....................................................................10
17
           F.   The CAC does not adequately allege damages or loss causation.................10
18
                1.   Plaintiff has not shown that he was harmed by the
19                   performance of his funds. .................................................10

20               2.   Plaintiff's general allegations of loss of value and price
                      inflation are unavailing.....................................................10
21
                 3.   The CAC has nothing to do with churning, late trading or
22                    market timing.................................................................12

23               4.   Plaintiff has not demonstrated loss causation....................................12

24               5.   Plaintiff has not satisfied the tender or sale requirements for
                      his '33 Act claims. .........................................................13
25
           G.   The CAC does not adequately allege standing or reliance...........................13
26
           H.   The CAC does not adequately allege scienter. ...........................................14
27
     III.  CONCLUSION. ...................................................................15
28

1

**TABLE OF AUTHORITIES**

2

Page

3

**Cases**

4

Affiliated Ute Citizens v. United States,
    406 U.S. 128 (1972) ........................................................................................ 12, 14

5

6

Alvarez v. IBP, Inc.
    339 F.3d 894 (9th Cir. 2003) ...................................................................................... 2

7

Auer v. Robbins,
    519 U.S. 452 (1997) .................................................................................................... 9

8

9

Benzon v. Morgan Stanley,
    2004 WL 62747 (M.D. Tenn. Jan. 8, 2004) ...................................................... 5, 6, 9

10

Blue Chip Stamps v. Manor Drug Stores,
    421 U.S. 734 (1975) .................................................................................................. 13

11

12

Bowen v. Georgetown Univ. Hosp.,
    488 U.S. 204 (1988) ............................................................................................... 2, 9

13

Castillo v. Dean Witter Discovery & Co,
    1998 WL 62747 .............................................................................................. 4, 6, 9, 11

14

15

D.L. Cromwell Invs., Inc. v. N.A.S.D. Regulations, Inc.,
    279 F.3d 155 (2d Cir. 2002) ....................................................................................... 3

16

Dumond v. Massachusetts Financial Services Company,
    2006 WL 149038 (D. Mass. Jan. 19, 2006) ............................................................... 8

17

18

Ernst & Young v. Hochfelder,
    425 U.S. 185 (1976) .................................................................................................. 15

19

Forsythe v. Sun Life Financial, Inc.,
    417 F. Supp. 2d 100 (D. Mass. Jan. 16, 2006) .......................................................... 8

20

21

Hertzberg v. Dignity Partners,
    191 F.3d 1076 (9th Cir. 1999) ................................................................................. 2, 9

22

Howard v. S.E.C.,
    376 F.3d 1136 (D.C. Cir. 2004) ................................................................................. 3

23

24

In re AllianceBernstein Mut. Fund Excessive Fee Litig.,
    2005 WL 2677753 (S.D.N.Y Oct. 19, 2005), later opinion, 2006 WL
    74439 (S.D.N.Y. Jan. 11, 2006) ................................................................................. 8

25

26

In re Davis Selected Mut. Funds Litig.,
    2005 WL 2509732 (S.D.N.Y. Oct. 11, 2005).............................................................. 8

27

In re Dreyfus Mut. Funds Fee Litig.,
    2006 WL 909434 (W.D. Pa. Apr. 10, 2006) ............................................................... 9

28

In re Eaton Vance Mut. Funds Fee Litig.,
    403 F. Supp. 2d 310 (S.D.N.Y. Dec. 6, 2005)........................................................ 8

In re Estate of Covington,
    2006 WL 1421316 (March 8, 2006) ..................................................................... 9

In re Evergreen Mut. Funds Fee Litig.,
    2006 WL 753000 (S.D.N.Y. Mar. 24, 2006) ...................................................... 8

In re Franklin Mut. Funds Fee Litig.,
    388 F. Supp. 2d 451 (D.N.J. Sept. 9, 2005)....................................................... 9

In re Goldman Sachs Mut. Funds Fee Litig.,
    2006 WL 126722 (S.D.N.Y. Jan 17, 2006) ........................................................ 8

In re Immune Response Sec. Litig.,
    375 F. Supp. 2d 983 (S.D. Cal. 2005) .............................................................. 14

In re Lord Abbett Mut. Funds Fee Litig.,
    407 F. Supp. 2d 616 (D.N.J. Dec. 28, 2005) ..................................................... 8

In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,
    218 F.R.D. 76 (S.D.N.Y. 2003) ........................................................................ 3

In re Morgan Stanley and Van Kampen Mut. Fund Securities Litig.,
    2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006) ............................................ 5, 6, 9

In re Mutual Funds Investment Litigation,
    384 F.Supp.2d 845 (D. Md. 2005)................................................................... 12

In re Oppenheimer Funds Fees Litig.,
    2006 WL 592881 (S.D.N.Y. Mar. 10, 2006) ..................................................... 8

In re VeriFone Sec. Litig.,
    11 F.3d 865 (9th Cir. 1993) .............................................................................. 4

In re WorldCom, Inc. Sec. Litig.,
    294 F. Supp. 2d 392 (S.D.N.Y. 2003) .................................................. 13, 14, 15

In the Matter of Morgan Stanley DW, Inc.,
    No. E-2003-31, No. E-2003-53 (Sec'y Mass. Comm. Sec. Div.
    May 24, 2004), aff'd on reconsideration, No. E-2003-31,
    No. E-2003-53 (Sec'y Mass. Comm. Sec. Div. June 22, 2004) ................................. 4

