PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON #76342
CLIFFORD C. HYATT #196458
DAVID L. STANTON #208079
JACOB R. SORENSEN #209134
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200
bruce.ericson@pillsburylaw.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RONALD SIEMERS, Individually And On Behalf Of ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

vs.

WELLS FARGO & COMPANY, et al.,

Defendants.

No. C-05-04518-WHA

**CLASS ACTION (PSLRA)**

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Date: October 19, 2006
Time: 8:00 a.m.
Ctrm: 9, 19th Floor
Honorable William H. Alsup
Filed concurrently:

1. Request for Judicial Notice
2. Proposed order

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS....................1
ISSUES TO BE DECIDED....................2
MEMORANDUM OF POINTS AND AUTHORITIES....................2
I. INTRODUCTION....................2
II. ARGUMENT....................3
A. Plaintiff does not have standing to sue H.D. Vest (Counts I and IV)....................3
B. Plaintiff does not have standing to sue under section 36(b) of the '40 Act (Count VI) on behalf of mutual funds he did not own....................5
C. The SAC does not allege facts establishing that Stephens could be liable under section 36(b) of the '40 Act (Count VI)....................6
D. The SAC does not allege facts establishing a strong inference that the individual Movants had the scienter required to be liable under the '34 Act (Count IV)....................7
1. The SAC does not sufficiently allege scienter as to the investment advisers, distributors and parent company that are not accused of being "speakers."....................9
2. The SAC does not sufficiently allege scienter as to arrangements between the Wells Fargo defendants with respect to the proprietary Wells Fargo Funds....................10
III. CONCLUSION....................13

# TABLE OF AUTHORITIES

**Page**

## Cases

ACLU-NJ v. Township of Wall,
246 F.3d 258 (3d Cir. 2001) ........ 4

Blue Chip Stamps v. Manor Drug Stores,
421 U.S. 723 (1975) ........ 4

Castillo v. Dean Witter Discover & Co.,
1998 WL 342050 (S.D.N.Y. June 25, 1998) ........ 12

Central Bank v. First Interstate Bank,
511 U.S. 164 (1994) ........ 10

DSAM Global Value Fund v. Altris Software, Inc.,
288 F.3d 385 (9th Cir. 2002) ........ 7

Ernst & Young v. Hochfelder,
425 U.S. 185 (1976) ........ 8

Gompper v. VISX, Inc.,
298 F.3d 893 (9th Cir. 2002) ........ 8, 9

In re Franklin Mut. Funds Fee Litig.,
388 F. Supp. 2d 451 (D.N.J. 2005) ........ 4

In re Morgan Stanley and Van Kampen Mutual Funds Securities,
2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006) ........ 11

In re Salomon Smith Barney Mutual Funds Fee Litig.,
No. 04-civ-4055 (PAC),
2006 WL 2085979 (S.D.N.Y. July 26, 2006) ........ 4, 5

In re Silicon Graphics Sec. Litig.,
183 F.3d 970 (9th Cir. 1999) ........ 8

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) ........ 4

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,
126 S. Ct. 1503 (2006) ........ 4

Nursing Home Pension Fund, Local 144 v. Oracle Corp.,
380 F.3d 1226 (9th Cir. 2004) ........ 8

Warth v. Seldin,
422 U.S. 490 (1975) ........ 4

Wharf Holdings Ltd. v. United Int'l Holdings, Inc.,
532 U.S. 588 (2001) ........ 8

**Constitution**

United States Constitution
Art. III, § 2, cl. 1 .......... 3, 5

**Statutes and Codes**

United States Cod
Title 15, section 2(a)(3) .......... 7
Title 15, section 77*l*(a)(2) .......... 4
Title 15, section 78j(b) .......... 1, 2, 4
Title 15, section 78u-4(b)(2) .......... 8
Title 15, section 80a-35(a) .......... 7
Title 15, section 80a-35(b) .......... passim
Title 15, section 80a-47 .......... 2
Title 15, section 1125 .......... 11

