GUTRIDE SAFIER LLP
Michael R. Reese (Cal. State Bar No. 206773)
230 Park Avenue, Suite 963
New York, New York  10169
Telephone:     (212) 579-4625
Facsimile:     (212) 253-4272

            - and -

GUTRIDE SAFIER LLP
Adam J. Gutride (Cal. State Bar No.181466)
Seth A. Safier (Cal. State Bar No. 197427)
835 Douglass Street
San Francisco, California 94114
Telephone:  (415) 271-6469
Facsimile:  (415) 449-6469

Court Appointed Lead Counsel

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RONALD SIEMERS, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> WELLS FARGO & COMPANY, H.D. VEST INVESTMENT SERVICES, LLC, WELLS FARGO INVESTMENTS, LLC, WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS CAPITAL MANAGEMENT INC., STEPHENS INC., WELLS FARGO FUNDS DISTRIBUTOR, LLC, and WELLS FARGO FUNDS TRUST, <br><br> Defendants. | Case No. 05-04518 WHA <br><br> OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CONSOLIDATED COMPLAINT <br><br> Date:    October 19, 2006 <br> Time:    8:00 am <br> Ctrm:    9, 19th Floor <br> Judge:   Honorable William H. Alsup |

# TABLE OF CONTENTS

ISSUES TO BE DECIDED ...........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES...........................................2

I.  INTRODUCTION ...........................................................................................2

II. ARGUMENT ...................................................................................................3

    A.  Defendants' Second Motion To Dismiss Fails To Address Any New Issues Of Fact Or Law And Should Be Denied....................................................3

    B.  Even If Defendants' Arguments Are Considered, They Lack Merit And Should Be Denied. ...................................................................................6

        1.  The Lead Plaintiff Has Standing to Bring a Claim Against H.D. Vest......6

        2.  With Respect to His Claim Under Section 36(b) of the Investment Company Act of 1940, The Lead Plaintiff Has Standing to Assert Claims on Behalf of Investors in All of the Wells Fargo Funds………………………………………………………………...8

        3.  The SAC Establishes that Stephens is Liable Under Section 36(b) of the 1940 Act…..……………………………………………………10

        4.  The SAC Adequately Pleads Scienter As to All Defendants And All Funds…………………………………………………………12

            a.  The SAC Adequately Pleads Acts And Omissions From Which Scienter Can Be Inferred. ...................................................12

            b.  The SAC Adequately Pleads Scienter With Respect To Failure To Disclose Revenue-Sharing Kickbacks From Wells-Affiliated Funds. ..........................................................................14

III. CONCLUSION...............................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Albany Insc. Co. v. Almacenadora Somex*, 5 F.3d 907, 909 (5th Cir. 1993) ........................................ 4

*Batra v. Investors Research Corp.*, 1991 U.S. Dist. LEXIS 14773, at *10 (W.D. Mo. Oct. 4, 1991) ............................................................................................................................... 10

*Board of Governors of the Fed. Reserve Sys. v. Investment Co. Inst.,* 450 U.S. 46, 60 (1981) ......... 16

*Central Bank v. First Interstate Bank*, 511 U.S. 164, 173-7 (1994) .................................................... 7

*CGHH v. Cesta Punta Deportes*, 2006 U.S. Dist. LEXIS 15015, *7 (N.D. Ga., March 31, 2006.) ... 6

*Chilicky v. Schweiker*, 796 F.2d 1131, 1136 (9th Cir. 1986) ............................................................... 4

*Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.*, 985 F. Supp. 640, 642 n.2. (D. Va. 1997) ................ 4

*Goktepe v. Lawrence*, 2004 U.S. Dist. LEXIS 22420 at *2 (D. Conn., Oct. 14, 2004) ...................... 6

*Gollust v. Mendell*, 501 U.S. 115, 126 (1991) ................................................................................... 10

*Harris Bank v. Pachaly*, 902 F. Supp. 156 (N.D. Ill 1995) ................................................................ 4

*Heffler v. U.S. Fid. & Guar. Ins. Co.*, 1992 U.S. Dist. LEXIS 3090, at * 11 (E.D. Pa. Mar. 10, 1992) ................................................................................................................................................. 8

*Hicks v. Morgan Stanley & Co.*, 2003 U.S. Dist LEXIS 11972 at *19-20 (S.D.N.Y. July 16, 2003). 6

*In re Dreyfus Aggressive Growth Mutual Fund Litig.*, 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 19, 2000) ................................................................................................................................... 9

*In re Immune Response Sec. Litig.*, 375 F. Supp.2d 983, 1019 (S. D. Cal. 2005) ........................... 12

*In re ML Lee Acquisition Fund II L.P.*, 848 F. Supp. 527 (D. Del. 1994) .......................................... 9

*La Mar v. HB Novelty & Loan, Co.,* 489 F.2d 461 (9th Cir. 1973) ..................................................... 7

*Luyando v. Bowen*, 124 F.R.D. 52 (S.D.N.Y. 1989) ........................................................................... 7

*Mayfield v. Hayden*, 1991 U.S. App. LEXIS 30049 at *2 (10th Cir., Dec. 11, 1991) ................... 5, 6

*Mutchka v. Harris*, 373 F.Supp.2d 1021, 1024 (C.D. Cal. 2005) ..................................................... 7

*In re Omnivision Techs.*, 2005 U.S. Dist. LEXIS 16009 at *13 ........................................................ 12

*Ontario, Ltd. v. Zurich Capital Mkts., Inc.*, 274 F. Supp. 2d 926, 930 (D. Ill. 2003) ....................... 6

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ............................................................................... 7

*Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) ................................................................... 7

*SEC v. Hasho*, 784 F. Supp. 1059, 1110 (S.D.N.Y. 1992) ................................................................ 16

*Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 247 F. Supp. 2d 987, 999 (D. Ill. 2002) ..... 5

