| | |
|---|---|
| 1 | PILLSBURY WINTHROP SHAW PITTMAN LLP<br>BRUCE A. ERICSON  #76342 |
| 2 | CLIFFORD C. HYATT  #196458<br>DAVID L. STANTON  #208079 |
| 3 | JACOB R. SORENSEN  #209134<br>RYAN TAKEMOTO  #221169 |
| 4 | 50 Fremont Street<br>Post Office Box 7880 |
| 5 | San Francisco, CA  94120-7880<br>Telephone: (415) 983-1000 |
| 6 | Facsimile: (415) 983-1200<br>bruce.ericson@pillsburylaw.com |
| 7 | |
| 8 | Attorneys for Defendants |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| 12 | RONALD SIEMERS, Individually And On Behalf Of ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & COMPANY, et al.,<br><br>Defendants. | No. C-05-04518-WHA<br><br>**CLASS ACTION (PSLRA)**<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:  October 19, 2006<br>Time: 8:00 a.m.<br>Ctrm:  9, 19th Floor<br>Honorable William H. Alsup |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION. ...............................................................................................................1

II. ARGUMENT. .....................................................................................................................2

    A. Plaintiff lacks standing to sue H.D. Vest (Counts I and IV). .........................2

        1. The Opposition ignores the merits. .....................................................2

        2. The Motion is timely. ..........................................................................3

    B. Plaintiff lacks standing to sue on behalf of Wells Fargo Funds he does not own (Count VI). ................................................................................6

        1. The Opposition ignores the merits. .....................................................6

        2. The Motion is timely. ..........................................................................8

    C. The SAC does not allege facts establishing that Stephens could be liable under section 36(b) of the '40 Act (Count VI). ....................................9

        1. The Opposition goes outside the SAC. ...............................................9

        2. The Motion is timely. ..........................................................................9

    D. Plaintiff's scienter allegations are insufficient (Count IV)............................10

        1. The Court can and should consider the issue of scienter..................10

        2. Six defendants—H.D. Vest, the distributors, the investment advisers and the parent—are not accused of making any statements, let alone a misstatement.................................................11

        3. The scienter allegations are insufficient as to the Wells Fargo Funds. ................................................................................................12

III. CONCLUSION. ................................................................................................................14

**TABLE OF AUTHORITIES**

**Page**

**Cases**

766347 Ontario Ltd. v. Zurich Capital Markets Inc.,
  274 F. Supp. 2d 926 (N.D. Ill. 2003) .......................................................................... 10

Albany Ins. Co. v. Almacenadora Somex, S.A.,
  5 F.3d 907 (5th Cir. 1993) ........................................................................................... 10

Batra v. Investors Research Corp.,
  No. 89-0528-CV-W-6, 1991 U.S. Dist. LEXIS 14773 (W.D. Mo.
  Oct. 4., 1991) ................................................................................................................ 7

Castillo v. Dean Witter Discover & Co.,
  No. 97 Civ. 1272(RPP), 1998 WL 342050 (S.D.N.Y. June 25, 1998) ............... 11, 13

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,
  511 U.S. 164 (1994) .................................................................................................... 11

CGHH, LLC v. Cesta Punta Deportes, S.A.,
  No. 05-cv-1343-RWS, 2006 U.S. Dist. LEXIS 15015 (N.D. Ga.
  March 31, 2006) .......................................................................................................... 10

Dee-K Enters., Inc. v. Heveafil SDN. BHD.,
  985 F. Supp. 640 (E.D. Va. 1997) .............................................................................. 10

Easter v. American West Fin.,
  381 F.3d 948 (9th Cir. 2004) .................................................................................. 5, 6

Ford v. NYLCare Health Plans of the Gulf Coast, Inc.,
  301 F.3d 329 (5th Cir. 2002) ....................................................................................... 5

Forsythe v. Sun Life Fin., Inc.,
  417 F. Supp. 2d 100 (D. Mass. 2006) ......................................................................... 6

Harris Bank Naperville v. Pachaly,
  902 F. Supp. 156 (N.D. Ill. 1995) .............................................................................. 10

Hicks v. Morgan Stanley & Co.,
  2003 U.S. Dist. LEXIS 11972 (S.D.N.Y. July 16, 2003) ........................................... 3

Howard v. Everex Sys., Inc.
  228 F.3d 1057 (9th Cir. 2000) ................................................................................... 11

In re Alliancebernstein Mut. Fund Excessive Fee Litig.,
  04-civ-4885-SWK, 2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005) ........................ 7, 8

In re Am. Funds Fees Litigs,
  No. CV04-5593-GAF, 2005 U.S. Dist. LEXIS 41884 (C.D. Cal. Aug.
  22, 2005) ........................................................................................................................ 6

