United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RONALD SIEMERS, individually and on
behalf of all others similarly situated,

        Plaintiff,

  v.

WELLS FARGO & CO.; WELLS FARGO
FUNDS MANAGEMENT, LLC; WELLS
CAPITAL MANAGEMENT, INC.; H.D.
VEST INVESTMENT SERVICES; WELLS
FARGO INVESTMENTS, LLC; STEPHENS,
INC.; and WELLS FARGO FUNDS TRUST,

        Defendants.

_____/

No. C 05-04518 WHA

**ORDER GRANTING IN PART
AND DENYING IN PART
MOTION TO DISMISS**

## INTRODUCTION

This action alleges securities fraud and excessive investment-adviser fees. By prior order dated August 14, 2006, defendants' motions to dismiss the first consolidated amended complaint were granted in part and denied in part. Plaintiff was granted leave to amend the complaint, and did so. Defendants now move to dismiss the second amended consolidated complaint. For the following reasons, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

## STATEMENT

The class-action complaint at issue here alleges a pattern of conflicts of interest and excessive fees in the mutual-funds business of several Wells Fargo companies. Defendants allegedly engaged in an undisclosed scheme to pay secret compensation to broker-dealers for

steering their customers toward certain mutual funds (without regard to the merits of the investment advice). Defendants say the trust's investment advisers and fund distributors merely bought "shelf-space" for their products in retail brokerages, much as a cereal manufacturer pays a grocery chain for placement of corn flakes at shoppers' eye level. In plaintiffs' view, they paid kickbacks. The broker-dealers allegedly did not adequately disclose this conflict of interest to investors, instead holding themselves out as providing unbiased investment advice to consumers. In return for steering investors toward particular funds, the broker-dealers received secret compensation from the funds' investment advisers. The investment advisers paid them in the form of direct payments, a practice called "revenue sharing," and/or guaranteed business in executing the mutual funds' securities trading, a practice called "directed brokerage." The broker-dealer companies allegedly pushed their brokers to sell particular funds by offering them higher bonuses and other benefits.

This grew the total assets of Wells Fargo mutual funds. As the funds grew, so did the percentage cut of the investment advisers and the distributors. To finance the secret payments to the broker-dealers, the investment advisers and distributors charged excessive adviser fees, breaching their own fiduciary duties to the funds.

Plaintiff thus alleges that he was harmed in two ways: (i) he received biased advice from broker-dealers when he thought he was getting impartial recommendations, and (ii) the fund assets were dissipated by paying excessive fees to the investment advisers and distributors.

*          *          *

Wells Fargo & Co. was a diversified financial-services company and the corporate parent of the other Wells Fargo companies. Wells Fargo Funds Trust controlled the Wells Fargo complex of mutual funds. Two companies, Wells Fargo Funds Management, LLC, and Wells Capital Management, Inc., managed the trust's mutual funds. Wells Fargo Funds Management, LLC, implemented the trust's investment policies and supervised Wells Capital Management, Inc., which handled day-to-day management, including placing orders for the purchase and sale of securities. Two companies were distributors for the funds: Wells Fargo Funds Distributor, LLC, and Stephens, Inc. These entities performed marketing and other

2

services for Wells Fargo Funds Trust.  Two defendants were broker-dealers for shares in the mutual funds: Wells Fargo Investments, LLC and H.D. Vest Investment Services, LLC (Second Amended Consolidated Complaint ("Second Am. Compl.") ¶¶ 16–28).

The court-appointed lead plaintiff, a resident of Minnesota, bought and sold shares of funds that participated in the Wells Fargo shelf-space program.  Plaintiff continues to hold some of those shares.  He claims that he lost money in these transactions (Second Am. Compl. ¶ 15, Exh. B).  Plaintiff certified that these securities were held in or acquired through his Individual Retirement Account (IRA) and general account (Reese Decl., Feb. 16, 2006, Exh. C).

To summarize the allegations, the investor bought shares of a mutual fund.  Wells Fargo Funds Trust then took some of this investment, charging it as a fee or expense to the investor, and paid it to Wells Fargo Funds Management, LLC, Wells Capital Management, Inc., Wells Fargo Funds Distributor, LLC, and/or Stephens, Inc.  One or more of those companies already had reached an undisclosed agreement with Wells Fargo Investments, LLC and/or H.D. Vest Investment Services, LLC.  In that agreement, the broker-dealer promised to promote the fund either directly or by making it easier for sales agents to market or process purchases of the preferred funds.  In return, the investment adviser and/or distributor guaranteed one of two things.  The first was to trade the fund's portfolio through the broker-dealer, thus guaranteeing it a steady flow of commissions, sometimes at higher rates than the broker-dealer otherwise could earn.  The second type of promise was to pay one or more lump sums to the broker-dealer.  The August 14 order explained that the complaint satisfactorily alleged, among other things, that for purposes of Section 36(b) of the Investment Company Act of 1940, "that the investment advisers and distributors were passing to the funds the cost of self-serving kickbacks, that they did not provide adequate services because they failed to achieve even average returns on investments, that they failed to pass on economies of scale and that they charged more than investment advisers to similar funds" (Aug. 14 Order at 30).

