IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD SIEMERS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>WELLS FARGO & CO.; WELLS FARGO FUNDS MANAGEMENT, LLC; WELLS CAPITAL MANAGEMENT, INC.; H.D. VEST INVESTMENT SERVICES; WELLS FARGO INVESTMENTS, LLC; STEPHENS, INC.; and WELLS FARGO FUNDS TRUST,<br><br>    Defendants.<br>                                            / | No. C 05-04518 WHA<br><br>**REQUEST FOR FURTHER BRIEFING** |

    The reply schedule will be extended to **MONDAY, JANUARY 22** at **NOON** and the page limit extended to 12 pages so that counsel may, in addition to whatever reply they otherwise wish to make, can address the following. It is unnecessary to repeat the full question before each answer but please give specific and detailed answers to each of the following:

    1.    Address this hypothetical. Assume the prospectus stated that the investment-advisor fees had been and would continue to be used primarily to employ special premier investment experts to select the funds picks. Assume that this was untrue and that no such expert was ever hired or used and that the funds picks were more or less random. Assume the investment advisor simply pocketed the fees for very little work. Assume the amount of the fees was fully disclosed and that the only problem was the failure to follow through and obtain

the special premier expert advice. Assume the misrepresentation was deliberate. Under the caselaw, would there be a Section 10(b) claim? Disclose caselaw both ways. How close to our scenario, as pled, is this hypothetical?

2. For the prospectuses in question, did they accurately disclose the amount of the investment advisor fees? Did they state *how* the fees would be used by the advisors? Did they say what specific benefits the funds would receive in exchange for these fees? This is not a hypothetical. This should be answered based on the actual proposed pleading and the actual wording of the prospectuses in question.

3. What allegations in the proposed complaint permit a strong inference that the broker-dealer defendants knew that the investment advisors were not providing to the funds the research and other services promised in the prospectus?

4. Now, a different hypothetical. Assume that the prospectus stated that it was the practice of the funds managers to direct all trade, on behalf of the fund, through discount, low-cost broker-dealers. Assume, in fact, all trades were directed to a related affiliated brokerage house charging high-end rates and that, as a result, the expense burden on the fund was higher than would have been the case if a discount broker had been used. Under the caselaw, would there be a Section 10(b) claim? How close to our scenario, as pled, is this hypothetical?

5. Plaintiff's argument seems to have shifted, at least in emphasis. To avoid the problem of a predominance of individual questions as to which investors received and relied on "steering" recommendations, counsel now pins their argument on the class-wide prospectuses. Allegedly, the prospectuses were materially misleading for two basic reasons. *First*, while they fully disclosed the amount of the fees that would be taken out of the funds, they led investors to believe that those fees were worthwhile and would be used to pay for expert research and services. In fact, the fund did not receive any such expert research or services. The money was instead used to fund kickbacks to grow the funds. The actual alternative use of the funds is, however, less important than the misrepresentation that the diverted funds were being used to

benefit the fund. *Second*, the directed brokerage was a hidden cost. Instead of obtaining the lowest commission for the trades made on behalf of the fund, the trades were directed to brokerage houses charging materially greater commissions without any corresponding benefit to justify the difference. Based on these two alleged misrepresentations in the prospectuses, counsel claim that the marketplace was misled into believing that the "loads," while perhaps high, were justified by the benefits to be provided to the funds. Under *Basic*, counsel seeks class-wide relief to recover the shortfall. Both sides should first address how accurately this summary captures plaintiff's argument and then critique it.

6. Address the applicability of *Affiliated Ute* to this case and any subsequent caselaw limiting *Affiliated Ute*.

7. Plaintiff's counsel says they are willing to plead more "if the Court desires." This is simply a stratagem to wait and see how the Court rules. In addition to the 12-page reply, plaintiff's counsel shall file and serve whatever further allegations they can in good faith make, including the extent to which the plaintiffs received and relied on "steering" recommendations. This should be in a separate document in pleading format. Just include the new allegations and give each paragraph a number separate from those in the present proposed pleading. For example, if a new paragraph would logically go after Paragraph 22 in the now-pending proposed pleading, then it should be numbered "22A" or in some other manner indicating where it would go. Once the Court reviews the filings, it will decide whether any further briefing is in order.

**IT IS SO ORDERED.**

Dated: January 17, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

3