IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD SIEMERS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & CO.; WELLS FARGO FUNDS MANAGEMENT, LLC; WELLS CAPITAL MANAGEMENT, INC.; H.D. VEST INVESTMENT SERVICES; WELLS FARGO INVESTMENTS, LLC; STEPHENS, INC.; and WELLS FARGO FUNDS TRUST,<br><br>Defendants. | No. C 05-04518 WHA<br><br>**FOURTH REQUEST FOR SUPPLEMENTAL BRIEFING** |

By **NOON** on **TUESDAY, FEBRUARY 20, 2007**, please file a ten-page memorandum (double-spaced; no footnotes; no supplements; no declarations) on the following:

1. Are underwriters or distributors strictly liable for material misstatements and omissions in registration statements, prospectuses, and SAIs under any provision of the securities acts that apply to mutual funds? If not strictly liable, what other provisions of the acts apply to underwriters and distributors and what is their applicability here? Isn't Section 12 alleged? If so, what more does Section 10 add in this case?

2. According to the proposed complaint, what was the alleged magnitude of hard dollars credited to Wells Fargo Investments as revenue sharing in connection with the Wells Fargo funds? What does the proposed complaint say was the source for the payments to Wells

1  Fargo Investments from the Wells Fargo funds, *i.e.*, directed brokerage, excessive advisory fees,
2  phony research and brokerage services, or what?  The complaint does not seem to allege that
3  any Wells Fargo funds paid directed brokerage to any defendant.  True?  Has any SEC or
4  NASD order found an violation of the NASD rules or the securities acts by any Wells Fargo
5  mutual fund sponsor (as opposed to Wells Fargo brokers)?

6        3.      Many of the SEC and NASD enforcement orders rest on directed brokerage.  Are
7  there any that specifically state that hard-dollar payments to brokers were violations of the
8  securities acts at the sponsor level?

9        4.      To what extent is revenue sharing still allowed by the SEC and NASD?

10       5.      The defense memorandum dated January 22, 2007, stated at page 3:  "Broker-
11 dealers who do not solicit or recommend investments have no duty to speak about such
12 investments under Section10(b) or Section 12(a)(2).  *See Daou*, 411 F.3d at 1029; *Moore v.*
13 *Kayport Package Express*, 885 F.2d 531, 537 (9th Cir. 1989); *Montcalm County Bd. of*
14 *Comm'rs v. McDonald & Co. Sec.*, 833 F. Supp. 1225, 1232–35 (W.D. Mich. 1993)."  What on
15 page 1029 of *Daou* refers to broker-dealers or to Section 10?  What on page 537 of *Moore*
16 refers to broker-dealers, and didn't the Ninth Circuit hold (on page 538) that the proposed
17 pleading against the stockbrokers did state a Section 12(2) claim despite the precise argument
18 that the complaint did not allege "the stockbrokers solicited any sales"?

19       6.      Similarly, the defense memorandum at pages 2–3 stated:  "If broker-dealers have
20 any duty to correct misstatements in prospectuses, that duty arises only if the broker-dealer
21 makes representations itself about the investment or solicits the investment.  *See Leboce v.*
22 *Merrill Lynch*, 709 F.2d 605, 607 (9th Cir. 1983); *Bear Stearns v. Buehler*, 432 F. Supp. 2d

**United States District Court**
For the Northern District of California

1024, 1027 (C.D. Cal. 2000)." Didn't the *Leboce* decision involve only issues of California law, not federal securities law? Isn't the same true for *Buehler*?

\*          \*          \*

The Court must insist on complete accuracy and candor. If counsel cannot do so on time, the Court will consider an extension.

**IT IS SO ORDERED.**

Dated: February 15, 2007.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE