GILBERT R. SEROTA (No. 75305)
Email: gserota@howardrice.com
PATRICIA J. MEDINA (No. 201021)
Email: pmedina@howardrice.com
JASON M. SKAGGS (No. 202190)
Email: jskaggs@howardrice.com
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone: 415/434-1600
Facsimile: 415/217-5910

Attorneys for Defendants
WELLS FARGO FUNDS MANAGEMENT, LLC,
WELLS CAPITAL MANAGEMENT
INCORPORATED, WELLS FARGO FUNDS
DISTRIBUTOR, LLC, WELLS FARGO FUNDS
TRUST and STEPHENS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RONALD SIEMERS, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY, H.D. VEST INVESTMENT SERVICES, LLC, WELLS FARGO INVESTMENTS, LLC, WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS CAPITAL MANAGEMENT INC., STEPHENS INC., WELLS FARGO FUNDS DISTRIBUTOR, LLC, and WELLS FARGO FUNDS TRUST,<br><br>Defendants. | No. 05-04518 WHA<br><br>MOTION BY WELLS FARGO FUNDS MANAGEMENT, LLC AND WELLS FARGO FUNDS TRUST TO DISMISS COUNT IV OF PLAINTIFFS' THIRD AMENDED COMPLAINT |

# TABLE OF CONTENTS

| | Page |
|---|---|
| INTRODUCTION | 1 |
| I. THE TAC IS DEVOID OF SUBSTANTIVE ALLEGATIONS REGARDING THE TOTAL RETURN BOND FUND. | 1 |
| II. PLAINTIFFS FAIL TO ALLEGE MATERIALITY WITH PARTICULARITY. | 2 |
|     A. Plaintiffs Do Not Allege With Particularity The Amount Of The Purportedly Excess Fees Or The Effect Of Those Fees On Their Investments. | 3 |
|     B. Plaintiffs Do Not Allege With Particularity The Basis For Their Conclusion That Fees Were Excessive. | 4 |
| III. THE TAC DOES NOT PLEAD ALLEGATIONS OF SCIENTER WITH PARTICULARITY AS TO WELLS FARGO FUNDS TRUST. | 9 |
| CONCLUSION | 10 |

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

# TABLE OF AUTHORITIES

Page(s)

### Cases

| | |
|---|---|
| *Abromson v. American Pac. Corp.*, 114 F.3d 898 (9th Cir. 1997) | 2 |
| *Amron v. Morgan Stanley Investment Advisors Inc.*, 464 F.3d 338 (2d Cir. 2006) | 8, 9 |
| *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) | 2 |
| *Feinman v. Dean Witter Reynolds, Inc.*, 84 F.3d 539 (2d Cir. 1996) | 3 |
| *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,* 694 F.2d 923 (2d Cir. 1982) | 4, 9 |
| *In re Allied Capital Corp. Sec. Litig.*, No. 02 Civ. 3812, 2003 WL 1964184 (S.D.N.Y. Apr. 25, 2003) | 3, 4 |
| *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222 (S.D.N.Y. 2005) | 4 |
| *In re Franklin Mut. Funds Excessive Fee Litig.*, No. 04-CV 982, 2007 WL 765690 (D.N.J. Mar. 13, 2007) | 6 |
| *In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04-2567, 2006 U.S. Dist. LEXIS 1542 (S.D.N.Y. Jan. 17, 2006) | 6 |
| *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) | 9, 10 |
| *Jones v. Harris Assocs. L.P.*, No. 04 C 8305, 2007 WL 627640 (N.D. Ill. Feb. 27, 2007) | 7 |
| *Kalish v. Franklin Advisors Inc.*, 742 F. Supp. 1222 (S.D.N.Y. 1990) | 6, 8 |
| *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321 (4th Cir. 2001) | 7, 8 |
| *Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001) | 10 |
| *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) | 2 |

### Statutes

| | |
|---|---|
| 15 U.S.C. 78u-4(b)(2) | 9 |

# INTRODUCTION

The Court explicitly directed Plaintiffs to plead their 10b-5 claims with the specificity required to show the liability of Wells Fargo Funds Management, LLC and Wells Fargo Funds Trust ("Funds Defendants"). They have failed. Their allegations of materiality are woefully short of facts showing that excessive fees were extracted from any of the five mutual funds remaining at issue. Plaintiffs also fail specifically to allege scienter with respect to Wells Fargo Funds Trust. These grounds provide independent bases for dismissal of Count IV of the Third Amended Complaint ("TAC").

