GILBERT R. SEROTA (No. 75305)
Email: gserota@howardrice.com
PATRICIA J. MEDINA (No. 201021)
Email: pmedina@howardrice.com
JASON M. SKAGGS (No. 202190)
Email: jskaggs@howardrice.com
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone: 415/434-1600
Facsimile: 415/217-5910

Attorneys for Defendants
WELLS FARGO FUNDS MANAGEMENT, LLC,
WELLS CAPITAL MANAGEMENT
INCORPORATED, WELLS FARGO FUNDS
DISTRIBUTOR, LLC, WELLS FARGO FUNDS
TRUST and STEPHENS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RONALD SIEMERS, Individually And On Behalf Of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY, H.D. VEST INVESTMENT SERVICES, LLC, WELLS FARGO INVESTMENTS, LLC, WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS CAPITAL MANAGEMENT INC., STEPHENS INC., WELLS FARGO FUNDS DISTRIBUTOR, LLC, and WELLS FARGO FUNDS TRUST,<br><br>    Defendants. | No. 05-04518 WHA<br><br>REPLY BRIEF OF WELLS FARGO FUNDS MANAGEMENT, LLC AND WELLS FARGO FUNDS TRUST IN SUPPORT OF THEIR MOTION TO DISMISS COUNT IV OF PLAINTIFFS' THIRD AMENDED COMPLAINT |

## I. PLAINTIFFS ADMIT THEY FAILED TO ALLEGE THE PURCHASE OF THE WELLS FARGO TOTAL RETURN BOND FUND.

The Third Amended Complaint ("TAC") does not contain specific allegations regarding the purchase of the Total Return Bond Fund. Nor does it contain charging allegations concerning extraction of excessive fees as to this fund. Plaintiffs now admit that they did not include such allegations because Plaintiff McKenna bought and sold this fund *before* it was a Wells Fargo fund. They claim that they merely want to include this fund as one of the 90-plus Wells Fargo funds potentially at issue. Plaintiffs' Opposition ("Opp.") at 13. These concessions reduce the number of Wells Fargo funds at issue in the individual claims to four and the Court should so order.

## II. THE TAC DOES NOT SUFFICIENTLY ALLEGE MATERIALITY.

### A. Plaintiffs Fail To Support Their "Conduit" Theory With Specific Allegations.

We established in our Opening Brief that (1) the Court's March 9 Order ("Order") made the extraction of excessive fees a predicate for the 10b-5 claim; and (2) the TAC falls far short of satisfying PSLRA and Rule 9(b) standards with respect to this threshold issue as to the remaining four funds. In response, Plaintiffs concede that they "did not change the 'excessive fees' portion of the complaint." Opp. at 2. Plaintiffs also admit that the sole basis for their conclusion that the fees charged to the funds were excessive is yet another conclusory assertion: that payments for revenue sharing and other distribution provided no benefit to investors. *Id.* at 9. That does not provide a satisfactory response because this Court has recognized that the fund adviser has the right to spend its own money on distribution expenses that may not benefit investors. Revenue sharing or distribution payments, however large, *only become material* if they are proven to be a product of the extraction of excessive fees from the fund. This is where the TAC utterly fails.

Plaintiffs argue that "section 36(b) has nothing to do with the adequacy or materiality of the disclosures in connection with the sale of securities." Opp. at 6. Plaintiffs are wrong. The only theory of liability under 10b-5 permitted by the Order hinges on a threshold showing that the advisor charged excessive fees to provide a conduit for funding revenue sharing and other distribution payments. Opening Br. at 2; *see* Dkt. 248 at 17, 19, 23. This Court explained that "once [the sponsor] earns fees, they become the property of the sponsor. That money can be used as the

sponsor wishes—for compensation, vacations, charity—or, if it elects, solicitations to attract further investors into the same (or other) funds. How a sponsor uses its *own* money is up to it." Dkt. 248 at 11. An investment advisor "may spend its *own* money, including profits from the advisory contract, for ongoing distribution," but it may not "cause the mutual fund itself to pay for ongoing distribution," either directly or by using inflated advisory fees as a "conduit." *Id.* at 11, 13 (citing SEC Release No. 16,431, 53 Fed Reg. 23,258, at 23,271 (middle column) (June 21, 1988). The TAC, however, contains no specific allegations as to the amount of the inflated advisory fees, or how such fees were extracted, as to any of the four funds.

