1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   BRUCE A. ERICSON  #76342
2  CLIFFORD C. HYATT  #196458
   DAVID L. STANTON  #208079
3  JACOB R. SORENSEN  #209134
   RYAN K. TAKEMOTO  #221169
4  50 Fremont Street
   Post Office Box 7880
5  San Francisco, CA  94120-7880
   Telephone: (415) 983-1000
6  Facsimile: (415) 983-1200
   bruce.ericson@pillsburylaw.com
7
   Attorneys for Defendants
8  WELLS FARGO & COMPANY and
   WELLS FARGO INVESTMENTS, LLC
9
10 [THE NAMES AND ADDRESSES OF OTHER COUNSEL
   APPEAR ON THE SIGNATURE PAGE]
11

12                UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                  SAN FRANCISCO DIVISION

15

16 RONALD SIEMERS, Individually And On       No. C-05-04518-WHA
   Behalf Of ALL OTHERS SIMILARLY
17 SITUATED,                                 CLASS ACTION (PSLRA)

18                        Plaintiff,         **MOTION OF DEFENDANTS**
                                             **WELLS FARGO INVESTMENTS,**
19            vs.                            **LLC, WELLS FARGO FUNDS**
                                             **DISTRIBUTOR, LLC, WELLS**
20 WELLS FARGO & COMPANY, et al.,            **FARGO FUNDS TRUST, WELLS**
                                             **FARGO & CO. AND STEPHENS**
21                        Defendants.        **INC. FOR JUDGMENT ON THE**
                                             **PLEADINGS**
22
                                             Date:      May 17, 2007
23                                           Time:      8:00 a.m.
                                             Honorable William Alsup
24
                                             Filed herewith:
25                                           1.      Declaration of Amy Marth
                                             2.      Request for Judicial Notice
26

27         **REDACTED – FOR FILING IN THE PUBLIC RECORD**

28

1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    BRUCE A. ERICSON #76342
2   CLIFFORD C. HYATT #196458
    DAVID L. STANTON #208079
3   JACOB R. SORENSEN #209134
    RYAN K. TAKEMOTO #221169
4   50 Fremont Street
    Post Office Box 7880
5   San Francisco, CA 94120-7880
    Telephone: (415) 983-1000
6   Facsimile: (415) 983-1200
    bruce.ericson@pillsburylaw.com
7
    Attorneys for Defendants
8   WELLS FARGO & COMPANY and
    WELLS FARGO INVESTMENTS, LLC
9

10  [THE NAMES AND ADDRESSES OF OTHER COUNSEL
    APPEAR ON THE SIGNATURE PAGE]
11

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14                 SAN FRANCISCO DIVISION

15

16  RONALD SIEMERS, Individually And On        No. C-05-04518-WHA
    Behalf Of ALL OTHERS SIMILARLY
17  SITUATED,                                   CLASS ACTION (PSLRA)

18                           Plaintiff,         **MOTION OF DEFENDANTS
                                                WELLS FARGO INVESTMENTS,**
19          vs.                                 **LLC, WELLS FARGO FUNDS
                                                DISTRIBUTOR, LLC, WELLS**
20  WELLS FARGO & COMPANY, et al.,              **FARGO FUNDS TRUST, WELLS
                                                FARGO & CO. AND STEPHENS**
21                           Defendants.        **INC. FOR JUDGMENT ON THE
                                                PLEADINGS**
22
                                                Date:      May 17, 2007
23                                              Time:      8:00 a.m.
                                                Honorable William Alsup
24
                                                Filed herewith:
25                                              1.      Declaration of Amy Marth
                                                2.      Request for Judicial Notice
26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION.................................................................................1

SUPPORTING MEMORANDUM ......................................................................................2

I.    INTRODUCTION. ...................................................................................................2

II.   ISSUES PRESENTED. ............................................................................................3

III.  REQUESTED RELIEF. ...........................................................................................3

IV.   STATEMENT OF FACTS.......................................................................................3

      A.    The Order limits Plaintiffs' claims to five funds...........................................3

      B.    The TAC shows that Plaintiffs' purchases of the five funds either are
            time-barred or resulted in gains. ...................................................................4

            1.    Plaintiff McKenna. .............................................................................4

            2.    Plaintiff Siemers. ...............................................................................5

V.    ARGUMENT. ..........................................................................................................7

      A.    Judgment should be entered where there are no issues of material fact
            and Movants are entitled to judgment as a matter of law..............................7

      B.    Section 13 bars McKenna's '33 Act claims entirely and Siemers' '33
            Act claims in part............................................................................................8

            1.    Section 13 erects an absolute bar to '33 Act claims brought
                  more than three years after purchase of the securities in
                  question...............................................................................................8

            2.    All of McKenna's '33 Act claims are time-barred as a matter
                  of law..................................................................................................9

            3.    Siemers' purchases of the Wells Fargo Diversified Equity
                  Fund before November 4, 2002 are similarly time-barred as a
                  matter of law.....................................................................................10

      C.    Siemers has no damages cognizable under Section 12(a)(2). .......................11

      D.    Because Counts I and II fail, Count III must fail too. ..................................13

VI.   CONCLUSION. ......................................................................................................14

1

**TABLE OF AUTHORITIES**

2

**Cases**

3      Caviness v. Derand Resources Corp.,
           983 F.2d 1295 (4th Cir. 1993) ............................................................................. 9

4

5      Celotex Corp. v. Catrett,
           477 U.S. 317 (1983) ........................................................................................... 8

