1    PILLSBURY WINTHROP SHAW PITTMAN LLP
      BRUCE A. ERICSON  #76342
2    CLIFFORD C. HYATT  #196458
      DAVID L. STANTON  #208079
3    JACOB R. SORENSEN #209134
      RYAN K. TAKEMOTO  #221169
4    50 Fremont Street
      Post Office Box 7880
5    San Francisco, CA  94120-7880
      Telephone:     (415) 983-1000
6    Facsimile:      (415) 983-1200
      bruce.ericson@pillsburylaw.com

7

8    Attorneys for Defendants
      WELLS FARGO & COMPANY and
      WELLS FARGO INVESTMENTS, LLC

9

10   [THE NAMES AND ADDRESSES OF OTHER COUNSEL
      APPEAR ON THE SIGNATURE PAGE]

11                UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14

15   RONALD SIEMERS, Individually And On     No. C-05-04518-WHA
      Behalf Of ALL OTHERS SIMILARLY
16   SITUATED,                        CLASS ACTION (PSLRA)

17               Plaintiffs,     **REPLY MEMORANDUM IN**
                                          **SUPPORT OF MOTION OF**
18     vs.                               **DEFENDANTS WELLS FARGO**
                                          **INVESTMENTS, LLC, WELLS**
19   WELLS FARGO & COMPANY, et al.,     **FARGO FUNDS DISTRIBUTOR,**
                                          **LLC, WELLS FARGO FUNDS**
20             Defendants.    **TRUST, WELLS FARGO & CO.**
                                          **AND STEPHENS INC. FOR**
21                                         **JUDGMENT ON THE PLEADINGS**

22                                 Date:       May 17, 2007
                                  Time:       8:00 a.m.
23                               The Honorable William Alsup

24

25

26

27

28

700685349v2                                                Reply Memorandum in Support of
Motion for Judgment on the Pleadings
Case No. C-05-04518-WHA

1

**TABLE OF CONTENTS**

2                                                                                                    **Page**

3   **I.**    INTRODUCTION. ..................................................................................1

4   **II.**   THE THREE FUNDS AT ISSUE AFTER PLAINTIFFS' CONCESSIONS. ..........2

5   **III.**  ARGUMENT. .......................................................................................3

6          A.    Judgment should be entered—there are no issues of material fact and
                 Movants are entitled to judgment as a matter of law....................................3

7
          1.    Judicial notice of investment price quotations does not
8                convert this motion to one for summary judgment. ...........................3

9          2.    Plaintiffs concede that the statute of limitations bars
                 McKenna's '33 Act claims and some of Siemers' '33 Act
10               claims..........................................................................................4

11         3.    Siemers has not suffered cognizable damages. .................................4

12               a.    Courts do not award prejudgment interest to plaintiffs
                       who have no losses. ........................................................4

13
                 b.    Siemers' theory of "interest" fails as a matter of law............6

14         B.    Because Counts I and II fail, Count III must fail too. ...................................9

15  **IV.**  CONCLUSION. ..................................................................................10

16

17

18

19

20

21

22

23

24

25

26

27

28

700685349v2                                  - i -                  Reply Memorandum in Support of
                                                                    Motion for Judgment on the Pleadings
                                                                    Case No. C-05-04518-WHA

1                                    **TABLE OF AUTHORITIES**

2                                                                              **Page**

                                              **Cases**
3

4   Andreas v. Volkswagen of America, Inc.,
        210 F. Supp. 2d 1078 (N.D. Iowa 2002),
5           aff'd in part and rev'd in part, 336 F.3d 789 (8th Cir. 2003) ................................... 8

6   Andrews v. Blue,
        489 F.2d 367 (10th Cir. 1973) .................................................................................... 7

7   Ballay v. Legg Mason Wood Walker, Inc.,
        No. 88-6867, 1990 U.S. Dist. LEXIS 4412 (E.D. Pa. 1990) ...................................... 8
8
    Blue Chip Stamps v. Manor Drug Stores,
9       421 U.S. 723 (1975) ..................................................................................................... 9

