IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD SIEMERS and FORREST MCKENNA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & CO., WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS CAPITAL MANAGEMENT, INC., H.D. VEST INVESTMENT SERVICES, WELLS FARGO INVESTMENTS, LLC, STEPHENS, INC., and WELLS FARGO FUNDS TRUST,<br><br>Defendants. | No. C 05-04518 WHA<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

**INTRODUCTION**

In this securities-fraud action, defendants move for judgment on the pleadings as to certain counts of the complaint, pursuant to Federal Rule of Civil Procedure 12(c). Defendants contend that the undisputed facts establish that plaintiffs' claims arising under Section 12(a)(2) of the Securities Act of 1933 must fail as a matter of law. This order finds that plaintiffs' Section 12(a)(2) claims are barred by the statute of limitations or fail because plaintiffs have suffered no rescissory loss. Plaintiffs' claim under Section 15 of the 1933 Act must also fail. For the below-stated reasons, defendants' motion for judgment on the pleadings is **GRANTED**.

**STATEMENT**

This action alleges that defendants, various Wells Fargo-affiliated companies in the mutual-fund trade, engaged in a hidden system of "revenue sharing" wherein fund sponsors made incentive payments to brokerage firms in exchange for increased visibility. The most incendiary allegation is that the payments came not from the sponsors' own money but from the investors' money — siphoned out of the common fund in the guise of sham fees. Two putative-class representatives are named as plaintiffs, Ronald Siemers and Forrest McKenna. The full procedural history of this action is set forth in an order dated March 9, 2007. *See Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2007 WL 760750, at *1 (N.D. Cal. Mar. 9, 2007).

Counts I and II of the third amended complaint assert claims against defendants Wells Fargo Investments, Wells Fargo Funds Trust, Wells Fargo Funds Distributor, and Stephens Incorporated, under Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. 77l(a)(2). Count III asserts a claim against Wells Fargo & Co. under Section 15 of the 1933 Act, 15 U.S.C. 77o. The instant motion is directed at Counts I, II, and III.

Defendants' motion focuses on specific purchases and sales of Wells Fargo mutual funds by plaintiffs McKenna and Siemers. The operative complaint alleges the following purchases of Wells Fargo funds by McKenna and Siemers (Compl. Exhs. A, B):[1]

McKenna:

- The purchase of 191.84 shares of Wells Fargo Advantage Large Company Growth Fund on May 3, 2001.

- The purchase of 252.15 shares of Wells Fargo Advantage Small Cap Growth Fund on May 3, 2001.

Siemers:

- Purchases of Wells Fargo Diversified Equity Fund at various prices between July 14, 2000, and December 24, 2003.

---

[1] Whether these were actual purchases or only reinvestments is not clear from this record.

2

1    • Three purchases of Wells Fargo Advantage Small Cap
2       Growth Fund consisting of 620.018 shares on February 20,
        2004 (at $11.08), 217.028 shares on February 20, 2004 (at
3       $11.29), and 13.384 shares on December 15, 2004 (at
        $11.59).

4    • One purchase of Wells Fargo TR Montgomery Emerging
        Markets Focus Fund, consisting of 451.264 shares on
5       February 23, 2004 (at $22.16).

Before the complaint was filed, Siemers sold all the shares he owned in both the Diversified Equity Fund and the Emerging Markets Focus Fund. He sold his shares in the Emerging Markets Fund on October 31, 2005, for $25.78 per share. He sold his shares in the Diversified Equity Fund in two separate sales. On February 24, 2004, he sold 43.256 shares for $40.02 per share, and on April 7, 2004, he sold 2.538 shares for $41.21 per share. He still owns his shares in the Advantage Small Cap Growth Fund.

Defendants Wells Fargo Investments, Wells Fargo Fund Distributor, Wells Fargo Funds Trust, and Stephens move for judgment as to Counts I and II. Defendant Wells Fargo & Company moves for judgment as to Count III of the complaint. Plaintiffs concede that neither Siemers nor McKenna may plead a Section 12(a)(2) claim based on any purchase made before November 2, 2005. Thus only some of Siemers' purchases — and none of McKenna's — are at issue in this motion.

