**GUTRIDE SAFIER REESE LLP**
Michael R. Reese (Cal. State Bar No. 206773)
Kim E. Richman (admitted *pro hac vice*)
230 Park Avenue, 10th Floor
New York, New York 10169
Telephone: (212) 579-4625
Facsimile: (212) 253-4272

- and -

**GUTRIDE SAFIER REESE LLP**
Adam J. Gutride (Cal. State Bar No.181466)
Seth A. Safier (Cal. State Bar No. 197427)
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 271-6469
Facsimile: (415) 449-6469

*Court Appointed Lead Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RONALD SIEMERS and FORREST MCKENNA, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO & COMPANY, WELLS FARGO INVESTMENTS, LLC, WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS CAPITAL MANAGEMENT INC., STEPHENS INC., WELLS FARGO FUNDS DISTRIBUTOR, LLC, and WELLS FARGO FUNDS TRUST,<br><br>Defendants. | Case No. 05-04518 WHA<br><br>LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PROPOSED PLAN OF ALLOCATION<br><br>DATE: JANUARY 31, 2008<br>TIME: 8:00 AM<br>CTRM: 9, 19TH FLOOR<br>JUDGE: JUDGE WILLIAM ALSUP |

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................1

II.  FACTUAL AND PROCEDURAL HISTORY .........................................................1

III. ARGUMENT ...............................................................................................................5

    A.  Standard For Approval Of Class Action Settlements ....................................5

    B.  This Settlement Meets The Standard For Approval........................................6

        1.  Lead Counsel Was Very Familiar With The Strengths And Weaknesses Of Lead Plaintiff's Case. ............................................6

        2.  The Settlement Strikes The Proper Balance Between The Probability of Success And The Possibility of Defeat. ...............6

            a)  Continued Litigation Posed Substantial Risks in Establishing Liability and Damages. ................................7

            b)  Balancing the Certainty of an Immediate Recovery Against the Complexity, Expense and Likely Duration of Protracted Litigation and Trial Favors Settlement. ............................7

        3.  The Settlement Consideration Is Well Within the Range of Reasonableness. ......................................................................9

        4.  The Settlement Agreement Resulted from Arm's Length Negotiations Between Experienced Counsel and Is Not the Product of Collusion. ..............................................................................10

        5.  The Reaction of the Class to Date Supports Approval of the Settlement. .............................................................................11

    C.  The Plan Of Allocation Should Be Approved By The Court.....................11

        1.  Standard For Approving Plan Of Allocation ..................................11

        2.  The Plan Of Allocation Is Fair, Reasonable And Adequate. .........12

IV.  CONCLUSION.........................................................................................................13

# TABLE OF AUTHORITIES

**CASES**

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990)..................................................................8

*Beecher v. Able*, 575 F.2d 1010 (2d Cir. 1978) ...........................................................................11

*Bell Atl. Corp v. Bolger*, 2 F.4d 1304 (3d Cir. 1993).....................................................................11

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal 1979)...........................................................6, 7

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............................................................11

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) ........................................5, 6, 8

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)..................................................................................6

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..............................................................6

*In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001)............................10, 11

*In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ........................................................................................................8

*In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993).................................................11

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 cv 4318 (HB), 2001 U.S. Dist. LEXIS 8418 (S.D.N.Y. June 22, 2001) .................................................................................11

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588 (S.D.N.Y. 1992) ........................11

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.2d 454 (9th Cir. 2000).............................................6, 7, 9

*In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329 (N.D. Ga. 2000).......................11

*In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997)....................................11

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099 (S.D.N.Y. 1989)......................................................................................................................9

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) ........................................8

*In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35 (2d Cir. 1986) ..................................................10

*In re Xoma Corp. Sec. Litig.*, No. C-91-2252 TEH, 1992 U.S. Dist. LEXIS 10502 (N.D. Cal. July 10, 1992)......................................................................................................10

*Law v. NCAA*, 108 F. Supp. 2d 1193 (D. Kan. 2000) ...................................................................10

*Lewis v. Newman*, 59 F.R.D. 525 (S.D.N.Y 1973) .........................................................................6

*Linney v. Cellular Alaska Pshp,* 151 F.3d 1234 (9th Cir. 1998).....................................................8

*Milstein v. Huck*, 600 F. Supp. 254 (E.D.N.Y. 1984) .....................................................................7