Jablon v. Dean Witter,
    614 F.2d 677 (9th Cir. 1980) ......................................................................... 3, 7

Marrie v. S.E.C.,
    374 F.3d 1196 (D.C. Cir. 2004)......................................................................... 3

Press v. Quick & Reilly, Inc.
    218 F.3d 121 (2d Cir. 2000) ...................................................................... 5, 9, 15

Randall v. Loftsgaarden,
    478 U.S. 647 (1986) ....................................................................................... 12

U.S. v. Alvarado,
    2001 WL 1631396 (S.D.N.Y. Dec. 19, 2001) ...................................................... 6, 9

U.S.A. Classic Sec. Litig.,
    1995 U.S. Dist. LEXIS 8327 (S.D.N.Y. June 16, 1995) ........................................... 8

Wharf Holdings Ltd. v. United Int'l Holdings, Inc.,
    532 U.S. 588 (2001) .......................................................................................... 15

Wilbur v. Locke,
    423 F.3d 1101 (9th Cir. 2005) ............................................................................ 14

**Statutes and Codes**

Securities Exchange Act of 1933
    Section 12(a)(2), 15 U.S.C. § 77l(a)(2) ................................................................ 2

Securities Exchange Act of 1934
    Section 10(b), 15 U.S.C. § 78j(b) ................................................................... 2, 15

**Rules and Regulations**

Code of Federal Regulations
    Title 17, section 240.10b-5 ........................................................................ 2, 4, 15
    Title 17, section 240.10b-10 .................................................................... 1, 5, 6, 7

Federal Rules of Civil Procedure
    Rule 9(b) ............................................................................................... 1, 2, 10
    Rule 12(f) .................................................................................................... 3

**Other Authorities**

National Association of Securities Dealers
    Rule 2830(k) ................................................................................................. 4
    Rule 2830(k)(7)(B) ..................................................................................... 5, 6

National Association of Securities Dealers
    Notice to Members 94-14 .................................................................................. 7
    Notice to Members 97-50 ............................................................................... 7, 8

1   **I.     INTRODUCTION.**

2           Plaintiff's opposition ("Opposition") (Dkt. 84) repeatedly misses the point.  Plaintiff

3   fails to establish that his '33 Act and '34 Act claims meet the requirements of Rule 9(b).

4   Instead, Plaintiff relies on a litany of administrative settlements, arguing incorrectly that,

5   without rulemaking or legislative enactment, these settlements retroactively broadened the

6   disclosure requirements during the Class Period.  Plaintiff mischaracterizes Defendants'

7   duty to disclose, failing to acknowledge the 1977 implementing release that established

8   general prospectus disclosure under Rule 10b-10 as the standard for third-party

9   remuneration received by broker-dealers, and disregarding the authorities that have

10  permitted this disclosure method for the past 30 years.  Plaintiff also ignores the weight of

11  recent cases that have dismissed revenue-sharing claims, relegating to a mere footnote the

12  leading authorities on the disclosure of revenue-sharing and differential compensation.

13          Plaintiff acknowledges that he purchased and sold his mutual funds at net asset

14  value.  Therefore, Plaintiff cannot demonstrate that he suffered any damages, much less that

15  there was a causal link between economic harm and alleged misconduct.  By attempting to

16  lodge a *declaration* to support his claims, Plaintiff tacitly admits that he has not adequately

17  pleaded reliance or standing.  Finally, the one half-page that Plaintiff devotes to the scienter

18  element fails to demonstrate that Plaintiff has pled sufficient facts to establish this essential

19  element of his '34 Act claim.

20          For all of these reasons, Counts I, II and IV of the Consolidated Amended

21  Complaint ("CAC") should be dismissed.

22  **II.    ARGUMENT.**

23  **A.     The CAC does not satisfy Rule 9(b)—and the Opposition does not argue**

24  **         otherwise.**

25          The motion to dismiss Counts I, II and IV, Dkt. 66 ("Motion") establishes that Rule

26  9(b) of the Federal Rules of Civil Procedure applies to Counts I and II of the CAC (under

27  section 12(a)(2) of the Securities Act of 1933 ("'33 Act")) and Count IV of the CAC (under

28  section 10(b) of the Securities Act of 1934 ("'34 Act"), and Rule 10b-5.  Dkt. 66, at 3, 6.

1   Plaintiffs' opposition (Dkt. 84) ("Opposition" or "Opp.") does not contest that Rule 9(b)

2   applies, at a minimum, to Count IV.  While Plaintiff argues in a footnote and in his

3   opposition to the control person motion that Rule 9(b) should not apply to the '33 Act

4   claims, that argument is wrong for the reasons stated in the reply supporting the control

5   person motion.  In any event, the Opposition to this Motion makes no attempt to recite

6   particular facts that might satisfy the specificity requirement of Rule 9(b).