**Rules and Regulations**

Code of Federal Regulations
Title 17, section 240.10b-5 .......... passim

Federal Rules of Civil Procedure
Rule 12(b)(6) .......... 1
Rule 9(b) .......... 1, 7

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 19, 2006, at 8 a.m., before the Honorable William H. Alsup, United States District Judge, in Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, defendants **H.D. VEST INVESTMENT SECURITIES, INC.,** incorrectly sued as H.D. Vest Investment Services, LLC ("H.D. Vest"), **STEPHENS INC.** ("Stephens"), **WELLS CAPITAL MANAGEMENT** ("Wells Capital"), **WELLS FARGO FUNDS DISTRIBUTOR, LLC (**"Wells Distributor"), **WELLS FARGO INVESTMENTS, LLC** ("Wells Investments"), **WELLS FARGO FUNDS MANAGEMENT (**"Wells Management"), **WELLS FARGO FUNDS TRUST** ("Wells Trust") and **WELLS FARGO & COMPANY** ("Wells Fargo & Co.") (collectively, "Movants"), will and hereby do move, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Second Amended Consolidated Class Action Complaint (Dkt. 117) ("SAC") as to them.

This motion is made on the grounds that the SAC fails to state facts sufficient to state a claim upon which relief can be granted. It seeks dismissal of:

1. All claims in the SAC asserted against H.D. Vest (namely, Counts I and IV);

2. Count VI (allegedly arising under section 36(b) of the Investment Company Act of 1940 ("'40 Act"), 15 U.S.C. § 80a-35(b) ("section 36(b)") insofar as it purports to include mutual funds that Plaintiff did not own;

3. Count VI against Stephens; and

4. Count IV (allegedly arising under section 10(b) of the Securities Act of 1934 ("'34 Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5) against all Movants. (*See* Appendix A for a chart itemizing which parts of this motion challenge which claims and on behalf of which defendants.)

This motion is based on this notice of motion and motion, the memorandum that follows, the request for judicial notice filed with the previous motions to dismiss (Dkt. 69-75), the supplemental request for judicial notice filed herewith, all pleadings and records on

file in this action, and any other arguments and evidence presented to this Court at or before the hearing on this motion.

**ISSUES TO BE DECIDED**

1. Does Plaintiff have standing to sue H.D. Vest (Counts I and IV) if the SAC does not allege that he ever had an account with H.D. Vest or did business with H.D. Vest?

2. Does the SAC state a claim under section 36(b) of the ’40 Act (Count VI) insofar as Count VI purports to include mutual funds that Plaintiff did not own?

3. Does the SAC state a claim against Stephens under section 36(b) of the ’40 Act (Count VI) if the SAC does not allege that Stephens was an investment adviser, or an affiliate of an investment adviser, to any fund in which Plaintiff held an interest?

4. Does the SAC adequately plead scienter, and thereby state a claim under section 10(b) of the ’34 Act or Rule 10b-5 (Count IV), if:

a. The SAC does not allege that H.D. Vest, Stephens, Wells Capital, Wells Distributor, Wells Management or Wells Fargo & Co. made any statements to Plaintiff?

b. The affiliation among the Wells Fargo defendants, and their common ownership by Wells Fargo & Co., was disclosed?

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION.

Plaintiff filed the SAC after the Court issued its August 14, 2006 Order Granting in Part and Denying in Part Motions to Dismiss (Dkt. 116) (“Order”). The SAC attempts to remedy defects identified in the Order by (1) adding an allegation that plaintiff Ronald Seimers (“Seimers”) was a “holder” of the Wells Fargo Funds listed on Exhibit B at the time the action and the SAC were filed (SAC ¶ 15); (2) reducing the putative class period to accommodate one of the statutes of limitations applicable to this case (SAC ¶ 1); and (3) eliminating Count VII of the First Amended Complaint (Dkt. 58), which had been brought under section 48(a) of the ’40 Act, 15 U.S. C. § 80a-47, as to which the Court concluded there was no private right of action.