**STATUTES**

15 U.S.C. § 80a-10(c) ........................................................................................................ 16

15 U.S.C. § 80a-36(a) ........................................................................................................ 11

15 U.S.C. § 80a-36(b) ................................................................................................. 8, 9, 11

15 U.S.C. § 80a-48(a) .......................................................................................................... 2

**OTHER AUTHORITIES**

S. Rep. No. 91-184, at 15 (May 21, 1969) ........................................................................... 9

**RULES**

Fed. R. Civ. P. 12(g) ........................................................................................................... 3

Fed. R. Civ. P. 12(h) ........................................................................................................... 4

**TREATISES**

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1384 (3rd ed. 2004). ........................................................................................................................ 4

Clearly unhappy with this Court's August 14, 2006 order ("Order") denying the majority of their previous motions to dismiss that numbered some seventy-five (75) pages in length, Defendants once again move to dismiss, raising the same arguments they did, or at least could have, the last time. Such a motion is not permitted under Rule 12(g) of the Federal Rules of Civil Procedure. Even if this Court were to consider Defendants' arguments on their merits, the arguments are just as unconvincing as Defendants' previous rounds of motions to dismiss. The motion should be denied.

**ISSUES TO BE DECIDED**

1.      Does Defendants' latest motion to dismiss violate Rule 12(g) in that it raises no issues that could not have been addressed in Defendants' previous seventy-five (75) pages of motions to dismiss filed last May 2, 2006 that this Court subsequently denied in part?

2.      Does Lead Plaintiff Ronald Siemers ("Siemers" or "Lead Plaintiff"), who has shown injury due to the kickback scheme alleged in the Second Amended Complaint ("SAC"), have standing to bring claims against H.D. Vest - a direct participant in the kickback scheme?

3.      Does the Lead Plaintiff have standing to bring claims on behalf of shareholders of the Wells Fargo Funds that comprise the Wells Fargo Trust, of which the Lead Plaintiff is also a shareholder?

4.      Have Defendants raised any new arguments on scienter sufficient to change this Court's holding that the Lead Plaintiff has adequately established a strong inference of scienter by pleading that all Defendants were engaged in "a persistent and deliberate scheme to use half truths to conceal a thriving system of kickbacks and its concomitant conflicts of interest"?

///
///
///
///
///
///
///

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

On August 14, 2006, this Court denied the majority of the arguments made in Defendants' previous motions to dismiss.  This Court held that the complaint alleged that Defendants had engaged in "a persistent and deliberate scheme to use half truths to conceal a thriving system of kickbacks and its concomitant conflicts of interest."  (Order at 14).  Likewise, this Court found that the complaint showed that "Defendants obviously knew of the actual compensation arrangements" and that "[t]he fact that defendants had the incentive programs in place indicates that they believed these programs would drive sales."  (Order at 14).  Accordingly, this Court found that "[i]n light of this conscious strategy, the failure to disclose the full extent of the payback programs raises a strong inference of scienter."  (Order at 14-15).  This Court went on to hold that the Complaint had adequately pled that Defendants' kickback scheme injured the Lead Plaintiff and similar investors because "[b]y footing the bill for the undisclosed diversions, investors were unwittingly paying extra but getting nothing in return."  (Order at 18).

This Court's Order did dismiss one claim without prejudice for some minor pleading insufficiencies and another claim brought under section 48(a) of the Investment Company Act of 1940, 15 U.S.C. § 80a-48(a), with prejudice on the ground that there was no private right of action for a section 48(a) claim.  (Order at 19, 30-34).  With respect to the minor pleading insufficiencies, the Court's Order permitted the Lead Plaintiff to amend his complaint.  (Order at 34).  On August 31, 2006, the Lead Plaintiff filed his Second Amended Complaint ("SAC") that made minor changes to address the pleading insufficiencies.  The only changes contained in the SAC that differ from the First Amended Complaint ("FAC") are: (1) a shortening of the Class Period to conform with this Court's holdings on statute of limitations (SAC ¶¶ 1 ,169); (2) the addition of language that makes clear that Mr. Siemers held shares of the Wells Fargo Funds as of the filing of this action, and continues to hold those shares, thereby establishing his standing to bring a claim under section 36(b) of the Investment Company Act of 1940 (SAC ¶ 15); and (3) elimination of Count VII of the FAC, which had stated a claim for violation of section 48(a) of the Investment Company

Act.[1]

Despite these minor changes, Defendants have again filed a motion to dismiss, raising arguments that they either raised, or could have raised, in the previous, voluminous round of briefing.  As nothing has changed since Defendants' previous motions to dismiss, Defendants' current motion to dismiss should be denied.[2]

## II.   ARGUMENT

### A.   Defendants' Second Motion To Dismiss Fails To Address Any New Issues Of Fact Or Law And Should Be Denied.

All of the arguments raised in Defendants' pending Rule 12(b) motion were, or could have been, made in Defendants' previous Rule 12(b) motions.  Defendants' most recent motion therefore is invalid under Rule 12(g) and should be denied.

Rule 12(g) prohibits a second motion to dismiss on defenses or objections that could have been made in the first motion, and instructs that such defenses or objections may being raised only by answer or counterclaim under Rule 7(a), by motion for judgment on the pleadings, or at a trial on the merits.  Rule 12(g) states in pertinent part:

> If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

Fed. R. Civ. P. 12(g).  Rule 12(h)(2), in turn, states:

> A defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 19, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a) [governing answers and counterclaims], or by motion for judgment on the pleadings, or at trial on the merits.

---

[1] The SAC also reflects the June 30, 2006 Order of this Court that appointed Gutride Safier LLP as sole lead counsel, thereby replacing previous counsel.  (Dkt. 114).