| | | |
|---|---|---|
| 1 | In re Columbia Entities Litig., | |
| 2 | No. 04-11704, 2005 U.S. Dist. LEXIS 33439 (D. Mass. Nov. 30, 2005) | 7, 8 |
| 3 | In re Dreyfus Aggressive Growth Mut. Fund Litig., | |
| 4 | No. 98Civ4318, 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 20, 2000) | 7 |
| 5 | In re Eaton Vance Corp. Secs. Litig., | |
|   | 220 F.R.D. 162 (D. Mass. 2004) | 5, 7, 8 |
| 6 | | |
|   | In re Franklin Mut. Funds Fee Litig., | |
| 7 | 388 F. Supp. 2d 451 (D.N.J. 2005) | 3, 6 |
| 8 | In re ML-Lee Acquisition Fund II, L.P., | |
|   | 848 F. Supp. 527 (D. Del. 1994) | 7 |
| 9 | | |
|   | In re Salomon Smith Barney Mut. Funds Fees Litig., | |
| 10 | 441 F. Supp. 2d 579 (S.D.N.Y. 2006) | 3, 6, 8 |
| 11 | Kauffman v. Dreyfus Fund, Inc., | |
|    | 434 F.2d 727 (3d Cir. 1970) | 7 |
| 12 | | |
|    | La Mar v. H&B Novelty & Loan Co., | |
| 13 | 489 F.2d 461 (9th Cir. 1973) | 5, 7 |
| 14 | Lindsey v. United States, | |
|    | __ F. Supp. 2d __, No. 05-1761, 2006 WL 2413720 (D.D.C. Aug. | |
| 15 | 22, 2006) | 2 |
| 16 | Mayfield v. Hayden, | |
|    | No. 91-3012, 1991 U.S. App. LEXIS 30049 (10th Cir. 1991) | 10 |
| 17 | | |
|    | Mutchka v. Harris, | |
| 18 | 373 F. Supp. 2d 1021 (C.D. Cal. 2005) | 3 |
| 19 | Ortiz v. Firbreboard Corp., | |
|    | 527 U.S. 815 (1999) | 5, 6 |
| 20 | | |
|    | Payton v. County of Kane, | |
| 21 | 308 F.3d 673 (7th Cir. 2002) | 6 |
| 22 | SEC v. Hasho, | |
|    | 784 F. Supp. 1059 (S.D.N.Y. 1992) | 13 |
| 23 | | |
|    | Simpson v. AOL Time Warner, Inc., | |
| 24 | 452 F.3d 1040 (9th Cir. 2006) | 12 |
| 25 | Standell v. Jackson County, | |
|    | 648 F. Supp. 126 (S.D. Ill. 1986) | 2 |
| 26 | | |
|    | United States v. Hays, | |
| 27 | 515 U.S. 737 (1995) | 4 |
| 28 | | |

Wafra Leasing Corp. v. Prime Capital Corp.,
    247 F. Supp. 2d 987 (N.D. Ill. 2002) .......................................................................... 10

Westlands Water Dist. v. Firebaugh Canal,
    10 F.3d 667 (9th Cir. 1993) ........................................................................................ 4

**Statutes and Codes**

Investment Company Act of 1940
    Section 36(a) ............................................................................................................... 9
    Section 36(b) ...................................................................................................... 1, 7, 9

Securities Act of 1933
    Section 12(a)(2) .......................................................................................................... 3

Securities Exchange Act of 1934
    Section 10(b) .............................................................................................................. 3

United States Code
    Title 15, section 78u-4(b)(2) ..................................................................................... 11
    Title 15, section 80a-35(b) ......................................................................................... 9

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 12(b)(6) ......................................................................................................... 2, 10
    Rule 12(g) ................................................................................................................. 10
    Rule 12(h)(1) ............................................................................................................ 10
    Rule 12(h)(2) ............................................................................................................ 10
    Rule 12(h)(3) .............................................................................................................. 4

Securities and Exchange Commission Rules
    Rule 10b-5 .................................................................................................................. 3

**Other Authorities**

Washington Capital Joint Master Trust, SEC No-Action Letter, 2006 SEC
    No-Act. LEXIS 618 (Sept. 25, 2006) ..................................................................... 7, 8

William W Schwarzer, et al., Federal Civil Procedure Before Trial
    Section 9:19-20 (2006) ........................................................................................... 2, 9

1   **I.      INTRODUCTION.**

2           Plaintiff's opposition ("Opposition" or "Opp.") to Defendants' motion to dismiss
3   ("Motion" or "Mot.") the Second Amended Consolidated Complaint ("SAC") ignores the
4   principal points raised by the Motion, largely in favor of erroneous arguments about the
5   timeliness of the Motion.

6           *Standing to sue H.D. Vest:*  Plaintiff ignores authority showing that Plaintiff lacks
7   Article III standing against H.D. Vest.  Subject-matter jurisdiction is not waivable and can
8   be raised at any time.

9           *Standing under section 36(b) of the '40 Act:*  Plaintiff ignores authority showing that
10  he lacks standing to bring section 36(b) claims against funds he does not own.  Instead,
11  Plaintiff misreads a Supreme Court decision, asking this Court to adopt a misinterpretation
12  of that decision that the Ninth Circuit has explicitly rejected.  Having prevailed on this issue
13  last time, Defendants have every right to raise it here and now.

14          *Standing to sue Stephens under section 36(b) of the '40 Act:*  Plaintiff's argument
15  for standing to sue Stephens rests on material outside the SAC, contrary to the Court's order
16  of August 14, 2006 (Dkt. 116) ("Order"), which dismissed this claim.  Order at 30:18-21.

17          *Scienter:*  Plaintiff fails to explain the SAC's lack of any specific factual allegations
18  demonstrating that H.D. Vest, Stephens, Wells Capital, Wells Distributor, Wells
19  Management or Wells Fargo & Co. made any representations to him (true or false).  He
20  cites no legal authority showing that these defendants can be held liable for the statements
21  of others.  He also cannot refute the obvious—that any reasonable investor knew the Wells
22  Fargo defendants were affiliated with the Wells Fargo Funds.  The Motion candidly stated
23  that these were new points, but noted also that the Order could be read as inviting such
24  argument.  Motion at 10:6-10 (citing Order at 15 n.3).  Both the case law and Judge
25  Schwarzer's treatise give the Court discretion to hear such arguments.  That discretion
26  should be exercised here to streamline this case by dismissing parties against which no
27  claim has been stated and claims that have no legal basis.