Furthermore, the August 14 order also held that the complaint alleged violations of Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. 77l(a)(2), and SEC Rule 10b-5, 17 C.F.R. 240.10b-5.  When prospectuses for the funds were issued stating that the investment

adviser "may" consider sales of fund shares in deciding how to award future trading business when, in fact, the investment adviser had already entered into kickback arrangements. As the August 14 order held, failing to disclose the scheme was material to investors. If the payments were enough to drive sales, disclosure of them would have been material to an investor considering a broker's advice to buy those shares (Aug. 14 Order at 9–10).

*          *          *

On May 2, 2006, defendants moved to dismiss the first consolidated amended complaint. By order dated August 14, 2006, this Court denied, in large part, defendants' motions to dismiss the complaint. *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 2355411, at *1 (N.D. Cal. Aug. 14, 2006). The order held that plaintiff had stated claims in Counts I through IV, which alleged violations of Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. 77l(a)(2); Section 15 of the 1933 Act, 15 U.S.C. 77o; Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b); Securities Exchange Commission Rule 10b-5, 17 C.F.R. 240.10b-5; and Section 20(a) of the 1934 Act, 15 U.S.C. 78t. The motions to dismiss were denied as to those counts (Aug. 14 Order 8–22). The August 14 order granted the initial motions to dismiss with respect to Count VI, which alleged violation of Section 36(b) of the Investment Company Act of 1940, and Count VII, which alleged violation of Section 48(a) of the Investment Company Act of 1940. This order does not disturb the August 14 order, which allowed a substantial part of this case to move forward.

Plaintiff was granted leave to amend the complaint and filed a second amended consolidated complaint on August 31, 2006. It differed from the first complaint insofar as it (1) shortened the class period to conform with the August 14 order's holding with respect to the statute of limitations; (2) added language to make clear that plaintiff held shares of the Wells Fargo Funds as of the filing of this action, and continues to hold shares, thereby purporting to establish standing to bring a claim under Section 36(b); and (3) eliminated Count VII of the first amended complaint (Second. Am. Compl. ¶¶ 1, 15, 169; Aug. 14 Order at 19).

Defendants now move to dismiss various counts of the second amended complaint. Specifically:

4

United States District Court

For the Northern District of California

•    Broker-dealer H.D. Vest moves to dismiss Counts I and IV for lack of Article III standing.  Count I alleges that the broker-dealers violated Section 12(a)(2) of the Securities Exchange Act of 1933, 15 U.S.C. 77l(a)(2).  In Count IV, plaintiff accuses all defendants of engaging in a scheme to deceive the investing public, in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. 240.10b-5.

•    Defendants move to dismiss Count VI on the grounds that plaintiff may not sue on behalf of Wells Fargo Funds he does not own.  In Count VI, plaintiff accuses the investment advisers and distributors of breaching fiduciary duties to the Wells Fargo Funds Trust by charging excessive fees and expenses, in violation of Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. 80a-35(b).

•    Distributor Stephens moves to dismiss Count VI on the grounds that there are insufficient facts establishing that Stephens could be liable under Section 36(b) of the Investment Company Act of 1940.

•    Six defendants — H.D. Vest, Stephens, Wells Fargo Funds Distributor, Wells Fargo Funds Management, Wells Capital Management, and Wells Fargo & Co. — move to dismiss Count IV as it pertains to them, on the grounds that plaintiff did not adequately allege scienter as to each of them.  All defendants move to dismiss Count IV to the extent that it makes allegations about the sale and marketing of the proprietary Wells Fargo Funds.

**ANALYSIS**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).  However, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

5

In complaints that do not allege fraud, plaintiffs need only make "a short and plain statement of the claim," thus giving the defendant fair notice of the claim and of the grounds upon which it rests. *Conley*, 355 U.S. at 47 (quoting Fed. R. Civ. P. 8(a)(2)). Allegations of fraud, however, must meet the heightened pleading standards of Rule\ 9(b). These require allegations of particular facts going to the circumstances of the fraud, including time, place, persons, statements made, and an explanation of how or why such statements are false or misleading. *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–48 & n.7 (9th Cir. 1994) (*en banc*).

In addition, the Private Securities Litigation Reform Act of 1995 requires class-action plaintiffs alleging violations of the 1934 Act to specify each misleading statement, to explain why the statement was misleading and, if an allegation is made on information and belief, to list all facts upon which that belief is formed. 15 U.S.C. 78u-4(b)(1). The complaint must also state with particularity facts giving rise to a "strong inference" that the defendant knowingly or with deliberate recklessness made false statements or omitted a material fact. 15 U.S.C. 78u-4(b)(2); *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999).

These PSLRA requirements are in "inevitable tension [with] . . . the customary latitude granted the plaintiff on a motion to dismiss . . . ." *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). In considering whether to dismiss a securities-fraud claim, a court is not required to draw all reasonable inferences in the plaintiff's favor, as it is for most Rule 12(b)(6) motions. *See Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987) (stating Rule 12(b)(6) standard). A court instead must consider all reasonable inferences, whether unfavorable or favorable to the plaintiffs. *Gompper*, 298 F.3d at 896. Furthermore, a court is not required "to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

**1.      TIMELINESS OF DEFENSES IN DEFENDANTS' MOTION.**

As a threshold issue, plaintiff contends that defendants' latest motion to dismiss fails to address any new issues of fact or law, and should be denied pursuant to Federal Rule of Civil Procedure 12(g).  Rule 12(g) states:

> If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

Rule 12(h)(2), in turn, states:

> A defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 19, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a) [governing answers and counterclaims], or by motion for judgment on the pleadings, or at the trial on the merits.