The 10b-5 case is now premised on the theory that the named defendants extracted excessive fees from the mutual funds because of the need to fund revenue sharing and that the scheme was not disclosed in the prospectuses and SAIs issued by the subject funds. The Court's Order Identifying Claims To Proceed And Dismissing All Other Claims And Granting Motion To Amend In Part ("Order") reminded Plaintiffs that "[i]t is important that the revised pleading meet PSLRA and Rule 9(b) standards." Dkt. 248 at 35. The Court instructed Plaintiffs to plead "with as much particularity as possible the specific facts pertaining to the individual Wells Fargo funds" and to "allege with particularity their best case on scienter and materiality concerning the defendants still in [Count IV]." *Id.* at 34-35; *see id.* at 22 (the TAC "should, as to each of the five Wells Fargo funds, set forth with specificity every alleged misrepresentation and half-truth, set forth the best case on materiality, and set forth the best case as to scienter by the sponsors, among all other Section 10 elements").

Instead of complying with these directions, Plaintiffs try to make their case through unsupported conclusions and references to other funds not at issue and to irrelevant data. As we discuss below, Plaintiffs make no substantive allegations with respect to one of the five funds at issue, and their allegations of materiality with respect to the four remaining funds and with respect to the Trust's scienter are inadequate. Count IV should be dismissed with prejudice.

## I. THE TAC IS DEVOID OF SUBSTANTIVE ALLEGATIONS REGARDING THE TOTAL RETURN BOND FUND.

Plaintiffs have now abandoned any theory of liability based on the Total Return Bond Fund because they fail to include specific allegations regarding the fund as ordered by the Court. The Order directed Plaintiffs to "identify the five individual Wells Fargo funds and the specific

1  circumstances of their purchases by Siemers and McKenna, pleading with as much particularity as possible the specific facts pertaining to the Wells Fargo funds. Without limitation, this must include the alleged misleading passages in each prospectus used for the five funds." Dkt. 248 at 34-35.

Despite this clear guidance, the TAC does not contain *any* reference to the Total Return Bond Fund in the description of Plaintiffs' purchases and provides no indication of when, how, or why the fund was purchased. TAC ¶¶30-31, Ex. B. The TAC also does not include the Total Return Bond Fund's prospectuses or SAIs in its description of the allegedly misleading statements. *Id.* ¶¶32-128. This is not surprising, since the Total Return Bond Fund was not managed or administered by any Wells Fargo defendant until the Montgomery Funds were acquired by Wells Fargo in 2003—*two years after* Mr. McKenna sold his shares in the fund. *Id.* Ex. B. The Total Return Bond Fund is mentioned in just two paragraphs of the TAC (¶¶199, 200), and even then it is only for "illustrative purposes." *Id.* ¶201. The complete lack of substantive allegations regarding the Total Return Bond Fund precludes Plaintiffs from relying on that fund to support Count IV.



## II. PLAINTIFFS FAIL TO ALLEGE MATERIALITY WITH PARTICULARITY.

Plaintiffs' theory of liability under 10b-5 is based on the premise that the Funds Defendants failed to disclose that the investment advisor extracted excessive advisory and other fees from the funds that were, to the extent of the excess, mere conduits for financing revenue sharing payments. *See* Dkt. 248 at 17, 19, 23; *see also* TAC ¶¶3, 221, 252. Plaintiffs' allegations regarding excessive fees with respect to the four remaining funds —the Diversified Equity Fund, the Small Cap Growth Fund, the Large Company Growth Fund, and the Emerging Markets Focus Fund—fail to "meet PSLRA and Rule 9(b) standards" and "allege with particularity their best case on scienter and materiality concerning the defendants still in that count." Dkt. 248 at 35.

To satisfy the materiality requirement, a plaintiff must show that there is "'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available.'" *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). The "magnitude of the potential loss" is one important consideration in evaluating materiality. *Abromson v. American Pac. Corp.*, 114 F.3d 898, 902 (9th Cir. 1997). The Second Circuit ruled as

a matter of law that the mislabeling of hidden commissions as transaction fees was not material because "reasonable minds could not find that an individual investing in the stock market would be affected in a decision to purchase or sell a security by knowledge that the broker was pocketing a dollar or two of the fee charged for the transaction." *Feinman v. Dean Witter Reynolds, Inc.*, 84 F.3d 539, 541 (2d Cir. 1996). As in *Feinman*, Plaintiffs fail to allege with particularity that the purported misconduct was material.