It is proper to judge the sufficiency of the TAC by analogy to 36(b). According to the SEC:

> In determining whether there is an indirect use of fund assets, it is appropriate to relate a fund's payments pursuant to the advisory contract to the adviser's expenditures for distribution and to view such expenditures as having been made from the adviser's profits, if any, from the advisory contract. *To the extent that such profits are "legitimate" or "not excessive", the adviser's distribution expenses are not an indirect use of fund assets.* Many commentators drew unwarranted inferences from the use of "legitimate" and "not excessive" in Release No.10862. *Profits which are legitimate or not excessive are simply those which are derived from an advisory contract which does not result in a breach of fiduciary duty under section 36 of the Act.* (45 Fed. Reg. 73,898 at 73,902-73,903) (emphasis added).

Plaintiffs therefore "must show that the adviser charged a fee 'so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining.'" *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F. 3d 338, 344-46 (2d Cir. 2006) (quoting *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir. 1982)). Courts evaluate the sufficiency of allegations of disproportionately large fees under Section 36(b) using factors articulated in *Gartenberg. See, e.g., Amron*, 464 F.3d at 344-46; *In re Eaton Vance Mutual Funds Fee Litig.*, 380 F. Supp. 2d 222, 237-38 (S.D.N.Y. 2005), *aff'd*, *Bellikoff v. Eaton Vance Corp.*, — F.3d —, No. 05-6957, 2007 WL 766209 (2d Cir. Mar. 15, 2007).

Even ignoring *Gartenberg*, it is nonetheless clear that Plaintiffs do not allege specific facts sufficient to show that the revenue sharing and other distribution payments were financed by excessive fees and therefore constitute an improper use of fund assets. It cannot credibly be argued that nondisclosure of the use of *properly obtained* profits would "significantly alter[] the total mix of information available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).

### B. Plaintiffs Fail To Allege The Materiality Of The Amount Of The Payments.

Even if Plaintiffs had properly alleged that the advisor extracted excessive fees to pay for distribution expenses, their claim fails for the additional reason that they do not specifically plead that *the amounts* at issue as to the four funds or as to program as a whole are material. Plaintiffs (erroneously) assert that there were revenue sharing payments totaling $350 million dollars for all 90+ Wells Fargo Funds for the entire class period. They want the Court to assume that this amount is *per se* material. That is wrong. This number is meaningless without corresponding allegations of the amount of assets being managed, the percentage of the advisory fees allegedly at issue, or percentage of the fees attributable to these payments. For all we know from the TAC, the investment amounts at issue could be hundreds of billions such that these payments could represent *only a fraction of a penny of Plaintiffs' investment*. Despite the Court's direction to plead their "best case" with respect to materiality, Plaintiffs fail to include any such allegations.

### C. Allegations Regarding Funds And Share Classes That Plaintiffs Did Not Own Are Irrelevant To The Issue Of Materiality.

The TAC lacks any detail regarding the amount of fees or excessive fees paid by the four funds at issue. Instead, Plaintiffs believe that they can support their 10b-5 claim by bootstrapping allegations regarding 90+ Wells Fargo funds that they never owned. *See, e.g.*, Opp at 13 (asserting that claims regarding all other Wells Fargo funds not specifically owned by Plaintiffs remain in the case). This is not correct. This Court explicitly held that the only funds at issue at this point in the litigation are the funds owned by Plaintiffs. *See* Dkt. 248 at 32-33 (listing funds). The Court also instructed Plaintiffs to allege specifically each of the elements of a 10b-5 claim, including materiality and scienter, with respect to the *five (now four) Wells Fargo funds* that Plaintiffs allegedly owned. *See* Dkt. 248 at 32, 34-35; *Nenni v. Dean Witter Reynolds*, *Inc.*, No. 98-12454, 1999 U.S. Dist. LEXIS 23351 *6 (D. Mass. Sept. 29, 1999) (limiting 10b-5 claim to mutual funds that the plaintiff actually owned).