6      Cook v. Deltona Corp.,
           753 F.2d 1552 (11th Cir. 1985) .......................................................................... 9

7

8      County of Santa Clara v. Astra U.S., Inc.,
           428 F. Supp. 2d 1029 (N.D. Cal. 2006) ............................................................ 10

9      Davidson v. Wilson,
           973 F.2d 1391 (8th Cir. 1992) ............................................................................ 9

10

11     Doleman v. Meiji Mutual Life Ins. Co.,
           727 F.2d 1480 (9th Cir. 1984) ............................................................................ 7

12     Epstein v. Wash. Energy Co.,
           83 F.3d 1136 (9th Cir. 1996) ............................................................................ 10

13

14     Finkel v. Stratton Corp.,
           962 F.2d 169 (2d Cir. 1992) ............................................................................... 9

15     Haskell v. Time, Inc.,
           857 F. Supp. 1392 (E.D. Cal. 1994) ................................................................... 6

16

17     In re Broderbund/Learning Co. Sec. Litig.,
           294 F.3d 1201 (9th Cir. 2002) ..................................................................... 11, 12

18     In re Infonet Services Corp. Sec. Lit.,
           310 F. Supp. 2d 1106 (C.D. Cal. 2003) ............................................................ 10

19

20     Jablon v. Dean Witter & Co.,
           614 F.2d 677 (9th Cir. 1980) .............................................................................. 8

21     Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co., Inc.,
           32 F.697 (2d Cir. 1994) ...................................................................................... 9

22

23     Merzin v. Provident Financial Group, Inc. 311 F. Supp. 2d 674 (S.D. Ohio
           2004).................................................................................................................. 13

24     Northern Indian Gun & Outdoor Show, Inc. v. City of South Bend,
           163 F.3d 449 (7th Cir. 1998) .............................................................................. 7

25

26     P. Stolz Family Partnership L.P. v. Daum,
           355 F.3d 92 (2d Cir. 2004) ................................................................................. 9

27     Paracor Finance, Inc. v. General Electric Capital Corp.,
           96 F.3d 1151 (9th Cir. 1996) ............................................................................ 13

28

Peia v. United States,
    152 F. Supp. 2d 226 (D. Conn. 2001) ................................................................ 7

Pinter v. Dahl,
    486 U.S. 622 (1988) ........................................................................................... 11

PPM Am., Inc. v. Marriott Corp.,
    853 F. Supp. 860 (D. Md. 1994) ........................................................................ 12

Randall v. Loftsgaarden,
    478 U.S. 647 (1986) ........................................................................................... 11

Robertson v. Dean Witter Reynolds, Inc.,
    749 F.2d 530 (9th Cir. 1984) ............................................................................... 7

SEC v. Seaboard Corp.,
    677 F.2d 1301 (9th Cir. 1982) ......................................................................... 8, 9

Sheppard v. Beerman,
    18 F.3d 147 (2d Cir. 1994) ................................................................................. 7

SmileCare Dental Group v. Delta Dental Plan of California, Inc.,
    88 F.3d 780 (9th Cir.), cert. denied, 519 U.S. 1028 (1996) ............................... 7

Strigliabotti v. Franklin Resources, Inc.,
    398 F. Supp. 2d 1094 (N.D. Cal. 2005) ............................................................. 8

Toombs v. Leone,
    777 F.2d 465 (9th Cir. 1985) .......................................................................... 9, 10

Wigand v. Flo-Tek, Inc.,
    609 F.2d 1028 (2d Cir. 1979) ............................................................................ 12

Yanez v. United States,
    63 F.3d 870 (9th Cir. 1995) ................................................................................ 7

**Statutes and Codes**

United States Code
    Title 15, section 77l(a)(2) ........................................................................... passim
    Title 15, section 77m ................................................................................... passim
    Title 15, section 77o ............................................................................................ 2
    Title 15, section 78j ..................................................................................... 11, 15

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 10(c) ............................................................................................................ 6
    Rule 12(b)(6) ................................................................................................... 7, 12
    Rule 12(c) ........................................................................................................ 1, 7
    Rule 56(c) ............................................................................................................ 8

1

**Other Authorities**

2   5C C. Wright & A. Miller, Federal Practice and Procedure §1368 (3d ed.
    2004) ............................................................................................................... 8

3

C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1368

4       (1969) .............................................................................................................. 7

5   H.R. Rep. No. 85, 73d Cong., 1st Sess. (1933) .................................................... 11

6   William W Schwarzer, et al., California Practice Guide: Federal Civil
    Procedure Before Trial, § 9:340 (2006) ........................................................ 8

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- iv -

1     ### NOTICE OF MOTION AND MOTION

2     TO PLAINTIFFS RONALD SIEMERS ("Siemers") AND FORREST McKENNA

3     ("McKenna"), AND TO THEIR ATTORNEYS OF RECORD:

4          PLEASE TAKE NOTICE that on May 17, 2007, at 8:00 a.m., or as soon thereafter

5     as the matter may be heard, in the courtroom of the Honorable William Alsup, defendants

6     **WELLS FARGO INVESTMENTS, LLC** ("WFI"), **WELLS FARGO FUNDS**

7     **DISTRIBUTOR, LLC** ("WFFD"), **WELLS FARGO FUNDS TRUST** ("WFFT"),

8     **WELLS FARGO & CO.** ("Wells Fargo & Co.") and **STEPHENS INC.** ("Stephens")

9     (collectively, "Movants") will bring on for hearing this motion for judgment on the

10    pleadings.  This motion is made pursuant to Rule 12(c) of the Federal Rules of Civil

11    Procedure on the ground that there is no genuine issue of material fact and Movants are

12    entitled to dismissal of the following Counts of the TAC:

13    | Movant | Count |
      |--------|-------|
14    | WFI | I |
15    | WFFD, WFFT, Stephens | II |
16    | Wells Fargo & Co. | III |

17         This motion is based on this notice of motion and motion, the memorandum set

18    forth below, the request for judicial notice filed herewith, the proposed order filed herewith,

19    such further evidence and argument as may be presented to the Court on this motion, and

20    all of the Court's files and records in this action.