10  Commercial Union Assurance Co. v. Milken,
        17 F.3d 608 (2d Cir. 1994) ..................................................................................... 5, 9
11
    In re Bank One Sec. Lit.,
12      2002 WL 989454 (N.D. Ill. 2002) .............................................................................. 9

13  In re Itel Sec. Litig.,
        89 F.R.D. 104 (N.D. Cal. 1981) .................................................................................. 8
14
    In re VeriFone Sec. Litig.,
15      784 F. Supp. 1471 (N.D. Cal. 1992),
            aff'd, 11 F.3d 865 (9th Cir. 1993) .......................................................................... 3
16
    Johns Hopkins University v. Hutton,
17      297 F. Supp. 1165 (D. Md. 1968),
        aff'd in part and rev'd in part on other grounds,
18      422 F.2d 1124 (4th Cir. 1970) ............................................................................... 6, 7

19  Lynbrook v. Farmington Municipal Schools Bd. of Ed.,
        232 F.3d 1334 (10th Cir. 2000) .................................................................................. 3
20
    Mecca v. Gibraltar Corp. of America,
21      746 F. Supp. 338 (S.D.N.Y. 1990) ............................................................................. 5

22  Morgan v. AXT, Inc.,
        No. C-04-4362 MJJ, C-05-5106 MJJ,
23      2005 WL 2347125 (N.D. Cal. Sept. 23, 2005)............................................................ 3

24  Nielsen v. Greenwood,
        No. 91 C 6537,
25      1996 U.S. Dist. LEXIS 14441 (N.D. Ill. 1996) ...................................................... 5, 9

26  Paracor Finance, Inc. v. General Electric Capital Corp.,
        96 F.3d 1151 (9th Cir. 1996) ...................................................................................... 9
27
    PPM Am., Inc. v. Marriott Corp.,
28      853 F. Supp. 860 (D. Md. 1994).................................................................................. 9

700685349v2                            - ii -                    Reply Memorandum in Support of
                                                          Motion for Judgment on the Pleadings
                                                          Case No. C-05-04518-WHA

Prager v. LaFaver,
    180 F.3d 1185 (10th Cir. 1999) ................................................................. 3

Ravens v. Iftikar,
    174 F.R.D. 651 (N.D. Cal. 1997) ............................................................. 3

U.S. Ind., Inc. v. Touche Ross & Co.,
    854 F.2d 1223 (10th Cir. 1988) ................................................................. 8

Wickham Contracting Co. v. Local Union No. 3, IBEW,
    955 F.2d 831, 833 (2d Cir.),
    cert. denied, 506 U.S. 946 (1992) ............................................................. 5

**Statutes and Codes**

Securities Act of 1933
    Section 11 ................................................................................................. 8
    Section 12(a)(2) .............................................................................. passim

Securities Exchange Act of 1934
    Section 10(b) ............................................................................................ 9

United States Code
    Title 28, section 1961 ..................................................................... 1, 7, 8

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 12 ..................................................................................................... 3
    Rule 12(c) ................................................................................................. 4
    Rule 56 ..................................................................................................... 3

Securities and Exchange Commission
    Rule 10b-5 ............................................................................................... 8

**Other Authorities**

Paul Roye, Director, SEC Division of Investment Management, Testimony
    Concerning the Mutual Funds Integrity and Fee Transparency Act of
    2003, H.R. 2420 (June 18, 2003) ............................................................. 4

700685349v2        - iii -        Reply Memorandum in Support of
Motion for Judgment on the Pleadings
Case No. C-05-04518-WHA

1   **I.      INTRODUCTION.**

2         Plaintiffs Ronald Siemers ("Siemers") and Forrest McKenna ("McKenna") concede

3   that Movants **WELLS FARGO INVESTMENTS, LLC** ("WFI"), **WELLS FARGO**

4   **FUNDS DISTRIBUTOR, LLC** ("WFFD"), **WELLS FARGO FUNDS TRUST**

5   ("WFFT"), **WELLS FARGO & CO.** ("Wells Fargo & Co.") and **STEPHENS INC.**

6   ("Stephens") are entitled to judgment on the pleadings on Counts I and II as to their pre-

7   November 2002 purchases of Wells Fargo funds.  *See* Opposition filed April 26, 2007

8   ("Opposition" or "Dkt. 312"), at 1:17-23.  They state that "neither Plaintiff intended to

9   plead any [S]ection 12(a)(2) claim in the Third Amended Complaint with regard to

10  purchases made more than three years before the filing of the Complaint."  *Id*. at 1:18-19.