**ANALYSIS**

**1.    LEGAL STANDARD.**

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is evaluated according to virtually the same legal standard as a motion to dismiss pursuant to Rule 12(b)(6), in that the pleadings are construed in the light most favorable to the non-moving party. *See Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1130–31 (N.D. Cal. 2005). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is

3

1 entitled to judgment as a matter of law." *See Hal Roach Studios, Inc. v. Richard Feiner and
2 Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

Although materials outside of the pleadings should not be considered, a court may consider all materials properly submitted as part of the complaint, such as exhibits. *See Hal Roach Studios*, 896 F.2d at 1555 n.19. Otherwise, if "matters outside the pleadings are presented to and not excluded by the Court," the motion must be treated as a summary-judgment motion instead. Fed. R. Civ. P. 12(c).

The Court takes judicial notice of the Yahoo Finance quotes for the per share price of the Wells Fargo Advantage Small Cap Growth Fund, filed concurrently with the instant motion. *See Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997). While generally consideration of these judicially noticed facts would not convert the instant motion into a motion for summary judgment, there are other facts that require consideration of this motion as one for summary judgment. *See In re Century 21-RE/MAX Real Estate Advertising Claims Litig.*, 882 F. Supp. 915, 921 (C.D. Cal. 1994). Specifically, this order also takes into account defendants' calculation of Siemers' profit from the sale of his shares. Although these calculations are not disputed by plaintiffs in their opposition, the Court declines to take judicial notice of these facts and will construe the instant motion, to that extent, as one for summary judgment.

Under Rule 56, summary judgment is proper where the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." It is not the task of the district court to scour the record in search of a genuine issue of triable fact. The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). A genuine dispute as to a material fact exists if there is sufficient evidence for a reasonable finder of fact to return a verdict for the nonmoving party. On summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

4

255 (1986). Absent such a factual showing, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Defendants' motion for judgment on the pleadings is limited to plaintiffs' claims alleging violations of Sections 12(a)(2) and 15 of the 1933 Act, the first three counts of the complaint. Defendants first allege that certain transactions made before November 5, 2002, by Siemers and McKenna are barred by the three-year statute of limitations, this action having been initated on November 4, 2005. As stated above, plaintiffs concede that "neither Plaintiff intended to plead any [Section] 12(a)(2) claims in the Third Amended Complaint with regard to purchases made more than three years before the filing of the Complaint" (Opp. 1). None of McKenna's purchases was within the three-year period, so he cannot plead a claim under the 1933 Act with respect to his purchases of the Wells Fargo funds. Plaintiffs also concede that Siemers cannot plead a claim under the 1933 Act with respect to his purchases of Wells Fargo funds before November 2002. All parties agree, however, that at least some of Siemers' purchases of the Wells Fargo Small Cap Growth Fund, Wells Fargo Diversified Equity Fund, and Wells Fargo TR Montgomery Emerging Markets Focus Fund occurred after November 2002 and are not time-barred.

### 2. SECTION 12(A)(2) CLAIMS.

Defendants' principal argument is that as to the Wells Fargo funds Siemers purchased in the three years preceding the filing of the complaint, he cannot sustain a Section 12(a)(2) claim because he did not incur a loss. This argument has merit. This order recounts Siemers' relevant transactions during the class period.

*Wells Fargo Diversified Equity Fund*: Siemers made ten purchases at various times and prices between November 15, 2002, and December 24, 2003. These purchases were all at prices between $31.37 and $38.98. He sold all his shares in February and April 2004 at prices ranging from $40.02 to $41.21 per share. Matching his purchases against the lowest sale price, his profit was 19%.

5

*Wells Fargo TR Montgomery Emerging Markets Focus Fund*: Siemers made one purchase, on February 23, 2004. He bought these shares at $22.16. He sold the shares at $25.78 on November 2, 2005. He thus made a profit of 16%.

*Wells Fargo Advantage Small Cap Growth Fund*: Siemers made two purchases on February 20, 2004, and one on December 15, 2004. He paid $9,755.12 for 850.43 shares, at prices of $11.08, $11.29, and $11.59 per share. To date, he has not sold his shares in this fund. On the day the action was filed, the per-share value was $12.57. The share price was valued more recently on April 5, 2007, at $13.87.

### A. Siemers Has No Section 12(a)(2) Losses.

The parties agree that the remedies available under Section 12(a)(2) are limited. A plaintiff may "recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." 15 U.S.C. 77l(a)(2). The Supreme Court has explained that this provision "prescribes the remedy of rescission except where the plaintiff no longer owns the security." *Randall v. Loftsgaarden*, 478 U.S. 647, 655 (1986). And "[e]ven in the latter situation, we may assume that a rescissory measure of damages will be employed; the plaintiff is entitled to a return of the consideration paid, reduced by the amount realized when he sold the security and by any 'income received' on the security." *Id.* at 655–56. Thus, the successful plaintiff under Section 12(a)(2) may recover his or her "purchase price, or . . . damages not exceeding such price." *Id.* at 656 (quoting H.R. Rep. No. 85, 73d Cong., 1st Sess. 9 (1933)).