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ..........................5, 7, 8, 9

*Robbins v. Koger Props.*, 129 F.3d 617 (11th Cir. 1997) .................................................................8

*Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337 (N.D. Tex. 1976) ................................9

*Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989) ....................................11

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........................................................................5

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993).....................................................5

*Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277 (S.D.N.Y. 1993)...........................................10

*Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943 (9th Cir. 1976) .....................................................5

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) .......................................8

*Young v. Katz*, 447 F.2d 431 (5th Cir. 1971) ..................................................................................7

**OTHER AUTHORITIES**

Laura E. Simmons & Ellen M. Ryan, "*Post-Reform Act Securities Settlements, 2005
    Review and Analysis*," (Cornerstone Research 2006) (available at
    www.cornerstone.com) ........................................................................................................9

Todd Foster, Ronald I. Miller and Stephanie Plancich, "*Recent Trends in Shareholder
    Class Action Litigation: Filings Plummet, Settlements Soar*," (NERA Jan. 2007)
    (available at www.nera.com) ..............................................................................................9

**RULES**

Fed. R. Civ. P. 23(e) ........................................................................................................................5

**TREATISES**

2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* (3d ed. 1992) ..............................10

Manual on Complex Litigation................................................................................................10

## I. INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff seeks final approval of the proposed settlement (the "Settlement") between the Class[1] and defendants Wells Fargo & Company; Wells Fargo Investments, LLC; Wells Fargo Funds Trust; Wells Fargo Funds Management, LLC; Wells Capital Management, Incorporated; Wells Fargo Funds Distributor, LLC; and Stephens, Inc. (the "Defendants").  In addition, Lead Plaintiff requests Court approval of the proposed Plan of Allocation and entry of the proposed Final Judgment.[2] Lead Plaintiff respectfully submits this Memorandum pursuant to paragraph 15 of this Court's Order Preliminarily Approving Settlement, Aug. 13, 2007 (Dkt. 390), which provides that "no later than January 21, 2008, Lead Plaintiff shall submit any responses to objections from Settlement Class Members and any further arguments in support of approval of the Settlement."  As explained in further detail below, notice was sent to more than 30,000 Settlement Class Members, and *none* of them has submitted any objection to the Settlement.

## II. FACTUAL AND PROCEDURAL HISTORY

On August 3 and 13, 2007, this Court issued orders preliminarily approving the Settlement and directing notice to the Class.  The Court also approved the form and contents of the notices.

Pursuant to the terms of those orders, Defendants mailed copies of the notice to all Settlement Class Members for whom Defendants had the names and addresses.  Defendants and the Claims Administrator also contacted nominees (such as broker/dealers, institutional trust services, and omnibus accounts, that held the funds in their own names on behalf of beneficial owners).  Defendants either mailed the notice to Settlement Class Members identified by the nominees or provided the nominees copies of the notice for their own mailing as instructed in the

---

[1] The Class includes all purchasers of shares (of any share class) bought between November 4, 2000, and June 8, 2005, in the Wells Fargo Advantage Small Cap Growth Fund or Wells Fargo Diversified Equity Fund and all purchasers of shares (of any share class) bought between June 9, 2003, and June 8, 2005, of the Wells Fargo Montgomery Emerging Markets Focus Fund.

[2] The Proposed Plan of Allocation is attached hereto as Exhibit A and the proposed Judgment is attached hereto as Exhibit B.

order of preliminary approval. More than 30,000 notices were mailed, as further described in the Declaration of Jeffrey Dart, filed herewith. All notices bore the return address of the Claims Administrator, and when returned to sender for incorrect addresses, they were re-mailed to corrected addresses if one could be identified, as further detailed in the declaration of Bryan Neff filed herewith.[3]

In addition to the mailed notice, notice of the settlement was published in the Investors' Business Daily on October 25, 2007.

The Claims Administrator has maintained a detailed Settlement Website at www.mutualfundfeesettlement.com which includes answers to frequently asked questions and all settlement-related documents, including the notices, claim forms, proposed plan of allocation, and the motions for approval of the settlement and award of attorneys' fees. The website also permits individuals to file claims or request exclusion from the settlement online, *i.e.*, without mailing in any form.