7   **B.      The CAC's reliance upon settlements is improper.**

8           The CAC is based on alleged omissions, but fails to demonstrate a duty to disclose

9   that Defendants did not meet.  Unable to find such a duty in existing law or regulations, the

10  Opposition attempts to find that duty in recent consent decrees between third-party fund

11  companies and the U.S. Securities and Exchange Commission ("SEC"), and by the Broker-

12  Dealer Defendants' settlements with the National Association of Securities Dealers

13  ("NASD"), as reflected in letters of acknowledgement, waiver and consent ("AWCs").  But

14  Plaintiff's reliance upon settlements is improper and misleading.

15          Agency settlements are not controlling precedent.  Courts have repeatedly held that

16  settlements between government agencies and private litigants are inadmissible in

17  subsequent litigation.[1]  The Supreme Court itself has admonished lower courts against

18  "deference to what appears to be nothing more than an agency's convenient litigating

19  position."[2]  The Ninth Circuit, applying this precedent, has cautioned that "[a]gency

20  positions developed in litigation" are not of a character that deserves deference:

21          They are specifically tailored to help obtain a favorable outcome in a
            pending controversy in which the agency is involved.  Concessions or
22          settlements within the course of the administrative litigation also may be
            made for a variety of quite justifiable reasons; however the contextual
23          underpinnings are dissimilar from agency rule-making.[3]

24  _____

25  [1]  *See* Defendants' Motion to Strike References to Consent Decrees in Plaintiff's
         Consolidated Amended Class Action Complaint (Dkt. 63) at 4:18-5:12.

26  [2]  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988).

27  [3]  *Alvarez v. IBP, Inc.* 339 F.3d 894, 908 (9th Cir. 2003) (discussing *Bowen*).  An exception
         is made for *amicus* briefs, which often are the product of deliberation and analysis.
         *Hertzberg v. Dignity Partners,* 191 F.3d 1076, 1082 (9th Cir. 1999) (discussing *Bowen*).

28

1   Thus, courts frequently reject litigation positions taken by the SEC, and they are entitled to

2   no special consideration.[4]  And since the NASD is a private party, the allegations contained

3   in its settlement documents are entitled to no deference at all.[5]

4         The settlement documents upon which Plaintiff relies contain untested

5   administrative assertions, not evidentiary "findings," as the Opposition incorrectly

6   contends.[6]  These "references to preliminary steps in litigations and administrative

7   proceedings that did not result in an adjudication on the merits or legal or permissible

8   findings of fact are, as a matter of law, immaterial."[7]  Investment firms have entered into

9   these settlements for the limited purpose of resolving regulatory proceedings, and without

10  admitting or denying the regulators' conclusions.  The AWCs expressly state they are

11  accepted and consented to "solely for the purposes of this proceeding … and without an

12  adjudication of any issue of law or fact."[8]  The third-party consent decrees contain similar

13  limitations.[9]  Because the third-party settlements are not binding upon the parties thereto, it

14  follows that they are not binding on Defendants here.

15        Furthermore, the AWCs do not speak to the disclosure of revenue-sharing

16  arrangements.  They only address purported violations of NASD Rule 2830(k), and no

17  private right of action arises from the NASD's rules.[10]  Neither the AWCs nor the consent

18  decrees allege any type of fraud, and they cannot be used to establish the sufficiency of the

19

20  [4] *Howard v. S.E.C.*, 376 F.3d 1136 (D.C. Cir. 2004); *Marrie v. S.E.C.*, 374 F.3d 1196 (D.C. Cir. 2004).

21  [5] *D.L. Cromwell Invs., Inc. v. N.A.S.D. Regulations, Inc.*, 279 F.3d 155, 162 (2d Cir. 2002) ("It has been found, repeatedly, that the NASD itself is not a government functionary.").

22  [6] Opp. at 3:12.

23  [7] *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78-79 (S.D.N.Y. 2003) (striking references to SEC complaints, NASD complaint and

24  complaints in ongoing civil litigation under Fed. R. Civ. P. 12(f)).

25  [8] *See* Defendant's Request for Judicial Notice (Dkt. 69) (hereinafter "RFJN"), Ex. 11 at RFJN 295, and Ex. 12 at RFJN 305.

26  [9] RFJN Ex. 13 at RFJN 318, Ex. 14 at RFJN 329, Ex. 15 at RFJN 340-41, Ex. 16 at RFJN 349, Ex. 17 at RFJN 362, Ex. 18 at RFJN 377.

27  [10] *Jablon v. Dean Witter*, 614 F.2d 677, 680-81 (9th Cir. 1980) (holding that there is no private right of action for violation of NASD rule).

28

1   fraud allegations in the CAC.[11]  While new regulations and laws regarding revenue-sharing

2   disclosure are under consideration,[12] the recent litigation positions adopted by the SEC and

3   NASD without any rulemaking process do not reflect the law during the Class Period.[13]

4   **C.     The Opposition mischaracterizes Defendants' disclosure duties.**

5           As the Motion showed:  (1) the fees and costs borne by fund investors must be

6   disclosed in specific amounts; (2) the payments that fund advisers make to broker-dealers

7   may be generally disclosed in a fund prospectus; but (3) there is no requirement to disclose

8   the varying compensation that broker-dealers pay registered representatives for selling

9   different products.  The Opposition ignores these distinctions.

10  **1.      Defendants properly disclosed total customer fees and expenses.**

11          Mutual fund disclosure is regulated under Form N-1A, which requires funds to

12  disclose to investors the precise amounts of their fees and expenses, and the costs that the

13  funds are required to pay.[14]  This is the most important information to any customer,

14  because it is "the total fees charged that would affect the asset value of a fund and the

15  decision to invest."[15]  The prospectuses and statements of additional information ("SAIs")

16  referenced in the CAC fully informed Plaintiff of the fees and expenses he would be

17  charged to buy, sell and hold his mutual funds.  Plaintiff does not contend that his expenses

18  exceeded those listed in the prospectuses.

19  _____

20  [11] *See, e.g., In re VeriFone Sec. Litig.*, 11 F.3d 865, 870 (9th Cir. 1993) (holding an alleged
        violation of a stock exchange disclosure rule cannot substitute for an analysis under
21      section 10(b) and Rule 10b-5).