Despite the amendment, the SAC remains defective in several respects:

1. The SAC does not allege that Plaintiff held an account with H.D. Vest, did business with H.D. Vest or acted in reliance on statements made by H.D. Vest. Plaintiff therefore has no standing to sue H.D. Vest.

2. The SAC cannot state a claim under section 36(b) of the '40 Act (Count VI) insofar as Count VI purports to encompass mutual funds that Plaintiff did not own.

3. The SAC does not allege that Stephens is within the categories of persons potentially liable for breach of fiduciary duty under section 36(b) of the '40 Act (Count VI). Therefore, Count VI does not state a claim against Stephens.

4. The SAC fails to satisfy the PSLRA's requirements for pleading scienter, a necessary element of claims under Rule 10b-5 (Count IV), because:

a. The SAC does not allege that H.D. Vest, Stephens, Wells Capital, Wells Distributor, Wells Management or Wells Fargo & Co. ever made statements to Plaintiff;

b. The affiliation among the Wells Fargo defendants, which was disclosed, renders legally insufficient any allegation that there were "secret" arrangements between or among them with respect to sales of the proprietary Wells Fargo Funds.

**II. ARGUMENT.**

**A. Plaintiff does not have standing to sue H.D. Vest (Counts I and IV).**

The SAC does not allege any connection between Plaintiff and H.D. Vest. While the SAC makes frequent reference to H.D. Vest (*e.g.*, SAC ¶¶ 3, 18-19, 31, 34, 44, 45-47, 54, 55, 57, 61, 6, 66, 68, 69, 72, 75, 79, 90, 91, 145), the SAC nowhere alleges that Plaintiff had an account with H.D. Vest, or that he met with or spoke to any financial consultants who worked for H.D. Vest, or relied on anything that H.D. Vest ever said.

This is not some oversight that can be remedied. To our knowledge, Plaintiff has never opened or held an account with H.D. Vest or had any dealings with H.D. Vest.

Article III of the Constitution limits the jurisdiction of federal courts to "cases or controversies." U.S. Const, Art. III, § 2, cl. 1. To have Article III standing to sue H.D. Vest, Plaintiff must (1) have suffered an injury (2) that is fairly traceable to H.D. Vest's unlawful conduct and (3) that is likely to be redressed by the requested relief. *See,*

*e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). These are issues of constitutional dimension going to the Court's subject-matter jurisdiction. They cannot be waived, and they have not been established by the SAC.

As the court said in one "Shelf Space" class action, "Article III standing goes to the very heart of a court's subject matter jurisdiction. It determines whether the court has jurisdiction to resolve a dispute on the merits." *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 460 (D.N.J. 2005) (*citing Warth v. Seldin*, 422 U.S. 490, 498 (1975); *ACLU-NJ v. Township of Wall*, 246 F.3d 258, 261 (3d Cir. 2001)). Standing must be assessed separately against each defendant because the lead plaintiff must have suffered injury in fact traceable to that defendant's alleged misconduct. *Id.* at 460-62. If the lead plaintiff has not suffered an injury in fact traceable to that defendant's alleged misconduct, the claims against that defendant are nonjusticiable. *See In re Salomon Smith Barney Mutual Funds Fee Litig.*, No. 04-civ-4055 (PAC), 2006 WL 2085979, *19-*21 (S.D.N.Y. July 26, 2006) (dismissing, on Art. III grounds, for lack of standing "Shelf Space" claims against any mutual fund, and affiliates of that fund, in which the plaintiff held no shares).

The SAC also fails to make allegations sufficient to satisfy statutory standing requirements with respect to H.D. Vest. Count I, which alleges violations of section 12(a)(2) of the Securities Act of 1933 ("'33 Act"), only imposes liability against a defendant that "offers or sells a security … to the person purchasing such security from him." 15 U.S.C. § 77*l*(a)(2). The SAC does not allege that H.D. Vest ever offered or sold a security to Plaintiff.