[2] Notably, Defendants **_do not_** move to dismiss either Count I or II (for violation of §12(a)(2) of the Securities Act of 1933 ("'33 Act")) or Count III (for violation of §15 of the '33 Act) of the SAC.  Nor does Defendant Wells Fargo & Co. move to dismiss the entirety of Count IV (for violation of §10(b) of the Securities and Exchange Act of 1934 ("'34 Act")).  Likewise, the Investor Advisers and Distributor Defendants do not move to dismiss the entirety of Count VI (for violation of §36(b) of the Investment Company Act of 1940 ("'40 Act")).  At the very least, these claims must survive Defendants' most recent motion to dismiss.

Fed. R. Civ. P. 12(h)(2).  Taken together, these rules prohibit a defendant from raising the defense of failure to state a claim after filing an initial Rule 12(b) motion to dismiss where that objection was (or could have been) previously made.  *See Chilicky v. Schweiker*, 796 F.2d 1131, 1136 (9th Cir. 1986) (holding that rule 12, sections (g) and (h) "promote the early and simultaneous presentation and determination of preliminary defenses," and that defenses not raised in pre-answer motions are deemed waived), *rev'd on other grounds,* 487 U.S. 412, 108 S. Ct. 2460, 101 L. Ed. 2d 370 (1988); *Albany Insc. Co. v. Almacenadora Somex*, 5 F.3d 907, 909 (5th Cir. 1993) (holding that Rule 12(g) generally precludes a defendant from bringing successive motions to dismiss raising arguments that the defendant failed to raise at the first available opportunity.)

These restrictions upon successive 12(b) motions were imposed to "eliminate unnecessary delay at the pleading stage."  *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1384 (3rd ed. 2004).  Rule 12(g) contemplates a single, pre-answer motion in which the defendant asserts all the Rule 12 defenses that are then available to it and generally precludes a second motion based on any Rule 12 defense or objection that the defendant could have, but neglected to raise in the original motion.  *See id*. § 1385, at 481.

While Defendants purport to direct their motion to the SAC, their arguments for dismissal in fact relate to allegations that were unchanged from the FAC.  "The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to amendment." *Id*. § 1388; *accord Harris Bank v. Pachaly*, 902 F. Supp. 156 (N.D. Ill 1995); *Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.*, 985 F. Supp. 640, 642 n.2. (D. Va. 1997).[3]

Defendants do not dispute that each of their standing arguments could have been made earlier.[4]  For example, Defendants argue that the Lead Plaintiff does not have standing to assert

---

[3] Defendants admit that the Plaintiff only made the three changes to his complaint referenced above. (Defendants' Amended Motion to Dismiss Plaintiff's Second Amended Complaint ("Def. Mtn.") at 2:21-26).  ***The arguments in Defendants' most recent motion to dismiss are not based on any of these changes.***

[4] Defendants even go as far as stating that "we raised this point in our initial motion but the Order did not rule on it" and "we respectfully disagree with the Court on its findings concerning scienter." (Def. Mtn. at 4:1-2; 8:21-22).

claims against H.D. Vest.  Similarly, Defendants argue that the Lead Plaintiff does not have

standing to sue Distributor Defendant Stephens, Inc. ("Stephens") because Defendants claim that

Stephens is not an " an affiliated person of Wells Fargo" nor "an underwriter of the Wells Fargo

Funds."  (Def. Mtn. at 7-8).  But the SAC adds nothing on these issues; all of the allegations related

to these arguments remain unchanged from the original complaint.  Defendants could have included

the same arguments in their previous motions to dismiss, but chose not to.  Defendants should not

now be permitted to raise such arguments.  *See Mayfield v. Hayden*, 1991 U.S. App. LEXIS 30049

at *2 (10th Cir., Dec. 11, 1991) (district court erred in granting successive motion to dismiss;

motion was improperly raised in light of Rule 12(g) and, thus, improperly granted); *see also Wafra

Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 247 F. Supp. 2d 987, 999 (D. Ill. 2002) (denying

defendants' motion to dismiss because they did not earlier raise their arguments).

Defendants also argue that the Lead Plaintiff did not plead scienter adequately enough to

state a claim under section 10(b) of the '34 Act or Rule 10b-5.  Defendants already argued in the

prior motion that the Lead Plaintiff had not pled the required scienter, and the Court rejected the

argument, holding that the "complaint…alleges a persistent and deliberate scheme to use half truths

to conceal a thriving system of kickbacks and its concomitant conflicts of interest."  (Order at

14:11-13).  The Court further found that Defendants "obviously knew of the action compensation

arrangements...," and that "in light of such a conscious strategy, the failure to disclose the full extent

of the payback programs raises a strong inference of scienter." (Order at 14:25-15:1).  This Court

even noted that Defendants do not "make defendant-specific challenges to the scienter allegations"

and expressly declined to do so for them.  (Order at fn 3).

Defendants misinterpret the Court's scienter discussion as an invitation to modify and

restate their arguments in another motion to dismiss.  An order denying a motion to dismiss is not a

dialogue whereby a court informs a defendant what issues it missed and the defendant tries again.

Rather, defendants are provided a single opportunity to state any and all Rule 12 defenses that are

then available to them.  *See CGHH v. Cesta Punta Deportes*, 2006 U.S. Dist. LEXIS 15015, *7

(N.D. Ga., March 31, 2006). ("Rule 12(g) requires all of the permitted Rule 12(b) defenses to be

raised in a single, consolidated motion rather than in multiple or successive motions.")

Defendant's motion therefore should be barred.  *See Mayfield*, *supra*, 1991 U.S. App. LEXIS 30049 at *2; *Ontario, Ltd. v. Zurich Capital Mkts., Inc.*, 274 F. Supp. 2d 926, 930 (D. Ill. 2003) (precluding defendants from raising new arguments at the motion to dismiss stage that they could have, but did not, raise earlier.)  At a minimum, this Court should scrutinize and look with particular disfavor upon Defendants' arguments that could have, and should have, been raised earlier.  *See Goktepe v. Lawrence*, 2004 U.S. Dist. LEXIS 22420 at *2 (D. Conn., Oct. 14, 2004).