28          For all these reasons, the Motion should be granted in its entirety.

1 **II. ARGUMENT.**

2     In the Order, the Court expressly contemplated a motion to dismiss the SAC, stating

3 that such a motion should be filed within 14 days after Plaintiff filed the SAC and heard on

4 the 35-day track. Order at 34:12-17. The Motion complies with that ruling in all respects.

5     A court may properly entertain a second motion to dismiss for failure to state a

6 claim even if not based on issues raised in the first motion. *See* William W Schwarzer, et

7 al., *Federal Civil Procedure Before Trial* §§ 9:19-20, at 9-5 (2006) (stating that where

8 defendant's motion to dismiss is granted on the ground that one of five causes of action in

9 the complaint fails to state a claim, after plaintiff amends defendant "may move to dismiss

10 the same cause of action or *any other* cause of action on the same ground") (emphasis in

11 original). Courts have discretion to hear a second motion to dismiss, even if the motion

12 raises new grounds, so long as the motion is not made for the purposes of delay and

13 disposition of the case on the merits can be expedited by hearing the motion.[1] Defendants,

14 having voluntarily agreed to commence discovery (*see* Dkt. 129, at 1:17-2:8) before the

15 Court lifted the discovery stay (Dkt. 131, ¶ 3), can hardly be accused of seeking delay.

16     More important, all the issues raised by the Motion are timely. Of the four, only the

17 last (scienter) invokes the Court's discretion. But because the arguments as to each differ,

18 this reply deals with each in turn, in parts II.A through II.D below.

19 **A. Plaintiff lacks standing to sue H.D. Vest (Counts I and IV).**

20 **1. The Opposition ignores the merits.**

21     Plaintiff does not contest that the SAC contains no allegations connecting Plaintiff

22 to H.D. Vest. Plaintiff does not allege that he had an account at H.D. Vest, participated in

---

[1] *See e.g., Standell v. Jackson County*, 648 F. Supp. 126, 129 (S.D. Ill. 1986) (addressing on the merits second motion to dismiss raising the defense of failure to state a claim where court found that defendants' motion was not interposed for delay and disposition of the case would be expedited by reaching the merits of the motion); *Lindsey v. United States*, __ F. Supp. 2d __, No. 05-1761, 2006 WL 2413720, at *13-*16 (D.D.C. Aug. 22, 2006) (holding that second motion to dismiss pursuant to Rule 12(b)(6) was timely where there was no indication that it was intended to delay the proceedings and delaying resolution of the issue "would neither serve the interests of the parties—who have already briefed the issue … —nor promote judicial economy").

1  meetings with registered representatives affiliated with H.D. Vest or relied on any

2  statements made by H.D. Vest.  Plaintiff therefore has not made allegations sufficient to

3  satisfy the standing requirements of section 12(a)(2) of the '33 Act or section 10(b) of the

4  '34 Act and Rule 10b-5.  *See* Motion at 4:16-5:6.

5      Plaintiff does not address, let alone distinguish or rebut, the case law showing that

6  standing must be separately asserted against each defendant by the lead plaintiff.  *See*

7  Motion at 3:25-4:15; *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 460-62

8  (D.N.J. 2005) (noting that plaintiffs do not have standing to bring claims relating to funds

9  they do not own); *In re Salomon Smith Barney Mut. Funds Fees Litig.,* 441 F. Supp. 2d

10  579, 604-08 (S.D.N.Y. 2006) (dismissing, on Art. III grounds, for lack of standing "Shelf

11  Space" claims against any mutual fund, and affiliates of that fund, in which the plaintiff

12  held no shares).  Instead, Plaintiff cites irrelevant cases.[2]

13  **2.   The Motion is timely.**

14      Instead of addressing the merits, Plaintiff argues that (a) the Motion is too late (Opp.

15  at 3:7-6:6), or (b) it is too early because (i) the Court "tabled" the standing issue or

16  (ii) standing should be addressed in the context of class certification, or (c) the "juridical

17  links" doctrine entitles Plaintiff to sue a defendant with which he has had absolutely no

18  contact (Opp. at 6:10-8:7).  None of these arguments has merit.

19      *Not too late:*  Contrary to Plaintiff's argument, Defendants previously raised

20  standing issues as to H.D. Vest.[3]  The Court, however, did not address the points made here,

21  _____

22  [2] *Hicks v. Morgan Stanley & Co.,* 2003 U.S. Dist. LEXIS 11972, at *19-20 (S.D.N.Y. July 16, 2003) (Opp. at 6:19-24) concerned class certification; the plaintiff had standing
23  as to at least one claim against each named defendant.  The case does not say that a plaintiff can maintain an action against a defendant when he has no claim against that
24  defendant.  *Mutchka v. Harris,* 373 F. Supp. 2d 1021, 1024 (C.D. Cal. 2005) (Opp. at 7:5-12) involved a plaintiff who had "pled facts which establish an actual controversy and
25  injury with respect to each defendant." *Id.* at 1024.