The Ninth Circuit has recognized that Rule 12, "and specifically subdivisions (g) and (h), promote the early and simultaneous presentation and determination of preliminary defenses." *Chilicky v. Schweiker*, 796 F.2d 1131, 1136 (9th Cir. 1986), *rev'd on other grounds*, 487 U.S. 412 (1988).

This order recognizes that several of defendants' arguments should have been brought in defendants' first motions to dismiss.  Specifically, defendants' standing allegation with respect to H.D. Vest, the scienter arguments specific to Count IV, and the contention regarding Stephens' liability under Count VI all could have been brought in defendants' first motions. For the following reasons, however, this order nonetheless adjudicates those arguments.  *First*, defendants move to dismiss claims against H.D. Vest for lack of Article III standing.  Standing "is perhaps the most important" of the jurisdictional doctrines and "is not subject to waiver." *United States v. Hays*, 515 U.S. 737, 742 (1995).  *Second*, this order recognizes that the August 14 order plausibly could have been read to invite defendants to make further scienter arguments. The order stated: "Movants, however, do not make defendant-specific challenges to the scienter allegations.  The Court declines to do so for them" (Aug. 14 Order at 15).  This order now addresses the defendant-specific challenges.  *Third*, defendants have no legitimate excuse for

*United States District Court*
For the Northern District of California

not raising the argument as to Stephens' liability under Count VI.  This order finds, however, that because it is easily denied, the Court will exercise its discretion to adjudicate this argument.

This order cautions defendants against making arguments in the future that should have been brought in the instant motion or the earlier motions to dismiss.  As one court stated, "it is a waste of judicial resources to consider motion after motion in which defendants raise the same defense over and over, each time testing a new argument.  Allowing such a tactic means that defendants potentially could stall litigation indefinitely as long as they can conjure up a new argument on which to base a failure to state a claim defense." *Sprint Telephony PCS, L.P. v. County of San Diego*, 311 F. Supp. 2d 898, 905 (S.D. Cal. 2004).

### 2.    STANDING TO SUE H.D. VEST — COUNTS I AND IV.

Broker-dealer H.D. Vest is named as a defendant in Counts I and IV, and contends that plaintiff lacks Article III standing to sue it.  To establish Article III standing, a plaintiff must demonstrate: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servcs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).  Accordingly, if a plaintiff cannot trace an injury to a defendant, the plaintiff lacks standing with regard to that defendant.  Here, nothing in the second amended complaint suggests that plaintiff opened or held an account with H.D. Vest, that he spoke with any financial consultants who worked for H.D. Vest, or that he relied on anything that H.D. Vest said.  The complaint simply does not allege any basis for which plaintiff has standing to sue H.D. Vest.  *O'Shea v. Littleton*, 414 U.S. 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member

**United States District Court**
For the Northern District of California

8

of the class."). Plaintiff's opposition notably does not dispute this deficiency of the second amended complaint.[1]

Plaintiff contends that the standing deficiency in the second amended complaint should not preclude suit against H.D. Vest for several reasons. *First*, plaintiff contends that this Court did not intend to consider the issue of standing at the pleading stage. Specifically, plaintiff refers to a statement by the Court at a hearing on February 9, 2006: "I know there's a potential complication in this case that maybe the defense is going to raise an argument that [plaintiff] can't represent everyone, and if that happens, then we may have to appoint a second or third or fourth lead plaintiff. I don't know how that will play out, assuming that argument has any merit" (Reese Exh. 1 at 7). Plaintiff contends that deferring ruling on the standing issue is preferable because standing is "so intertwined with issues pertinent to class certification that, under *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), decision on those issues must be deferred until class certification" (Opp. 6).

Not so. Standing "is a jurisdictional element that must be satisfied prior to class certification." *Lee v. State of Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997). Plaintiff cites *Ortiz* for the proposition that class certification may be considered before a court rules on the issue of Article III standing. In the *Ortiz* decision, "class certification issues [were] . . . 'logically antecedent' to Article III concerns, . . . and themselves pertain[ed] to statutory standing, which may properly be treated before Article III standing." 527 U.S. at 831. *Ortiz*, however, has been narrowly construed by the Ninth Circuit only to apply "in the very specific situation of a mandatory global settlement class." *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004). Thus, according to the Ninth Circuit, *Ortiz* "does not require courts to consider class certification before standing." Plaintiff may not acquire standing "through the back door of a

---

[1] Count I alleges that the broker-dealer defendants violated Section 12(a)(2) of the Securities Act of 1933. Section 12(a)(2) only imposes liability against a defendant that "offers or sells a security . . . to the person purchasing such security from him." 15 U.S.C. 77l(a)(2). Count IV alleges that H.D. Vest violated Section 10(b) of the Exchange Act of 1934 and SEC Rule 10b-5. Section 10(b) imposes liability only against persons who make false or misleading statements "in connection with the purchase or sale of any security." 15 U.S.C. 78j(b). The second amended complaint does not allege that H.D. Vest ever offered or sold a security to plaintiff. Nor does the second amended complaint allege that H.D. Vest ever made a false or misleading statement to plaintiff in connection with the purchase or sale of a security.

1  class action." *Allee v. Medrano*, 416 U.S. 802, 828–29 (1974) (Burger, C.J., concurring in part

2  and dissenting in part).