As established by authorities discussed below, Plaintiffs must plead the materiality of the excessive fees purportedly extracted to finance revenue sharing payments by alleging, with particularity and with respect to each fund and share class purchased by Plaintiffs: (1) the total amount or percentage of overall fees as well as advisory fees paid; (2) the "extent of the excess"—the portion of the overall fees as well as the advisory fees that are alleged to be excessive such that they are conduits for revenue sharing payments; (3) the effect of the purportedly excess fees on share value and the value of Plaintiffs' holdings; and (4) the basis for the allegations that the overall fees and advisory fees are excessive and the amount by which these fees are excessive. The TAC does not sufficiently allege any of these facts.

### A. Plaintiffs Do Not Allege With Particularity The Amount Of The Purportedly Excess Fees Or The Effect Of Those Fees On Their Investments.

With respect to Class A shares purchased by Plaintiff Siemers and (we assume) by Plaintiff McKenna, who does not specify share class, the TAC is *completely devoid of any specific allegations* regarding the total amount or percentage of overall fees or advisory fees paid by the four funds, the portion of those fees that are allegedly excessive, or the effect on the share price or the value of Plaintiffs' holdings in these funds. These are crucial factual allegations necessary to establish the basic premise of excessiveness that provides the linchpin of the 10b-5 theory.

In evaluating an analogous 10b-5 claim based on allegedly inflated valuations of portfolio companies, the court in *In re Allied Capital Corp. Sec. Litig.*, No. 02 Civ. 3812, 2003 WL 1964184 (S.D.N.Y. Apr. 25, 2003), held that the plaintiffs had not sufficiently alleged materiality. "Because plaintiffs have not alleged the amounts by which Allied allegedly overvalued the questioned investments, plaintiffs have not pleaded any facts that would permit a rational jury to conclude that a

reasonable investor would have viewed the overvaluation as significant." *Id.* at *5; *see also id.* ("In order to plead fraud with particularity, plaintiffs must state by how much Allied overvalued the investments, both to give defendants notice of the circumstances of the alleged fraud and to allow the Court to assess the magnitude and materiality of the fraud"). Like the plaintiffs in *Allied*, Plaintiffs here have not alleged the excessive amounts of fees that are required to support their 10b-5 claim. This failure to allege materiality compels dismissal of Count IV.

### B. Plaintiffs Do Not Allege With Particularity The Basis For Their Conclusion That Fees Were Excessive.

Even if Plaintiffs had alleged the amounts at issue with specificity, their allegations do not sufficiently explain the factual basis for their conclusion that fees were excessive. While we have been unable to locate a case that analyzes excessive fees in the context of a 10b-5 claim, courts have developed a list of commonly used factors to evaluate a claim for excessive fees in the context of Section 36(b), including:

> "(1) the nature and quality of the services provided by the advisers to the shareholders; (2) the profitability of the mutual fund to the adviser-manager; (3) 'fall-out' benefits; (4) the economies of scale achieved by the mutual fund and whether such savings were passed on to the shareholders; (5) comparative fee structures with other similar funds; and (6) the independence and conscientiousness of the mutual fund's outside trustees." (*In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 237 (S.D.N.Y. 2005) (citing *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 929-30 (2d Cir. 1982))).

Plaintiffs recognize that similar considerations are used to evaluate whether the fees charged to a fund and its investors are excessive. *See* TAC ¶179 (listing the same considerations with the exception of the profitability of the mutual fund to the advisor).

Plaintiffs' allegations in support of the *Gartenberg* factors are nothing more than a shell game designed to hide the fact that they have no facts sufficient to establish excessiveness as to the four funds that remain at issue. Plaintiffs resort to cherry picking snippets of information related to *different* funds and *different* share classes than Plaintiffs owned. These allegations are irrelevant to Plaintiffs' 10b-5 claim, because different funds and different share classes within funds have different fees, costs, economies of scale, and turnover ratios. For example, an examination of the sources cited in the TAC for Plaintiffs' only allegations regarding expense ratios of the funds at


HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

issue (TAC ¶¶186 nn.5 & 6; TAC ¶210) reveals that the expense ratios are significantly overstated because they are based on Class B shares rather than Class A shares. The expense ratios for Class A shares are as follows:

- Emerging Markets Focus Fund: 2.20% in 2002 and 1.90% in 2005 (Plaintiffs allege 2.31% and 2.65%, respectively (TAC ¶186 & n.5));
- Small Cap Growth Fund: 1.45% in 2004 and 2005 (Plaintiffs allege 2.15% (the annual report actually reflects an expense ratio of 2.20% for Class B shares) (TAC ¶186 & n.6));
- Diversified Equity Fund (NDVAX): 1.25% (Plaintiffs allege 1.90% (TAC ¶210)).