Plaintiffs' desire to certify a class of purchasers of all of the Wells Fargo funds does not change their threshold pleading obligations. Courts have repeatedly rejected attempts to use the procedural device of a class action to remedy flaws in a plaintiff's own claims, explaining that

"[s]tanding cannot be acquired through the back door of a class action." *Allee v. Medrano*, 416 U.S. 802, 829 (1974); *see also In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 169 (D. Mass. 2004) (plaintiffs "may not use the procedural device of a class action to bootstrap [themselves] into standing [they] lack[ ].") (quotation omitted).

Plaintiffs must make their case based on the funds that they actually owned and the excessiveness of fees as to those funds. Any reliance on allegations regarding other Wells Fargo funds and other share classes does not meet the high threshold for pleading securities fraud.

### D. Prior Statements Of This Court Cannot Salvage Plaintiffs' 10b-5 Claim.

Plaintiffs return to the tactic of attempting to defend their defective claim by citing this Court's prior statements on various issues, most of which were made *before* Plaintiffs shifted emphasis "[i]n search of a theory amenable to class certification." Dkt. 248 at 8; *see* Opp. at 2, 4, 6, 8. This approach ignores the Court's explicit warning in the March 9 Order that Plaintiffs should "tak[e] nothing for granted" in pleading their Section 10 claim, and its statement that this "caveat is necessary because counsel are fond of blaming the Court for their shortfalls, arguing reliance upon some comment by the Court to excuse problems in their pleadings." Dkt. 248 at 22 & n.12. The many problems with Plaintiffs' pleadings cannot be excused by such statements or otherwise. Plaintiffs' failure to adequately allege materiality compels dismissal of Count IV.

## III. THE TAC DOES NOT PLEAD SCIENTER WITH PARTICULARITY AS TO WELLS FARGO FUNDS TRUST.

Plaintiffs come nowhere close to pleading that the Funds Trust acted with scienter in connection with the alleged extraction of excessive fees by the adviser. Their conclusory allegations regarding the lack of conscientiousness and independence of the Trust's board fall far short of the required specificity. Opening Brief at 9-10. Plaintiffs do not identify any specific allegations in the TAC or cite to any authority for the proposition that they have sufficiently alleged scienter by the Trust. Instead, Plaintiffs offer a brand new theory of the Trust's scienter: that the actions and knowledge of the presidents of Wells Fargo Funds Management, Karla Rabusch and Mike Hogan, should be imputed to the Trust because they also served as "President of the Board of Directors" of the Trust. *See* Opp. at 14. This assertion is not in the TAC, and is contrary to the law.

*First*, despite this Court's direction to set forth their "best case" with respect to scienter (Dkt. 248 at 22), Plaintiffs do not actually allege in the TAC that Mr. Hogan or Ms. Rabusch had any affiliation with the Trust. Plaintiffs seek to remedy this defect by proposing *yet another amendment*, and claim that the proposed new allegation is supported by an unidentified statement on an unidentified page in an unidentified SAI referred to in an unidentified paragraph of the TAC. Plaintiffs' assertion is misleading at best in any event—the SAIs *do not* list Mr. Hogan or Ms. Rabusch as Presidents of the Board of Directors/Trustees of the Trust or otherwise indicate board membership.

*Second*, even if Plaintiffs had properly alleged Mr. Hogan and Ms. Rabusch's affiliation with the Trust, their allegations that Mr. Hogan and Ms. Rabusch knew about and negotiated revenue sharing agreements *on behalf of Wells Fargo Funds Management* are insufficient to show scienter of the *Trust*: "[I]t is clear that a director's knowledge may not properly be imputed to a corporation unless it is gained within the scope of his activity with respect to that corporation," and therefore knowledge acquired in the capacity of a position in one entity cannot be imputed to another entity. *Weintraub v. Texasgulf, Inc.*, 564 F. Supp. 1466, 1470 (S.D.N.Y. 1983). Plaintiffs also fail to specifically allege any actions or inactions by Mr. Hogan or Ms. Rabusch in their capacities as President of the Trust, whether or how they influenced Board, any motive of the Trust to defraud, or any benefit to the Trust. The lack of specific allegations of scienter compels dismissal of the Trust from Count IV.

DATED: April 6, 2007.

Respectfully,

GILBERT R. SEROTA
PATRICIA J. MEDINA
JASON M. SKAGGS
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A PROFESSIONAL CORPORATION

By:     /s/
    GILBERT R. SEROTA

Attorneys for FUNDS DEFENDANTS