21         Also filed herewith—but not needed to grant this motion (*see* footnote 5 below)—is

22    the declaration of Amy Marth.  We offer this declaration to demonstrate that the ground

23    presented in parts IV.B.2 and V.C of the supporting memorandum below for dismissing

24    Counts I through III (namely, that Siemers has no legally cognizable damages) cannot be

25    avoided or remedied by amendment.

26

27

28

1        **SUPPORTING MEMORANDUM**

2    I.    **INTRODUCTION.**

3            Plaintiffs Siemers and McKenna have no claims under TAC Counts I, II and III

4    either because they bought their mutual funds too long ago and their claims are barred by

5    the statute of limitations, or because they have no legally cognizable damages.  All of

6    McKenna's purchases are barred by the statute of limitations.  Some of Siemers' purchases

7    are barred by the statute of limitations; he has no legally cognizable damages as to the rest.

8    Accordingly, Counts I, II and III should be dismissed.

9            Plaintiffs' Third Amended Complaint ("TAC" or "Dkt. 251") demonstrates on its

10   face that most of Plaintiffs' claims under the Securities Act of 1933 (Counts I, II and III)

11   are barred by the '33 Act's statute of limitations, Section 13, 15 U.S.C. § 77m.  Section 13

12   absolutely bars claims based on securities purchased more than three years before suit was

13   filed.  The TAC plainly states that McKenna made all his alleged purchases and Siemers

14   made some of his alleged purchases more than three years before this action was filed.  To

15   this extent, Counts I and II, which arise under Section 12(a)(2) of the '33 Act, 15 U.S.C.

16   § 77l(a)(2), and Count III, which arises under Section 15 of the '33 Act, 15 U.S.C. § 77o,

17   are time-barred and should be dismissed.

18           To the extent that Siemers made purchases not time-barred by Section 13, his '33

19   Act claims still fail because he does not and cannot allege any damages cognizable under

20   Section 12(a)(2), which provides a very specific remedy:  The plaintiff can rescind and

21   receive back his purchase price (with interest, less income), or, if he has already sold the

22   security, he can receive damages according to the same rescissory measure.  If the plaintiff

23   already sold the security for more than his purchase price, or if he still holds the security but

24   its market value when the suit was filed exceeds the purchase price, the plaintiff has no

25   Section 12(a)(2) damages.  Siemers sold two of his mutual funds at substantial gains.  He

26   still holds a third fund, but he could have sold it at a gain the date this suit was filed—and

27   he could sell it for a much bigger gain today.  Thus, he has no Section 12(a)(2) damages.

28           For these reasons, the Court should dismiss TAC Counts I, II and III.

1   II.   **ISSUES PRESENTED.**

2         A.   Can Plaintiff McKenna state a claim under Section 12(a)(2) where both of

3   his alleged purchases of Wells Fargo mutual funds occurred more than three years before

4   the complaint herein was filed?

5         B.   Can Plaintiff Siemers state a claim under Section 12(a)(2) as to purchases of

6   Wells Fargo mutual funds that occurred more than three years before the complaint herein

7   was filed?

8         C.   Can Plaintiff Siemers state a claim under Section 12(a)(2) as to purchases of

9   Wells Fargo mutual funds where he (1) sold the fund at a gain over his purchase price or

10  (2) still holds the fund but could have sold it at a gain over his purchase price the date this

11  suit was filed?

12  III.  **REQUESTED RELIEF.**

13        Movants respectfully request judgment on the pleadings and an order:

14        A.   Dismissing all of McKenna's claims under TAC Counts I, II and III as

15  barred by the statute of limitations.

16        B.   Dismissing all of Siemers' claims under TAC Counts I, II and III as to Wells

17  Fargo Funds either as barred by the statute of limitations, or for failure to plead legally

18  cognizable damages.  (The dismissal would not affect Siemers' claims as to non-proprietary

19  funds:  These claims have been severed and stayed, and thus are not part of this motion.)

20  IV.  **STATEMENT OF FACTS.**

21        The narrow issues presented here derive from the Court's March 9, 2007 Order

22  Identifying Claims to Proceed and Dismissing All Other Claims and Granting Motion to

23  Amend in Part, Dkt. 248 (hereinafter "the Order"), and the TAC.

24  **A.   The Order limits Plaintiffs' claims to five funds.**

25        After two motions to dismiss (*see, e.g.*, Dkts. 65, 66 and 126-1) and supplemental

26  briefings (*see, e.g.*, Dkts. 190, 193, 202, 203, 221 and 222), the Court limited this case to

27  five Wells Fargo funds:

28

1 • Wells Fargo Advantage Small Cap Growth Fund;

2 • Wells Fargo TR Montgomery Emerging Markets Focus Fund;

3 • Wells Fargo Diversified Equity Fund;

4 • Wells Fargo Advantage Large Company Growth Fund; and,

5 • Wells Fargo Advantage Total Return Bond Fund.