11  They therefore concede that McKenna has no Section 12(a)(2) claim:  All his purchases

12  were more than three years before the filing of the Complaint.  *Id*. at 1:20-21.

13        That leaves Siemers' purchases of Wells Fargo funds after November 4, 2002.  But

14  these purchases are all purchases on which Siemers has profited, not lost.  Plaintiffs attempt

15  to *create* a loss by adding what they call "interest" to Siemers' initial investments.  But for

16  several reasons this theory does not wash:

17        First, it finds no support in the case law.  Courts recognize that an award of

18  prejudgment interest is inappropriate where, as here, the plaintiff profited.

19        Second, Plaintiffs' "interest" is not "interest" but an attempt to calculate damages

20  under a "benefit of the bargain" measure—a measure at odds with Section 12(a)(2).  (Even

21  Plaintiffs impliedly discredit the legitimacy of their "interest" theory—they place the term

22  in quotes, as do they the term "lost" when they argue that Siemers "lost" money.  *See* Dkt.

23  312, at 8:18, 8:25, 9:7, 9:18.)

24        Third, even if Siemers were allowed prejudgment interest pursuant to 28 U.S.C.

25  § 1961 at the highest rate for a Siemers purchase date, he still shows a profit, not a loss, and

26  thus has no Section 12(a)(2) claim.

27        Accordingly, Counts I, II and III should be dismissed.

28

Reply Memorandum in Support of
Motion for Judgment on the Pleadings
Case No. C-05-04518-WHA

1   **II.      THE THREE FUNDS AT ISSUE AFTER PLAINTIFFS' CONCESSIONS.**

2           In light of Plaintiffs' concessions, the following are the only Section 12(a)(2) -

3   related purchases of Siemers remaining:

4           *Wells Fargo Diversified Equity Fund:*  Siemers alleges that he made ten purchases

5   at various times and prices between November 15, 2002 and December 24, 2003.  *See*

6   Dkt. 312, at 3:10-21.  These purchases were all at prices between $31.37 and $38.98—less

7   than the price at which he alleges he sold his shares on dates in February and April 2004

8   (ranging from $40.02 to $41.21 per share).  *See id.*; *see also* Exhibit ("Ex.") A to Third

9   Amended Complaint, Dkt. 251 ("TAC").  Even if these alleged purchases are matched

10  against the alleged lowest (February 24, 2004) sales price, his profit was 19%.[1]

11          *Wells Fargo Advantage Small Cap Growth Fund:*  Siemers alleges that he made two

12  purchases on  February 20, 2004 and one on December 15, 2004.  *See* Dkt. 312, at 3:1-4.

13  He says he paid $9,755.12 for 850.43 shares (*see* TAC, Ex. A) and still holds these shares.

14  *See* TAC ¶ 11.  Matched against share value on the day this action was filed ($12.57), he

15  has made a profit of 10% on this investment.  And if matched against a recent pricing

16  ($13.87 on April 5, 2007), he has made a profit of 21%.[2]

17          *Wells Fargo TR Montgomery Emerging Markets Focus Fund:*  Siemers alleges that

18  he made one purchase, on February 23, 2004.  *See* Dkt. 312, at 3:6-8.  He says he bought

19  these shares at $22.16 (*see* TAC, Ex. A)—less than the price at which he alleges he sold his

20  shares on or about November 2, 2005 ($25.78).  *See* Dkt. 300, ¶ 4; *accord* Dkt. 312, at 4:3.

21  Thus, Siemers made a profit of 16%.[3]

22

---

23  [1]      Plaintiffs do not challenge Movants' position that comparing Siemers' purchases
24  (number of shares x price) and sales (number of shares x price) of each fund demonstrates
    that he has profited on each of those investments.

25  [2]      Movants have asked the Court to take judicial notice of Yahoo Finance's price per
26  share quotes of this fund for November 4, 2005 and April 5, 2007.  *See* Dkt. 285, at 1:9-
    22, Exs. A, B.