According to defendants, because Siemers profited on the fund purchases at issue, he would not be entitled to any Section 12(a)(2) damages. The Ninth Circuit's holding in *In re Broderbund /Learning Co. Securities Litigation*, 294 F.3d 1201, 1202–03 (9th Cir. 2002), provides guidance. In that decision, the plaintiff had acquired stock in The Learning Company at a price of $17.6875 per share. The plaintiff disposed of his stock at a price of $33.45 per TLC share in a stock-for-stock deal when TLC was acquired by Mattel. The plaintiff alleged that certain misstatements by TLC had inflated the value of TLC stock when he purchased it.

6

He asserted claims under Sections 11 and 12(a)(2) of the 1933 Act. The Ninth Circuit affirmed dismissal under Rule 12(b)(6), holding that the plaintiff had no damages as a matter of law: "[W]hen he disposed of [the security], he did so for an amount greater than the purchase price. . . . In the TLC transactions, he 'has suffered no damages recoverable under § 12(2)' of the Act." *Id.* at 1205 (quoting *PPM AM., Inc. v. Marriott Corp.*, 853 F. Supp. 860, 876 (D. Md. 1994)). This order finds that pursuant to *Broderbund*, where, as here, the undisputed facts show that plaintiff has profited from the transactions at issue, such allegations cannot constitute a Section 12(a)(2) claim for damages. *See Randall*, 478 U.S. at 655–56 ("[T]he plaintiff is entitled to a return of the consideration paid, reduced by the amount realized when he sold the security and by any 'income received' on the security."). The same is true for securities currently held that could be sold at their present value for a profit.

Plaintiffs maintain, however, that Siemers *did* suffer a rescissory loss for the mutual funds he sold. They contend that defendants neglected to include interest information, which is, in plaintiffs' view, necessary to calculate Section 12(a)(2) damages. Plaintiffs suggest that the interest rate can only be set after resolving fact issues and that it is inappropriate to do so in a motion for judgment on the pleadings. According to plaintiffs, Siemers can demonstrate Section 12(a)(2) losses using an "appropriate" interest rate.

Plaintiffs are wrong that interest is *necessary* in a Section 12(a)(2) damages calculation. In Section 12(a)(2) cases, "an award of prejudgment interest rests in the sound discretion of the trial court." *Commercial Union Assurance Co. v. Milken*, 17 F.3d 608, 615 (2d Cir. 1994). Factors to be considered include: "(I) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of the fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles that the court deems relevant." *Wickham Contracting Co., Inc. v. Local Union No. 3, Intern. Bhd.*, 955 F.2d 831, 833–34 (2d Cir. 1992); *see also Milken*, 17 F.3d at 615.

Based on the undisputed facts, consideration of the factors here weighs in favor of denying an award of interest as a matter of law. Perhaps most importantly, the undisputed facts

7

demonstrate that interest is not needed to fully compensate Siemers for any alleged Section 12(a)(2) loss suffered. Over almost two years, Siemers made a 19% profit from his sale of Wells Fargo Diversified Equity Fund shares. Over one and a half years, he made a 16% profit from his sale of Wells Fargo TR Montgomery Emerging Markets Focus Fund. As other courts have recognized, "if a plaintiff sells the securities at issue for an amount greater than the plaintiff's purchase price, then the plaintiff has suffered no damages recoverable under § 12(2)." *PPM AM., Inc.*, 853 F. Supp. at 876, *cited with approval in Broderbund*, 294 F.3d at 1205.

Furthermore, although he has not sold his shares in the Wells Fargo Advantage Small Cap Growth Fund, he could have made a 10% profit if he had sold the fund on the day the action commenced, or a 21% profit if he sold recently, on April 5, 2007. Because plaintiff still holds these shares, the proper remedy would be rescission; he would have to tender back his interest and receive his purchase price. *See Randall*, 478 U.S. at 655–56. But he would not be entitled to any award because rescission would result in him receiving less than the actual value of the shares. *See Merzin v. Provident Fin. Group, Inc.*, 311 F. Supp. 2d 674, 684 (S.D. Ohio 2004) ("Because in this case rescission would clearly result in a loss for Plaintiffs, such claim should be and is dismissed.").