The claims form requested limited information from Settlement Class Members and was constructed in an easy-to understand fashion. On the first page, claimants were required to state their identity. The claim form then included one page for each of the three mutual funds at issue, on which claimants were to state their share balance at the beginning and end of the class period (if any) and the purchases and sales they made of the fund during the class period (if any). Claimants also were permitted to attach statements evidencing the transactions, or submit the transactions electronically. (*See* Neff Decl. ¶ 6 & Ex. B.) On the last page, claimants were required to state under penalty of perjury that they had provided accurate information.

To date, including both online and mailed submissions, approximately 421 claims have been submitted. (*Id.* ¶ 7.) The claims period runs until 60 days after an order of Final Approval.

---

[3] A total of 565 notices were not delivered, either because corrected addresses could not be found, or because the mail was returned to sender from the corrected address. (Neff Decl. ¶ 13-15.)

In addition, fourteen requests for exclusion have been submitted. (*See* Joint Statement re Opt Outs filed herewith.)[4]

The Claims Administrator has also maintained a toll free automated telephone help line, at which 769 calls have been received from putative Settlement Class Members. Callers have the option of talking to a live person employed by the Claims Administrator, and 177 of them have exercised this option. In addition, more than two dozen Settlement Class Members have communicated directly with Lead Counsel by telephone, mail and electronic mail.

Settlement Class Members were instructed of their right to file objections to or comments on the Settlement on or before January 7, 2008. No objections were received by that date, or indeed at any time. Only one comment has been received. The commenter, who was unsolicited and had not otherwise communicated with Lead Counsel, wrote that she supported the settlement. (A copy of her comment is attached as Exhibit C.)

Under the terms of the Settlement, Defendants have agreed to make numerous changes to their prospectuses and statements of additional information, to accurately and fully disclose the fact and amounts of revenue sharing payments, as well as the names of brokers to whom such payments are made. Such disclosures benefit members of the settlement class and all further purchasers of Wells Fargo mutual funds. These improved disclosures can be found at Exhibits 6 and 7 to the Stipulation of Settlement (Dkt.# 371).

In addition, Defendants have agreed to pay $1.15 million in cash into a Settlement Fund. From the Settlement Fund, $50,000.00 is to be paid to the Small Cap Growth Fund to settle the derivative claim on behalf of that fund, $1,500.00 is to be paid to the named Plaintiff to settle his individual claims regarding non-Wells Fargo mutual funds that were severed and stayed before the class was certified, and the balance of $1,098,500.00 is for the benefit of the Class. If the requested Lead Plaintiff's attorneys' fees and costs of $348,501.70 are granted, and even if the Claims Administrator's total expenses are at the high end of the projections, *i.e.,* $110,000.00

---

[4] This number includes opt-outs that were received after the deadline of January 7, 2008 and opt-outs that were improperly sent to one of the parties rather than to the Claims Administrator. The parties have stipulated that all fourteen of these persons and entities should be excluded from the Judgment.

(*see* Neff Decl. ¶ 16), the amount available for distribution to Settlement Class Members who have made claims will be $639,998.30.  Even if the claims rate quintuples between now and the end of the claim period, this will permit an average distribution to each Settlement Class Member of $304.

Lead Plaintiff strongly believes that the Settlement is in the best interests of the Class and that it should be finally approved.  As explained in Lead Plaintiff's Supplemental Memorandum In Support Of Preliminary Approval, Dkt.# 382, and in the notice to Class Members approved by the Court, the Settlement achieves a recovery of at least 35% of Lead Plaintiff's expected "best case recovery" were this case to proceed to trial.  In light of the claims rate to date, there is no reason to believe that any claimant would have recovered more at trial than he or she will recover by way of this Settlement, even if the "best case recovery" had been achieved at trial.[5]

The Settlement was reached only after a thorough investigation of the facts and law by Lead Counsel, as well as hard-fought motion practice on many issues.  Discovery included review of hundreds of thousands of pages of documents, numerous interrogatories and requests for admission, and ten depositions.  Motion practice included motions to dismiss, motions to amend the complaint, a motion for class certification, and a motion for judgment on the pleadings.

Lead Plaintiff accordingly requests that the Settlement be finally approved.  Lead Plaintiff further requests that the Court approve the proposed Plan of Allocation (Exhibit A) and enter the Proposed Final Judgment (Exhibit B), both of which were made available to all Settlement Class Members on the Settlement Website, and neither of which drew any objections.  The Final Judgment will dismiss the Certified Class Claims with prejudice as to the Settlement Class (excluding those persons named in the Joint Statement re Opt-Outs filed herewith), dismiss

---

[5] The settlement also represents 65% of the total revenue sharing payments made by the three mutual funds as to which a class was certified.  Had the Court certified a class of all 100+ mutual funds, the equivalent settlement value, as a percentage of revenue sharing payments, would have exceeded $84 million.  (*See* Plaintiff's Supplemental Submission Re Preliminary Approval Of Settlement, filed July 25, 2007.)

the Uncertified Class Claims and Stayed Claims with prejudice as to the Lead Plaintiff only, and dismiss with prejudice the Derivative Claim.

### III.     ARGUMENT

#### A.     Standard For Approval Of Class Action Settlements

In the Ninth Circuit, "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Additionally, "there is an overriding public interest in settling and quieting litigation, [and this] is 'particularly true in class action suits.'" *Van Bronkhorst v. Safeco Corp.*, 529 F. 2d 943, 950 (9th Cir. 1976).

According to Rule 23(e), a "class action shall not be dismissed or compromised without approval of the court." Fed. R. Civ. P. 23(e). Under Ninth Circuit law, in order to approve a final settlement in a class action, a district court must find that the proposed settlement is fair, adequate and reasonable. *See* Fed. R. Civ. P. 23(e)(1)(C); *see also Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In making such a determination, the court may consider and balance several factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Officers for Justice*, 688 F.2d at 625 (citations omitted). This list of factors is, of course, not exhaustive, nor does it attempt to identify which are the most important or significant factors. *Id*.

In evaluating the proposed settlement, the district court must exercise sound discretion. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all

concerned." *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit has defined the limits of the inquiry to be made by the court as follows:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.

*Id*. Moreover, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal 1979).

### B. This Settlement Meets The Standard For Approval.

#### 1. Lead Counsel Was Very Familiar With The Strengths And Weaknesses Of Lead Plaintiff's Case.

In addition to ten depositions, Lead Counsel engaged in a detailed, lengthy and thorough review of hundreds of thousands of documents produced in this action by Defendants and third parties, including documents produced by Defendants' partners (and clients) and documents Defendants produced to the SEC and NASD in connection with their investigations. Because this case settled after a class was certified, Lead Counsel was particularly attuned to the probabilities of success and the best dollar value of the case. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Girsh v. Jepson*, 521 F.2d 153, 157 ($3^d$ Cir. 1975); *see also Ellis*, 87 F.R.D. at 18; *Boyd*, 485 F. Supp. at 616-17.

#### 2. The Settlement Strikes The Proper Balance Between The Probability of Success And The Possibility of Defeat.

To determine whether the proposed Settlement is fair, reasonable and adequate, the Court should balance the continuing risks of litigation against the benefits afforded to the Class Members and the immediacy and certainty of a recovery. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.2d 454, 458 (9th Cir. 2000); *Girsh*, 521 F.2d. at 157, *amended*, 2000 C.D.O.S. 4890 (9th Cir. 2000); *Boyd*, 485 F. Supp. at 616-17. In the context of approving class action settlements, courts attempting to balance these factors have recognized "that stockholder litigation is notably

difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y 1973). Here, a balance of these factors supports approval of the Settlement, particularly in light of the risks presented in establishing Defendants' liability and Class Members' damages.

### a) Continued Litigation Posed Substantial Risks in Establishing Liability and Damages.

Absent settlement, there remained numerous obstacles to achieving a judgment for the Class, both at summary judgment and trial. Defendants would have argued that all of the fees received from these mutual funds were fair and reasonable, consistent with fees paid by comparable funds, and were properly approved by independent fund trustees relying on independent data. Defendants further would have asserted that their disclosures were truthful, that the amounts of revenue sharing payments were immaterial when compared to overall fund assets, that the Class did not rely on any omissions or misstatements, and that the revenue sharing payments had no impact on fund performance, thereby causing no recoverable damages. Lead Plaintiff would have had to overcome these arguments as well as the expert testimony that Defendants would have presented in support of them. The jury's reaction to the anticipated testimony and argument would be highly unpredictable. There was a risk that even if Lead Plaintiff was successful in proving liability, a jury would award little or no damages. Given the undecided legal and factual issues, and the almost certain appeal of any verdict adverse to Defendants, it is quite possible that the Class would have recovered nothing.

### b) Balancing the Certainty of an Immediate Recovery Against the Complexity, Expense and Likely Duration of Protracted Litigation and Trial Favors Settlement.

The immediacy and certainty of a recovery is a factor for the Court to balance in determining whether the proposed settlement is fair, adequate and reasonable. *See Mego*, 213 F.3d at 458. Courts have consistently held that "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *Officers for Justice*, 688 F.2d at 626; *Boyd*, 485 F. Supp at 616-17. Therefore, the present settlement must also be balanced against the risk and

expense of achieving a more favorable result at trial. *See Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).

Even had success been reached at trial, there was a risk of post-verdict reversal. For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991), a case litigated and tried in this District, the jury rendered a verdict for plaintiffs after an extended trial. Based on the jury's findings, recoverable damages would have exceeded $100 million. However, weeks after the verdict, the Court overturned the verdict, entering judgment n.o.v. for the individual defendants and ordering a new trial for the corporate defendant. Similarly, in a securities case in the Middle District of Florida, the jury returned a verdict of approximately $81 million in favor of the class. On appeal, the verdict was reversed and the class was left with no recovery. *See Robbins v. Koger Props.*, 129 F.3d 617 (11th Cir. 1997); *see also Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class wins a large jury verdict and a motion for j.n.o.v. denied, but on appeal judgment reversed and case dismissed); *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).

As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise, "'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citation omitted). "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Id*. (citation omitted); *see also Ellis*, 87 F.R.D. at 19 (as a quid pro quo for not having to undergo the uncertainties and expenses of litigation, the plaintiffs must be willing to moderate the measure of their demands). Accordingly, the Settlement is not to be judged against a speculative measure of what might have been achieved. *See Linney v. Cellular Alaska Pshp,* 151 F.3d 1234, 1242 (9th Cir. 1998). The fact that the Class potentially could have achieved a greater recovery after trial does not preclude the Court from finding that the Settlement is within a "range of reasonableness" that is appropriate for approval. *See In re Warner Commc'ns Sec. Litig.*, 618 F.

Supp. 735, 745 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35, 37 (2d Cir. 1986).  While potential damages have been estimated to be higher than the settlement amount, a realistic assessment of the risks of continued litigation supports this Settlement as a fair resolution of this action.

### 3. The Settlement Consideration Is Well Within the Range of Reasonableness.

Under the terms of the Settlement, Defendants have agreed to make substantial changes to their disclosures and create a fund consisting of $1.15 million in cash.  The determination of whether a proposed settlement is reasonable cannot be determined by a mathematical equation yielding a particularized sum.  Rather, as explained in *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976): "In any case, there is a range of reasonableness with respect to a settlement. A range which recognizes that uncertainties of law and fact exist and the competent risks and costs necessarily inherent in taking any litigation to completion."  Further, courts recognize that a settlement can be approved even when it amounts to only a small percentage of the recovery sought.  *See Mego*, 213 F.3d at 454; *Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."); *see also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (the dollar amount of the settlement itself is not decisive in the fairness determination).

Here, the settlement amount is significant.  It represents 35% of the "best case" damages and 65% of the total revenue sharing payments made by the three mutual funds as to which a class was certified.  Had the Court certified a class of all 100+ mutual funds, the equivalent settlement value, as a percentage of revenue sharing payments, would have exceeded $84 million.   (*See* Plaintiff's Supplemental Submission Re Preliminary Approval Of Settlement, filed July 25, 2007.)

This recovery is also substantially higher than the median recovery (of 2-3% of losses) obtained in most securities class actions.  *See* Laura E. Simmons & Ellen M. Ryan, "*Post-Reform Act Securities Settlements, 2005 Review and Analysis,*" at 5 (Cornerstone Research 2006)

(available at www.cornerstone.com) (settlements were approximately 3% of plaintiffs' estimated damages in 2005); Todd Foster, Ronald I. Miller and Stephanie Plancich, "*Recent Trends in Shareholder Class Action Litigation: Filings Plummet, Settlements Soar*," at 9 (NERA Jan. 2007) (available at www.nera.com) (in 2006, median recovery were 2.2% of losses).

### 4. The Settlement Agreement Resulted from Arm's Length Negotiations Between Experienced Counsel and Is Not the Product of Collusion.

There is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations. *See* 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* §11.41, at 11-88 (3d ed. 1992); *see also* Manual on Complex Litigation §30.42. By focusing on the negotiating process, a court can avoid the burden of an unduly extended inquiry into the claims asserted and result achieved by plaintiffs. *See also In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("it is not a district judge's job to dictate the terms of a class settlement"); *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) ("absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel"). "The court is entitled to rely heavily on the assessment of able counsel negotiating at arms' length." *In re Xoma Corp. Sec. Litig.*, No. C-91-2252 TEH, 1992 U.S. Dist. LEXIS 10502, at *9 (N.D. Cal. July 10, 1992). "When a settlement is achieved through arms-length negotiations between experienced counsel, the court should be hesitant to substitute its own judgment for that of counsel absent a showing of fraud, collusion or other forms of bad faith." *Id.*; *see also In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) ("As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight"); *Law v. NCAA*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000), *aff'd*, 246 F.3d 681 (10th Cir.) ("The Court also gives substantial weight to the opinions of experienced counsel in this case regarding the fairness of the settlement and allocation.").

This action has been litigated and settled by experienced and competent counsel on both sides of the case. The negotiations between counsel were extensive and hard fought and the

Settlement was reached only after the significant assistance of Magistrate Judge Spero. Nothing about the course of the negotiations or the substance of the Settlement "disclose[s] grounds to doubt its fairness." Manual on Complex Litigation §30.41.

### 5. The Reaction of the Class to Date Supports Approval of the Settlement.

"It is well settled that 'the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.'" *In re Am. Bank Note Holographics.*, 127 F. Supp. 2d at 425 (quoting *Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989)). In fact, the lack of objections may evidence the fairness of a proposed settlement. *See In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 cv 4318 (HB), 2001 U.S. Dist. LEXIS 8418, at *10 (S.D.N.Y. June 22, 2001) ("It is particularly notable that there were no objectors.") (citation omitted).

Of the more than 30,000 persons and institutions given direct notice of the Settlement by mail, only 14 (less than 1/20 of one percent) have opted out, and none has filed an objection. The lack of significant opposition from the Class argues persuasively for final approval of the Settlement by the Court. *See, e.g., Bell Atl. Corp v. Bolger*, 2 F.4d 1304, 1313 n. 15 (3d Cir. 1993); *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 325 (E.D.N.Y. 1993).

## C. The Plan Of Allocation Should Be Approved By The Court.

Lead Plaintiff additionally requests that this Court approve the proposed Plan of Allocation of the Settlement Fund. The Proposed Plan of Allocation was referenced in the Notice sent to all Settlement Class Members, and posted on the Settlement Website. No one has objected to it.

### 1. Standard For Approving Plan Of Allocation

A proposed plan of allocation in a class action is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable and adequate.

*See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992). The purpose in developing a plan should be to devise one that permits equitable distribution of the limited settlement proceeds. *See Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978). Therefore, a plan of allocation that allocates most of the settlement to those most injured is reasonable. *See In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

### 2. The Plan Of Allocation Is Fair, Reasonable And Adequate.

The goal of the proposed Plan of Allocation is to provide an equitable basis upon which to distribute the Settlement Fund among eligible Class Members who suffered economic losses as a result of the Defendants' alleged wrongdoings during the Class Period. Here, the plan is modeled on the court-approved allocations in *In re Edwards D. Jones & Co., L.P.,* SEC Admin. Proc. File No. 3-11780, Apr. 7, 2006 and *In re American Express Financial Advisors Sec. Litig.*, Civ. No. 1:04-cv-1773. (For copies of these allocation plans, please see Exhibits B-C to Declaration of Adam Gutride In Support of Replies in Support of Plaintiffs' Motion for Class Certification, May 10, 2007 (Dkt.# 332).)

The proposed Plan of Allocation first divides the Settlement Fund among the three Wells Fargo Mutual Funds in the same proportion as the revenue sharing payments that were made from the assets of those funds. Then, it divides the money among the claimants who were purchasers of each fund during the Class Period, in proportion to their "average dollar holdings" of the fund. Because revenue sharing payments were made on a regular basis by each fund, the longer a class member held the fund during the Class Period, and the more shares he or she held, the more injury he or she suffered. Accordingly, the Settlement Fund benefits are apportioned in the same way.

In order to reduce costs of administration, the proposed Plan of Allocation also provides that no distribution will be made to any person whose pro rata share of the settlement would be less than $20. No Class Member has objected to this cost-savings provision. Amounts that would have gone to such persons will instead be reallocated (according to the same proportions set out above) to the remaining claimants. In addition, no person will be entitled to receive a

distribution in excess of ten percent of their total average holdings of the funds as the total revenue sharing at issue for these three funds did not exceed ten percent of total assets.  No Class Member has objected to this provision of the Plan of Allocation either.[6]

## IV.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court (1) grant final approval of the proposed Settlement, (2) approve the proposed Plan of Allocation submitted herewith as Exhibit A; and (2) enter the proposed Final Judgment and Order of Dismissal with Prejudice submitted herewith as Exhibit B.

DATED:   January 21, 2008                          **GUTRIDE SAFIER REESE LLP**
                                                   By: /s/ Adam J. Gutride_____
                                                       Adam J. Gutride (Cal. State Bar No. 181446)
                                                       Seth A. Safier (Cal. State Bar No. 197427)  s
                                                       835 Douglass Street
                                                       San Francisco, California 94114

                                                   - and -

                                                   **GUTRIDE SAFIER REESE LLP**
                                                   Michael R. Reese (Cal. State Bar No. 206773)
                                                   Kim E. Richman (admitted *pro hac vice*)
                                                   230 Park Avenue, 10th Floor
                                                   New York, New York  10169

                                                   *Court Appointed Lead Counsel*

---

[6] If application of the ten percent ceiling causes money to remain in the Settlement Fund, the parties will attempt to agree on an appropriate distribution of the balance, and seek Court approval for that distribution as provided in paragraph 4(j) of the Proposed Plan of Allocation.

## DECLARATION OF SERVICE

I, the undersigned, declare:

1. That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of San Francisco, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 835 Douglass Street, San Francisco, California 94114.

2. That on January 21, 2008, declarant served the **LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PROPOSED PLAN OF ALLOCATION** by electronic notice to the parties listed on the attached Service List.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 21st day of January, 2008, at San Francisco, California.

/s/ Seth A. Safier
SETH A. SAFIER

# Wells Fargo & Co.

## Service List

| | |
|---|---|
| Bruce A. Ericson<br>Jacob R. Sorensen<br>Kristin M. Lefevre<br>**PILLSBURY WINTHROP SHAW PITTMAN LLP**<br>50 Freemont Street<br>P.O. Box 7880<br>San Francisco, CA 94105-7880<br>Tel.: (415) 983-1000<br>Fax: (415) 983-1200<br><br>-and-<br><br>Clifford C. Hyatt<br>David L. Stanton<br>**PILLSBURY WINTHROP SHAW PITTMAN LLP**<br>725 South Figueroa Street, Suite 2800<br>Los Angeles, CA 90017-5406<br>Tel.: (213) 488-7100<br>Fax: (213) 629-1033<br><br>*Counsel for Defendants Wells Fargo & Co., Wells Fargo Investments, LLC, and H.D. Vest Investment Services*<br><br>Gilbert R. Serota<br>Patrica J. Medina<br>Jason M. Skaggs<br>**HOWARD RICE NEMEROVSKI CANADY FALK & RABIN LLP**<br>Three Embarcedero Center – Seventh Floor<br>San Francisco, California 94111-4024<br>*Counsel for Defendants, Wells Fargo Funds Management, LLC, Wells Capital Management, Inc., Wells Fargo Funds Distributor, LLC and Stephens, Inc.,* | Thomas O. Jacob<br>Vanessa M. Hoffmann<br>**OFFICE OF GENERAL COUNSEL, WELLS FARGO & CO.**<br>633 Folsom Street, 7th Floor<br>San Francisco, CA 94107<br>Tel.: (415) 622-6656<br>Fax: (415) 975-7864<br><br>*Counsel for Defendants Wells Fargo & Co., Wells Fargo Funds Management, LLC, Wells Capital Management, Inc., Wells Fargo Funds Trust, and Wells Fargo Investments, LLC* |