22  [12] *See* Motion of Defendant Wells Fargo & Co. to Dismiss Plaintiff's Consolidated
        Amended Class Action Complaint (Dkt. 62) (hereinafter "Wells Fargo & Co. Motion") at
23      10:14-11:1.

24  [13] *See, e.g., In the Matter of Morgan Stanley DW, Inc.*, No. E-2003-31, No. E-2003-53, at 1
        (Sec'y Mass. Comm. Sec. Div. May 24, 2004), *aff'd on reconsideration*, No. E-2003-31,
        No.E-2003-53, at 2 (Sec'y Mass. Comm. Sec. Div. June 22, 2004). (This is the only
25      administrative proceeding where revenue-sharing has been litigated, and the ALJ found
        that a broker-dealer has "no duty to disclose 'compensation incentives and conflicts of
26      interest to . . . client investors.'").

27  [14] Motion at 7:7-8:4.

    [15] *Castillo v. Dean Witter Discovery & Co*, 1998 WL 62747, at *2.
28

1    **2.      Defendants properly disclosed third-party remuneration and directed**

2    **       brokerage.**

3        Broker-dealers are entitled to rely upon general prospectus disclosure of revenue-

4    sharing and directed brokerage arrangements.  This is established under footnote 41 to the

5    1977 implementing release for Rule 10b-10 ("Footnote 41") and under the safe harbor

6    exception in NASD Rule 2830(k)(7)(B).[16]  The Motion discusses several authorities

7    recognizing general prospectus disclosure of third-party remuneration.  These include the

8    leading case of *Press v. Quick & Reilly, Inc*., in which, at the request of the Second Circuit,

9    the SEC filed an *amicus* brief recognizing general prospectus disclosure as the correct

10   standard for third-party remuneration, and where the Second Circuit adopted this standard

11   in deference to the SEC.[17]  The Motion demonstrates, by quoting the prospectuses

12   referenced in the CAC, that Defendants disclosed: (1) that fund advisers made additional

13   payments to broker-dealers in connection with fund sales; and (2) that fund advisers

14   considered fund sales when selecting brokers to conduct portfolio transactions.[18]  These

15   disclosures meet the applicable requirements for general prospectus disclosure of third-

16   party remuneration and directed brokerage, and they were distributed to fund customers.[19]

17   **3.      Defendants were not required to disclose differential compensation.**

18       Broker-dealers are not required to disclose differential compensation paid to their

19   registered representatives for selling mutual funds.[20]  A number of cases so hold, including

20   *In Re Morgan Stanley and Van Kampen Mut. Fund Securities Litig.* (holding that

21   "defendants did not have a duty to disclose the differential compensation, bonuses, and

22   sales contests, and any failure to disclose them is not actionable"), *Benzon v. Morgan*

23   _____

24   [16] *See, e.g.,* Motion by the Broker-Dealer and Registrant Defendants to Dismiss Counts I, II
     and IV of Plaintiff's Consolidated Amended Class Action Complaint (Dkt. 66)
     (hereinafter "Motion"), at 12:1-16:2.

25   [17] *See generally* Motion at 9:3-16:1.

26   [18] Motion at 16:3-18:9.

27   [19] CAC ¶ 81.

     [20] Motion at 9:3-11:20; 19:2-5.

28

Defs' Reply ISO Mot. to Dismiss Counts I, II & IV
No. C-05-04518-WHA

1    *Stanley Distrib. Inc.* ("Defendants had no duty to provide more specific information in the

2    prospectus concerning specific allocation or incentives given to brokers."), *Castillo v. Dean*

3    *Witter Discovery & Co.* (holding there was "no violation of antifraud provisions of the

4    securities laws" where "total fees were disclosed as was the fact that those fees would be

5    used to pay commissions and incentives to brokers") and *U.S. v. Alvarado* ("Since the

6    registered representative's compensation paid by the brokerage house is not charged to the

7    transaction, it is not material to the customer's transaction *and it need not be disclosed*.").[21]

8    The Opposition cites no contrary authorities.

9          Thus, Defendants (1) met the requirement of N-1A to disclose customer fees and

10   expenses, (2) met the requirements of 10b-10 and NASD Rule 2830(k)(7)(B) to provide

11   general prospectus disclosure of revenue-sharing and directed brokerage, and (3) had no

12   duty to disclose differential compensation.

13   **4.       The Opposition's attempt to create new disclosure obligations is wrong.**

14         Plaintiff ignores the discussion of general prospectus disclosure under Footnote 41

15   and the safe harbor exception under NASD Rule 2830(k)(7)(B).  He instead urges the Court

16   to construe Item 15(c) to Form N-1A as requiring more disclosure about revenue-sharing

17   and directed brokerage than the prospectuses and SAIs contained.[22]  But Plaintiff reaches

18   his broad interpretation of Item 15(c) without citing a single case, statute or rule, without

19   addressing the numerous authorities that have recognized general prospectus disclosure,

20   and without establishing a duty to disclose differential compensation.  Essentially, Plaintiff

21   asks this Court to recast disclosure rules in an area that is already well developed.

22         Plaintiff bases this expanded view of Item 15(c) on the consent decrees and AWCs,

23   claiming that they show "what the SEC has determined to constitute adequate disclosure

24   _____

25   [21] *Id.* (*discussing In re Morgan Stanley and Van Kampen Mut. Fund Securities Litig.*,
     2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006), *Benzon v. Morgan Stanley*, 2004 WL 62747

26   (M.D. Tenn. Jan. 8, 2004, *Castillo v. Dean Witter Discovery & Co.*, 1998 WL 342050
     (S.D.N.Y. June 25, 1998), *U.S. v. Alvarado*, 2001 WL 1631396 (S.D.N.Y. Dec. 19,

27   2001).

     [22] Opp. at 11:15-13:24.

28

1  under the federal securities laws."[23]  But, for the reasons set forth above, administrative

2  settlement documents lack the force of law and cannot expand the longstanding precedents

3  governing fund disclosure.  Plaintiff also mischaracterizes Rule 10b-10 by quoting the rule

4  without discussing Footnote 41, which *expressly* permits broker-dealers to rely on general

5  prospectus disclosure of third-party remuneration.[24]

6          Plaintiff purports to base his theory of an expanded disclosure duty upon NASD

7  Notice to Members 94-14 ("NTM 94-14"), but this is equally unavailing.[25]  NTM 94-14

8  does not depart from the standards discussed above other than to addresses disclosure of

9  "special compensation" unavailable to other NASD members.  The CAC contains no

10  allegations of "special compensation," and Plaintiff contends that revenue-sharing is a

11  widespread industry practice.

12          Moreover, in Notice to Members 97-50 ("NTM 97-50"), published three years after

13  NTM 94-14, the NASD admitted that "special compensation arrangements" were not

14  defined in its rules, resulting in "interpretative ambiguity," which "has resulted in a wide

15  array of disclosure practices by issuers regarding special cash compensation, ranging from

16  specific to very general disclosure or, in some cases, no disclosure."[26]  Yet the NASD has

17  not disrupted the status quo or issued any new rules regarding "special compensation" in

18  the nine years since requesting comments on the issue.  In any event, the NASD Rules

19  create no private rights of action, and are not a proper basis for Plaintiff's claims.[27]

20          Plaintiff argues that Defendants "'were obligated not to fail to state facts necessary

21  to make those statements that were made not misleading'"[28]  But neither the Opposition nor

22

_____

23  [23] Opp. at 12:6-7.

    [24] Opp. at 9:16-10:9.

    [25] Opp. at 10:10-22.

25  [26] NASD Notice to Members 97-50 (August 1997) (requesting "comment on appropriate
    regulation regarding . . . the payment and receipt of various forms of incentive-based cash

26  compensation for the sale and distribution of investment company . . . securities").

27  [27] *Jablon*, 614 F.2d at 680-81.

    [28] Opp. at 14:15 (*quoting U.S.A. Classic Sec. Litig.*, 1995 U.S. Dist. LEXIS 8327, at *5-*6

28                                                                              (continued…)

1   the CAC explain how Plaintiff was misled by the general prospectus disclosures of

2   revenue-sharing and directed-brokerage upon which Defendants rely.

3          Plaintiff argues that Defendants "admitted in a Wells Fargo document that these

4   payments were not publicly disclosed and that they created 'potential' conflicts of

5   interest."[29]  But the additional disclosure, quoted at CAC ¶ 65, was released by December

6   2005, after the June 2005 settlements with the NASD.[30]  Enhancing one's disclosures is at

7   most a subsequent remedial measure; it is not an admission of anything.  The additional

8   language does not contradict the existing prospectuses and SAIs.  Nor does it show that the

9   existing disclosures were the product of fraud, or that they are in any manner inconsistent

10  with the longstanding SEC precedents applicable at the time they were made.

11  **D.      The Opposition ignores the authority showing that revenue sharing is lawful.**

12         The Opposition does not *and cannot* cite to any cases or statutes declaring revenue-

13  sharing arrangements illegal, even though Plaintiff claims that Defendants are "attempt[ing]

14  to mislead this Court" by showing it is a lawful practice.[31]

15         The Opposition ignores the weight of case law, including almost a dozen revenue-

16  sharing cases, most filed by Plaintiff's own law firm, that have been dismissed in the past

17  year.[32]  The Opposition mentions *In re Morgan Stanley and Van Kampen Mut. Fund*

18  _____

19  (…continued)
    (S.D.N.Y. June 16, 1995)).

20  [29] *See* Opp. at 2:14-17; 11:12-14; 13:21-24; 14:26-28; n.11.

21  [30] CAC ¶ 65.  (This additional disclosure language, which the the CAC admits is sufficient,
    was actually published by the Broker-Dealer Defendants long before December 2005.)

22  [31] Opp. at 5:21.

23  [32] *See, e.g., In re Evergreen Mut. Funds Fee Litig.*, 2006 WL 753000 (S.D.N.Y. Mar. 24,
    2006); *In re Oppenheimer Funds Fees Litig.*, 2006 WL 592881 (S.D.N.Y. Mar. 10,
    2006); *Dumond v. Massachusetts Financial Services Company*, 2006 WL 149038

24  (D. Mass. Jan. 19, 2006); *In re Goldman Sachs Mut. Funds Fee Litig.*, 2006 WL 126722
    (S.D.N.Y. Jan 17, 2006); *Forsythe v. Sun Life Financial, Inc.*, 417 F. Supp. 2d 100

25  (D. Mass. Jan. 16, 2006); *In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d 616
    (D.N.J. Dec. 28, 2005); *In re Eaton Vance Mut. Funds Fee Litig.*, 403 F. Supp. 2d 310

26  (S.D.N.Y. Dec. 6, 2005); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
    2005 WL 2677753 (S.D.N.Y Oct. 19, 2005), later opinion, 2006 WL 74439 (S.D.N.Y.

27  Jan. 11, 2006); *In re Davis Selected Mut. Funds Litig.*, 2005 WL 2509732 (S.D.N.Y.
    Oct. 11, 2005); *In re Dreyfus Mut. Funds Fee Litig.*, 2006 WL 909434 (W.D. Pa. Apr. 10,

28                                                                          (continued…)

1    *Securities Litig.,* where the court recently threw out revenue-sharing claims against a

2    broker-dealer firm, but Plaintiff fails to reconcile his expanded view of broker-dealer

3    liability with the holding in *Morgan Stanley* that "[t]he current SEC regulations impose no

4    duty on Defendants to disclose the allocation of broker compensation."[33]

5          Plaintiff also expends little effort discussing or distinguishing the leading cases that

6    governed revenue-sharing during the Class Period.  For example, the Motion discusses at

7    length *Press v. Quick & Reilly, Inc.,*[34] but Plaintiff simply ignores the holding in *Press,*

8    instead misciting it for the proposition that consent decrees and AWCs are entitled to the

9    same deference as *amicus* briefs (*see* nn. 3-4 above).  But the Ninth Circuit has rejected this

10   comparison, stating that *amicus* briefs "reflect the agency's considered judgment on the

11   matter in question," but "[w]here an agency expresses its interpretation in a position taken

12   in the course of litigation . . . deference is usually not appropriate."[35]

13         The Opposition relegates to a mere footnote the important cases of *Benzon, Castillo*

14   and *Alvarado*, where Plaintiff purports to distinguish these cases on the facts.  But, as

15   discussed above, each of these decisions concludes with the holding that broker-dealers

16   have no duty to disclose differential compensation paid to their registered representatives.[36]

17   These decisions are applicable to the vague assertions in the CAC, which allege that the

18   Broker-Dealer Defendants offered extra incentives to their registered representatives to sell

19

20

---

21   (...continued)
     2006); *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451 (D.N.J. Sept. 9, 2005).

22   [33] *In re Morgan Stanley and Van Kampen Mut. Fund Securities Litig.,* 2006 WL 1008138,

23   at * 11 (S.D.N.Y. Apr. 18, 2006) (*citing U.S. v. Alvarado*, 2001 WL 1631396 (S.D.N.Y. Dec. 19, 2001)).

24   [34] Motion *passim*, discussing *Press v. Quick & Reilly, Inc.*, 218 F.3d 121 (2d Cir. 2000).

25   [35] *Hertzberg v. Dignity Partners*, 191 F. 3d 1076, 1082 (*quoting Bowen*, 488 U.S. 204, 208;
     *Auer v. Robbins*, 519 U.S. 452, 462 (1997)).  *See also, In re Estate of Covington*,

26   2006 WL 1421316, at*1 (March 8, 2006) (*quoting Bowen* and *Auer*, and concluding that
     deference to agency's interpretation in litigation is inappropriate when it reflects a "post

27   hoc rationalization," and "the agency itself has articulated no position on the question").

28   [36] Motion at 3:1-16.

Defs' Reply ISO Mot. to Dismiss Counts I, II & IV
No. C-05-04518-WHA

1  the so-called Shelf Space Funds.[37]  Simply put, under the authorities Plaintiff disregards,

2  differential compensation is permissible.  While several proposals on disclosure are under

3  consideration,[38] the Broker-Dealer Defendants had no duty during the Class Period to make

4  such additional disclosure of these arrangements to their customers.

5  **E.      The CAC does not allege Defendants misled Plaintiff about anything material.**

6         The Opposition does not attempt to show how the particular types of internal

7  incentives described in the CAC had a material impact on the recommendations Plaintiff

8  received.  The CAC does not allege anything about the individual registered representatives

9  with whom Plaintiff dealt, does not allege what they said to him, does not allege what he

10  claims he relied on and does not allege that those representatives were coerced or received

11  any extra compensation with respect to the advice (if any) he received.  The Opposition also

12  fails to address that the types of alleged incentives—various trips and perks, commissions,

13  and the ability to be a "Chapter Director"—are not material, and do not satisfy Rule 9(b).[39]

14  **F.      The CAC does not adequately allege damages or loss causation.**

15         The Motion explains that Plaintiff failed to plead cognizable damages or loss

16  causation.[40]  The Opposition does not show that these elements have been satisfied.

17  **1.      Plaintiff has not shown that he was harmed by the performance of his funds.**

18         As the Motion demonstrates, Plaintiff's allegations about mutual fund performance

19  address funds that he did not own, and the CAC is silent as to the funds he did allegedly

20  purchase.[41]  The Opposition ignores this critical defect.

21  **2.      Plaintiff's general allegations of loss of value and price inflation are unavailing.**

22         The Opposition claims that there was a loss in value to the so-called "Shelf Space

23

24  _____

25  [37] *See, e.g.,* Motion at 19:6-17 (analyzing the different incentives alleged in the CAC).
    [38] *See* Wells Fargo & Co. Motion at 10:14-11:1.

26  [39] *See, e.g.,* Motion at 19:6-17.

27  [40] Motion at 20:18-21:14; 23:5-20.

    [41] Motion at 21:6-8.
28

Defs' Reply ISO Mot. to Dismiss Counts I, II & IV
No. C-05-04518-WHA

1    Funds" resulting from Defendants' alleged misstatements and omissions.[42]  According to

2    Plaintiff, the revenue-sharing and directed brokerage arrangements, and the alleged

3    misstatements and omissions concerning these practices, diminished the performance of the

4    funds and artificially inflated the prices at which they were purchase and sold.  This

5    discussion of damages is fatally flawed and cannot be cured by amendment.

6          As the Motion shows—and Plaintiff admits (Opp. at 4 n.3)—mutual funds are

7    priced at their net asset value ("NAV"), which is the value of fund assets less liabilities,

8    divided by the number of investors.  Form N-1A provides for detailed disclosures of all the

9    fees and expenses that mutual fund investors are required to pay, and Plaintiff along with all

10   members of the putative class were informed at the time of acquisition both of the amount

11   of fund expenses and of the fees and costs that they would be required to pay to purchase,

12   hold and sell their funds.  As in *Castillo*, "the total fees, commissions, and charges deducted

13   from the assets were disclosed in the prospectuses[, and it] is the total fees charged that

14   would affect the asset value of a mutual fund and the decision to invest."[43]

15         The Opposition does not demonstrate any way in which more information about

16   how the advisers used their fees would have altered the performance of Plaintiff's funds.

17   Plaintiff argues that that because of the allegedly undisclosed revenue-sharing

18   arrangements, he "paid inflated prices to purchase their Shelf Space Fund investments"[44]

19   and his "return on investment [was] impaired because of the impact of the undisclosed

20   revenue-sharing programs on the shareholders' rate of return on their mutual fund

21   investment."[45]  But Plaintiff does not demonstrate a link between the alleged misconduct

22   and fund performance or NAV.  Plaintiff contends that the information allegedly withheld

23   during the Class Period is now publicly available, but the Opposition does not show that

24   this added disclosure has affected in the slightest the value or price of his funds.

25   _____

     [42] *See, e.g.,* Opp. at 21:2-7.

26   [43] *Castillo*, 1998 WL 342050, at *2.

27   [44] Opp. at 21:3-4.

     [45] Opp. at 21:19-20.

28

1    Plaintiff argues that the correct measure of damages in this case is "the difference

2    between the fair value of all that [he] received and the fair value of what he would have

3    received had there been no fraudulent conduct."[46]  But, once again, Plaintiff does not

4    explain how the price would have been any greater if Defendants had disclosed additional

5    information about the alleged revenue-sharing arrangements.  Plus, even if the alleged

6    revenue-sharing arrangements had *never* occurred, the NAV price of the funds may not

7    have been materially altered, since revenue-sharing payments are made from the adviser's

8    assets, not the customer's, and the advisory fees are fully disclosed.  This is also true for

9    directed brokerage.  The advisers must direct their securities transactions somewhere for

10   execution, and the funds still would have had to pay brokerage commissions even without

11   any alleged directed brokerage arrangements.  Thus, the revenue-sharing component of

12   their portfolio activity would not have a material effect on the overall expenses of the funds.

13   **3.      The CAC has nothing to do with churning, late trading or market timing.**

14   Despite Plaintiff's assertions, the alleged damages in this case are not analogous to

15   those arising from the churning of a customer's account or the late-trading and market

16   timing activities involved in *In re Mutual Funds Litig.*[47]  The CAC does not allege that

17   Plaintiff's mutual funds were unsuitable given his investment profile, or that there has been

18   any excessive trading activity, or that fund assets were used to provide special benefits to a

19   select group of customers at the expense of ordinary investors.  Accordingly, the alleged

20   damages in this case are distinct from those arising in the context of churning, late trading

21   or market timing.  The damages arising from such misconduct have no bearing upon

22   whether generally disclosed revenue-sharing arrangements harmed the Plaintiff in this case.

23   **4.      Plaintiff has not demonstrated loss causation.**

24   Plaintiff attempts to demonstrate loss causation by arguing that the fraud-on-the-

25   _____

26   [46] Opp. at 3:23-24 (*quoting Randall v. Loftsgaarden,* 478 U.S. 647, 668 (1986)*; Affiliated Ute Citizens,* 406 U.S. 128, 153-54 (1972)).

27   [47] Opp. at 22:3-23:5 (*discussing In re Mutual Funds Investment Litigation*, 384 F. Supp. 2d 845 (D. Md. 2005) (MDL 15863)).

28

1   market theory applies to mutual funds, but this theory is inapposite.  It states that the market

2   is presumed to have "perform[ed] a substantial part of the valuation process performed by

3   the investor in a face-to-face transaction."[48]  But the valuation of mutual funds does not rely

4   upon a secondary market for the securities, and funds are always purchased and sold by the

5   issuing company at NAV.  It is the performance of the underlying securities that determines

6   the price of a fund, not some hypothetical market for the funds themselves, or the number

7   of investors.  Thus, Plaintiff cannot show any type of reliance upon the operation of the

8   market, and the fraud-on-the-market theory is unavailing.

9          In the end, Plaintiff's only remaining damages argument is the one he cannot

10   make—that he might have made a different investment if he had known more about the

11   alleged revenue-sharing arrangements.  As the Motion explains, this is the very argument

12   that the Supreme Court prohibited in *Blue Chip Stamps v. Manor Drug Stores*, another case

13   the Opposition completely ignores.[49]

14   **5.      Plaintiff has not satisfied the tender or sale requirements for his '33 Act claims.**

15          Plaintiff fails to allege that he sold all of the funds that he purchased or that he has

16   demanded rescission as to any funds he still holds.  He must plead one or the other to state a

17   claim under Section 12(a)(2) of the '33 Act.[50]  The Opposition concedes this point, recog-

18   nizing that only class members who sold their funds could have viable claims, unless the

19   tender requirement were "cured by amendment."[51]

20   **G.      The CAC does not adequately allege standing or reliance.**

21          Plaintiff has no standing.[52]  The Opposition replies to this point with the conclusory

22

23   _____

24   [48] *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 413 (S.D.N.Y. 2003).

25   [49] *See* Motion at 24:16-20 (*citing Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 734-
        35, 747-49 (1975)).

26   [50] *See* Motion at 20:18-21:14.

27   [51] *See* Opp. at 25, n.20.

28   [52] Motion at 20:13-17; 21:2-14.

1   assertion that this should be decided at some other time.[53]  Standing, however, is a

2   *jurisdictional* issue properly considered on a motion to dismiss.[54]  Plaintiff fails to meet this

3   requirement with respect to funds he does *not* own and the funds he *does* own.  The CAC

4   lacks any "concrete and particularized" "injury in fact" that Plaintiff suffered as a result of

5   his investments, and he cannot suffer harm with respect to funds he never bought.  Plaintiff

6   also cannot trace his funds' alleged poor performance and excessive prices to any conduct

7   by Defendants.  Thus, he has not met the Article III requirements to state a claim.

8        The Opposition also asserts that transaction causation (reliance) can be assumed.

9   This is incorrect.  The CAC asserts both omissions and "misrepresentations."[55]  *Affiliated*

10  *Ute Citizens,* cited in the Opposition, holds that the assumption of reliance is only proper in

11  an "omissions" case.[56]  Yet, Plaintiff does not allege that he ever met with or spoke to a

12  single employee of Defendants, and he has gone so far as to file a *declaration* in support of

13  his Opposition—a tacit admission regarding the CAC's failure to allege reliance.

14  **H.      The CAC does not adequately allege scienter.**

15       The Opposition bases its brief discussion of scienter on the general proposition that

16  "falsity and scienter are generally inferred from the same set of facts."[57]  But contrary to

17  Plaintiff's assertions, this is not a case like *In Re WorldCom Sec. Litig.*—where the

18  defendants were accused of repeatedly making affirmative misstatements directly

19  contradicted by specific information that they knew to be true.[58]  Here, the Broker-Dealer

20  Defendants *did disclose* the existence of revenue-sharing programs and directed brokerage

21  activity, in a manner consistent with applicable SEC interpretations.  The CAC is not based

22  _____

23  [53] Opp. at n.20.

    [54] *See Wilbur v. Locke,* 423 F.3d 1101, 1107 (9th Cir. 2005).

24  [55] *See, e.g.,* CAC ¶¶ 193, 195.

25  [56] Opp. at 19:9-19 (*quoting Affiliate Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972)).

26  [57] Opp. at 23:11-12 (*quoting In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1019 (S.D. Cal. 2005)).

27  [58] *See generally, In Re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392 (S.D.N.Y. 2003).

28

1    on the assertion that those disclosures were "false," but rather that they were less complete

2    that Plaintiff wants to see, and Plaintiff has not alleged that they were incomplete due to a

3    "mental state embracing intend to deceive, manipulate or defraud."[59]

4          Moreover, these disclosures were *not* incomplete.  They met the applicable legal

5    requirements.  And, despite Plaintiff's exhortation that the court adopt a broader view of

6    broker-dealer liability than what was in effect during the Class Period, as the *WorldCom*

7    court stated while discussing the decision in *Press:*  "Where the SEC has decided what type

8    of disclosure is necessary to reveal to the public a particular conflict of interest, and has

9    enacted regulations to enforce that decision, courts will not impose greater disclosure

10   obligations under the rubric of Section 10(b) or Rule 10b-5.[60]

11         Currently, the rule of general prospectus disclosure is undergoing legislative and

12   regulatory revisions.[61]  But Defendants followed the applicable requirements in existence at

13   the time.  It would be inappropriate, therefore, to impose a higher degree of liability by

14   permitting this case to move forward on the issue of scienter where Plaintiff has merely

15   alleged that Defendants failed to comply with a change in the law that still has not occurred.

16   **III.    CONCLUSION.**

17         For the foregoing reasons, Counts I, II and IV of the CAC should be dismissed.

18         Dated: June 7, 2006.

19                                  PILLSBURY WINTHROP SHAW PITTMAN LLP
                                    BRUCE A. ERICSON
20                                  CLIFFORD C. HYATT
                                    DAVID L. STANTON
21                                  JACOB R. SORENSEN
                                    KRISTIN M. LEFEVRE
22                                  50 Fremont Street
                                    Post Office Box 7880
23                                  San Francisco, CA  94120-7880

24                                  Attorneys for All Defendants

25   ───────────────────

26   [59] *Wharf Holdings Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 593 (2001) (quoting
     *Ernst & Young v. Hochfelder*, 425 U.S. 185, 193 (1976)).

27   [60] *In Re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d at 430.

28   [61] *See* Motion at 12:15-13:9.

Defs' Reply ISO Mot. to Dismiss Counts I, II & IV
No. C-05-04518-WHA

1   THOMAS O. JACOB  #125665
    VANESSA M. HOFFMANN  #206086
2   OFFICE OF GENERAL COUNSEL
    WELLS FARGO & CO.
3   633 Folsom Street, 7th Floor
    San Francisco, California  94107
4
    Attorneys for Defendants
5   WELLS FARGO & CO. and affiliates

6
    By _____/s/ Bruce A. Ericson_____
7              Bruce A. Ericson

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defs' Reply ISO Mot. to Dismiss Counts I, II & IV
No. C-05-04518-WHA