Count IV which alleges violations under section 10(b) of the '34 Act and Rule 10b-5, only imposes liability against persons who make false or misleading representations "in connection with" the purchase or sale of a security. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5; *cf. Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731-50 (1975) (limiting the private right of action under Rule 10b-5 to those who actually purchase or sell a security), discussed in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503, 1509-11 (2006). The SAC does not allege that H.D. Vest ever made a false or

misleading statement to Plaintiff in connection with the purchase or sale of a security.

To have standing to sue H.D. Vest, H.D. Vest must have made a misrepresentation to Plaintiff, Plaintiff must have bought or sold a mutual fund in reliance on that misrepresentation, and Plaintiff must have suffered a cognizable harm as a result. The SAC makes no such allegations. Accordingly, the claims against H.D. Vest (Counts I and IV) should be dismissed without leave to amend.

**B. Plaintiff does not have standing to sue under section 36(b) of the '40 Act (Count VI) on behalf of mutual funds he did not own.**

The Order dismissed Plaintiff's prior claim under section 36(b) of the '40 Act because Plaintiff had not alleged standing—i.e., that he owned the mutual funds on whose behalf he now seeks to sue on the date he brought this case. Order at 30:28-31:3. The SAC tries to remedy this deficiency as to the mutual funds listed in SAC Exhibit B. insofar as he did not sell them before filing suit, *see* SAC ¶ 15 (alleging ownership), Ex. B, at 7 (listing sales). But those are the only funds that Count VI may encompass: Plaintiff has no standing to sue on behalf of funds he did not own. *In re Salomon Smith Barney Mutual Funds Fee Litig.*, 2006 WL 2085979, at *19-*21 (dismissing section 36(b) claim as to any fund the named plaintiff did not hold). This is determinative under Article III of the Constitution. U.S. Const, Art. III, § 2, cl. 1. "Absent such an allegation of standing, plaintiff can prove no set of facts that would prove a breach of duty [and] Count VI therefore must be dismissed." Order at 31:1-3.

That, however, is not Plaintiff's interpretation. He purports to sue on behalf of any Wells Fargo Fund that any member of the putative "Holder Class" holds and not just the funds that he holds. SAC ¶ 212. (While the SAC may appear ambiguous in this regard, the undersigned has confirmed his reading with Plaintiffs' counsel.) But Plaintiff has no standing to do this. Count VI must be dismissed as to any fund that Plaintiff himself did not own. *In re Salomon Smith Barney Mutual Funds Fee Litig.*, No. 04-civ-4055 (PAC), 2006 WL 2085979, at *21 (collecting cases).

In addition, Plaintiff lacks standing even as to the funds he does hold because he

does not allege that he owns at least one-third of each fund's outstanding shares. We raised this point in our initial motion (Dkt. 65, at 5:14-6:19) but the Order did not rule on it.

**C.  The SAC does not allege facts establishing that Stephens could be liable under section 36(b) of the '40 Act (Count VI).**

The SAC mentions Stephens by name only once, in paragraphs 26-27, where it alleges that Stephens has been a distributor for certain Wells Fargo Funds since July 26, 2004. The SAC does not allege that Stephens was itself an investment adviser for Wells Fargo Funds or had an affiliation with any investment adviser for Wells Fargo Funds. The SAC does allege that the other distributor defendant, Wells Distributor, is an affiliate of Funds Management (SAC ¶ 25), but it is completely silent as to Stephens' affiliations.

This too is not some oversight that can be remedied. Stephens is not an affiliate of Wells Fargo & Co. or any of the other defendants. It is an independent company headquartered in Little Rock, Arkansas.

Plaintiff alleges Count VI, for alleged violations of section 36(b) of the '40 Act, against two investment adviser defendants, Wells Management and Wells Capital, and two distributor defendants, Wells Distributor and Stephens. But section 36(b) only creates a cause of action against certain enumerated parties (namely, advisers and their affiliates), and the SAC does not allege that Stephens is any of these. Count VI should therefore be dismissed against Stephens without leave to amend.

Section 36(b) only creates liability against (1) an "investment adviser," (2) "any affiliated person of such investment adviser," or (3) "any other person enumerated in subsection (a)." 15 U.S.C. § 80a-35(b). Specifically, it provides:

> . . . An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, *against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section* who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.

*Id.* (emphasis added). The SAC does not allege that Stephens was any of these things.

First, the SAC alleges that Stephens is a "distributor," not an "investment adviser." SAC ¶ 16.

Second, "affiliated person" is defined under section 2(a)(3) of the '40 Act, 15 U.S.C. § 80a-2(a)(3), which provides that an "affiliated person" is, "any person directly or indirectly controlling, controlled by, or under common control" with another. 15 U.S.C. § 80a-2(a)(3)(C). But the SAC does not allege—because it cannot allege—that Stephens controls, is controlled by or under common control with any investment adviser, including Wells Management or Wells Capital. Notably, the SAC does not even allege that Stephens is affiliated with Wells Fargo, although it does allege that the other distributor defendant, Wells Distributor, "is an affiliate of the Fund Management Defendant." *Cf.* SAC ¶ 25 *with* SAC ¶ 26.

Third, subsection 36(a) does not apply to Stephens, because that provision lists officers, directors, advisory board members and underwriters. 15 U.S.C. 80a-35(a). The SAC does not allege that Stephens is any of these, nor could it.

Not only does the SAC not allege any basis for section 36(b) liability against Stephens for any funds in which Plaintiff invested, it also does not allege these things for any so-called "Shelf Space" fund, whether Plaintiff invested in that fund or not. Stephens simply is not within the category of proper section 36(b) defendants.

Accordingly, Plaintiff has no statutory basis to sue Stephens under section 36(b). Therefore, Count VI against Stephens should be dismissed without leave to amend.

**D. The SAC does not allege facts establishing a strong inference that the individual Movants had the scienter required to be liable under the '34 Act (Count IV).**

Count IV alleges that all defendants violated section 10(b) of the '34 Act and Rule 10b-5. To state such a claim, the SAC must allege as to each defendant "(1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which [plaintiffs] relied (5) which proximately caused [plaintiffs'] injury." *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 388 (9th Cir. 2002). Rule 9(b) applies to Count IV, and

"imposes a particularized pleading requirement." *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004). The PSLRA also applies to Count IV, requiring Plaintiff to "state with particularity facts giving rise to a strong inference that [each] defendant acted with the required state of mind"—namely, scienter. 15 U.S.C. § 78u-4(b)(2).

Scienter is a "mental state embracing intent to deceive, manipulate or defraud." *Wharf Holdings Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 593 (2001) (quoting *Ernst & Young v. Hochfelder*, 425 U.S. 185, 193 (1976)). "When determining whether plaintiffs have shown a strong inference of scienter, the court must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002). The PSLRA requires that complaints alleging scienter "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Accordingly, the SAC must specifically allege "some degree of intentional or conscious misconduct" beyond "mere recklessness" or "motive to commit fraud and opportunity to do so." *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999).

The first round of motions to dismiss argued that no defendant had scienter because no defendant could reasonably have foreseen having any duty to disclose more about so-called "Shelf Space" arrangements than the then-existing regulations and case law required. The Order held that such an argument raised factual issues that could not be resolved on a motion to dismiss. Order at 14:7-15. While respectfully disagreeing, defendants respect that ruling and are not seeking to revisit it here. But the Order noted that defendants' first motion to dismiss did not make—and thus the Court did not address—scienter arguments as to individual defendants. Order at 15 n.3. Accordingly, we make these new scienter arguments now.

First, to be liable under 10b-5, a defendant must normally be a speaker—that is, utter something false or misleading. If a defendant does not speak, there is no act to which scienter can attach.

Second, the SAC's allegations about the Wells Fargo Funds differ materially from its allegations about contractual "Shelf Space" arrangements with other (non-Wells Fargo) fund families. Whatever might be said about the allegations of "secret contracts" or "kickbacks" or like arrangements whereby non-Wells Fargo fund families allegedly pay the broker-dealer defendants for "Shelf Space," it makes no sense to allege that the Wells Fargo defendants intended to defraud customers into thinking that there were no financial relationships and interdependencies among corporate affiliates of a common parent, all but one of which bore the well-known names "Wells" or "Wells Fargo."

**1.    The SAC does not sufficiently allege scienter as to the investment advisers, distributors and parent company that are not accused of being "speakers."**

The SAC only alleges that Plaintiff interacted with "financial consultants." *See, e.g.* SAC ¶¶ 2-5, 7-8, 31, 32, 41-45, 48-53, 57-58, 72. Because Plaintiff did not have an account with H.D. Vest, this alleged interaction only could have occurred between Plaintiff and representatives of the remaining broker-dealer defendant, Wells Investments. The only other communication between Plaintiff and a defendant that the SAC alleges was through prospectuses and statements of additional information ("SAIs") issued by Wells Trust that Plaintiff received for the three Wells Fargo Funds he purchased. SAC ¶ 81 and Ex. B.

Thus, the SAC alleges that Wells Investments (as a broker-dealer that did business with Plaintiff) and Wells Trust (as the issuer or prospectuses and SAIs for Wells Fargo Funds that Plaintiff bought and sold) communicated with Plaintiff, but it does **not** allege any communications or interactions between Plaintiff and H.D. Vest, Stephens, Wells Capital, Wells Distributor, Wells Management or Wells Fargo & Co.

In the absence of any allegations that these defendants misrepresented anything, or even attempted to communicate or do business with Plaintiff, the allegations against these defendants cannot give rise to a "strong inference" of scienter. *Gompper,* 298 F.3d at 897. There simply is no act or omission to which an accusation of a wrongful mental state can attach. Except insofar as Count V alleges control person liability against Wells Fargo & Co., the SAC offers no theory of 10b-5 primary liability against any of these defendants.

At most it could be read as insinuating that these defendants aided and abetted the alleged speakers (Wells Investments and Wells Trust), but aiding and abetting and other such theories of secondary liability are barred by the Supreme Court's decision in *Central Bank v. First Interstate Bank*, 511 U.S. 164, 173-74 (1994).

Accordingly, Count IV should be dismissed as to H.D. Vest, Stephens, Wells Capital, Wells Distributor, Wells Management and Wells Fargo & Co.

**2. The SAC does not sufficiently allege scienter as to arrangements between the Wells Fargo defendants with respect to the proprietary Wells Fargo Funds.**

The SAC's allegations about the Wells Fargo Funds are not at all like the SAC's allegations about the third-party Shelf-Space Funds. (By "third-party Shelf-Space Funds," we mean the fund families listed in SAC Ex. A other than the Wells Fargo Funds.) There are two salient differences between the two sets of allegations:

First, the third-party Shelf-Space Funds' alleged arrangements with defendants involve only two defendants—the two broker-dealer defendants. The SAC alleges that two and only two defendants—the broker-dealers Wells Investments and H.D. Vest—formed bilateral arrangements with the third-party "Shelf-Space Funds." SAC ¶¶ 3-4, 7. The SAC does not allege that the other defendants—Wells Management, Wells Capital, Wells Distributor, Stephens, Wells Trust or Wells Fargo & Co.—had any arrangements with the third-party Shelf-Space Funds.

Second, the third-party Shelf-Space Funds' arrangements are the only arrangements alleged to involve "secret contracts," "kickbacks," "directed brokerage" and the like. *E.g.*, SAC ¶¶ 3, 33, 34. In contrast, the allegations about the Wells Fargo Funds are qualitatively different:

> [U]nlike the non-proprietary funds, the Investment Adviser Defendants did not pay a negotiated fee rate to participate in revenue sharing arrangements with Defendants WF Investments and H.D. Vest. Instead the Investment Adviser Defendants and the Distributor Defendants allocated *revenue net of certain expenses* to the various Wells Fargo & Company affiliates, including WF Investments, based on WF Investments' sales of Wells Fargo Proprietary Funds.

SAC ¶ 47 (emphasis added). In other words, the alleged arrangement with the proprietary Wells Fargo Funds was *a cashless allocation of revenues between affiliates with a common parent.*

To establish scienter as to these arrangements, Plaintiff must allege facts raising a strong inference that defendants intended to defraud investors about the fact that corporate affiliates of Wells Fargo shared revenues among themselves. But far from raising a strong inference, the facts alleged, and the facts that may be judicially noticed, suggest the opposite: that any inference here of scienter is weak indeed.

No investor can have overlooked the fact that these Wells Fargo entities are corporate affiliates sharing a common parent. Wells Trust registered the Wells Fargo Funds under the well-recognized "Wells Fargo" brand. SAC ¶ 28. All of the defendants except for Stephens were under common ownership. SAC ¶ 16. Other than H.D. Vest, all the Wells Fargo defendants used the "Wells Fargo" trade name (or, in the case of Wells Capital, the "Wells" trade name).

Any *Wells Fargo* customer who purchases a *Wells Fargo* mutual fund from a *Wells Fargo* broker-dealer receives not only ample, but pervasive notice that there is a mutually-beneficial financial arrangement between the affiliated entities and with respect to sales of the co-branded mutual funds. This interrelationship of the commonly owned entities is not "secret" or hidden. It is disclosed through the companies' use of common trademarks registered pursuant to the applicable provisions of the Lanham Act, 15 U.S.C. § 1125 *et seq*. *See* Request for Judicial Notice in Support of Defendants' Motion to Dismiss Plaintiff's Second Consolidated Class Action Complaint, filed herewith ("RFJN2"), Ex. 7-8. Unlike *In re Morgan Stanley and Van Kampen Mutual Funds Securities*, 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006), where Morgan Stanley registered its proprietary funds under a different name, the Wells Fargo Funds were registered under the well-known "Wells Fargo" trade name, and the affiliated and co-branded "Wells Fargo" defendants openly presented themselves as part of a commonly-held, collaborative enterprise.

In such circumstances, any investor would be aware of the possibility that a Wells

Fargo broker might favor a Wells Fargo product, and might be paid more when a Wells Fargo product were sold. Nothing more need be disclosed. *See Castillo v. Dean Witter Discover & Co.*, 1998 WL 342050, *9 (S.D.N.Y. June 25, 1998).

Nor could anything defendants said on this score be deemed misleading. As everyone knows, Wells Fargo & Co. is a "diversified financial services company." SAC ¶ 16. Its publicly filed annual statements list its subsidiaries, including the affiliated defendants, and specifically mention the "Wells Fargo Funds." *See, e.g.* RFJN2 Ex. 1, at RFJN2 16-26, Ex. 2, at RFJN2 38-48, Ex. 3, at RFJN 61-71, Ex. 4, at RFJN2 83-95, Ex. 5, at RFJN2 109-122, Ex. 6, at RFJN2 137-49. Wells Fargo & Co. maintains a consolidated balance sheet, and the profits (*i.e.* "revenue net of certain expenses" (SAC ¶ 47)) generated by its operating subsidiaries eventually pass to the parent entity, subject to applicable regulatory requirements. *See, e.g.* RFJN2 Ex. 1, at RFJN2 5-9, Ex. 2, at RFJN2 30-35, Ex. 3, at RFJN 52-57, Ex. 4, at RFJN2 75-78, Ex. 5, at RFJN2 99-104, Ex. 6, at RFJN2 127-132. In particular, revenues from management services provided to the Wells Fargo Funds are publicly reported as non-interest income, listed as "Asset Management and Custody Fees" and disclosed in the financial statements of its Forms 10-K and 10-Q. *See e.g.* RFJN2 Ex. 1, at RFJN2 14-15, Ex. 2, at RFJN2 37, Ex. 3, at RFJN 60, Ex. 4, at RFJN2 81-82, Ex. 5, at RFJN2 108, Ex. 6, at RFJN2 136.

The SAC admits that Plaintiff received the prospectuses and SAIs issued by Wells Trust for the Wells Fargo Funds he purchased. SAC ¶ 81. These disclosure documents repeatedly discuss affiliations and financial arrangements between the Wells Fargo Funds and the affiliated defendants identified in the SAC. *See, e.g.* Ex. 20 to Request for Judicial Notice In Support of Defendants' Motions to Dismiss Consolidated Amended Class Action Complaint, Dkt. 73 ("RFJN1"), at RFJN 547, 562, 572, 585; Ex. 22 to RFJN1, Dkt. 74, at RFJN 738-739, 827-828, 840; Ex. 23 to RFJN1, Dkt. 74, at RFJN 898, 907, 909, 919. Such affiliations and the internal revenue allocations were further revealed in the public filings of the parent company, Wells Fargo & Co. *See* RFJN2 Ex. 1-6.

As a result, "a reasonable investor knows [Wells Investment] has a payback

agreement to showcase a [Wells Fargo Fund].” *See* Order at 10:5-6. Thus, with respect to the proprietary Well Fargo Funds, the SAC does not allege a representation that “left the impression that [a] payback arrangement might (or might not) materialize.” Order at 9:22-23. Rather, Plaintiff was informed of the common control and ownership of the Wells Fargo defendants and of their shared interest in sales of the Wells Fargo Funds. *Id.*

For these reasons, Count IV should be dismissed as to all defendants to the extent that Count IV makes allegations about the sale and marketing of the proprietary Wells Fargo Funds.

**III. CONCLUSION.**

For the foregoing reasons, the following should be dismissed without leave to amend (*see* Appendix A, which is attached):

- Count I as to H.D. Vest;
- Count IV as to H.D. Vest;
- Count IV as to all defendants except Wells Investments;
- Count IV as to Wells Investments to the extent it makes allegations about the sales and marketing of proprietary Wells Fargo Funds (as opposed to third-party Shelf-Space Funds);
- Count IV as to any mutual fund that Plaintiff did not own; and
- Count VI against Stephens.

Dated: September 14, 2006.

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON
CLIFFORD C. HYATT
DAVID L. STANTON
JACOB R. SORENSEN
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880

By /s/ Bruce A. Ericson
Bruce A. Ericson
Attorneys for Defendants

**Appendix A: Chart of Claims and Defendants**
(Cross-Referenced to Portions of the Argument)

| Category of Defendant | Defendant | Second Amended Complaint: Counts and Claims | | | | | |
|---|---|---|---|---|---|---|---|
| | | I: 12(a)(2) | II: 12(a)(2) | III: 15 | IV: 10b-5 | V: 20(a) | VI: 36(b) |
| Registrant | Wells Trust | | x[1] | | II.D.2[2] | | |
| | | | | | | | |
| Broker-Dealers | Wells Investments | x | | | II.D.2 | | |
| | H.D. Vest | II.A | | | II.A, II.D.1, II.D.2 | | |
| | | | | | | | |
| Advisers | Wells Management | | | | II.D.1, II.D.2 | | II.B |
| | Wells Capital | | | | II.D.1, II.D.2 | | II.B |
| | | | | | | | |
| Distributors | Wells Distributor | | x | | II.D.1, II.D.2 | | II.B |
| | Stephens | | x | | II.D.1, II.D.2 | | II.B, II.C |
| | | | | | | | |
| Parent | Wells Fargo & Co. | | | x | II.D.1, II.D.2 | x | |

[1] "x" means that this defendant is named in this Count, but this motion does not seek to dismiss this Count as to this defendant.

[2] "II.D.2" (etc.) means that part II.D.2 (etc.) of the argument seeks to dismiss this Count as to this defendant. Note that the argument in part II.D.2 applies only to Count IV's allegations about the proprietary Wells Fargo Funds and not to Count IV's allegations about the third-party Shelf-Space Funds.