**B.**      **Even If Defendants' Arguments Are Considered, They Lack Merit And Should Be Denied.**

**1.**      **The Lead Plaintiff Has Standing to Bring a Claim Against H.D. Vest.**

Defendants' argument that the court-appointed Lead Plaintiff lacks standing to sue H.D. Vest is without merit. (Def. Mtn. at 3:18-5:6).  At the initial case management conference and subsequent hearing regarding the appointment of the Lead Plaintiff, this Court determined that one lead plaintiff would suffice at this juncture of the case and expressly reserved any purported standing issues for a later a stage of the proceedings.  (Declaration of Michael R. Reese in Support of Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("Reese Decl.") at Ex. 1 (Transcript of Feb. 9, 2006 CMC and Feb. 23, 2006 Hearing).  Had the Court intended to consider the standing issue at the pleading stage, it would likely have permitted the case to proceed with the multiple proposed plaintiffs who had purchased different securities from different defendants.  This Court's tabling of the standing issue was based on the sound principle that, at the pleading stage, all that needs to be shown to meet the standing requirement is that the lead plaintiff present a claim of injury to himself and has alleged facts which present a case or controversy under the Constitution.  *See Hicks v. Morgan Stanley & Co.*, 2003 U.S. Dist LEXIS 11972 at *19-20 (S.D.N.Y. July 16, 2003).  Defendants do not dispute that Mr. Siemers has shown injury to himself.  Consequently, any other questions as to whom the Lead Plaintiff may represent - *e.g.,* investors who purchased from H.D. Vest or other persons who bought Shelf-Space Funds not personally owned by the Lead Plaintiff– are so intertwined with issues pertinent to class certification that, under *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), decision on those issues must be deferred until class certification. *See Ortiz*, 527 U.S. at 820 ("While an Article III court

1    ordinarily must be sure of its own jurisdiction before getting to the merits, a Rule 23 question

2    should be treated first because class certification issues are "logically antecedent" to Article III

3    concerns, and pertain to statutory standing, which may properly be treated before Article III

4    standing"). (internal citations omitted.)

5            Moreover, in a multiple defendant scheme such as exists here, for a plaintiff to have

6    standing, all that he needs to shows is that he suffered injury by one of the entities involved.  This is

7    because, by acting in concert, the act of any one defendant necessarily causes the ultimate injury.[5]

8    At the very least, this fact underscores that the appropriate stage of the litigation for such

9    determination is not at the pleading stage. *See, e.g., Mutchka v. Harris*, 373 F.Supp.2d 1021, 1024

10   (C.D. Cal. 2005) (no basis on standing grounds for precluding plaintiffs "from asserting claims

11   against the defendants on the basis that they managed funds other than the ones in which the

12   [plaintiffs] had invested").

13           Finally, the juridical links doctrine provides an independent ground for the Lead Plaintiff to

14   pursue claims on behalf of investors against all Defendants.  Specifically, Defendants, including

15   H.D. Vest, are all legally related to each other, and therefore juridically linked, making collective

16   prosecution against all Defendants the most efficient means for resolution of the dispute.  As

17   explained by the Seventh Circuit in *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002):

18           If the plaintiffs as a group named and unnamed have suffered an identical injury at
             the hands of several parties related by way of a conspiracy or concerted scheme, or
19           otherwise juridically related in a manner that suggests a single resolution of the
             dispute would be expeditious, the claim could go forward.
20

21   *Id.* at 678-79 (quoting *La Mar v. HB Novelty & Loan, Co.*, 489 F.2d 461 (9th Cir. 1973));

22   *see also Luyando v. Bowen*, 124 F.R.D. 52 (S.D.N.Y. 1989) (allowing plaintiff to bring a

23   class claim against a defendant as to which the plaintiff personally lacked standing

24   _____

     [5]   This is not to say that Defendant H.D. Vest's liability rests on any theory of aiding and abetting.
25   *See Central Bank v. First Interstate Bank*, 511 U.S. 164, 173-7 (1994) (precluding liability based
     upon adding and abetting theory).  Rather, Defendant H.D. Vest  is culpable as a ***direct participant***
26   in the scheme – of which there is no doubt given the NASD's finding's regarding H.D. Vest's
     conduct at issue here.  (Order at 14). ("Defendants obviously knew of the actual compensation
27   arrangements. The NASD findings against H.D. Vest and Wells Fargo Investments (incorporated
     into the complaint) delineated specific programs designed to promote sale of certain funds'
28   shares"); (SAC ¶¶ 54-55, 63-65).

1  because there existed a legal relationship which related all defendants in a way such that

2  single resolution of the dispute was preferred to a multiplicity of similar actions); *Heffler*

3  *v. U.S. Fid. & Guar. Ins. Co.*, 1992 U.S. Dist. LEXIS 3090, at * 11 (E.D. Pa., Mar. 10,

4  1992) (noting that the juridical links made single resolution of the dispute favorable over

5  multiple actions).

6        Here, because of the legal relationship that exists between the Defendants, it makes sense to

7  litigate against all of them in a single action for their concerted conduct alleged in the SAC.

8       **2.**    **With Respect to His Claim Under Section 36(b) of the Investment**
                  **Company Act of 1940, The Lead Plaintiff Has Standing to Assert**

9                **Claims on Behalf of Investors in All of the Wells Fargo Funds.**

10        Defendants next argue that "Count VI must be dismissed as to any [Wells Fargo] fund that

11  Plaintiff himself did not own."  (Def. Mtn. at 7:7-8).  Defendants are again wrong, as their argument

12  is contradicted by the plain language of section 36(b) of the Investment Company Act.  Under

13  section 36(b), a plaintiff may bring a claim with respect to a registered investment company by

14  virtue of his being a "security holder of such ***registered investment company."***  15 U.S.C. § 80a-

15  36(b).  (emphasis supplied.)  Here, Mr. Siemers is suing on behalf of the shareholders of the Wells

16  Fargo Trust, which is the registrant of all the Wells Fargo Funds.  (SAC ¶ 28).  Mr. Siemers owns

17  shares of the Wells Fargo Funds that comprise the Wells Fargo Trust.  (SAC. ¶ 15).  Accordingly,

18  Mr. Siemers has standing to represent shareholders of ***any*** Wells Fargo Fund that comprises the

19  Wells Fargo Trust.

20        This only makes sense given the structure of the Wells Fargo Trust and its relationship to the

21  Wells Fargo Funds.  The Wells Fargo Trust' role as the registrant for all Wells Fargo Funds allowed

22  the Wells Fargo Funds to act as a single entity.  For example, the role of the Wells Fargo Trust

23  allowed the use of just one board of directors for all the Wells Fargo Funds.  (SAC ¶ 163).  As

24  noted by a Moringstar industry analyst: "[t]hat structure could make it more difficult for the board

25  to focus on what is happening to each fund."  (SAC ¶ 163)  Likewise, as recognized on page 5 of

26  the Order, the Wells Fargo Trust is the one ultimately responsible for the advisory fees and

27  distribution and marketing fees of the Wells Fargo Funds that are at issue here.    (Order at 5).

28        Furthermore, the legislative history of section 36(b) demonstrates why prosecution of this

1   action as to all of the Wells Fargo Funds is appropriate.  Such legislative history specifically

2   references the existence of mutual fund trusts such as the Wells Fargo Trust that encompass a large

3   number of separate funds and confirms that, in a situation where the funds pool and share expenses

4   imposed on them by their advisers (as the Wells Fargo Funds do), section 36(b) requires the courts

5   to evaluate the impact of defendants' wrongful conduct on the entire complex of funds.  In

6   discussing the addition of section 36(b) to the Investment Company Act, the Senate Report stated:

> In the event that court action is brought to enforce this fiduciary duty of the
> investment adviser as to compensation or payments received by him, it is intended
> that the court look at all the facts in connection with the determination and receipt of
> such compensation, including all services rendered to the fund or its shareholders
> and all compensation and payments received, in order to reach a decision as to
> whether the adviser has properly acted as a fiduciary in relation to such
> compensation.  ***In the case of fund complexes, this could, under certain
> circumstances, include consideration of services rendered by such investment
> advisers to other funds in such complex and compensation or payments made by
> such other funds for such services.***

13  Investment Company Amendments Act of 1969, S. Rep. No. 91-184, at 15 (May 21, 1969).

14  (emphasis supplied.)  Congress thus recognized that interrelated mutual fund complexes can

15  require the courts to examine an adviser's activity regarding the entire complex in order to

16  determine whether the adviser was obtaining excessive compensation for itself or its affiliates in

17  breach of its fiduciary duties under section 36(b).

18          Accordingly, courts confronted with the argument raised here by Defendants have also

19  rejected it.  For example, in *In re Dreyfus Aggressive Growth Mutual Fund Litig.*, 2000 U.S. Dist.

20  LEXIS 13469 (S.D.N.Y. Sept. 19, 2000), the court certified a class that allowed the lead plaintiff

21  to represent purchasers in funds that the plaintiff did not own.  The court held that:

> Courts have repeatedly held that on allegations such as these, class representatives
> need not have invested in each security so long as the plaintiffs have alleged a single
> course of wrongful conduct with regard to each security.  Courts have not addressed
> this concern *vis a vis* the doctrine of standing but rather have examined such
> concerns pursuant to Rule 23(a)(3)'s typicality requirement.

25  *Id.* at *8.

26          Likewise, in *In re ML Lee Acquisition Fund II L.P.*, 848 F. Supp. 527 (D. Del. 1994),

27  defendants argued that the proposed class representatives could not represent investors in a mutual

28  fund that they did not own.  That court also rejected the contention because of the similarity of the

1   related mutual funds and of the wrongdoing that impacted all the funds at issue.  *Id.* at 561.

2        Finally, in *Batra v. Investors Research Corp.*, 1991 U.S. Dist. LEXIS 14773, at *10 (W.D.

3   Mo., Oct. 4, 1991), Twentieth Century Investors ("TCI"), like the Wells Fargo Trust, was the

4   registrant of a dozen different mutual funds.  *Id.* at *1.  The Court held that by holding shares in

5   one TCI mutual fund, the plaintiff had standing to sue on behalf on other TCI mutual funds that

6   made up the TCI, because, as a shareholder in one TCI mutual fund, plaintiff would benefit from

7   the recovery of any excessive fees:

8       [T]he *Gollust*[6] holding nullifies the defendants' contention that the plaintiff cannot
    maintain an action on behalf of other funds where he held solely Cash Reserve

9       securities.  *Gollust* provides that where a plaintiff satisfies the statutory requirement
    [of being a shareholder of a fund], he need not continue to hold shares ***so long as he***

10  ***holds some financial interest in the outcome of the litigation…As a shareholder in***
    ***[the mutual fund series he owned or in] any other series, he benefits from any***

11  ***recovery of excessive fees by TCI.***

12  *Id.* at *10.  (emphasis supplied.)

13       Here all of the Wells Fargo Funds are alleged to have shared in the expenses at issue in the

14  litigation and an accounting with respect to all Wells Fargo Funds will be necessary to award relief

15  to any of the Wells Fargo Funds. (SAC ¶ 163).  Therefore, the Lead Plaintiff has a financial

16  interest in the outcome with respect to all of the Wells Fargo Funds and not just those that he

17  purchased and held.  The Lead Plaintiff was injured here by the conduct which impacted all of the

18  Wells Fargo Funds, and thus he has standing to bring claims challenging such practice.[7]

19       **3.**    **The SAC Establishes that Stephens is Liable Under Section 36(b) of the**

20         **1940 Act.**

21       In the Order, this Court held that Plaintiff has stated a claim against Defendant Stephens –

22  one of the two Distributor Defendants.  (Order at 4-5, 24-26, 30). ("Defendants' contention about

23

24  [6] *Gollust v. Mendell*, 501 U.S. 115, 126 (1991), where the U.S. Supreme Court held that standing is
grounded in a plaintiff's "distinct and palpable injury to himself," and his or her ability to "maintain

25  a 'personal stake' in the outcome of the litigation…"

26  [7]  Defendants also try to resurrect from the dead their previously rejected argument that the Lead

27  Plaintiff must own at least one-third of each funds' outstanding shares to bring suit.  (Def. Mtn. at
7:12-15).  As previously pointed out by the Lead Plaintiff, such argument has no merit and

28  contradicts the plain language of §36(b), which only requires a plaintiff to be "a security holder."
(Dkt. 85, at 20:1-21:11).

revenue-sharing fail.  If the investment advisers and ***distributors*** were funding kickbacks by increasing fees to the funds…they may have breached their duty if the funds did not benefit from the kickback.…Plaintiff has alleged a variety of detailed facts that support the Section 36(b) claim. If he can prove those allegations, he will have demonstrated that the investment advisors and ***distributors*** were passing to the funds the cost of self-serving kickbacks") (emphasis supplied.) Despite the fact that nothing has been changed in the SAC regarding Defendant Stephens, and no new facts or law have been attributed to Defendant Stephens, Defendants again move to dismiss all claims against Defendant Stephens.  Again, Defendants' arguments are wrong and its motion to dismiss should be denied.

As alleged in the SAC, Defendant Stephens has been a distributor of the Wells Fargo Funds since July 26, 2004.  (SAC ¶ 6).  Defendants do not deny this, nor can they.  Moreover, as a distributor of the Wells Fargo Funds, Defendant Stephens necessarily was involved in, and benefited from, the kickback scheme described in the SAC.  (SAC ¶¶ 96-142, 152-153).  In fact, much of the detailed analysis contained at paragraphs 96-142, 152-153 of the SAC pertains directly to Defendant Stephens.

Defendants also argue that "subsection 36(a) [of the Investment Company Act] does not apply to Stephens, because that provision lists officers, directors, advisory board members ***and underwriters.***"  (Def. Mtn. at 8:25-26). (emphasis supplied.)  Defendants then claim that Defendant Stephens is none of these, and therefore, no section 36(b) claim can exist against Stephens.  (Id.)  In other words, by Defendants' own logic, if it can be shown that the Defendant Stephens is in fact one of the entities listed in section 36(a), *e.g.*, ***an underwriter***, then Defendant Stephens can be liable under section 36(b).

Defendant Stephen is, in fact, an underwriter and Defendants' own Prospectuses state this. As a distributor to the Wells Fargo Funds, Defendant Stephens acts as an underwriter to the Wells Fargo Funds.  For example, in the April 11, 2005 Prospectus for the Wells Fargo Advantage Small Cap Growth Fund - a fund owned by Mr. Siemers (SAC ¶ 15), it states that: "Prior to April 11, 2005, Stephens, Inc. ("Stephens"), located at 111 Center Street, Little Rock, Arkansas 72201, served as distributor for the Funds…."  (Reese Decl. at Ex. 2, p. 42.) The Prospectus then makes

clear that "Stephens *served as the principal underwriter distributing securities of the…Small Cap Growth [and other] Funds…on a continuous basis.*"  (Reese Decl. at Ex. 2, p. 45.) (emphasis supplied.)  Defendants' argument that Defendant Stephen is not an underwriter, and therefore not liable under section 36(b), is just not true and should accordingly be rejected.

4.      **The SAC Adequately Pleads Scienter As to All Defendants And All Funds.**

As stated in Plaintiff's opposition to Defendants' previous arguments regarding scienter that this Court rejected, "falsity and scienter …are generally strongly inferred from the same set of facts…"  *In re Immune Response Sec. Litig.*, 375 F. Supp.2d 983, 1019 (S. D. Cal. 2005).  Thus, Ninth Circuit authority provides that "these two requirements may be combined into a unitary inquiry under the PSLRA."  *Id.*  Moreover, "[s]cienter can be established by direct or circumstantial evidence."  *In re Omnivision Techs.*, 2005 U.S. Dist. LEXIS 16009 at *13.

In its Order denying Defendants' previous motion to dismiss on this exact issue, the Court addressed the sufficiency of scienter allegations as follows:

> the complaint…alleges a persistent and deliberate scheme to use half truths to conceal a thriving system of kickbacks and its concomitant conflicts of interest….Defendants obviously knew of the actual compensation arrangements. The NASD findings against H.D. Vest and Wells Fargo Investments (incorporated into the complaint) delineated specific programs designed to promote sale of certain funds' shares and Wells Fargo Investments' system of ranking preferred funds.  The fact that defendants had the incentive programs in place indicates that they believed these programs would drive sales.  ***In light of this conscious strategy, the failure to disclose the full extent of the payback programs raises a strong inference of scienter.***

(Order at 14-15). (emphasis supplied.)

Despite these findings by this Court,  Defendants make two very limited arguments regarding scienter, neither of which has any merit.

a.      **The SAC Adequately Pleads Acts And Omissions From Which Scienter Can Be Inferred.**

Defendants first argue that scienter has not been shown because "there is simply no act or omission [directed at the Plaintiff] to which an accusation of a wrongful mental state can attach."[8]

---

[8] Defendants only make this scienter argument on behalf of defendants "H.D. Vest, Stephens, Wells Capital, Wells Distributor, Wells Management or Wells Fargo & Co." Defendants concede that this argument is not applicable to defendants Wells Fargo Investments or Wells Trust as "the SAC

(Def. Mtn. at 11:11-12.)  Defendants are wrong.  Each Defendant named in the complaint was responsible for the content in one form or another of the misleading Prospectuses and SAIs at issue here.  For example, as a broker-dealer, H.D. Vest was responsible to make sure that the statements contained in the Prospectuses and SAIs that are provided to investors are truthful.  This Court has already found that statements contained in those documents were misleading ***because they did not describe adequately the payment arrangements between H.D. Vest and the Shelf Space Funds.*** (Order at 9) ("The representation [in the Prospectus] left the impression that the payback arrangement might (or might not) materialize when it was, in reality, already a done deal.  This was misleading. ***This conclusion is consistent with the recent SEC orders holding that various broker-dealers had not disclosed adequately the paybacks they received to push various funds.***") (emphasis supplied.)

Likewise, the Investor Advisor Defendants – Wells Management and Wells Capital - were also responsible for statements made in the Prospectuses and SAI that described their role.  As repeatedly stated in the SAC, statements contained in the Prospectuses and SAI regarding the Investment Advisor Defendants were misleading in that they failed to disclose that the Investment Advisor Defendants were making kickback payments from assets of mutual fund investors that the Investment Advisor Defendants euphemistically referred to as "revenue-sharing" payments. (SAC ¶¶ 29, 33-56, 84-87, 96-101, 143-151). In similar kickback actions, the SEC has found investment advisers liable for failure to disclose such payment arrangements in the Prospectuses and SAIs. (Reese Decl. Ex. 3 at 6 (Mar. 31, 2004 SEC Order Instituting Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanction in the Matter of Massachusetts Financial Services ("MFS") ("[Investment Adviser] MFS was responsible for ensuring that the MFS Funds Prospectuses and SAIs were in compliance with the requirements of Form N-1A…MFS did not adequately disclose to MFS shareholders that it allocated fund brokerage commissions to satisfy strategy alliances").

---

alleges that Wells Investment (as a broker-dealer that did business with Plaintiff) and Wells Trust (as the issuer of prospectuses and SAIs for Wells Fargo Funds that Plaintiff bought and sold) communicated with Plaintiff."  (Def. Mtn. at 11:3-7.)

With respect to the Distributor Defendants - Wells Distributor and Stephens - they too were responsible for the content of the Prospectuses and SAIs that describes their roles.  As explained in the SAC, part of the kickback payments came directly from these Distributor Defendants in the form of directed brokerage – payments that were never properly disclosed to the investing public. (SAC ¶¶ 96-100, 105, 113, 152).

Finally, Defendant Wells Fargo & Co., the parent of all the entities named as Defendants in the SAC, "was the ultimate beneficiary of the secret plan and scheme to endorse the Shelf Space to the detriment of the Funds and their investors."  (SAC ¶ 16).  As the parent of all the entities named as Defendants, it too was liable for the acts and omissions at issue in this action.  As stated by this Court when it rejected this argument:

> Defendants argue that they had no duty to disclose…This order agrees with the SEC administrative rulings…Defendants had a duty to state all facts that were necessary to make their affirmative statements not misleading.  The representation left the impression that the payback arrangement might (or might not) materialize when it was, in reality, already a done deal.  This was misleading.

(Order at 8-9).  In other words, as this Court previously found, the failure of the Defendants to disclose *anywhere* to investors the Defendants' kickback scheme, makes Defendants liable under the federal securities laws.  (Id.)  Defendants try to reargue this point, cloaked as a "scienter" argument, but nothing has changed; it is no more persuasive than when rejected the last time.

      **b.**    **The SAC Adequately Pleads Scienter With Respect To Failure To Disclose Revenue-Sharing Kickbacks From Wells-Affiliated Funds.**

Defendants next contend that the section 10b claim should be dismissed against all Defendants with respect to the mutual funds bearing the "Wells Fargo" name.  Defendants argue that the Wells Fargo Funds are not the same as "third-party" Shelf Space Funds because they bore the "Wells" name, which purportedly put every investor on notice that the Wells entities were engaging in kickbacks.  Defendants' claim depends on the notion that no reasonable investor would have expected a Wells-affiliated broker to give unbiased advice about a Wells-named fund.  It asks the court to find as a matter of law at the pleading stage that while investors who purchased from Wells-affiliated brokers might have expected to receive the full truth about third-party funds, they knew or should have known that they were being pushed to invest in Wells-affiliated funds to

benefit their brokers rather than themselves.  Defendants' argument finds no support in the allegations of the SAC or in law.

All the allegations of the SAC regarding the wrongful conduct with regard to "Shelf Space Funds" apply not only to "third-party" funds, but also to the Wells Fargo Funds.  The Complaint defines "Shelf Space Funds" as "the Wells Fargo Funds and/or …non-Wells Fargo funds participating in Wells Fargo's revenue sharing and directed brokerage arrangements."  (SAC ¶ 2).  An exhibit that lists the Shelf Space Funds includes both types of funds.  (SAC at Ex. A).  The Court already concluded that the pleading of scienter was adequate, and this conclusion applies to both internal and external funds.  (Order at 9-10, 14).

Furthermore, the SAC alleges that Defendants broke promises to put its investors' interests, not its own interests, first, and these allegations apply to both third-party and Wells- affiliated funds that were providing undisclosed kickbacks.  Defendants stated that their brokers (whom it called "financial consultants") would "'provide sound financial advice for customers…and create new wealth for them.'"  (SAC ¶ 30).  Defendants promised that their employees would "'[a]void any actual or perceived conflict of interest…[and] [c]omply with the letter and the spirit of the law.'"  (SAC ¶ 31).   And Defendants marketed its brokers as offering "personal investment planning and advice from an experienced and knowledgeable investment professional whose goal it is to constantly monitor the markets so you don't have to."  (SAC ¶ 61).

Contrary to these promises, Defendants in fact pushed its customers into its own Wells Fargo Funds in order to enrich themselves.  They "exerted incredible pressure on brokers [to push these funds] – both through higher payouts for those who pushed clients into the Shelf Space Funds and threats of demotion or termination for those who did not."  (SAC ¶ 41).  "[M]anagers' bonuses depended on having their financial consultants push their clients into the Shelf Space Funds."  (SAC ¶ 41).  "[F]inancial consultants who were big sellers of Shelf Space Funds would be eligible for free trips to conferences or for free conference registration."  (SAC ¶ 43).  "[T]he supervisor would offer extra commissions and payouts to financial consultants who pushed clients into the Wells Fargo Funds."  (SAC ¶ 49).

As the Court already concluded in denying Defendants' previous motions to dismiss,

investors did not know that Defendants would treat them in this way.  The prospectus "left the impression that the payback arrangement might (or might not) materialize when it was, in reality, already a done deal.… If a reasonable investor knows the broker-dealer has a payback agreement to showcase a particular fund, the investor is likely to take a harder look at the recommendation." (Order at 9-10).  This logic equally applies regardless of whether the kickback came from a Wells Fargo affiliate or third-party.

Defendants' argument that all "Wells"-related products and services are from the same company, so it does not matter which part of the company gets the money, is also without merit. (Def. Mtn. at 13).  Since the Great Depression, when Congress passed the Glass-Steagall Act to forbid banks from participating in investment services, investors have known that investment services are provided only through entities legally separate from banking affiliates, even when the names are similar.  *See generally Board of Governors of the Fed. Reserve Sys. v. Investment Co. Inst.,* 450 U.S. 46, 60 (1981) (discussing Glass-Steagall).  Furthermore, even after revisions to the Glass-Steagall Act in the mid-1990s, mutual funds must have their own boards of directors that are independent of the boards of the affiliated entities to oversee the publication of prospectuses that fully disclose all material information.  15 U.S.C. § 80a-10(c)   These rules exist precisely to avoid the conflicts of interest alleged in the SAC.

Finally, Defendants cannot legally deceive investors about the reasons they are recommending particular investments, and the money they stand to make from them.  As discussed in *SEC v. Hasho*, 784 F. Supp. 1059, 1110 (S.D.N.Y. 1992), a broker must disclose all commissions being earned on a sale of securities regardless of who is earning the money:

> The failure to disclose such commissions deprives the customer of the knowledge that his registered representative might be recommending a security based upon the registered representative's own financial interest rather than the investment value of the recommended security.  Misrepresenting or omitting to disclose a broker's financial or economic incentive in connection with a stock recommendation constitutes a violation of the anti-fraud provisions.

*Id.* (finding violation of the anti-fraud provisions of the federal securities laws for sales tactics related to ***in-house securities***).  In other words, the law requires disclosure of all material information, regardless of whether the security being sold is proprietary or not.  As previously held

by this Court, the allegations clearly state that Defendants failed to meet this fundamental obligation to investors.  (Order at 9).  Defendants' motion to dismiss therefore should be denied.

## III.    CONCLUSION

For the foregoing reasons, the Lead Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss Plaintiff's Second Amended Complaint in its entirety.

Dated:  September 28, 2006                    Respectfully Submitted,

**GUTRIDE SAFIER LLP**

By:    /s/ Michael R. Reese _____
       Michael R. Reese
       230 Park Avenue, Suite 963
       New York, New York 10169

                - and -


**GUTRIDE SAFIER LLP**
Adam M. Gutride
Seth A. Safier
835 Douglass Street
San Francisco, California 94119

***Court Appointed Lead Counsel***

1

2

**DECLARATION OF SERVICE**

3

I, the undersigned, declare:

4      1.      That declarant is and was, at all times herein mentioned, a citizen of the United

5  States and a resident of New York, New York, over the age of 18 years, and not a party to or

6  interest in the within action; that declarant's business address is 230 Park Avenue, Suite 963 New

7  York, New York 10169.

8      2.      That on September 28, 2006, declarant served the OPPOSITION TO MOTION TO

9  DISMISS LEAD PLAINTIFF'S SECOND AMENDED COMPLAINT, by electronic notice to the

10  parties listed on the attached Service List.

11      I declare under penalty of perjury that the foregoing is true and correct.  Executed

12  this 28th day of September, 2006, at San Francisco, California.

13

14                                              /s/ Michael R. Reese

15                                              MICHAEL R. REESE

16

17

18

19

20

21

22

23

24

25

26

27

28

# Wells Fargo & Co.

### Service List

| | |
|---|---|
| Bruce A. Ericson<br>Jacob R. Sorensen<br>Kristin M. Lefevre<br>**PILLSBURY WINTHROP SHAW PITTMAN LLP**<br>50 Freemont Street<br>P.O. Box 7880<br>San Francisco, CA 94105-7880<br>Tel.: (415) 983-1000<br>Fax: (415) 983-1200<br><br>-and-<br><br>Clifford C. Hyatt<br>David L. Stanton<br>**PILLSBURY WINTHROP SHAW PITTMAN LLP**<br>725 South Figueroa Street, Suite 2800<br>Los Angeles, CA 90017-5406<br>Tel.: (213) 488-7100<br>Fax: (213) 629-1033<br><br>*Counsel for Defendants Wells Fargo & Co.,*<br>*Wells Fargo Funds Management, LLC, Wells*<br>*Capital Management, Inc., H.D. Vest*<br>*Investment Services, Wells Fargo Funds Trust,*<br>*and Stephens Inc.* | Thomas O. Jacob<br>Vanessa M. Hoffmann<br>**OFFICE OF GENERAL COUNSEL, WELLS FARGO & CO.**<br>633 Folsom Street, 7th Floor<br>San Francisco, CA 94107<br>Tel.: (415) 622-6656<br>Fax: (415) 975-7864<br><br>*Counsel for Defendants Wells Fargo & Co.,*<br>*Wells Fargo Funds Management, LLC, Wells*<br>*Capital Management, Inc., Wells Fargo Funds*<br>*Trust, and Wells Fargo Investments, LLC* |