26  [3] Defendants argued that "[n]owhere in the Complaint does Plaintiff allege that he held an account or had any dealings whatsoever with WF Investments *or H.D. Vest*" and the complaint "does not allege anything about the individual registered representatives with
27  whom Plaintiff dealt . . . ."  *See* Motion by the Broker-Dealer and Registrant Defendants to Dismiss (Dkt. 66) ("Broker-Dealer Brief") at 20:14-15 (emphasis added); Reply in
28                                                                                                                                              (continued…)

1  probably because the previous complaint did not specify with which of the two broker-
2  dealer defendants Plaintiff had an account.  The SAC clears that up:  It alleges Plaintiff
3  dealt with Wells Fargo Investments, but says nothing about H.D. Vest (presumably because
4  Plaintiff never dealt with H.D. Vest).

5        In any event, this argument is timely.  Plaintiff's failure to allege standing as to
6  H.D. Vest calls into question the Court's subject-matter jurisdiction.  Motion at 4:4-15
7  (citing cases).  Lack of subject-matter jurisdiction can never be waived.  *See* Fed. R. Civ. P.
8  12(h)(3); *United States v. Hays*, 515 U.S. 737, 742 (1995).  A defense of lack of subject-
9  matter jurisdiction may be raised by any party, or by the court *sua sponte,* at any time, or
10 even for the first time on appeal.  *See Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d
11 667, 673 (9th Cir. 1993).

12       *Not too early:*  Plaintiff contends that this Court appropriately "tabled" the standing
13 question until after the pleading stage.  Opp. at 6:10-7:12.  But the Court did no such thing.
14 Defendants advised the Court on February 16, 2006 that "[i]ssues of standing could arise
15 and cannot be waived."  Dkt. 49, at 3:10-4:24.  The Court, in response, stated that
16 Plaintiff's counsel should select one lead plaintiff, and "[i]f it turns out that Mr. Ericson
17 raises this argument, then maybe as a concession of the shortness of life we bring in some
18 more [plaintiffs], to fill the gaps.  But then only as necessary to meet that argument, if that
19 argument has any merit in the first place."  Dkt. 80 (Tr. of Feb. 9, 2006 Case Management
20 Conference at 6:7-14), also attached as Reese Decl. (Dkt. 133) Ex. 1.  The Court did not
21 foreclose Defendants from arguing standing at the pleading stage.  Nor could it.  *Westlands*
22 *Water Dist.,* 10 F.3d at 673.

23       The correct time to analyze standing is at the pleading stage.  *See* Motion at 5:17-
24 5:28 (citing authorities).  Plaintiff's claim that class certification should be addressed before

---

25 (…continued)
   Support of Motion by Broker-Dealer and Registrant Defendants to Dismiss (Dkt. 95)
26 ("Broker-Dealer Reply") at 10:8-11.  The Court ruled that Plaintiff had alleged that "the
   broker-dealers sold him at least one share of the relevant funds."  Order at 15:13-17.  But
27 the Order did not address Plaintiff's failure to allege any false statements by H.D. Vest to
   Plaintiff or any specific connection between Plaintiff and H.D. Vest.
28

1  standing rests on a flawed interpretation of *Ortiz v. Fibreboard Corp.*, 527 U.S. 815

2  (1999)—an interpretation that the Ninth Circuit has rejected.

3  *Ortiz*, an asbestos case, dealt with the propriety of certifying a settlement class on a

4  limited-fund theory. The Court opted to address class certification first because class

5  certification was "logically antecedent" to Article III standing in that case. *Id.* at 831. The

6  Supreme Court did not offer this as a universal rule. Numerous courts have held that *Ortiz*

7  does not require standing to be decided along side or after class certification issues.[4]

8  Most significantly, ***this*** Circuit has rejected Plaintiff's interpretation of *Ortiz*. In

9  *Easter v. American West Fin.*, 381 F.3d 948 (9th Cir. 2004), the Ninth Circuit affirmed the

10 dismissal of claims against several defendants who did not hold notes issued by the

11 plaintiff, despite the fact that a class could be defined so as to include members who might

12 have standing. The Ninth Circuit rejected the interpretation of *Ortiz* offered by Plaintiff:

> The district court [in *Easter*] correctly addressed the issue of standing before it addressed the issue of class certification. Borrowers contend that *Ortiz v. Fibreboard Corp.* [] requires courts to consider class certification before addressing standing issues. Although the court in *Fibreboard* examined class issues before the question of Article III standing, it did so in the very specific situation of a mandatory global settlement class. *Fibreboard* does not require courts to consider class certification before standing.

18 *Id.* at 962.

19 "*Juridical links*" *cannot create standing:* The juridical links doctrine states only

20 that class certification may be appropriate where the class has been injured as a group by

21 defendants "juridically related in a manner that suggests a single resolution of the dispute

22 would be expeditious." *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir.

23 1973). In the context of revenue-sharing claims (such as we have here), courts have

24 repeatedly ruled that the juridical links doctrine does not apply to standing questions at the

---

[4] *See, e.g., Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 301 F.3d 329, 333 n.2 (5th Cir. 2002) (analyzing standing before class certification and noting that *Ortiz* is only a "limited exception"); *In re Eaton Vance Corp. Secs. Litig.*, 220 F.R.D. 162, 165-66 (D. Mass. 2004) (analyzing standing before class certification issues in a mutual funds case, adopting the Fifth Circuit's reasoning).

1  pleadings stage, and therefore does not give a plaintiff standing to bring claims he

2  otherwise could not bring. *See Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 119 (D.

3  Mass. 2006) (rejecting juridical links doctrine in revenue sharing case); *In re Salomon*

4  *Smith Barney Mut. Funds Fees Litig.,* 441 F. Supp. 2d at 607 n.26 (S.D.N.Y. 2006)

5  (rejecting the juridical links doctrine in a revenue sharing case and noting that the

6  "application of the juridical link exception in the commercial context is disfavored"); *In re*

7  *Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 462 n.7 (rejecting the juridical link

8  doctrine in a mutual fund case and stating "the juridical link doctrine has no bearing on

9  standing; rather, its place lies in a Rule 23 analysis"); *see also In re Am. Funds Fees Litigs.*,

10 No. CV04-5593-GAF, 2005 U.S. Dist. LEXIS 41884, at *9-*10 (C.D. Cal. Aug. 22, 2005)

11 (dismissing claims against defendants whom plaintiffs had no claims because "plaintiffs

12 cannot recover from defendants who caused them no injury in fact").[5]

13 **B.    Plaintiff lacks standing to sue on behalf of Wells Fargo Funds he does not own**

14 **(Count VI).**

15 **1.    The Opposition ignores the merits.**

16       The Wells Fargo Funds offer approximately 90 fund products. RFJN Ex. 6. Of the

17 90 products, Plaintiff alleges that he bought three. SAC Ex. B at 2-3.[6] Plaintiff does not

18 claim that he ever owned even one share of the other 87 funds he seeks to represent.

19       Plaintiff fails to address the numerous cases in the mutual fund context where courts

---

[5] Plaintiff cites *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) for the proposition that a plaintiff can gain standing through the juridical links doctrine. But the *Payton* decision is premised on the same misreading of *Ortiz* offered by plaintiff and rejected by the Ninth Circuit. *Id*. at 678-80. The *Payton* court found that under *Ortiz* it had to examine class certification before examining standing. *Id*. The court first found the class would likely be certified, and then concluded that because the class—and not the individual plaintiffs—would have standing, the claim should not be dismissed. *Id.* at 679-80. In the Ninth Circuit, however, the general rule is that standing is examined first, and class issues are addressed later. *See Easter*, 381 F.3d at 962 (dismissing claims against defendant where other potential class members might have standing).

[6] Compare the numbers for the non-Wells Fargo funds: The 22 "Shelf-Space Fund" families mentioned in the SAC collectively offer 5,886 fund products. RFJN Ex. 7. Plaintiff alleges that he bought a grand total of 21 fund products—and nothing whatsoever from 19 of the 22 fund families. SAC Ex. B at 3-7.

have dismissed claims against funds not held by the plaintiffs.[7]  Instead, Plaintiff argues that he has standing to sue the 87 funds he never owned on the theory that they are part of the same fund family.  Opp. at 8:8-10:18.  This argument ignores the authorities demonstrating that, just as individual corporations are considered separate entities even if under common ownership, each fund offered as part of a series is treated as a separate registered investment company.  *See* Motion at 6:20-7:11.  The SEC reiterated this position as recently as September 25, 2006.  *See Washington Capital Joint Master Trust*, SEC No-Action Letter, 2006 SEC No-Act. LEXIS 618 (Sept. 25, 2006) ("[W]e have taken the position on several occasions that each series of a series investment company is or should be treated as a separate issuer under other sections of and rules under the 1940 Act.").[8]

Plaintiff's assertion that the Wells Fargo Funds were part of a single mutual fund "complex" (an industry term of art referring to the group of funds offered by one institution) (Opp. at 8:20-27) is of no moment.  The same was true of many of the cases holding that people like Plaintiff have no standing to sue on behalf of funds they do not

---

[7] *See* Motion at 5:17-5:28; *In re Salomon Smith Barney Mut. Funds Fees Litig.,* 441 F. Supp. 2d at 604-08 (dismissing section 36(b) claim as to any fund the named plaintiff did not hold); *In re Columbia Entities Litig.*, No. 04-11704, 2005 U.S. Dist. LEXIS 33439, *23-*24 (D. Mass. Nov. 30, 2005) (holding that plaintiffs could not bring claims on behalf of investors in funds not owned by plaintiffs); *In re Alliancebernstein Mut. Fund Excessive Fee Litig.,* 04-civ-4885-SWK, 2005 WL 2677753, *9 (S.D.N.Y. Oct. 19, 2005) (same); *In re Eaton Vance Corp. Secs. Litig.,* 220 F.R.D. at 164-71 (same); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732-36 (3d Cir. 1970) (holding that shareholder in four mutual funds did not have standing to sue other similarly situated mutual funds), cited with approval by the Ninth Circuit in *La Mar,* 489 F.2d at 468-69.

[8] Plaintiff's cases do not show that a section 36(b) claim can be brought by individuals who do not own the fund in question.  Two of the cases do not involve section 36(b) claims at all.  *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98Civ4318, 2000 U.S. Dist. LEXIS 13469 at *7-*8 (S.D.N.Y. Sept. 20, 2000); *In re ML-Lee Acquisition Fund II*, *L.P.*, 848 F. Supp. 527, 535, 560-61 (D. Del. 1994).  *Batra v. Investors Research Corp.*, No. 89-0528-CV-W-6, 1991 U.S. Dist. LEXIS 14773, at *10 (W.D. Mo. Oct. 4, 1991), is also inapposite.  In *Batra*, the court determined that the plaintiffs had standing to sue the directors of funds in which they did not own shares, in large part because management fees were assessed at the investment company level rather than the portfolio level.  *See id.* at *8. Here, each of the Wells Fargo Funds has different fees, which are incurred at the portfolio level.  *See, e.g.,* SAC ¶ 116.  Investors in the Wells Fargo Funds do not have a stake in the financial health of portfolios in which they do not own shares.

1   own, whether or not the funds are part of the same "complex."[9]

2   Plaintiff's legislative history and policy arguments (Opp. at 8:28-9:17) are no better. They confuse the scope of discovery with standing. If two funds shared expenses, a claim as to one fund might require discovery as to the other.[10] But that does not mean a plaintiff can bring a claim on behalf of a fund he does not own. Nothing in the legislative history suggests such a rule. Adopting Plaintiff's position would have far-reaching implications for the industry, which would be forced to register each fund as a separate investment company, or else allow a shareholder of a single fund to sue all funds. Such a result would be contrary to the SEC's guidance, reiterated just last week, that separate funds are to be treated as separate registered investment companies. *Washington Capital,* 2006 SEC No-Act. LEXIS 618. The Court should reject Plaintiff's misinterpretation of section 36(b).

**2.   The Motion is timely.**

Defendants previously moved to dismiss Plaintiff's First Amended Complaint ("FAC") on the ground that it failed to allege facts showing Plaintiff's standing with regard to funds he did not own. Motion of Defendant Wells Fargo Funds Management, LLC, et al. to Dismiss (Dkt. 65) at 4:6-5:13. The Court granted the motion in this respect, requiring Plaintiff to make additional allegations regarding the funds he owns. Order at 30:28-31:3. Plaintiff made new allegations in the SAC. SAC ¶ 15; Ex. B. The amendments show that Plaintiff never owned 87 of the 90 Wells Fargo funds.

The Court granted Defendants the right to challenge that amendment by filing a motion to dismiss. Order at 34:10-17. This is that motion. It unquestionably is timely.

---

[9] *In re Salomon Smith Barney Mut. Funds Fees Litig.,* 441 F. Supp. 2d at 604-08 (suit against multiple funds in a single fund complex); *In re Columbia Entities Litig.*, No. 04-11704, 2005 U.S. Dist. LEXIS 33439, *23-*24 (D. Mass. Nov. 30, 2005) (same); *In re Alliancebernstein Mut. Fund Excessive Fees Litig.,* 2005 WL 2677753, at *9 (same); *In re Eaton Vance Corp. Secs. Litig.,* 220 F.R.D. at 164-71 (same).

[10] Even for discovery purposes, the commonalities should not be exaggerated. Different Wells Fargo Funds—for example an emerging market fund and a government bond fund—own different securities with different returns purchased under different investment mandates and often managed by different managers. They perform differently and usually they charge different fees.

1  **C.  The SAC does not allege facts establishing that Stephens could be liable under**
2  **section 36(b) of the '40 Act (Count VI).**

3  **1.  The Opposition goes outside the SAC.**

4  The Motion argues that Plaintiff lacks standing to bring a section 36(b) claim
5  against Stephens because the SAC nowhere alleges that Stephens is "an investment adviser"
6  to the Wells Fargo Funds, an affiliated person of such an adviser or "any other person
7  enumerated in [section 36(a), 15 U.S.C. § 80a-35(b)]" owing a fiduciary duty to the funds.
8  Motion at 7:16-9:5. The Opposition does not dispute the SAC's failure to make such
9  allegations. *See* Opp. at 10:19-12:4. Instead, Plaintiff makes two new arguments:

10  First, Plaintiff asserts that Stephens is liable as a distributor. This ignores the plain
11  language of section 36(b). Nothing in section 36(b) applies to distributors as such.

12  Second, Plaintiff asserts—for the first time anywhere—that he has standing on the
13  theory that Stephens is an "underwriter" of the Wells Fargo Funds (underwriters being a
14  category enumerated in section 36(a)). *See* Opp. at 11:16-12:4. The trouble is that the SAC
15  alleges no such thing. The SAC states only that Stephens is a distributor and does not
16  mention underwriting. SAC ¶ 26. The Opposition argues that Stephens is an underwriter.
17  *See* Opp. at 11:23-12:4. But as this Court ruled last time, "Plaintiff's statement in the
18  opposition brief is outside the pleadings and therefore cannot make up for the failing of the
19  complaint." Order at 30:18-20.

20  **2.  The Motion is timely.**

21  The Order dismissed this claim. Order at 34:10-11. Defendants therefore can
22  challenge it here, whether on new grounds or old. William W Schwarzer, et al., *supra,*
23  §§ 9:19-20, at 9-5.

24  //
25  //
26  //
27
28

1  **D.     Plaintiff's scienter allegations are insufficient (Count IV).**

2  **1.     The Court can and should consider the issue of scienter.**

3       The previous motion raised scienter.[11]  The Order noted that "[n]ot all defendants may have had such an intent or recklessness" as required to plead scienter, but pointed out that Movants had not made defendant-specific challenges to the scienter allegations.  Order at 15 n.3.  The Motion candidly stated that part II.D (addressing scienter) made new defendant-specific challenges, but noted also that the Order could be read as inviting such argument.  Motion at 10:6-10 (citing Order at 15 n.3).  Both the case law and Judge Schwarzer's treatise give the Court discretion to hear such arguments.  *See* page 2 & n.1 above.  That discretion should be exercised to streamline this case.

       Plaintiff argues that Rules 12(g) and 12(h)(2) bar this argument.  Opp. at 3:7-6:6.  Plaintiff cites a number of cases he says support this proposition.  But almost all of those cases involve waivable defenses (within the meaning of Rule 12(h)(1)) such as personal jurisdiction, improper venue and insufficiency of process.[12]  Plaintiff's other cases cite to Rule 12(h)(1) cases, apparently ignoring the distinction between 12(h)(1) and 12(h)(2).[13]  These cases thus have little, if any, application to this Motion, which raises not a waivable defense under 12(h)(1), but defenses under 12(h)(2) (namely, lack of subject-matter jurisdiction and failure to state a claim) that may be asserted in any pleading.

---

[11] *See* Broker-Dealer Brief at 22:1-23:4; Broker-Dealer Reply at 14:14-15:15.

[12] *See Dee-K Enters., Inc. v. Heveafil SDN. BHD.*, 985 F. Supp. 640, 642-43 (E.D. Va. 1997) (venue); *Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 909-10 (5th Cir. 1993) (venue); *Harris Bank Naperville v. Pachaly*, 902 F. Supp. 156, 157-58 (N.D. Ill. 1995) (personal jurisdiction); *CGHH, LLC v. Cesta Punta Deportes, S.A.*, No. 05-cv-1343-RWS, 2006 U.S. Dist. LEXIS 15015, at *9-10 (N.D. Ga. March 31, 2006) (personal jurisdiction); *Mayfield v. Hayden*, No. 91-3012, 1991 U.S. App. LEXIS 30049, at *5-6 (10th Cir. 1991) (service of process).

[13] Plaintiff cites two cases denying 12(b)(6) motions because the defendant did not raise arguments at the first opportunity.  Each supported its ruling by citing to cases involving *waivable* defenses and each failed to address the cases holding that a subsequent 12(b)(6) motion may be considered.  *See 766347 Ontario Ltd. v. Zurich Capital Markets Inc.*, 274 F. Supp. 2d 926, 930 (N.D. Ill. 2003); *Wafra Leasing Corp. v. Prime Capital Corp.*, 247 F. Supp. 2d 987, 999 (N.D. Ill. 2002).  The better reasoned cases hold that a second 12(b)(6) motion should be considered if not brought for purposes of delay, even if the arguments could have been raised sooner.

1  **2.   Six defendants—H.D. Vest, the distributors, the investment advisers and the parent—are not accused of making any statements, let alone a misstatement.**

To plead scienter, a complaint must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Put another way, scienter cannot exist in the air; it must be linked to *each* act or omission that allegedly creates liability.

The Opposition spills much ink impugning Defendants' motives but does not identify a single statement actually made by H.D. Vest, Stephens, Wells Capital, Wells Distributor, Wells Management or Wells Fargo & Co. to Plaintiff, or any interaction that Plaintiff ever had with any of them. Rather, the Opposition offers the bare conclusion that each of these entities is somehow "responsible for the content in one form or another of the misleading Prospectuses and SAIs at issue here." Opp. at 13:1-3. Such generalities do not satisfy the PSLRA. *Castillo v. Dean Witter Discover & Co.,* No. 97 Civ. 1272(RPP), 1998 WL 342050, *12 (S.D.N.Y. June 25, 1998) (rejecting argument that status as corporate affiliates makes one entity responsible for the acts of another).

The SAC does not accuse these six Defendants of having anything to do with drafting the Prospectuses or SAIs. Rather, the SAC says the Prospectuses and SAIs were "issued by the mutual funds." SAC ¶ 81. These six Defendants are not mutual funds.

A non-speaker can be liable only for "substantial participation or intricate involvement in the preparation of fraudulent statements . . . . " *Howard v. Everex Sys., Inc.* 228 F.3d 1057, 1061 n.5 (9th Cir. 2000) (dictum). The SAC alleges no such thing.[14]

---

[14] While Plaintiff denies it, his argument that these six Defendants should be liable even though they never spoke to, or had any dealings with, Plaintiff reduces to an argument that these six Defendants should be held *secondarily* liable for alleged misstatements made by Wells Investments or Wells Trust—the only two Defendants alleged to have said anything to Plaintiff or had any dealings with Plaintiff. The Supreme Court and the Ninth Circuit have each rejected secondary liability. *Central Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 191 (1994)*; Simpson v. AOL Time*
(continued…)

1  Rather, Plaintiff argues that these six Defendants had some free-floating obligation to
2  police statements made by others.  Thus, he asserts that "as a broker-dealer, H.D. Vest was
3  responsible to make sure that the statements contained in the Prospectuses and SAIs that are
4  provided to investors are truthful."  Opp. at 13:3-4.  Plaintiff does not offer any legal
5  support for this proposition, because none exists, and he does not allege any contact
6  between himself and H.D. Vest, because none occurred.

7       Similarly, the Opposition asserts that "the Investment Adviser Defendants – Wells
8  Management and Wells Capital – were also responsible for statements made in the
9  Prospectuses and SAI that described their role."  Opp. at 13:12-25.  But the SAC does not
10 allege that Wells Management or Wells Capital participated in drafting any Prospectuses or
11 SAIs, and Plaintiff offers no legal authority for his assertion that investment advisers are
12 responsible for fund disclosure, because no such authority exists.[15]

13       The same is true of Wells Fargo & Co., the parent.  The SAC does not allege that
14 the parent participated in drafting any Prospectuses or SAIs.  All the Opposition argues is
15 that the parent was the "ultimate beneficiary" of the alleged scheme.  Opp. at 14:6-17.  That
16 does not begin to allege mental state with the specificity required by the PSLRA.  And it
17 certainly does not tie mental state to any alleged act or omission that touched Plaintiff.

18 **3.      The scienter allegations are insufficient as to the Wells Fargo Funds.**

19       The Opposition fails to demonstrate how any rational investor would be misled
20 about the affiliation between the various Wells Fargo defendants.  Plaintiff cannot allege

---

(…continued)
*Warner, Inc.*, 452 F.3d 1040, 1052-53 (9th Cir. 2006).  Plaintiff concedes that private plaintiffs cannot state a claim for secondary liability.  Opp. at 7 n.5.

[15] The SEC's settlement with MFS (even if considered authority) does not help Plaintiff.  It says that the investment adviser bore responsibility for fund prospectuses because it participated in their preparation and because MFS failed to reveal information about strategic revenue-sharing alliances to the fund.  *See, e.g.,* Reese Decl. Ex. 3, at 6 ("MFS did not effectively communicate to the [fund] Boards the full and complete nature of the Strategic Alliance arrangements to allocate fund brokerage commissions.…  As a fiduciary, MFS had a duty effectively to disclose to the MFS Boards any potential conflict of interest created by the use of fund brokerage commissions to satisfy Strategic Alliances.")  The SAC contains no such detailed allegations. It does not allege that Wells Management or Wells Capital hid anything from Wells Trust.

1   that these parties intended to conceal their affiliations – they used common trademarks and
2   trade names, and their common financial purpose was fully disclosed in Prospectuses, in
3   SAIs and in the parent's financial statements.  Motion at 11:20-14:21.  Nothing alleged in
4   the SAC creates a strong inference that the Wells Fargo defendants intended to mislead
5   investors about the fact that they, as affiliates, would share revenues with each other and
6   with their common parent.[16]
7         Plaintiff's arguments based on the Glass-Steagall Act are inapposite.  Opp. at 16:7-
8   17.  The public knew that Wells Fargo & Co. is a "diversified financial services company . .
9   . registered . . . under the Bank Holding Act of 1956, as amended . . . ."[17]  Glass-Steagall—
10  the depression-era wall between commercial banking and investment banking—is history.
11  It is common knowledge that modern financial institutions may own non-bank affiliates.
12  And in case some Rip Van Winkle missed that development, Wells Fargo & Co. routinely
13  disclosed its subsidiaries, including the Wells Fargo Funds, in its public disclosures.[18]
14        The idea that affiliates of a common parent help each other, and share revenue and
15  expenses, is common knowledge.  *Castillo,* 1998 WL 342050, at *9 ("Plaintiffs should have
16  been aware that sale of a Dean Witter fund, as opposed to an outside fund, would mean
17  greater compensation for the Dean Witter companies.").  Whatever might be said about
18  revenue-sharing between third parties, Count IV should be dismissed insofar as it pertains
19  to representations about the Wells Fargo Funds.

---

[16] *SEC v. Hasho*, 784 F. Supp. 1059, 1061 (S.D.N.Y. 1992) bears no resemblance to this case.  There, the Securities and Exchange Commission brought an action against *individual* registered representatives who were each accused of specific wrongdoing with particular customers.  Plaintiff's allegations here lack that specificity and make no mention of any individual registered representatives that dealt directly with Plaintiff.  Instead, the SAC make unattributed assertions regarding anonymous individuals.  SAC ¶¶ 41, 43, 49.  The anonymous representatives described in the SAC are only alleged to have worked for one Defendant—Wells Investments.  Their purported misconduct says nothing about the state of mind of the remaining Defendants.

[17] *See* Request for Judicial Notice in Support of Defendants' Motion to Dismiss Plaintiff's Second Consolidated Class Action Complaint (Dkt. 121) ("RFJN2"), Ex. 6, at RFJN2 127.

[18] *See, e.g.* RFJN2 Ex. 1, at RFJN2 16-26; Ex. 2, at RFJN2 38-48; Ex. 3, at RFJN 61-71; Ex. 4, at RFJN2 83-95; Ex. 5, at RFJN2 109-122; Ex. 6, at RFJN2 137-49.

### III. CONCLUSION.

For the foregoing reasons, the claims listed in Appendix A should be dismissed without leave to amend.

Dated: October 5, 2006.

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON
CLIFFORD C. HYATT
DAVID L. STANTON
JACOB R. SORENSEN
RYAN TAKEMOTO
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880

By  /s/ Bruce A. Ericson
    Bruce A. Ericson
Attorneys for Defendants

**Appendix A: Chart of Claims and Defendants**
(Cross-Referenced to Portions of the Argument)

| Category of Defendant | Defendant | Second Amended Complaint: Counts and Claims ||||||
|---|---|---|---|---|---|---|---|
| | | I: 12(a)(2) | II: 12(a)(2) | III: 15 | IV: 10b-5 | V: 20(a) | VI: 36(b) |
| Registrant | Wells Trust | | X[19] | | II.D.3[20] | | |
| Broker-Dealers | Wells Investments | X | | | II.D.3 | | |
| | H.D. Vest | II.A | | | II.A, II.D.2, II.D.3 | | |
| Advisers | Wells Management | | | | II.D.2, II.D.3 | | II.B |
| | Wells Capital | | | | II.D.2, II.D.3 | | II.B |
| Distributors | Wells Distributor | | X | | II.D.2, II.D.3 | | II.B |
| | Stephens | | X | | II.D.2, II.D.3 | | II.B, II.C |
| Parent | Wells Fargo & Co. | | | X | II.D.2, II.D.3 | X | |

---

[19]   "x" means that this defendant is named in this Count, but this motion does not seek to dismiss this Count as to this defendant.

[20]   "II.D.3" (etc.) means that part II.D.3 (etc.) of the argument seeks to dismiss this Count as to this defendant. Note that the argument in part II.D.3 applies only to Count IV's allegations about the proprietary Wells Fargo Funds and not to Count IV's allegations about the third-party Shelf-Space Funds.