3        *Second*, plaintiff contends that the juridical-link doctrine provides him with a ground to

4  pursue claims on behalf of investors against all defendants, including H.D. Vest.  The Seventh

5  Circuit has explained the doctrine:

> The juridical link doctrine arose out of the Ninth Circuit's decision
> in *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir.
> 1973).  *La Mar* held that a plaintiff without a cause of action against
> a specific defendant cannot "'fairly and adequately' protect the
> interests of those who do have such causes of action," for purposes
> of Rule 23(a).  Nevertheless, . . . the court went on to hold that if
> the plaintiffs as a group — named and unnamed — have suffered an
> identical injury at the hands of several parties related by way of a
> conspiracy or concerted scheme, or otherwise "juridically related in
> a manner that suggests a single resolution of the dispute would be
> expeditious," the claim could go forward.

12  *Payton v. County of Kane*, 308 F.3d 673, 678–79 (7th Cir. 2002) (internal citations omitted).

13  Defendants correctly note, however, that the juridical-link doctrine has been held not to apply to

14  standing questions at the pleading stage.  The "doctrine, developed in the context of class

15  certification analysis under [Rule] 23, should properly remain in the analysis of adequacy and

16  typicality of plaintiffs for which it was originally conceived."  *Forsythe v. Sun Life Fin., Inc.*,

17  417 F. Supp. 2d 100, 119 n.19 (D. Mass. 2006); *see also Henry v. Circus Circus Casinos, Inc.*,

18  223 F.R.D. 541, 544 (D. Nev. 2004) (stating that a "doctrine developed under Rule 23 based on

19  judicial efficiency and expedience does not play a role in an Article III standing analysis").

20  This order finds that at the pleading stage, the juridical-link doctrine is unavailable to plaintiff.

21  The cases cited by plaintiff, *Luyando v. Bowen*, 124 F.R.D. 52, 57-58 (S.D.N.Y. 1989), and

22  *Heffler v. United States Fid. & Guar. Ins. Co.*, C 90-7126, 1992 WL 50095, at *4 (E.D. Pa.

23  Mar. 10, 1992), properly applied the doctrine in the class-certification context, not at the

24  pleading stage.

25        Plaintiff has not alleged any injury "traceable to the challenged action of" H.D. Vest.

26  Specifically, the second amended complaint does not allege that H.D. Vest made a

27  misrepresentation to plaintiff, that plaintiff bought or sold a mutual fund in reliance on that

28  misrepresentation, or that plaintiff suffered a cognizable harm as a result of H.D. Vest's actions.

Accordingly, this order finds that the motion to dismiss as to defendant H.D. Vest must be granted. This deficiency as to Counts I and IV may possibly be repaired by the addition of another named plaintiff who dealt with H.D. Vest. This order addresses below how plaintiff may proceed in amending the complaint.

### 3. STANDING TO SUE ON BEHALF OF WELLS FARGO FUNDS PLAINTIFF DOES NOT OWN — COUNT VI.

Count VI accuses the investment advisers and distributors of breaching fiduciary duties to the Wells Fargo Funds Trust by charging excessive fees and expenses, in violation of Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. 80a-35(b). This count is brought by the holders of Wells Fargo Funds "for the benefit of the Wells Fargo Funds against the Distributor Defendants and Investment Adviser Defendants" (Second Am. Compl. ¶ 212). The August 14 order held that, although plaintiff alleged "a variety of detailed facts that support the Section 36(b) claim," he "failed to allege that he owned any of the relevant securities on the day the suit began." Accordingly, the order found that he failed to demonstrate standing to pursue the Section 36(b) claim but permitted plaintiff to amend the complaint to allege standing (Aug. 14 Order at 30–31).

Plaintiff's second amended complaint alleges that he "held the shares of the Wells Fargo Funds as reflected in attachment B at the time this action was originally filed and has continued, and continues, to hold these shares of the Wells Fargo Funds" (Second Am. Compl. ¶ 15). Attachment B to the second amended complaint indicates that plaintiff owns three Wells Fargo mutual funds (Second Am. Compl. Exh. B). Defendants contend that the three funds that plaintiff owns are the only funds that Count VI may properly encompass. Thus, according to defendants, plaintiff does not have standing to sue the other eighty-seven Wells Fargo funds that he never owned (Br. 5; Reply Br. 6).

Section 36(b) provides that a private action may only be brought "by a security holder of such registered investment company on behalf of such company." 15 U.S.C. 80a-35(b). Here, the Wells Fargo Funds Trust is the registrant of all the Wells Fargo Funds, which are organized as several series (Second Am. Compl. ¶ 28). The SEC has "taken the position on several occasions that each series of a series investment company is or should be treated as a separate

11

United States District Court

For the Northern District of California

1   issuer under other sections of and rules under the 1940 Act." *In re Washington Capital Joint*

2   *Master Trust*, SEC No-Action Letter, 2006 WL 2771188, at *3 n.9 (Sept. 25, 2006); *see also In*

3   *re Principal Investors Fund Inc.*, S.E.C. No - Action Letter, 2005 WL 1160193, at *3 (May 13,

4   2005).  Other district courts that have considered this question have held that because the funds

5   are individually registered, under Section 36(b), plaintiff has no Article III standing to sue those

6   funds he did not personally own.  *In re Salomon Smith Barney Mut. Funds Fees Litig.*, 441 F.

7   Supp. 2d 579, 604–08 (S.D.N.Y. 2006); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,

8   No. 04 Civ. 4885 (SWK), 2005 WL 2677753, at *9–10 (S.D.N.Y. Oct. 19, 2005); *In re Eaton*

9   *Vance Corp. Secs. Litig.*, 220 F.R.D. 162, 164–71 (D. Mass. 2004).  According to those courts,

10   "because the named Plaintiffs have not purchased shares in the . . . Funds at issue, they cannot

11   establish injuries caused by the advisers of those Funds. . . . Without the requisite demonstration

12   of an injury, none of the named Plaintiffs may seek relief on behalf of himself or any other

13   member of the class." *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2005 WL

14   2677753, at *10 (internal citations and quotations omitted).  This order follows the weight of

15   authority from other district courts and from the SEC.  Plaintiff cannot sue on behalf of funds he

16   does not own.[2]

17       Defendants' motion to dismiss Count VI for lack of standing as to the Wells Fargo

18   Funds plaintiff does not own is granted.  This pleading deficiency might be cured by the

19   addition of other named plaintiffs who owned funds other than those owned by plaintiff.  This

20   order addresses below how plaintiff may proceed in amending the complaint.

21       **4.    STEPHENS' LIABILITY UNDER SECTION 36(B) — COUNT VI.**

22       Defendants also move to dismiss defendant Stephens from Count VI of the second

23   amended complaint.  Defendants contend that the complaint does not allege sufficient facts to

24   _____

25      [2]  This order declines to apply the limited exception recognized in *Batra v. Investors Research Corp.*,
No. 89-0528-CV-W-6, 1992 WL 278688, *2–3 (W.D. Mo. 1991).  In *Batra*, the court held that the plaintiffs had

26   standing to sue the directors of funds in which they did not own shares.  *Batra* has been explained to apply to
cases in which "management fees were assessed at the investment company level, rather than at the portfolio

27   level." *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2005 WL 2677753, at *10.  It is conceded that
the second amended complaint alleges that at least some agreements were entered on behalf of all funds rather

28   than individual funds (Second Am. Compl. ¶ 163).  After considering the weight of recent authority and relevant
SEC rulings, however, this order respectfully disagrees with the *Batra* decision.

United States District Court

For the Northern District of California

1    establish that Stephens is liable under Section 36(b) of the Investment Company Act of 1940,

2    15 U.S.C. 80a-35(b).  Under Section 36(b), an action may only be brought "by a security holder

3    of such registered investment company on behalf of such company, against such investment

4    adviser, or any affiliated person of such investment adviser, or any other person enumerated in

5    subsection (a) of this section."  Subsection (a) of Section 36, in turn, permits suit against an

6    "officer, director, member of any advisory board, investment adviser, or depositor" of the

7    registered investment company, or the "principal underwriter, if such registered company is an

8    open-end company, unit investment trust, or face-amount certificate company."

9            Defendants contend that the second amended complaint does not allege that Stephens is:

10   (1) an affiliate of any of the Wells Fargo-related defendants; (2) an "investment adviser"; or

11   (3) an officer, director, advisory board member, or underwriter of any of the Wells Fargo Funds.

12   Defendants are correct insofar as the second amended complaint *itself* does not allege that

13   Stephens was anything other than a "distributor," even though Stephens was deeply involved in

14   the scheme.  Plaintiff contends, however, and this order agrees, that Stephens was an

15   underwriter and thus may be liable under Section 36(b).

16           Plaintiff relies on the prospectus dated April 11, 2005, which describes several Wells

17   Fargo Advantage Variable Trust Funds, including one of the funds owned by plaintiff — the

18   Wells Fargo Advantage Small Cap Growth Fund.  The prospectus explains that before April 11,

19   2005, "Stephens served as the principal underwriter distributing securities of the . . . Small Cap

20   Growth . . . Fund[] on a continuous basis" (Reese Exh. A at 45).  This order finds that the

21   prospectus satisfactorily alleges that Stephens is a "principal underwriter," an entity who may

22   be sued under Section 36(b).  Although the information in the prospectus was not attached to

23   the second amended complaint, it is appropriate for consideration under the "incorporation by

24   reference" doctrine, which permits consideration of documents "whose contents are alleged in a

25   complaint and whose authenticity no party questions, but which are not physically attached to

26   the plaintiff's pleading."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  Here, the

27   prospectuses are central to the complaint, which alleges that the prospectus is misleading as to

28   the existence of the payback scheme.  Moreover, defendant does not contest the authenticity of

the prospectus.  This order finds that the second amended complaint has properly alleged that Stephens is a proper defendant under Count VI as a "principal underwriter" of a fund owned by plaintiff.

### 5.   ACTS AND SCIENTER — COUNT IV.

The foregoing Parts Three and Four dealt with the Section 36(b) claims.  Now, we turn to the Section 10(b) claim.  Count IV alleges, as to all defendants, violations of Section 10(b) of the 1934 Act, 15 U.S.C. 78j(b), and Rule 10b-5, 17 C.F.R. 240.10b-5.  When damages are sought, as here, the complaint "shall, with respect to each . . . omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. 78u-4(b)(2).  According to the Ninth Circuit, to sustain an action under Section 10(b) and Rule 10b-5, the plaintiff must "plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999).  "When determining whether plaintiffs have shown a strong inference of scienter, the court must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs."  *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).

### A.   ACTS AND SCIENTER ALLEGED AS TO NON-BROKER-DEALER AND NON-REGISTRANT DEFENDANTS.

In their first round of motions to dismiss, all defendants moved to dismiss Count IV. They contended, among other things, that the complaint did not adequately allege scienter.  The August 14 order found that the allegations in the first consolidated complaint satisfied the Ninth Circuit's heightened pleading standard.  The order found, in relevant part:

> Defendants obviously knew of the actual compensation arrangements.  The NASD findings against H.D. Vest and Wells Fargo Investments (incorporated into the complaint) delineated specific programs designed to promote sales of certain funds' shares and Wells Fargo Investments' system of ranking preferred funds.  The fact that defendants had the incentive programs in place indicates that they believed these programs would drive sales.  In light of this conscious strategy, the failure to disclose the full extent of the payback programs raises a strong inference of scienter. Buttressing this conclusion is plaintiff's allegation that the directors of the Wells Fargo Funds Trust knew about the already-in-place arrangements but left in place watered-down disclosures

United States District Court

For the Northern District of California

1   (Aug. 14 Order at 14–15).  The order noted in a footnote, however: "[n]ot all defendants may

2   have had such intent or recklessness.  Movants, however, do not make defendant-specific

3   challenges to the scienter allegations.  The Court declines to do so for them" (*ibid.*).  The

4   relevant portions of the complaint relied on by that order have not changed after the

5   amendments to the complaint (Second Am. Compl ¶¶ 34, 39–55, 164).  Defendants' motion

6   now claims to raise scienter arguments as to specific corporate defendants.  In addition to the

7   scienter argument, however, defendants' motion actually raises the issue of whether all of the

8   defendants may be held liable for the misstatements of only a subset of defendants.

9        The second amended complaint asserts that defendants violated Section 10(b) and Rule

10   10b-5 when they failed to disclose to the public the payback arrangement in the prospectuses.

11   The August 14 order held that the scheme should have been disclosed to the public, and that

12   such information was material to investors (Aug. 14 Order at 9–14).  As the complaint is

13   currently constructed, however, it seems clear that only Wells Fargo Funds Trust and the

14   broker-dealer defendants were the entities that actually failed to disclose the scheme.  They

15   were the only "speakers."  Accordingly, defendants concede that scienter was properly alleged

16   against Wells Fargo Investments, as a broker-dealer that did business with plaintiff, and Wells

17   Fargo Funds Trust, as the issuer of prospectuses and statements of additional information

18   ("SAI") for Wells Fargo Funds that plaintiff bought and sold (Br. 11).[3]

19        Defendants contend, however, that because the remaining five defendants— Stephens,

20   Wells Fargo Funds Distributor, Wells Fargo Funds Management, Wells Capital Management,

21   and Wells Fargo & Co. — are not alleged in the second amended complaint to have been

22   "speakers," the allegations against those defendants cannot give rise to a strong inference of

23   scienter.  According to defendants, "[t]here simply is no act or omission to which an accusation

24   of a wrongful mental state can attach" (Br. 10–11).  Defendants' argument is somewhat more

---

26   [3]  Defendants raise a scienter argument with respect to H.D. Vest.  But that assertion is based entirely
     on plaintiff's lack of standing to sue H.D. Vest, discussed above.  The second amended complaint alleges facts
27   supporting the conclusion that H.D. Vest, as a broker-dealer, made statements that misled the public about the
     existence of the scheme (Second Am. Compl ¶ 90).  As above, the pleading deficiency with respect to H.D. Vest
     might be cured with the addition of another named plaintiff.  The remainder of this Part discusses the allegations
28   as to the five other defendants, Stephens, Wells Fargo Funds Distributor, Wells Fargo Funds Management,
     Wells Capital Management, and Wells Fargo & Co.

15

than a challenge to the second amended complaint's allegation of scienter. Defendants'

assertion essentially questions the extent to which the five other defendants, who themselves

made no representation to the public, may be liable for acts of the broker-dealer defendants and

Wells Fargo Funds Trust. The Ninth Circuit has held that "substantial participation or intricate

involvement in the preparation of fraudulent statements is grounds for primary liability even

though that participation might not lead to the actor's actual making of the statements."

*Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 n.5 (9th Cir. 2000) (citing *In re Software

Toolworks Inc. Sec. Litig.*, 50 F.3d 615, 628–29 & n. 3 (9th Cir. 1994)). "There is a significant

difference . . . between mere participation in a scheme to misrepresent and those directly

attesting to the truth of a statement by *making* (in the ordinary sense) that very statement." *Id.*

at 1031.

While it may be true that the five defendants here knew about the misstatements, "[i]t

takes more than mere knowledge . . . to amount to an actionable omission. Rule 10b-5 is

violated by nondisclosure only when there is a duty to disclose." *Paracor Fin., Inc. v. Gen.

Elec. Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996). The August 14 order found, without

distinguishing between defendants, that defendants "had a duty to state all facts that were

necessary to make their affirmative statements not misleading. The representation left the

impression that the payback arrangement might (or might not) materialize when it was, in

reality already a done deal. This was misleading" (Aug. 14 Order at 9). The order did not

discuss, however, whether specific corporate defendants had been involved in making the

misrepresentations.

The issue, then, is the extent to which the defendants may be liable as non-speakers.

The Ninth Circuit has held that "to be liable as a primary violator of [Section] 10(b) for

participation in a 'scheme to defraud,' the defendant must have engaged in conduct that had the

principal purpose and effect of creating a false appearance of fact in furtherance of the scheme."

*Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006). In *Howard*, the Ninth

Circuit held that an officer who signs an SEC filing makes a statement under Section 10(b),

even if the officer did not participate in the drafting of the document. *See id.* at 1061. As to the

five defendants at issue here, the second amended complaint contains no allegations that any of them signed or approved the prospectuses and SAIs that misled the public. Plaintiff is correct that the second amended complaint alleges that the prospectuses and SAIs were misleading "in that they failed to disclose that the Investment Advisor Defendants were making kickback payments from assets of mutual fund investors" (Opp. 13). But misleading statements *about* a company's role in a scheme is not the same as that company itself misleading investors. *Simpson*, 452 F.3d at 1048 ("It is not enough that a *transaction* in which a defendant was involved had a deceptive purpose and effect; the defendant's *own conduct* contributing to the transaction or overall scheme must have had a deceptive purpose and effect."). Here, the complaint alleges that the distributors and investment advisers made the kickback payments, and that those payments were not disclosed to the investing public. Nothing in the complaint, however, establishes that the investment advisors, the distributors, or Wells Fargo & Co. engaged in "substantial participation or intricate involvement in the preparation of" the misleading statements in the prospectuses and SAIs. *Howard*, 228 F.3d at 1061 n.5. As non-speaking actors, those defendants are not liable under Section 10(b).

As to the issue of scienter, this order finds that the second amended complaint falls short of alleging, in "great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct" on behalf of the five non-broker-dealer and non-registrant defendants. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d at 974. Plaintiff's only basis for alleging scienter against Wells Fargo Funds Management, Wells Capital Management, Wells Fargo Funds Distributor, and Stephens is that they had reached agreements with the broker-dealers — H.D. Vest and/or Wells Fargo Investments — to promote their funds directly. The complaint also alleges that Wells Fargo & Co., as the parent of many of the other defendants, was the "ultimate beneficiary of the secret plan and scheme to endorse the Shelf Space to the detriment of the Funds and their investors," and thus that "it too was liable for the acts and omissions at issue" (Second Am. Compl ¶ 16; Opp. 14). General allegations of tangential relationships to the actual misstatements made to the public are insufficient to support a strong inference of scienter. There is nothing to suggest that the five defendants were "involved in the

day-to-day operations of [the broker-dealers or Wells Fargo Funds Trust], much less heavily involved in the details and personally directing" the publication and dissemination of misleading statements. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1024 (9th Cir. 2005).

For the foregoing reasons, the motion to dismiss Count IV as to H.D. Vest, Wells Fargo Funds Management, Wells Capital Management, Wells Fargo Funds Distributor, and Stephens must be granted. At the hearing, plaintiff's counsel represented that the complaint could be amended to allege that some defendants played a role in the issuance and filing of the prospectuses. This order addresses below how plaintiff may proceed in amending the complaint.

## B. SCIENTER ALLEGED AS TO WELLS FARGO-BRANDED FUNDS

Defendants next contend that Count IV should be dismissed as to all defendants to the extent that Count IV makes allegations about the sale and marketing of the proprietary Wells Fargo Funds. Defendants assert that plaintiff has not established that the investing public would perceive the "revenue-sharing" scheme as misleading with respect to the Wells Fargo Funds. Defendants distinguish between mutual funds bearing the "Wells Fargo" name and the "third-party" shelf-space funds. Defendants contend that because all defendants, except Stephens, were under Wells Fargo ownership, no reasonable investor would have expected a Wells Fargo-affiliated broker to give unbiased advice about a Wells Fargo-named fund (Br. 11-14).[4]

This order disagrees with defendants' contention that "any investor would be aware of the possibility that a Wells Fargo broker might favor a Wells Fargo product, and might be paid more when a Wells Fargo product [was] sold" (Br. 13). The second amended complaint here is directed at conduct allegedly harming people who "purchased one or more of the Wells Fargo Funds and/or one or more non-Wells Fargo funds participating in Wells Fargo's revenue sharing and directed brokerage arrangements" (Second Am. Compl. ¶ 1). More important, the second amended complaint alleges that Wells Fargo states on its website that its employees

---

[4] Defendants' casting of this argument as a "scienter" argument is somewhat disingenuous. The argument focuses on whether defendants' statements promoting the Wells Fargo-branded funds to the public could be construed as misstatements giving rise to liability under Section 10(b). This has more to do with defendants' duty to disclose and the materiality of its misstatements than it has to do with scienter.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    "avoid any actual or perceived conflict of interest . . . and comply with the letter and the spirit

2    of the law" (*id.* at ¶ 31).  The website also states that Wells Fargo's financial consultants will

3    "provide sound financial advice for customers . . . and create new wealth for them" (*id.* at ¶ 30).

4    These allegations from the second amended complaint establish that a reasonable investor

5    would not have thought that a broker who was avoiding "any actual or perceived conflict of

6    interest" would have pushed Wells Fargo-branded funds harder than others.  The August 14

7    order held that "[i]f a reasonable investor knows the broker-dealer has a payback agreement to

8    showcase a particular fund, the investor is likely to take a harder look at the recommendation"

9    (Aug. 14 Order at 10).[5]  The investors thought they were dealing with unbiased broker-dealers,

10   when in fact they were not.

11          As they did in their first motions to dismiss, defendants again rely on *Castillo v. Dean*

12   *Witter Discover & Co.*, No. 97 Civ. 1272 (RPP), 1998 WL 342050, at *9 (S.D.N.Y. June 25,

13   1998).  This Court has previously ruled, however, that *Castillo* is not persuasive here.  This

14   order reiterates that "[u]nlike the plaintiffs in *Castillo*, . . . plaintiff here cites authority on his

15   side, namely the various SEC orders," that the broker-dealers should have disclosed the

16   paybacks they received to push various funds.  As previously held, "the development of

17   disclosure standards by the SEC, as laid out in its orders, has eclipsed *Castillo*" (Aug. 14 Order

18   at 9, 16).  *See*, *e.g.*, *In re Morgan Stanley DW, Inc.*, Admin. No. 3-11335, 2003 WL 22703073

19   (Nov. 17, 2003) (discussing similar scheme used by Morgan Stanley DW-fund complexes and

20   Morgan Stanley DW as broker-dealer).  This order finds that defendants' contention lacks merit.

21   Accordingly, their motion to dismiss Count IV, insofar as it pertains to representations about the

22   Wells Fargo Funds, is denied.

23                                    **CONCLUSION**

24          For the foregoing reasons, the motion to dismiss Counts I and IV as to defendant H.D.

25   Vest is **GRANTED**.  The motion to dismiss Count VI for lack of standing as to the Wells Fargo

---

27          [5]  With respect to the Wells Fargo-branded funds, the kickback payment was not a direct fee payment,
but an allocation of "revenue net of certain expenses" (Second Am. Compl. ¶ 47).  Defendants highlight the fact

28   that the arrangement "was *a cashless allocation of revenues between affiliates with a common parent*" (Br. 12)
(emphasis in original).  This order finds that whether the kickbacks were lump-sum payments or a "cashless
allocation of revenues" is irrelevant to defendants' instant argument.

1    Funds plaintiff does not own is **GRANTED**.  The motion to dismiss Count VI as to Stephens is

2    **DENIED**.  The motion to dismiss Count IV as to H.D. Vest, Wells Fargo Funds Management,

3    Wells Capital Management, Wells Fargo Funds Distributor, Stephens, and Wells Fargo & Co. is

4    **GRANTED**.  The motion to dismiss Count IV to the extent it pertains to representations about the

5    Wells Fargo Funds is **DENIED**.[6]

6            Plaintiff may seek leave to amend by filing a motion proposing yet another complaint, to

7    be filed and served by **NOVEMBER 17, 2006**.  Counsel for plaintiff has represented that the

8    McDaniel Family Trust and other plaintiffs who previously volunteered to serve as lead plaintiff

9    will be able to cure most of the standing issues.  Counsel also has represented that other

10   investors are willing to be added.  The motion seeking leave to amend must be accompanied by

11   a declaration of counsel showing that all new proposed plaintiffs have been acquired in a

12   professionally proper way.  *See*, *e.g.*, Cal. R. Prof. Conduct 1-400(C) ("A solicitation shall not

13   be made by or on behalf of a member or law firm to a prospective client with whom the member

14   or law firm has no family or prior professional relationship, unless the solicitation is protected

15   from abridgment by the Constitution of the United States or by the Constitution of the State of

16   California.").  The motion shall be briefed and heard on the normal 35-day track.  Leave to

17

18

19

20

21
        ─────────────

22          [6] Plaintiff and defendants also filed requests for judicial notice pursuant to Federal Rule of Evidence
     201.  No objections to those requests were filed.  Plaintiff's request as to Exhibit 1, excerpts from transcripts of
23   proceedings before this court in this action, is **GRANTED**.  *Reyna Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d
     741, 746 n. 6 (9th Cir. 2006) (taking judicial notice of court transcripts).  Plaintiff's request as to Exhibit 2,
24   excerpts from the April 11, 2005 Prospectus and SAI for the Wells Fargo Advantage Small Cap Growth Fund,
     is **GRANTED**.  *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1018 (5th Cir. 1996) (taking judicial notice of
25   mandatory SEC filings only for statements' contents, rather than truth).  Plaintiff's request as to Exhibit 3, an
     SEC order instituting action in the matter of Massachusetts Financial Services, is **GRANTED**.  That document is
26   cited in paragraph 86 of the second amended complaint.  Defendants' request as to Exhibits 1-6, Wells Fargo &
     Co.'s public disclosure documents filed with the SEC, is **GRANTED**.  *Lovelace*, 78 F.3d at 1018.  Defendants'
27   request as to Exhibits 7 and 8, United States Patent and Trademark Office electronic search results for the marks
     "Wells Fargo" and "Wells Fargo Funds," is **GRANTED**.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th
28   Cir. 2001).

United States District Court
For the Northern District of California

amend may or may not be granted depending on the outcome of the motion.  Any and all points

that would be part of any dismissal motion must be included in the opposition so as to avoid

subsequent motion practice (if leave is allowed).


      **IT IS SO ORDERED.**


Dated:  October 24, 2006

                            WILLIAM ALSUP
                            UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California