As reflected in the chart below, allegations related to *Class A shares of the four funds actually at issue are almost non-existent*:

**DOES THE TAC CONTAIN ANY FACTUAL ALLEGATIONS WITH RESPECT TO CLASS A SHARES OF THE FUNDS AT ISSUE?**

|  | Large Company Growth | Montgomery Emerging Markets Focus | Small Cap Growth | Diversified Equity |
|---|---|---|---|---|
| Amount of Total Fees Paid By Fund | NO | NO | NO | NO |
| Amount of Advisory Fees Paid By Fund | NO | NO | NO | NO |
| Amount of Excess Fees Paid By Fund | NO | NO | NO | NO |
| Amount of Excess Advisory Fees Paid By Fund | NO | NO | NO | NO |
| Effect Of Excess Fees On Share Value/ Value of Plaintiffs' Investment | NO | NO | NO | NO |
| Nature & Quality Of Services/Fund Performance | NO | YES | YES | YES |
| Profitability Of Fund To Advisor | NO | NO | NO | NO |
| Fall Out Benefits | NO | NO | NO | NO |
| Economies Of Scale | YES | YES | YES | YES |
| Comparative Fee Structures | NO | NO | NO | NO |
| Conscientiousness And Independence Of Funds' Outside Trustees | YES | YES | YES | YES |

DEFENDANTS' MOTION TO DISMISS COUNT IV                           05-04518 WHA
-5-

The TAC contains some additional allegations regarding expenses of the funds at issue, but these allegations are either based on "retail share classes" (TAC ¶¶187, 228), "all share classes" (TAC ¶215), or Class B shares (TAC ¶¶186, 210). These allegations do not pertain to the Class A shares held by Plaintiffs, and cannot substitute for specificity as to the funds at issue because different share classes have different fees and other characteristics than those at issue here.

Allegations in the TAC related to economies of scale, nature and quality of services, and the independence of the funds' trustees provide insufficient specificity to support Plaintiffs' claim:

**Economies of Scale**: Nearly all of Plaintiffs' allegations regarding excessive fees focus on the purported failure of the four remaining funds to pass along economies of scale to their investors. "Economies of scale do not exist in a vacuum. The concept is meaningful only if increased size of a fund (more shareholders, more assets under management) directly reduced the manager's costs of processing each transaction." *Kalish v. Franklin Advisors Inc.*, 742 F. Supp. 1222, 1239 (S.D.N.Y. 1990). Plaintiffs' allegations do not mention the managers' costs, and do not meet PSLRA and Rule 9(b) pleading standards.

Plaintiffs' allegations regarding economies of scale take two forms—both of which are inadequate as to the four funds. *First*, Plaintiffs allege that the assets of the Large Company Growth and Diversified Equity Funds grew over time while expense ratios remained constant. TAC ¶186 (similar allegations in this paragraph regarding the Montgomery Emerging Markets Focus Fund and the Small Cap Growth Fund are based solely on *Class B shares* which were not owned by Plaintiffs and therefore are not relevant). Such allegations do not state facts supporting a 10b-5 claims based on the extraction of "excessive fees." In fact, substantively identical allegations have been held to be insufficient to meet the more lenient pleading standards associated with a Section 36(b) claim:

> If plaintiffs were allowed to state a §36(b) claim based upon such paltry allegations, then any fund that grew over time while not simultaneously lowering its fees would be subject to suit under the ICA. This cannot be allowed. *See, e.g., In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04-2567, 2006 U.S. Dist. LEXIS 1542, at *33 (S.D.N.Y. Jan. 17, 2006) ('Mere assertions that fees increased with the size of the Funds are not enough to establish that the benefits from economies of scale were not passed on to investors.'). (*See In re Franklin Mut. Funds Excessive Fee Litig.*, No. 04-CV 982, 2007 WL 765690 at *9 (D.N.J. Mar. 13, 2007)).

*Second*, Plaintiffs allege that the funds did not adopt advisory fee breakpoints that provided

shareholders the benefits of economies of scale, either because the funds did not have breakpoints, the breakpoints were higher than the subadvisor's breakpoints, or the breakpoints started at levels that were higher than the fund assets at the time the breakpoints were adopted. TAC ¶¶193-195, 199-200. These general allegations also do not satisfy the PSLRA and Rule 9(b) and are not relevant to the issue of whether the adviser extracted excessive fees and by how much. They do not describe whether or not the breakpoints were ever reached, where the breakpoints should have been set, and when or whether these unspecified lower breakpoints would have been reached, the amount of excessive fees caused by allegedly high breakpoints (or lack of breakpoints), or the effect of the allegedly high or nonexistent breakpoints on the value of the share price or Plaintiffs' investments.

A similar lack of evidence recently led to a summary judgment ruling against the plaintiffs on a Section 36(b) claim because they failed to "provide any evidence of what savings were gained from economies of scale." *Jones v. Harris Assocs. L.P.*, No. 04 C 8305, 2007 WL 627640 at *9 (N.D. Ill. Feb. 27, 2007). The court also explained that "whether breakpoints could have been set at a lower level is not the issue. The issue is whether the board could have agreed to the breakpoints being set at those levels after engaging in good-faith negotiations." While articulated in the context of summary judgment on a 36(b) claim, this reasoning illustrates how Plaintiffs have failed to plead facts to support the purported lack of economies of scale with particularity.

**Nature and Quality of Services/Fund Performance:** The TAC contains only sparse allegations regarding the performance of three of the funds at issue: Diversified Equity, Emerging Markets Focus, and Small Cap Growth. TAC ¶¶204, 206, 207. These allegations fail to show the extraction of excessive fees and utterly fail to satisfy PSLRA and Rule 9(b) standards. The allegations regarding the Emerging Markets Focus and Small Cap Growth funds simply state that they underperformed their benchmark peers by a certain percentage. *Id.* ¶206. Plaintiffs fail to specify a time period for this comparison with unnamed "benchmark peers" or to state whether this alleged underperformance was an isolated instance or was true across the class period. *See Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327-28 (4th Cir. 2001) ("[I]nvestment results are themselves cyclical. An under-achieving fund one year may be an overachieving fund the next"). Plaintiffs' allegations are also deficient because they are based only on performance, not the overall

nature and quality of services performed by the fund advisor. "While performance may be marginally helpful in evaluating the services which a fund offers, allegations of underperformance alone are insufficient to prove that an investment advisor's fees are excessive." *Id.* at 327; *Kalish*, 742 F. Supp. at 1228 (services include devising an investment strategy, selection of securities, execution of trades, opening accounts, redeeming shares, maintaining records, and ensuring compliance with federal and state regulations).

Plaintiffs' allegations with respect to the Diversified Equity fund, while more detailed, are also inadequate. Plaintiffs admit that the fund received an average score from the Lipper Research Center in terms of total returns, but allege that the fund achieved slightly lower returns than other funds in the multi-cap core category for certain periods. TAC ¶204. Plaintiffs also allege that the Diversified Equity fund's returns during 2004 and 2005 are highly correlated to the S&P 500 Market Index. *Id.* ¶207. Similar allegations have been held insufficient to survive a motion to dismiss in the context of the more lenient pleading standards associated with a 36(b) claim:

> The Amron Complaint is less deficient, in part because it notes that over 80% of the S & P Fund's peers outperformed it and because the nature of the services the S & P Fund [sic] are not so demanding on advisers' expertise because the fund seeks merely to mimic the return of the S & P 500 Index. But 'allegations of underperformance alone are insufficient to prove that an investment adviser's fees are excessive, *Migdal*, 248 F.3d at 327, and Plaintiffs make scant additional showing as to the first factor in the Complaints.' (*Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006))

Since Plaintiffs' allegations concerning fund performance and the nature and quality of services cannot even satisfy the relaxed pleading requirements of 36(b), they fall far short of sufficiency under the PSLRA and Rule 9(b).

**Conscientiousness and Independence of Outside Trustees**: The TAC's general allegations with respect to the purported lack of conscientiousness and independence of the outside trustees for the funds (TAC ¶¶171-173, 230-244) are entirely conclusory, and cannot satisfy the pleading requirements of the PSLRA and Rule 9(b). The TAC contains no facts showing a lack of independence or any improper connections between the trustees and the adviser. Like the allegations found insufficient in the 36(b) context in *Amron*, Plaintiffs' allegations "contain little, if anything, about how the five directors of defendants' Funds are controlled." 464 F.3d at 345.

Instead, they are simply based on the results achieved with respect to the other *Gartenberg* factors. This Court previously rejected Plaintiffs' "bootstrap[ping]" approach in the 36(b) context:

> Plaintiff claims that the funds' directors failed to supervise the investment advisers adequately, giving the investment advisers and distributors the opportunity to seek and accept excessive fees, including those portions used to fund kickbacks to broker-dealers. Plaintiff does not base this allegation on any facts about *how* the directors conducted the affairs of the fund, nor on their professional qualifications. Instead, it is based on the results they achieved. These results are merely the other allegations about excessive fees reframed in terms of the directors' failure instead of the investment adviser's breach. In other words, plaintiff is trying to bootstrap some *Gartenberg* factors to cover the factor related to the directors. This allegation therefore fails to state any new facts that support the claim. Plaintiff also alleges that the directors failed to inform themselves adequately before making fee decisions. Such conclusory allegations are insufficient to support a claim. (Dkt. 116-1 at 29).

This logic applies with even more force here in the context of the stringent pleading requirements of the PSLRA and Rule 9(b).

The Order repeatedly reminded Plaintiffs to allege with particularity the "best case" with respect to materiality. Dkt. 249 at 35; *see id.* at 22. Plaintiffs responded by alleging only the conclusion that the Funds Defendants failed to disclose that the investment advisor extracted excessive fees that were mere conduits for financing revenue sharing. Plaintiffs do not specify the amount of the fees, the amount of purportedly excessive fees, the impact of the excessive fees, or the basis for Plaintiffs' conclusion that the fees were excessive. These general allegations do not come close to satisfying the PSLRA and Rule 9(b). Count IV should be dismissed with prejudice.

### III. THE TAC DOES NOT PLEAD ALLEGATIONS OF SCIENTER WITH PARTICULARITY AS TO WELLS FARGO FUNDS TRUST.

Wells Fargo Funds Trust should be dismissed with prejudice from Count IV for the additional and independent reason that Plaintiffs do not sufficiently allege scienter with respect to the Trust. The Court previously recognized that to satisfy the scienter element of a 10b-5 claim, Plaintiffs must, with respect to each omission, "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind'" and must "'plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct.'" Dkt. 150 at 14 (quoting 15 U.S.C. 78u-4(b)(2) and *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999), respectively). "To meet this pleading requirement, the complaint must contain

allegations of specific contemporaneous statements or conditions that demonstrate the intentional or deliberate reckless false or misleading nature of the statements when made." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) (quotations omitted).

Plaintiffs' allegations of scienter on the part of Wells Fargo Funds Trust regarding alleged misrepresentations and omissions about the allegedly excessive fees are virtually nonexistent. The TAC contains no specific allegations of a motive to defraud by the Trust (as distinguished from its adviser) or how the Trust's board members lack independence. The TAC does not identify any facts that demonstrate deliberately reckless or conscious misconduct by the Trustees. Plaintiffs' allegations are no more specific than those found by this Court to be insufficient to support a claim for lack of conscientiousness and independence of the funds' outside trustees under the lenient 36(b) pleading standards. *See* pp. 9, *supra*. Those allegations also fall far short of satisfying the Ninth Circuit's stringent requirements for pleading scienter with respect to Wells Fargo Funds Trust.

## CONCLUSION

Plaintiffs have had numerous opportunities to allege a proper 10b-5 claim. Despite this Court's direction to "set forth the best case on materiality, and set forth the best case as to scienter by the sponsors" with respect to each of the five Wells Fargo funds that they owned and its reminder that the TAC must "meet PSLRA and Rule 9(b) standards" (Dkt. 248 at 22, 35), the TAC does not satisfy these standards with respect to materiality nor scienter of the Wells Fargo Funds Trust. The TAC also does not contain substantive allegations with respect to the Total Return Bond Fund. For these reasons, Defendants respectfully request that Count IV of the TAC should be dismissed with prejudice, and that the Court preclude Plaintiffs from relying on the Total Return Bond Fund.

DATED: March 28, 2007.                    Respectfully,

                                                      HOWARD RICE NEMEROVSKI CANADY
                                                      FALK & RABKIN
                                                      A PROFESSIONAL CORPORATION

                                                       By: _____/s/_____
                                                                   GILBERT R. SEROTA

                                                      Attorneys for FUNDS DEFENDANTS