6 Order at 33:23-25.

7      McKenna was allowed to join this action "only as to his claims against the Wells

8 Fargo Advantage Large Company Growth Fund, the Wells Fargo Advantage Total Return

9 Bond Fund, and the Wells Fargo Advantage Small Cap Growth Fund. He may not assert

10 claims involving non-Wells Fargo Funds." Order at 32:24-27. All of Siemers' claims as to

11 funds other than these five (be they Wells Fargo funds or otherwise) were stayed or

12 dismissed. *See, e.g., id.* at 33:27-34:1, 34:16-18. In addition, but for Count I, the Order

13 dismissed WFI as a defendant. *See id.* at 34:3-15.

14 **B.**    **The TAC shows that Plaintiffs' purchases of the five funds either are time-**

15      **barred or resulted in gains.**

16      This action was filed on November 4, 2005. *See* Dkt. 1. Therefore,

17 Section 12(a)(2) claims based on fund purchases made before November 5, 2002 are

18 absolutely time-barred. The TAC and Exhibits A and B thereto show that only a few of

19 Siemers' purchases overcome that bar.

20 **1.**    **Plaintiff McKenna.**

21      McKenna alleges only two purchases of Wells Fargo funds (actually he bought

22 variable annuities, not mutual funds, but for purposes of this motion we assume *arguendo*

23 that he bought mutual funds):

24 • The purchase of 191.84 shares of Wells Fargo Advantage Large Company Growth

25    Fund on May 3, 2001; and,

26 • The purchase of 252.18 shares of Wells Fargo Advantage Small Cap Growth Fund

27    on May 3, 2001. *See* TAC ¶ 31 and Ex. B thereto.

28 Both of those purchases allegedly occurred on May 3, 2001. That's four years, six months

1   and one day before the original complaint herein was filed on November 4, 2005.

2   McKenna alleges no purchases within three years of the original complaint. Indeed, he says

3   that he had not only purchased but **sold** his Wells Fargo mutual funds by July 2001—four

4   years and four months before the original complaint was filed. *See* TAC Ex. B.[1]

5       As for the Wells Fargo Advantage Total Return Bond Fund, the TAC fails to allege

6   when McKenna purchased it. All it alleges is that McKenna sold that fund in July 2001—

7   again, four years and four months before the original complaint was filed. *See id.*[2]

8   **2.**    **Plaintiff Siemers.**

9       *Purchases.* Siemers alleges purchases of three Wells Fargo funds:

10  •    Purchases of Wells Fargo Diversified Equity Fund (NVDAX) at various times and

11       prices between July 14, 2000 and December 24, 2003. *See* TAC Ex. A, at 2-3.

12  •    Three purchases of Wells Fargo Advantage Small Cap Growth Fund (MNSCX),

13       consisting of 620.018 shares on February 20, 2004 (at $11.08), another 217.028

14       shares on February 20, 2004 (at $11.29), and another 13.384 shares on

15       December 15, 2004 (at $11.59). *See id.*

16  •    One purchase of Wells Fargo TR Montgomery Emerging Markets Focus Fund

17       (MFFAX), consisting of 451.264 shares on February 23, 2004 (at $22.16). *See id.*

18       *Profits.* Siemers made a profit on each fund he purchased within the period of

19  limitations:

20  •    Wells Fargo Diversified Equity Fund (NVDAX):

21      ➤    Siemers' purchases of Wells Fargo Diversified Equity Fund made before

22         November 5, 2002 are barred by the statute of limitations.

23

---

24  [1]    This motion assumes *arguendo* but does not concede that McKenna's claim would relate back to the initial date of filing of this action, November 4, 2005. McKenna did not

25  become a plaintiff until March 9, 2007. Dkt. 248. He did not even seek to become a plaintiff until November 17, 2006. *See* Dkts. 159-60.

26  [2]    Plaintiffs admit that McKenna "owned and sold [that fund] only when it was managed by Montgomery Asset Management, before it became a Wells Fargo mutual

27  fund . . ." *See* Pltfs. Memo. in Opp. to Fund Defendants' Motion to Dismiss Count IV (Dkt. 266), at 13.

28

1      ➤     Siemers' purchases after that date were all made at prices between $31.37

2            and $38.98—less than the price at which he alleges he sold his shares on

3            dates in February and April 2004 (ranging from $40.02 to $41.21 per share).

4            *See id.* Even if these alleged purchases are matched against the alleged

5            lowest (February 24, 2004) sales price, his profit was 19%.[3]

6   •   Wells Fargo Advantage Small Cap Growth Fund (MNSCX):

7     ➤     Siemers paid $9,755.12 for 850.43 shares (ranging from $11.08 to $11.59

8            per share). *See* TAC Ex. A.

9     ➤     Siemers continues to hold shares of that fund. *See* TAC ¶ 11.

10     ➤     At the price the day this action was filed ($12.57), he had a profit of 10%.

11     ➤     At the current price ($13.87 on April 5, 2007), he has a profit of 21%.[4]

12   •   Wells Fargo TR Montgomery Emerging Markets Focus Fund (MFFAX):

13     ➤     Siemers paid $10,000 for 451.264 shares ($22.16 a share). *See* TAC Ex. A.

14     ➤     No sale is alleged.[5]

15

---

16   [3]     Figures concerning Siemers' purchases and sales of the Wells Fargo Diversified Equity Fund are taken entirely from Ex. A to the TAC, which is considered part of the TAC for purposes here. "Under Fed. R. Civ. P. 10(c), the complaint is deemed to include any documents attached to it as exhibits as well as any documents incorporated into the complaint by reference." *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1396 (E.D. Cal. 1994). Specifically, page two (towards the bottom) and page three (towards the top) of Ex. A state that Siemers purchased shares of that fund on November 15, 2002, December 16, 2002, December 24, 2002, January 18, 2003, February 18, 2003, March 17, 2003, April 15, 2003, May 15, 2003, and December 24, 2003 (twice) at the following prices, respectively: $34.11, $34.03, $31.37, $34.13, $31.56, $31.71, $32.91, $32.91, $35.06 and $38.98 (twice). Multiplying each transaction together (*i.e.*, shares purchased x share price) and adding all of the results together demonstrates that Siemers' total expenditure was $1,547.54 for 46.064 shares. According to page seven (towards the bottom) of Ex. A, Siemers sold his shares of that fund on February 23, 2004, February 24, 2004 and April 7, 2004, at $40.92, $40.02 and $41.21 per share, respectively. Even using the lowest share sale price ($40.02), Siemers' proceeds totaled $1,843.48 (*i.e.*, 46.064 shares x $40.02), amounting to a $295.94 profit and a 19% gain. For a tabular representation of this calculation, see the Appendix to this motion, page 16 below.

25   [4]     We ask the Court to take judicial notice of Yahoo Finance's price per share quotes for this fund on November 4, 2005 and April 5, 2007. *See* Request for Judicial Notice, filed herewith, at 1:10-23, Exs. A, B.

27   [5]

**REDACTED**

28                                                    Declaration of (continued...)

1       ➢      At the price the day this action was filed ($26.89), he had a profit of 21%.

2       ➢      At the current price ($39.00 on April 5, 2007), he has a profit of 76%.[6]

3   V.     **ARGUMENT.**

4   A.     **Judgment should be entered where there are no issues of material fact and**

5          **Movants are entitled to judgment as a matter of law.**

6       A party is entitled to judgment on the pleadings under Rule 12(c) of the Federal

7 Rules of Civil Procedure if it "clearly establishes that no material issue of fact remains to be

8 resolved and that he is entitled to judgment as a matter of law." *Doleman v. Meiji Mutual*

9 *Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984) (*quoting* C. Wright & A. Miller, *Federal*

10 *Practice and Procedure: Civil* § 1368, at 690 (1969)) (internal quotations omitted). "Upon

11 motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), the court 'appl[ies]

12 the same standard as that applicable to a motion under Rule 12(b)(6).'" *Peia v. United*

13 *States*, 152 F. Supp. 2d 226, 232 (D. Conn. 2001) (*quoting Sheppard v. Beerman*, 18 F.3d

14 147, 150 (2d Cir. 1994)); *accord, Northern Indian Gun & Outdoor Show, Inc. v. City of*

15 *South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) ("We review Rule 12(c) motions under the

16 same standard as a motion to dismiss under Rule 12(b).").

17       The court may grant such a motion as a matter of law for "(1) [the] lack of a

18 cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare*

19 *Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996),

20 *cert. denied*, 519 U.S. 1028 (1996) (*quoting Robertson v. Dean Witter Reynolds, Inc.*,

21 749 F.2d 530, 534 (9th Cir. 1984)). And the court may enter judgment on less than all

22 causes of action. *See, e.g., Strigliabotti v. Franklin Resources, Inc.*, 398 F. Supp. 2d 1094,

23 _____

24 (...continued)
Amy Marth, filed herewith, ¶ 4.  This evidence is offered in support of dismissal with

25 prejudice because leave to amend would be futile.  If the Court also considers this
evidence in support of a finding that WFI is entitled to judgment as a matter of law, the

26 standards of Rule 56 would apply and are met.

27 [6]     We ask the Court to take judicial notice of Yahoo Finance's price per share quotes
for this fund on November 4, 2005 and April 5, 2007.  *See* Request for Judicial Notice,
filed herewith, at 1:24-2:1, Exs. C, D.

28

1   1097 (N.D. Cal. 2005) (citing William W Schwarzer, et al., California Practice Guide:

2   Federal Civil Procedure Before Trial, § 9:340 (2006) (common practice to permit "partial

3   judgment on the pleadings")).

4       The statute of limitations defense "may be raised by a motion for dismissal or by

5   summary judgment motion." *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.

6   1980). "If the running of the statute is apparent on the face of the complaint, the defense

7   may be raised by motion to dismiss." *Id.*; *accord* 5C C. Wright & A. Miller, Federal

8   Practice and Procedure § 1368 (3d ed. 2004) (stating that "when a statute of limitations

9   defense is apparent on the face of the complaint and no question of fact exists, then a

10  judgment on the pleadings may be appropriate").  If such a motion is made, the court may

11  consider evidence outside the pleadings, but if that evidence concerns disputed facts, "the

12  motion shall be treated as one for summary judgment, and disposed of as provided in

13  Rule 56 . . . ." Fed. R. Civ. P. 12(c).  In that instance, summary judgment shall be rendered

14  if the evidence demonstrates "that there is no genuine issue as to any material fact and that

15  the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*

16  *also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1983).

17  **B.    Section 13 bars McKenna's '33 Act claims entirely and Siemers' '33 Act claims**

18  **in part.**

19  **1.    Section 13 erects an absolute bar to '33 Act claims brought more than three**

20  **years after purchase of the securities in question.**

21       Section 12(a)(2) claims are governed by the limitations set forth in Section 13. *See*

22  *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1308 (9th Cir. 1982).  Section 13 states:

23       No action shall be maintained to enforce any liability created under
         [Section 11 or Section 12(a)(2)] unless brought within one year after the
24       discovery of the untrue statement or the omission, or after such discovery
         should have been made by the exercise of reasonable diligence, or, if the
25       action is to enforce a liability created under [Section 12(a)(1)], unless
         brought within one year after the violation upon which it is based. In no
26       event shall any such action be brought to enforce a liability created under
         [Section 11 or Section 12(a)(1)] more than three years after the security was
27       bona fide offered to the public, **or under [Section 12(a)(2)] more than**
         **three years after the sale.**

28

1    (Emphasis added.)  The "sale" referred to at the end of Section 13 is the sale *to* the plaintiff,

2    not the sale *by* the plaintiff.  *See, e.g., SEC v. Seaboard Corp.*, 677 F.2d at 1308 (cross-

3    claim barred as filed more than three years after the sale to cross-claimants); *Finkel v.*

4    *Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992) (limitations period runs from time of

5    plaintiff's binding commitment to purchase, not from later date of his payment for the

6    stock).

7          Section 13's three-year limit is "absolute" and not subject to equitable tolling.

8    *SEC v. Seaboard Corp.*, 677 F.2d at 1308; *accord Jackson Nat. Life Ins. Co. v. Merrill*

9    *Lynch & Co., Inc.*, 32 F.3d 697, 704 (2d Cir. 1994) ("The three-year period is an absolute

10   limitation which applies whether or not the investor could have discovered the violation.")

11   (*citing SEC v. Seaboard Corp.*, 677 F.2d at 1308); *Cook v. Deltona Corp.*, 753 F.2d 1552,

12   1562 n.4 (11th Cir. 1985) ("The three-year limitation in the 1933 Act . . . has been held to

13   be an absolute bar, notwithstanding allegations of fraudulent concealment.").  Thus, "[e]ven

14   where [the] one year limit is satisfied, the plaintiff must also bring the action within 'three

15   years after the sale.'"  *Finkel*, 962 F.2d at 172 (*quoting* Section 13).  Sometimes the three-

16   year limitation of Section 13 is said to be a "statute of repose" rather than a "statute of

17   limitations" because it is not subject to tolling.  *See P. Stolz Family Partnership L.P. v.*

18   *Daum*, 355 F.3d 92, 102 (2d Cir. 2004) (construing Section 13's second sentence three-year

19   period to be a statute "of repose," not "of limitations").

20   **2.    All of McKenna's '33 Act claims are time-barred as a matter of law.**

21         "In asserting a violation of Section 12, the plaintiff must affirmatively plead

22   sufficient facts in his complaint to demonstrate conformity with the statute of limitations."

23   *Toombs v. Leone*, 777 F.2d 465, 468 (9th Cir. 1985); *Caviness v. Derand Resources Corp.*,

24   983 F.2d 1295, 1302 (4th Cir. 1993) ("It is the general rule that in these circumstances the

25   plaintiff must plead and prove facts that show that his action was filed within the time

26   periods specified by statute."); *Davidson v. Wilson*, 973 F.2d 1391, 1402 n.8 (8th Cir. 1992)

27   ("compliance with section 13 must be pled with specificity").

28

1    McKenna has failed to meet the pleading requirements set forth in *Toombs*.  Even if

2    McKenna is given the benefit of the initial complaint's November 4, 2005 filing date,

3    Section 13's three-year limitation bars all '33 Act claims he alleges.  "For that reason alone,

4    [McKenna's] claims under [Section 12(a)(2)] must be dismissed." *In re Infonet Services*

5    *Corp. Sec. Lit.*, 310 F. Supp. 2d 1106, 1115 (C.D. Cal. 2003).

6    Leave to amend would be futile.  The TAC alleges that McKenna's relevant Wells

7    Fargo fund purchases occurred on May 3, 2001.  Nothing will change that date.

8    Accordingly, McKenna's claims must be dismissed with prejudice. *See In re Infonet*

9    *Services Corp. Sec. Lit.*, 310 F. Supp. 2d at 1120-21 (dismissing, among other claims,

10   plaintiff's Section 12(a)(2) claim with prejudice after analyzing whether, on the undisputed

11   facts, plaintiff could – if offered the chance – replead the complaint in compliance with

12   Section 13).

13   Finally, the conclusory allegations in the TAC (*see* TAC ¶¶ 272, 280) referring to

14   "members of the class" and saying that "[t]his claim was brought within the applicable

15   statute of limitations" do not plead McKenna around Section 13's absolute bar. *See, e.g.,*

16   *County of Santa Clara v. Astra U.S., Inc.*, 428 F. Supp. 2d 1029, 1032 (N.D. Cal. 2006)

17   ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a

18   motion to dismiss") (*citing Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir.

19   1996)).

20   **3.    Siemers' purchases of the Wells Fargo Diversified Equity Fund before**

21   **November 4, 2002 are similarly time-barred as a matter of law.**

22   Exhibit A to the TAC demonstrates that Siemers commenced purchasing shares of

23   the Wells Fargo Diversified Equity Fund mutual fund on July 14, 2000 and ceased doing so

24   on December 24, 2003. *See* Ex. A. to Dkt. 251.  For the reasons set forth above,

25   Section 13's three-year limit requires dismissal with prejudice of the Section 12(a)(2) claim

26   as it relates to pre-November 4, 2002 purchases of that fund.

27

28

1   **C.     Siemers has no damages cognizable under Section 12(a)(2).**

2           The measure of damages is very different under Section 12(a)(2) than it is under

3   other sections of the securities laws.[7]   The remedies available under Section 12(a)(2) are

4   limited; a plaintiff may "recover the consideration paid for such security with interest

5   thereon, less the amount of any income received thereon, upon the tender of such security,

6   or for damages if he no longer owns the security." 15 U.S.C. § 77*l*(a)(2).  "Thus, § 12(2)

7   prescribes the remedy of rescission except where the plaintiff no longer owns the security."

8   *Randall v. Loftsgaarden*, 478 U.S. 647, 655 (1986).[8]  And "[e]ven in the latter situation, we

9   may assume that a rescissory measure of damages will be employed; the plaintiff is entitled

10  to a return of the consideration paid, reduced by the amount realized when he sold the

11  security and by any income received on the security." *Id.*, at 655-56 (internal quotations

12  omitted); *accord, Pinter v. Dahl*, 486 U.S. 622, 641-42 n.18 (1988).  "Fundamentally,

13  [Sections 11 and 12] entitle the buyer of securities sold upon a registration statement

14  including an untrue statement or omission of material fact, to sue for *recovery of his*

15  *purchase price, or for damages not exceeding such price* . . ." H.R. Rep. No. 85,

16  73d Cong., 1st Sess. 9 (1933) (emphasis added), cited in *Randall*, 478 U.S. at 656.  In other

17  words, the successful plaintiff under Section 12(a)(2) gets his money back (with interest,

18  less income) **but he does not get any other damages**.

19          *In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201 (9th Cir. 2002) illustrates

20  this principle.  Plaintiff Wolfe had acquired stock in The Learning Company ("TLC") when

21  TLC acquired a company in which Wolfe was a stockholder. *See id.* at 1202-03.  Wolfe

22  acquired the TLC stock at a price of $17.6875 a share.  Wolfe disposed of his TLC stock

23  (when TLC was acquired by Mattel in a stock-for-stock deal) at a price of $33.45 per TLC

24  _____

25  [7]     Movants acknowledge that the Court has, in a discussion of Section 10 of the
        Securities Exchange Act of 1934, 15 U.S.C. § 78j, suggested that the loss was "the
26      alleged pilfering of the common fund." Order at 20.  Whether or not such damages are
        cognizable under Section 10 (a point we do not concede but here can assume *arguendo*),
27      Section 12(a)(2) is limited to restitution of the purchase price or equivalent damages.

    [8]     At the time of the *Randall* decision, Section 12(a)(2) was denominated "12(2)."
28

1   share. Wolfe alleged that the market value of TLC stock at the time when he acquired it

2   had been inflated by misstatements, and sued under Sections 11 and 12(a)(2) of the '33 Act.

3   The Ninth Circuit affirmed dismissal under Rule 12(b)(6), ruling that Wolfe had no

4   damages as a matter of law, because the price he paid ($17.6875 per share)—*even if*

5   *inflated*—was less than the price he received on disposition of the TLC shares ($33.45).

6   Discussing Wolfe's Section 12(a)(2) claim, the Ninth Circuit stated:

7        [T]here can be no recovery unless the purchaser has suffered a loss. That is
         to say, what the purchaser is entitled to is "a return of the consideration paid,
8        reduced by the amount realized when he sold the security and by any
         'income received' on the security."
9

10  *Broderbund*, 294 F.3d at 1205 (citing *Randall,* 478 U.S. at 656) (other citations omitted).

11          As shown in part IV.B.2 above, Siemers either sold funds at a profit, or could have

12  sold funds at a profit on the date this case was filed. Thus, he has no Section 12(a)(2)

13  damages even if he alleges that he paid too much for what he bought, or got too little.

14          *Wells Fargo Diversified Equity Fund:*  The TAC shows that Siemers sold his

15  interests in this fund at a substantial gain. Thus, like plaintiff Wolfe in *Broderbund*,

16  Siemers apparently "now attempts to change his . . . gain into a loss." *Broderbund*,

17  294 F.3d at 1205. The attempt in *Broderbund* failed as a matter of law, and Siemers'

18  attempt does as well. *See also PPM Am., Inc. v. Marriott Corp.*, 853 F. Supp. 860, 876,

19  878 (D. Md. 1994) (holding that "if a plaintiff sells the securities at issue for an amount

20  greater than the plaintiff's purchase price, then the plaintiff has suffered no damages

21  recoverable under § 12(2)" and granting summary judgment for defendants on plaintiffs'

22  12(2) claim).

23          *Wells Fargo Small Cap Growth Fund:*  Siemers still holds his interest in this fund.

24  Therefore, rescission is Siemers' only possible remedy under Section 12(a)(2): As the

25  statute clearly provides, and as *Randall* holds, he must tender back his interest and ask for

26  his purchase price back. *See, e.g., Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1035-36 (2d

27  Cir. 1979) ("At the time Wigand filed his complaint, he owned the stock and the only relief

28  available to him under section 12(2) was rescission.") Thus, Siemers "is entitled only to a

1    return of the value of the consideration paid for [shares of that fund], plus interest." *Id.* at

2    1036 (reversing district court's finding that the consideration paid should be measured by

3    the over-the-counter value of the stock received).  But as also demonstrated above, no

4    matter if the rescission date were to be November 4, 2005 or a date last week, Siemers

5    would not be entitled to any award because the interest he would tender back would be

6    worth more than the price he paid for it.  That was true on November 4, 2005, and it was

7    even more true last week.  Thus, Siemers has no claim.  *See Merzin v. Provident Financial*

8    *Group, Inc.* 311 F. Supp. 2d 674, 684 (S.D. Ohio 2004) (dismissing plaintiffs' 12(a)(2)

9    claim because "the purchase price was $25.00 per share, and the stock is trading now in

10    excess of $30.00 per share . . . .").

11        *Wells Fargo TR Montgomery Emerging Markets Focus Fund:*

12

13

**REDACTED**

14

15

16

17   **D.**    **Because Counts I and II fail, Count III must fail too.**

18        Count III, for control person liability under Section 15, can state a claim only if the

19    underlying claims (Counts I and II) survive. *Paracor Finance, Inc. v. General Electric*

20    *Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).  Because Counts I and II fail for the

21    reasons set forth above, so does Count III.

22    //

23    //

24    //

25

26

27

28

1  VI.   **CONCLUSION.**

2         The Court should dismiss all of McKenna's claims under Counts I, II and III and all

3  of Siemers' claims under these counts as to the Wells Fargo funds.

4         Dated:  April 12, 2007.

5                                              PILLSBURY WINTHROP SHAW PITTMAN LLP
                                               BRUCE A. ERICSON
6                                              CLIFFORD C. HYATT
                                               DAVID L. STANTON
7                                              JACOB R. SORENSEN
                                               RYAN K. TAKEMOTO
8                                              50 Fremont Street
                                               Post Office Box 7880
9                                              San Francisco, CA  94120-7880

10

11                                             By ____/s/ Bruce A. Ericson_____
                                                       Bruce A. Ericson

12                                             Attorneys for Defendants
                                               WELLS FARGO & COMPANY and
13                                             WELLS FARGO INVESTMENTS, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **DECLARATION PURSUANT TO GENERAL ORDER 45, § X.B**

2         I, BRUCE A. ERICSON, hereby declare pursuant to General Order 45, § X.B, that I

3    have obtained the concurrence in the filing of this document from each of the other

4    signatories listed below.

5         I declare under penalty of perjury that the foregoing declaration is true and correct.

6         Executed on April 12, 2007, at San Francisco, California.

7
                                        ___ /s/ Bruce A. Ericson _____
8         Dated:  April 12, 2007.

9                                   HOWARD RICE NEMEROVSKI CANADY FALK &
                                    RABKIN
10                                  A Professional Corporation
                                    GILBERT R. SEROTA
11                                  PATRICIA J. MEDINA
                                    JASON M. SKAGGS
12                                  Three Embarcadero Center, 7th Floor
                                    San Francisco, CA 94111-4024
13
                                    By    /s/ Gilbert R. Serota _____
14                                              Gilbert R. Serota
                                    Attorneys for Defendants
15                                  WELLS FARGO FUNDS MANAGEMENT, LLC,
                                    WELLS CAPITAL MANAGEMENT
16                                  INCORPORATED, WELLS FARGO FUNDS
                                    DISTRIBUTOR, LLC, WELLS FARGO FUNDS
17                                  TRUST and STEPHENS INC.

18

19                                  PILLSBURY WINTHROP SHAW PITTMAN LLP
                                    BRUCE A. ERICSON
20                                  CLIFFORD C. HYATT
                                    DAVID L. STANTON
21                                  JACOB R. SORENSEN
                                    RYAN TAKEMOTO
22                                  50 Fremont Street
                                    Post Office Box 7880
23                                  San Francisco, CA 94120-7880

24                                  By    /s/ Bruce A. Ericson _____
                                              Bruce A. Ericson
25                                  Attorneys for Defendants
                                    WELLS FARGO & COMPANY and
26                                  WELLS FARGO INVESTMENTS, LLC

27

28

1

**APPENDIX**

| Wells Fargo Diversified Equity Fund (NVDAX) Purchases During 12(a)(2) Class Period | | | |
|---|---|---|---|
| **Date** | **No. Shares** | **Price** | **Amt. Invested** |
| 11/15/2002 | 5.863 | 34.11 | $200.00 |
| 12/16/2002 | 5.877 | 34.03 | $200.00 |
| 12/24/2002 | 1.296 | 31.37 | $40.66 |
| 1/18/2003 | 5.86 | 34.13 | $200.00 |
| 2/18/2003 | 6.337 | 31.56 | $200.00 |
| 3/17/2003 | 6.307 | 31.71 | $200.00 |
| 4/15/2003 | 6.077 | 32.91 | $200.00 |
| 5/15/2003 | 5.705 | 35.06 | $200.00 |
| 12/24/2003 | 0.204 | 38.98 | $7.95 |
| 12/24/2003 | 2.538 | 38.98 | $98.93 |
| | | | |
| **Total No. Shares** | 46.064 | **Total Amt. Invested** | $1,547.54 |
| | | | |

| Wells Fargo Diversified Equity Fund Sale During 12(a)(2) Class Period | | | |
|---|---|---|---|
| **Date** | **No. Shares** | **Price** | **Amt. Redeemed** |
| 2/24/2004 | 46.064 | 40.02 | $1,843.48 |
| | | | |
| | **Profit** | $1,843.48 - $1,547.54 | **$295.94** |
| | **% Gain** | $295.94 / $1,547.43 | **19%** |

Source: TAC Ex. A. *See* footnote 3 above for a textual discussion of these numbers.