27  [3]      Movants have asked the Court to take judicial notice of Yahoo Finance's price per
    share quotes for this fund for November 4, 2005 and April 5, 2007.  *See* Dkt. 285, at 1:23-
28  2:3, Exs. C, D.

700685349v2                           - 2 -                    Reply Memorandum in Support of
                                                                Motion for Judgment on the Pleadings
                                                                Case No. C-05-04518-WHA

III.    ARGUMENT.

A.    **Judgment should be entered—there are no issues of material fact and Movants are entitled to judgment as a matter of law.**

1.    **Judicial notice of investment price quotations does not convert this motion to one for summary judgment.**

Plaintiffs state that their "evidence requires that the motion … be treated as one for summary judgment and disposed of as provided in Rule 56." Dkt. 312, at 2:14-15 (internal quotations omitted).  That bootstrap argument is wrong.

First, a plaintiff cannot force a court to convert a defendant's Rule 12 motion to a Rule 56 motion by introducing evidence outside the pleadings.  *See Lynbrook v. Farmington Municipal Schools Bd. of Ed.*, 232 F.3d 1334, 1341 (10th Cir. 2000) (concluding that the "mere fact that the parties provided documents to the district court did not require the court to rely on those documents," and rejecting plaintiff's argument that the district court committed error by not converting the Rule 12 motion to a Rule 56 motion where the parties submitted matters outside the pleadings); *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) (court has discretion whether to consider matters outside of the pleadings).

Second, courts can and do take judicial notice of investment price quotations, and properly so.  *See, e.g., Morgan v. AXT, Inc.*, No. C-04-4362 MJJ, C-05-5106 MJJ, 2005 WL 2347125, at *7 (N.D. Cal. Sept. 23, 2005) (taking judicial notice of stock prices); *Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997) (taking judicial notice of stock prices); *In re VeriFone Sec. Litig.*, 784 F. Supp. 1471, 1475 n.2 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir. 1993) (taking judicial notice of stock prices in granting motion to dismiss with prejudice).  Judicial notice of matters outside the pleadings does not convert a Rule 12 motion to a Rule 56 motion.  *See, e.g., Ravens*, 174 F.R.D. 651.

Third, what Plaintiffs offer is not so much evidence as argument.  Plaintiffs submit a declaration of one of their counsel in which he, apparently sitting *pro tem* as his own damage expert, presents spreadsheets that he constructed using numbers that he pulled off

- 3 -

Reply Memorandum in Support of
Motion for Judgment on the Pleadings
Case No. C-05-04518-WHA

1    the Internet.  Dkt. 313.  His numbers suggest that his client could, in hindsight, have made a

2    larger profit by investing in some other fund.  *Id.* ¶ 3 & Ex. B.  No doubt.  But lawyer

3    argument of this sort does not convert a Rule 12(c) motion into a Rule 56 motion.  (Nor

4    does anything presented in Dkt. 313 suggest that the so-called benchmark funds did not

5    themselves pay revenue-sharing.[4])

6    **2.    Plaintiffs concede that the statute of limitations bars McKenna's '33 Act claims**

7    **and some of Siemers' '33 Act claims.**

8    Plaintiffs admit that Section 12(a)(2) claims in the TAC based on pre-November

9    2002 purchases of Wells Fargo funds are barred by the statute of limitations.  *See* Dkt. 312,

10   at 1:17-23.  All of McKenna's purchases predate November 2002.  *See* TAC ¶ 31 & Ex. B.

11   Thus, he is out of Counts I, II and III.  Some of Siemers' purchases predate November

12   2002.  *See* TAC, Ex. A.  To that extent, he too is out of Counts I, II and III.

13   **3.    Siemers has not suffered cognizable damages.**

14   **a.    Courts do not award prejudgment interest to plaintiffs who have no losses.**

15   Plaintiffs assert that determining interest here presents fact issues inappropriate for

16   resolution on a Rule 12(c) motion.  *See* Dkt. 312, at 5:1-7.  They are wrong.

17   In general, "an award of prejudgment interest rests in the sound discretion of the

18   trial court after careful consideration of the factors set forth in *Wickham Contracting Co.,*

19   955 F.2d at 833-34."  *Commercial Union Assurance Co. v. Milken*, 17 F.3d 608, 615 (2d

20

---

21   [4]      Most of the major mutual fund families engaged in revenue-sharing at the time, and
22   still do.  As the SEC's Director of Investment Management testified before Congress in
     June 2003:
23

24      Over the past decade, broker-dealers selling [mutual] fund shares have
        increasingly demanded compensation for distributing fund shares that is over
        and above the amounts that they receive in the form of sales loads and rule
25      12b-1 distribution fees.  Thus, brokers have required payments for "shelf
        space," that is, for giving "preferred" status to a particular fund group.
26

27   Paul Roye, Director, SEC Division of Investment Management, *Testimony Concerning
     the Mutual Funds Integrity and Fee Transparency Act of 2003, H.R. 2420* (June 18,
     2003).
28

700685349v2                                        - 4 -                          Reply Memorandum in Support of
                                                                                 Motion for Judgment on the Pleadings
                                                                                 Case No. C-05-04518-WHA

1   Cir. 1994).[5]  "Contrary to Plaintiff[s'] intimation, an award of prejudgment interest is not

2   automatic."  *Nielsen v. Greenwood*, No. 91 C 6537, 1996 U.S. Dist. LEXIS 14441, at * 29

3   (N.D. Ill. 1996).

4           Here, however, an award of prejudgment interest is not warranted because Siemers

5   profited on the fund purchases at issue.  *Nielsen v. Greenwood* illustrates this point.  There,

6   one plaintiff asserted a Section 12(a)(2) claim for his purchase and sale of certain

7   debentures.  That plaintiff "invested $50,000 in his Debentures, lost $1,250 upon their sale,

8   but gained $11,000 in interest payments – a 19.5% return on his investment."  *Id.* at * 30.

9   The defendants argued that the $19,000 in interest payments should offset the $1,250 loss,

10  resulting in a net gain—and no claim for damages.  The plaintiff argued that interest at

11  13.75% should be added to the purchase price, resulting in a net loss.  The court rejected the

12  plaintiff's approach, noting that the "circumstances reflect a positive recovery, not a loss."

13  *Id.* at * 30.  In that circumstance, "awarding additional prejudgment interest 'would

14  constitute a waste of judicial resources and a thwarting of Congress' aim in enacting

15  § 12(2).'"  *Id.* at *32 (quoting *Commercial Union Assurance Co.*, 17 F.3d at 615).[6]

16  Likewise, Siemers cannot recover under Section 12(a)(2) for making profitable mutual fund

17  investments.

18          Plaintiffs likely know this.  They cite *Mecca v. Gibraltar Corp. of America*, 746 F.

19  Supp. 338 (S.D.N.Y. 1990) for the proposition that courts determine any interest to be

20  awarded.  *See* Dkt. 312, at 6:25-7:3.  The court in *Mecca*, however, concluded that "an

21  award of prejudgment interest is not warranted in this case" because the *Mecca* plaintiffs

22  were adequately compensated without interest.  *Mecca*, 746 F. Supp. at 349.

23

24  _____

25  [5]      The *Wickham* factors are:  (i) the need to fully compensate the wronged party for
        actual damages suffered, (ii) considerations of fairness and the relative equities of the
26      award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general
        principles as are deemed relevant by the court.  *Wickham Contracting Co. v. Local Union*
27      *No. 3, IBEW*, 955 F.2d 831, 833-34 (2d Cir. 1992), *cert. denied*, 506 U.S. 946 (1992).

        [6]      At the time of the *Nielsen* decision, Section 12(a)(2) was denominated "12(2)."
28

- 5 -                    Reply Memorandum in Support of
Motion for Judgment on the Pleadings
Case No. C-05-04518-WHA

1    **b.      Siemers' theory of "interest" fails as a matter of law.**

2          "Plaintiffs believe that one appropriate way to set the interest rate would be to see

3    what return Mr. Siemers would have earned had he invested in non-Wells Fargo mutual

4    funds in the same market segment."  Dkt. 312, at 7:12-13.  That belief, however, has no

5    grounding in Section 12(a)(2) jurisprudence.  It rests instead on a mischaracterization of the

6    case Plaintiffs cite.

7          In support of the theory that "interest" can be determined by reference to a

8    hypothetical alternative investment, Plaintiffs cite *Johns Hopkins University v. Hutton*,

9    297 F. Supp. 1165 (D. Md. 1968), *aff'd in part and rev'd in part on other grounds*,

10   422 F.2d 1124 (4th Cir. 1970)).  But Plaintiffs misconstrue what the court considered "the

11   same type of investment."  *See* 297 F. Supp. at 1229.

12         In *Johns Hopkins*, the University sued to rescind the purchase of an oil and gas

13   production payment, asserting a Section 12(a)(2) claim (among others).  On summary

14   judgment, the district court held that the University was entitled to rescission.  When

15   discussing how to calculate interest for purposes of rescission under Section 12(a)(2), the

16   court stated:

17             In this case Hopkins was simply an investor anticipating a return on its
               investment.  In order to place Hopkins in the position it would have been in
18             were it not for the violations by [defendant] of the standards of Section 12,
               an examination is required to determine what Hopkins could reasonably
19             have been expected to earn by a similar type of investment.

20   *Id*. at 1229.

21         Armed with that block quote's language, Plaintiffs urge this Court to use alleged

22   "benchmarks" that counsel pulled from websites of Morningstar and Yahoo.  Dkt. 313, ¶ 3,

23   at 2:13-14.  Counsel suggests that these numbers reflect the past performance of funds that

24   he deems a "similar type of investment."  Dkt. 312, at 7:22-24.  The pertinent parts of the

25   next paragraph in *Johns Hopkins*, however, demonstrate that Plaintiffs' suggestion does not

26   accurately reflect the court's analysis there.  Instead of looking back at the past

27   performance of alternative investments, the court determined what the University "would

28

700685349v2                                    - 6 -                    Reply Memorandum in Support of
                                                                                          Motion for Judgment on the Pleadings
                                                                                          Case No. C-05-04518-WHA

1   have been expected to earn" by considering what the University had been promised at the

2   time:

3         The $1,300,000 production payment transaction included an undertaking to
          pay to [the University] "the equivalent of interest" at the rate of six percent
4         per annum . . . .  The Trice brochures predicted additional earnings which,
          when calculated, exceed the six percent figure . . . .  A similar Trice
5         production payment sold the year before, calling for payment of the
          "equivalent of interest" at the rate of six percent per annum . . . .  Those
6         undisputed facts establish, at the very least, that [defendant], an experienced
          brokerage firm, considered six percent per annum a reasonable rate of return
7         in 1960 and in 1961 . . . .

8   *Johns Hopkins*, 297 F. Supp. at 1229.  The court, after also looking at the prime rate, then

9   concluded that six percent was the appropriate measure for prejudgment interest—that was

10  a reasonable expectation.  *See id*. at 1230.  Thus, far from suggesting that this Court look

11  *retrospectively* at the alleged market performance of alternative hypothetical investments,

12  the *John Hopkins* court looked *prospectively* at the interest rate reasonably expected by the

13  University at the time of the investment, and awarded that.

14        Plaintiffs' theory departs from *Johns Hopkins* in other respects as well.  Plaintiffs

15  are not suggesting an interest rate, be it four percent, five percent, six percent or whatever.

16  Instead, they are suggesting a "benchmark" characterized by extreme volatility, with rates

17  as high as 49% and as low as a negative 47.88%.  *See* Dkt. 312, at 8:1-12 (table).

18        Plaintiffs' theory is not a theory of "interest" at all, but an attempt to substitute an

19  alternative hypothetical investment for the ones Siemers actually made.  Such a theory is an

20  expectancy measure of damages rather than reliance measure of damages, entirely

21  inconsistent with the rescission remedy of Section 12(a)(2).  *See Andrews v. Blue*, 489 F.2d

22  367, 376 (10th Cir. 1973) (rejecting a "benefit of the bargain" measure of damages because

23  "[i]n a rescission action the proper measure is the amount lost rather than value of the

24  bargain").  Plaintiffs' repeated use of quotations around the words "interest" and "lost"

25  suggests they are well aware of their fallacy.  *See* Dkt. 312, at 8:18, 8:25, 9:6, 9:7, 9:18;

26  Declaration of Adam Gutride (Dkt. 313), at 21:14.

27        Other than the misconstrued *Johns Hopkins* case, Plaintiffs offer no real support for

28  their novel approach.  The other cases they cite lend nothing to their argument:

700685349v2                           - 7 -                    Reply Memorandum in Support of
                                                          Motion for Judgment on the Pleadings
                                                          Case No. C-05-04518-WHA

1     *Andreas v. Volkswagen of America, Inc.*, 210 F. Supp. 2d 1078 (N.D. Iowa 2002),

2  *aff'd in part, rev'd in part,* 336 F.3d 789 (8th Cir. 2003), was a copyright infringement

3  action.  There were no claims under any securities law—contrary to Plaintiffs' claim that

4  this case involved "section 12(a)(2) damages."  Dkt. 312, at 9 n.2.  The *Andreas* court

5  awarded prejudgment interest pursuant to an Iowa statute and post-judgment interest

6  pursuant to 28 U.S.C. § 1961 at the rate of 2.23%.  *Andreas,* 210 F. Supp. 2d at 1086-88.

7     *In re Itel Sec. Litig.*, 89 F.R.D. 104, 114-17 (N.D. Cal. 1981), contains dicta,

8  rendered in connection with a class certification motion, as to why a plaintiff might prefer a

9  Section 12(2) claim to a Section 11 claim.  *Itel* says nothing about whether or how one

10  calculates the appropriate rate of interest.

11     *U.S. Ind.*, *Inc. v. Touche Ross & Co.*, 854 F.2d 1223 (10th Cir. 1988), reverses the

12  denial of prejudgment interest on claims for breach of fiduciary duty and violations of

13  Rule 10b-5.  The Tenth Circuit does not tell us how to calculate interest; it does note,

14  however, that "even where an award of prejudgment interest would serve to compensate the

15  injured party, it is not recoverable as a matter of right."  *Id.* at 1256.

16     *Ballay v. Legg Mason Wood Walker, Inc.*, No. 88-6867, 1990 U.S. Dist. LEXIS

17  4412, * 1-2 (E.D. Pa. 1990), at least involved a claim under Section 12(a)(2) where (unlike

18  here) the plaintiff had suffered an actual loss.  What Plaintiffs neglect to note, however, is

19  that the *Ballay* court did not award speculative "interest" based on hypothetical

20  benchmarks; instead it awarded interest at the rate provided by 28 U.S.C. § 1961.

21     Here, even if (pursuant to *Andreas* and *Ballay*) interest were added at the highest

22  rate under 28 U.S.C. § 1961 for a Siemers purchase date (2.66% on December 15, 2004),

23  Siemers still has no loss.  An interest rate of 2.66% does not come close to equaling

24  Siemers' lowest rate of return on any of his investments at issue—10%.  *See* part II above.

25     We have found no case under Section 12(a)(2) in which a court has constructed

26  prejudgment "interest" with fictitious, alternative investments to *create* a loss for a plaintiff,

27  when the purchase, sale and dividends resulted in an overall gain.  To the contrary, where

28  plaintiffs have profited, interest has been denied and the Section 12(a)(2) claims have

1   failed.  *See, e.g.*, *Commercial Union Assurance Co.*, 17 F.3d at 615; *Nielsen*, 1996 U.S.

2   Dist. LEXIS 14441, at * 29 (both noted above at pages 4-5); *cf. PPM Am., Inc. v. Marriott*

3   *Corp.*, 853 F. Supp. 860, 876, 878 (D. Md. 1994) (stating that "if a plaintiff sells the

4   securities at issue for an amount greater than the plaintiff's purchase price, then the plaintiff

5   has suffered no damages recoverable under § 12(2)"); *In re Bank One Sec. Litig.*, 2002 WL

6   989454, at *8 (N.D. Ill. 2002) (stating that "[a] plaintiff who earns a profit from the stock

7   does not have a securities fraud claim under sections 11 and 12 of the 1933 Act," and

8   narrowing the class to exclude persons who sold stock for more than the consideration

9   paid).

10         Plaintiffs' "coulda, woulda, shoulda" theory of damages has been foreclosed in the

11   context of other securities law claims.  Thus, the Supreme Court's seminal decision in *Blue*

12   *Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 734-35, 747-49, 754-55 (1975), limited

13   claims to securities actually purchased or sold, and barred claims based on hypothetical

14   investments that an investor might have made but for the fraud.  *Id.* at 741.  *See also*

15   *Commercial Union Assurance Co.*, 17 F.3d at 614-15 (rejecting as too speculative damages

16   under section 10(b) based on extrapolation from prior returns and returns paid by other

17   similar investments).

18   **B.     Because Counts I and II fail, Count III must fail too.**

19         Count III, for control person liability under Section 15, can state a claim only if the

20   underlying claims (Counts I and II) survive.  *Paracor Finance, Inc. v. General Electric*

21   *Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).  Because Counts I and II fail for the

22   reasons set forth above, so does Count III.

23   //

24   //

25   //

26

27

28

Reply Memorandum in Support of
Motion for Judgment on the Pleadings
Case No. C-05-04518-WHA

1   **IV.     CONCLUSION.**

2          The Court should dismiss all of McKenna's claims under Counts I, II and III and all

3   of Siemers' claims under these counts as to the Wells Fargo funds.

4          Dated:  May 3, 2007.

5                                              PILLSBURY WINTHROP SHAW PITTMAN LLP
                                               BRUCE A. ERICSON
6                                              CLIFFORD C. HYATT
                                               DAVID L. STANTON
7                                              JACOB R. SORENSEN
                                               RYAN K. TAKEMOTO
8                                              50 Fremont Street
                                               Post Office Box 7880
9                                              San Francisco, CA  94120-7880

10

11                                             By     /s/ Bruce A. Ericson
                                                         Bruce A. Ericson

12                                             Attorneys for Defendants
                                               WELLS FARGO & COMPANY and
13                                             WELLS FARGO INVESTMENTS, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

700685349v2                           - 10 -              Reply Memorandum in Support of
                                                      Motion for Judgment on the Pleadings
                                                      Case No. C-05-04518-WHA

1        **DECLARATION PURSUANT TO GENERAL ORDER 45, § X.B**

2         I, BRUCE A. ERICSON, hereby declare pursuant to General Order 45, § X.B, that I

3 have obtained the concurrence in the filing of this document from each of the other

4 signatories listed below.

5         I declare under penalty of perjury that the foregoing declaration is true and correct.

6         Executed on May 3, 2007, at San Francisco, California.

7

                           /s/ Bruce A. Ericson

8    Dated:  May 3, 2007.

9                 HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN

10                 A Professional Corporation
                    GILBERT R. SEROTA

11                 PATRICIA J. MEDINA
                    JASON M. SKAGGS

12                 Three Embarcadero Center, 7th Floor
                    San Francisco, CA  94111-4024

13

                By    /s/ Gilbert R. Serota

14                        Gilbert R. Serota

                Attorneys for Defendants

15                 WELLS FARGO FUNDS MANAGEMENT, LLC,
                    WELLS CAPITAL MANAGEMENT

16                 INCORPORATED, WELLS FARGO FUNDS
                    DISTRIBUTOR, LLC, WELLS FARGO FUNDS

17                 TRUST and STEPHENS INC.

18

19                 PILLSBURY WINTHROP SHAW PITTMAN LLP
                    BRUCE A. ERICSON

20                 CLIFFORD C. HYATT
                    DAVID L. STANTON

21                 JACOB R. SORENSEN
                    RYAN TAKEMOTO

22                 50 Fremont Street
                    Post Office Box 7880

23                 San Francisco, CA  94120-7880

24                 By    /s/ Bruce A. Ericson
                       Bruce A. Ericson

25                 Attorneys for Defendants
                    WELLS FARGO & COMPANY and

26                 WELLS FARGO INVESTMENTS, LLC.

27

28

700685349v2                 - 11 -            Reply Memorandum in Support of
Motion for Judgment on the Pleadings
Case No. C-05-04518-WHA