For all of the relevant investments, Siemers' gain is at least as great as conventional interest over the periods in question, or so close thereto as to be fair without a disproportionate waste of resources in trying to put a finer point on it. This order holds that prejudgment interest is adequately compensated for in the profits already earned on the investments. Accordingly, Counts I and II must fail. In this regard, the Second Circuit has aptly held: "We realize that Congress specifically provided in § 12(2) for an award of interest. But we do not read § 12(2) as insisting upon any set rate of interest. . . . The net result of these computations is that appellants have not suffered compensable damages under § 12(2). Allowing them to maintain a cause of action under such circumstances would constitute a waste of judicial resources and a thwarting of Congress' aim in enacting § 12(2)." *Milken*, 17 F.3d at 616. The lack of a

8

cognizable loss under Section 12(a)(2) means that judgment must be entered on the Section 12(a)(2) claims in defendants' favor.

### B. Plaintiffs' Proposed Interest Calculation Is Flawed.

Even if the Court were to find interest available, plaintiffs' theory of "interest" to demonstrate a "loss" lacks merit. Plaintiffs propose a novel way to calculate interest. Plaintiffs "believe that one appropriate way to set the interest rate would be to see what return Mr. Siemers would have earned had he invested in non-Wells Fargo mutual funds in the same market segment" (Opp. 7). Plaintiffs suggest comparing Siemers' rate of return relative to industry "benchmark" funds identified by industry analysts at Morningstar and Yahoo. According to the calculations offered by plaintiffs, if Siemers had invested in the benchmark funds rather than the Wells Fargo funds, his return rate would have been higher. Under this theory, he has incurred a "loss" and is entitled to the "interest" he could have earned through a hypothetical investment (*id.* at 7–9).[2]

This proposed theory of "interest" is rejected. Plaintiffs cite no decision actually applying this approach in a Section 12 case. This theory is not interest at all. It is capital gain from competing equity investments.

The decision on which plaintiffs rely, *Johns Hopkins University v. Hutton*, 297 F. Supp. 1165, 1229–30 (D. Md. 1968), is inapposite. *Johns Hopkins* held that "[i]n order to place [the plaintiff] in the position it would have been in were it not for the violations by [the defendant] of the standards of Section 12, an examination is required to determine what Hopkins could reasonably have been expected to earn by a similar type of investment." In the circumstances of that decision, however, the court considered the rate of return the plaintiff had been *promised* before making the investment. The district court found that the promised rate was above the

---

[2] Plaintiffs expressly "do not waive their right to assert that the interest should be set in other ways," such as by reference to a fixed rate or a treasury-bill rate (Opp. 7). They suggest the theory discussed above as a possible way to calculate interest and to demonstrate that Siemers has incurred a loss.

9

prime rate and that accordingly, it was appropriate to award the plaintiff what it had expected to earn according to the defendants' promise.

Even if *Johns Hopkins* is correct that a plaintiff's reasonable expectation can be considered in calculating interest in Section 12(a)(2), plaintiffs do not argue that Siemers could reasonably expect to receive a particular rate of return. Generally, "[i]n a rescission action the proper measure is the amount lost rather than value of the bargain." *Andrews v. Blue*, 489 F.2d 367, 376 (10th Cir. 1973). There being no Section 12(a)(2) decision supporting the theory that a fictitious investment can be used to create a loss for a plaintiff who has profited from the investment at issue, plaintiffs' theory fails.

### 3. SECTION 15 CLAIM.

Count III, alleging control-person liability under Section 15, only survives this motion if the underlying claims brought under Section 12(a)(2), Counts I and II, survive. Because the Section 12(a)(2) claims do not survive, judgment on the Section 15 claim must be entered in Wells Fargo & Company's favor. *See* 15 U.S.C. 77o; *Durham v. Kelly*, 810 F.2d 1500, 1503–04 (9th Cir. 1987)*; Payne v. Fidelity Homes of Am., Inc.*, 437 F. Supp. 656, 658 (D.C. Ky. 1977).

### CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings as to Counts I, II, and III, construed as a motion for summary judgment, is **GRANTED**. The remaining claims are Count IV, which alleges a violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b) and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. 240.10b-5; Count V, which alleges a violation of Section 20(a) of the 1934 Act, 15 U.S.C. 78t; and Count VI, which alleges a violation of Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. 80a-35(b).

**IT IS SO ORDERED.**

Dated: May 17, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE